### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | Case No. 15-11874 (____) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER, PURSUANT TO 28 U.S.C. § 156(c), APPROVING THE RETENTION AND APPOINTMENT OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors in possession (each a "**Debtor**," and collectively, the "**Debtors**") hereby submit this application (this "**Application**") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), pursuant to section 156(c) of title 28 of the United States Code, approving the services agreement between the Debtors and Kurtzman Carson Consultants LLC ("**KCC**"), a copy of which is attached as Exhibit 1 to the Proposed Order (the "**Services Agreement**"), to the extent requested herein, and the Debtors' retention and employment of KCC as claims and noticing agent for the Debtors in lieu of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "**Clerk**"), effective as of the Petition Date (as defined below). In support of this Application, the Debtors rely upon and incorporate by reference the *Declaration of Blake Barnett In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] which was filed with the Court concurrently

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

herewith, and the declaration of Evan Gershbein (the "**Gershbein Declaration**"), which is attached hereto as <u>Exhibit B</u>.  In further support of this Application, the Debtors respectfully state as follows:

<b><u>JURISDICTION AND VENUE</u></b>

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 156(c), section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq</u>. (the "**Bankruptcy Code**"), Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "**Claims Agent Protocol**").

<b><u>BACKGROUND</u></b>

2.       On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Application, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.       The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

01:17632699.2

2

4.      No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

5.      Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## RELIEF REQUESTED

6.      By this Application, the Debtors request the Court enter the Proposed Order, approving the Services Agreement, to the extent set forth herein, and the Debtors' retention and employment of KCC as claims and noticing agent for the Debtors in these chapter 11 cases, effective as of the Petition Date.

## SERVICES TO BE PROVIDED

7.      This Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c), Local Rule 2002-1(f), and the Claims Agent Protocol, and any work to be performed by KCC outside of this scope is not covered by this Application or by any order granting approval hereof.[3]  Specifically, KCC will perform, to the extent the Debtors or the Clerk request, the following services in its role as claims and noticing agent (the "**Claims and Noticing Services**"), as well as all quality control relating thereto:

    a.      prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in the form and manner directed by the Debtors and/or the Court, including, if applicable (i) notice of the commencement of the cases and the initial meeting of creditors under section 341 of the Bankruptcy

---

[3]   The Debtors anticipate filing a subsequent application pursuant to section 327(a) of the Bankruptcy Code whereby the Debtors will seek to employ KCC to provide certain bankruptcy administrative services to the Debtors during these chapter 11 cases.

Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of any chapter 11 plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any chapter 11 plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors and/or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

b.      maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

c.      maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance under Bankruptcy Rule 9010;

d.      furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.      prepare and file or cause to be filed with the Clerk an affidavit or certificate of service for all notices, motions, orders, and other pleadings or documents served within seven (7) business days of service that includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

01:17632699.2

4

g.    process all proofs of claim received, including those
      received by the Clerk's office, check said processing for
      accuracy, and maintain the original proofs of claim in a
      secure area;

h.    (i) maintain the official claims register for each Debtor
      (the "**Claims Register**") on behalf of the Clerk, (ii) upon
      the Clerk's request, provide the Clerk with certified,
      duplicate unofficial Claims Registers, and (iii) specify in
      the Claims Registers the following information for each
      claim docketed:  (A) the claim number assigned; (B) the
      date received; (C) the name and address of the claimant and
      agent, if applicable, who filed the claim; (D) the amount
      asserted; (E) the asserted classification(s) of the claim (*e.g.*,
      secured, unsecured, priority, etc.); (F) the applicable
      Debtor; and (G) any disposition of the claim;

i.    implement necessary security measures to ensure the
      completeness and integrity of the Claims Registers and the
      safekeeping of the original claims;

j.    record all transfers of claims and provide any notices of
      such transfers as required by Bankruptcy Rule 3001(e);

k.    relocate, by messenger or overnight delivery, all of the
      court-filed proofs of claim to the offices of KCC, not less
      than weekly;

l.    upon completion of the docketing process for all claims
      received to date for each case, turn over to the Clerk copies
      of the Claims Registers for the Clerk's review (upon the
      Clerk's request);

m.    monitor the Court's docket for all notices of appearance,
      address changes, claims-related pleadings, and orders filed,
      and make necessary notations on and/or changes to the
      Claims Registers;

n.    assist in the dissemination of information to the public and
      respond to requests for administrative information
      regarding these chapter 11 cases, as directed by the Debtors
      and/or the Court, including through the use of a case
      website and/or call center;

o.    if the case is converted to chapter 7, contact the Clerk's
      Office within three (3) days of the notice to KCC of entry
      of the order converting the case;

p.      thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC and terminating KCC's services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

q.      within seven (7) days of notice to KCC of the entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the cases; and

r.      at the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064, or (ii) any other location requested by the Clerk's office.

8.      The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC. KCC shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

9.      KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk's office or as otherwise directed by the Court.

## KCC'S QUALIFICATIONS

10.      KCC specializes in providing comprehensive chapter 11 administrative services, including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases. Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all other parties in interest. Further, KCC has experience working with, and will continue to work with, the Clerk to ensure that the services

01:17632699.2

provided conform to all of the Court's procedures, the Local Rules, and the provisions of any orders entered by the Court.  Accordingly, the Debtors' estates and their creditors will benefit from KCC's retention because KCC has developed efficient and cost-effective methods in this area of expertise.

11.    KCC has substantial experience in matters of this size and complexity, and has acted as the official claims and noticing agent in many large bankruptcy cases filed in this district.  See, e.g., In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 27, 2014); In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns, Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); In re Otelco Inc., No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); In re Ormet Corp., No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).

## COMPENSATION AND REPRESENTATION OF DISINTERESTEDNESS

12.    The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), counsel for the Debtors, counsel for the Debtors' pre-petition and post-petition lenders, counsel for any official committee, and any party in interest who specifically requests service of the monthly

01:17632699.2

7

invoices. If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

13. Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $40,000. Although certain expenses and fees may have been incurred but not yet applied to the retainer, such amounts, if any, would be less than the balance of the retainer as of the Petition Date. KCC seeks to hold such retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

14. In connection with its retention as the claims and noticing agent, KCC represents in the Gershbein Declaration, among other things, that:

   a.   KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

   b.   by accepting employment in these chapter 11 cases, KCC waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

   c.   in its capacity as claims and noticing agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and

   d.   it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

15. To the extent that there is any inconsistency between this Application, the proposed order, and the Services Agreement, the proposed order shall govern.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

16.     The Debtors represent that this Application complies with the Claims Agent Protocol and conforms to the standard application pursuant to 28 U.S.C. § 156(c) used in this district.

## INDEMNIFICATION

17.     As part of the overall compensation payable to KCC under the terms of the Services Agreement, the Debtors have agreed to certain indemnification and contribution obligations as set forth in the Services Agreement, to the extent permitted by applicable law and as modified in the Proposed Order.

18.     The terms of the Services Agreement and indemnification provisions included therein were negotiated at arms' length between the Debtors and KCC, and the Debtors respectfully submit that these provisions of the Services Agreement are reasonable and in the best interests of the Debtors, their estates, and their creditors.  Moreover, consistent with the practice in this jurisdiction, the Debtors requested, and KCC has agreed, that the Court approve the indemnification provisions reflected in the Services Agreement subject to the modifications set forth in the Proposed Order.  The Debtors believe that the proposed modifications to the indemnification provisions of the Services Agreement are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

## BASIS FOR RELIEF

19.     This Application is made pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Local Rule 2002-1(f), and the Claims Agent Protocol for an order appointing KCC as the claims and noticing agent for the Debtors in these chapter 11 cases so that KCC may assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these chapter 11 cases.

01:17632699.2

20.     Section 156(c) of title 28 of the United States Code, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

21.     Section 105(a) of the Bankruptcy Code, in relevant part, provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

22.     Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed in the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [claims and noticing services].

23.     In accordance with the Claims Agent Protocol, the Debtors solicited, reviewed, and compared engagement proposals from three court-approved claims and noticing agents, including KCC, to ensure selection through a competitive process. The Debtors submit, based on the engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's high quality of services and substantial expertise. The terms of KCC's

retention are set forth in the Services Agreement; *provided*, *however*, that, by this Application, KCC is seeking approval solely of the terms and provisions of the Services Agreement as set forth in this Application and the Proposed Order.

24.     The Debtors anticipate that thousands of entities will be noticed during the course of these chapter 11 cases.  In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that KCC's appointment as the claims and noticing agent is both necessary and in the best interests of the Debtors' estates and their creditors because the Debtors and the Clerk will be relieved of the burdens associated with the Claims and Noticing Services.  Accordingly, the Debtors will be able to devote their full attention and resources to their chapter 11 process.

**RELIEF AS OF THE PETITION DATE IS APPROPRIATE**

25.     Pursuant to the Debtors' request, KCC has acted as the claims and noticing agent since the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that KCC may be compensated for its services prior to entry of an order approving KCC's retention.  The Debtors believe that no party in interest will be prejudiced by granting KCC's employment as of the Petition Date, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period.  See generally Del. Bankr. L.R. 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

**NOTICE**

26.     Notice of this Application has been provided to:  (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; and (v) counsel to the

Debtors' pre-petition and post-petition lenders.  Notice of this Application and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

27.    The Debtors have not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  September 8, 2015                     Haggen Holdings, LLC, *et al.*


*/s/ Blake Barnett*
Blake Barnett
Chief Financial Officer

# **EXHIBIT A**

## **Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | Case No. 15-11874 (_____) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. _____** |

## ORDER, PURSUANT TO 28 U.S.C. § 156(c), APPROVING THE RETENTION AND APPOINTMENT OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Upon consideration of the application (the "**Application**")[2] of Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors in possession (collectively, the "**Debtors**") for the entry of an order, pursuant to 28 U.S.C. § 156(c), approving the Services Agreement and the Debtors' retention and employment of KCC as claims and noticing agent for the Debtors in these chapter 11 cases, effective as of the Petition Date; and upon consideration of the Application and all pleadings related thereto, including the Gershbein Declaration and the First Day Declaration; and due and proper notice of the Application having been given; and it appearing that no other or further notice of the Application is required; and it appearing that the Court has jurisdiction to consider the Application in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Application and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Application is granted as set forth herein.

2.      Notwithstanding the terms of the Services Agreement, attached hereto as Exhibit 1, the Application is approved solely as set forth in this Order.

3.      The Debtors are authorized to retain KCC effective as of the Petition Date, under the terms of the Services Agreement, and KCC is authorized and directed to perform the Claims and Noticing Services as described in the Application.

4.      KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases, if any, and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      KCC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      KCC is authorized to take such other action to comply with all duties set forth in the Application.

7.      The Debtors are authorized to compensate KCC in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

01:17632699.2

8.      KCC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for the Debtors' pre-petition and post-petition lenders, counsel for any official committee, and any party in interest who specifically requests service of the monthly invoices.

9.      If any dispute arises relating to the Services Agreement or KCC's monthly invoices, the parties shall meet and confer in an attempt to resolve such dispute, and the parties may seek resolution of the matter from this Court if resolution is not achieved.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, KCC's fees and expenses under this Order shall be an administrative expense of the Debtors' estates.

11.     KCC may apply its retainer to all prepetition invoices, and thereafter, KCC may hold its retainer under the Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

12.     The Debtors shall indemnify KCC under the terms of the Services Agreement; *provided that* KCC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court.  Notwithstanding any provision in the Services Agreement to the contrary, the liability of KCC shall not be limited to the total amount of fees billed or received by KCC.

13.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is:  (a) judicially determined (the determination having

become final) to have arisen from KCC's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

14.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing these cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of defense costs, KCC must file an application therefor in this Court, and the Debtors may not pay any such amounts to KCC before, after notice and a hearing, the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.  All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution, or reimbursement.

15.     The portion of paragraph II.E of the Services Agreement addressing late charges shall be null, void, and of no further force and effect for postpetition services rendered by KCC.

16.     Article VIII of the Services Agreement shall be of no force and effect absent further order of this Court.

17.     In the event KCC is unable to provide the services set out in this Order, KCC will immediately notify the Clerk and Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

18.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by KCC but is not specifically authorized by this Order.

19.     KCC shall not cease providing claims processing services during any of these chapter 11 cases for any reason, including nonpayment, without an order of this Court.

20.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, this Order shall govern.

21.     Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors and KCC are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

01:17632699.2

24.     Notwithstanding any term in the Services Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    September _____, 2015
          Wilmington, Delaware

_____

United States Bankruptcy Judge

**EXHIBIT 1**

**Services Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 27th day of August, 2015, between Haggen, Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.      PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.  KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.      The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order").  The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC.  If any Company chapter 11



# KCC AGREEMENT FOR SERVICES

case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $_____ (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.     NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



# KCC AGREEMENT FOR SERVICES

**VI.    SUSPENSION OF SERVICE AND TERMINATION**

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

**VII.    SYSTEM IMPROVEMENTS**

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



# KCC AGREEMENT FOR SERVICES

X.      FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.     INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC          Bush Strout & Kornfeld, LLP
2335 Alaska Ave.                         601 Union St., Suite 5000
El Segundo, CA  90245                    Seattle, WA 98101
Attn:  Drake D. Foster                   Attn: Aimee S. Willig
Tel: (310) 823-9000                      Tel: (206) 521-3838
Fax: (310) 823-9133                      Fax: (206) 292-2104
E-Mail: dfoster@kccllc.com               Email: awillig@bskd.com

                                         Attn: Paula Sutton
                                         Tel: (206) 292-2110
                                         Email: psutton@bskd.com

                                         Attn: Arthur Shwab
                                         Email: ashwab@bskd.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.



# KCC AGREEMENT FOR SERVICES

agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVIII.  ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

_____          DATE: _____

BY:

TITLE: CFO

Company

_____          DATE: _____

BY:

TITLE:



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: _ALBERT H KASS_    DATE: _8/27/15_
TITLE: _EVP, Corporate Restructuring_


Company


BY: _____    DATE: _____
TITLE: _____

8



**KCC CORPORATE RESTRUCTURING
FEE STRUCTURE**

## Consulting Services & Rates[1]

| Position | Discounted Hourly Rate |
|---|---|
| Executive Vice President | Waived |
| Director/Senior Managing Consultant | $170 |
| Consultant/Senior Consultant | $70-$160 |
| Project Specialist | $50-$100 |
| Technology/Programming Consultant | $35-$70 |
| Clerical | $25-$50 |
| Weekend, holidays and overtime | Waived |

*KCC will waive all hourly fees for Rob Jordan, Senior Director, for the duration of the engagement.

## Printing Services

| | |
|---|---|
| Printing and photocopies | $0.09 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |

## Noticing Services[2]

| | |
|---|---|
| Electronic noticing (email) | Waived[3] |
| Electronic noticing (domestic facsimile) | $0.08 per page |
| Claims Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper/Legal notice publishing | Quote prior to publishing |

## Claims Administration & Management Expenses

| | |
|---|---|
| Database and System Access (unlimited users) | Waived |
| Custom client reports | Waived |
| License fee and data storage | $0.10 per creditor per month |
| Case-specific public website hosting | Waived |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] Expenses shall be consistent with the general practice procedures authorized in the Western District of Washington.

[3] A set-up fee for email services larger than 500 parties may apply. This set-up fee varies depending on the total number of parties.



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

| KCC eServices | |
|---|---|
| Online claims filing (ePOC) | Waived |

| KCC CaseView | |
|---|---|
| Access to KCC CaseView | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

| Document Management/Imaging | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.12 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

| Call Center Support Services | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

| Disbursements | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |

| Solicitation Services | |
|---|---|
| Set-up, tabulation and vote verification | Applicable consulting fees only |
| Printing and mailing ballots | Subject to above unit pricing for mailing and noticing |

**<u>EXHIBIT B</u>**

**Gershbein Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) | Case No. 15-11874 (____) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |

**DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER, PURSUANT TO**
**28 U.S.C. § 156(c), APPROVING THE RETENTION AND**
**APPOINTMENT OF KURTZMAN CARSON CONSULTANTS LLC**
**AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS,**
**EFFECTIVE AS OF THE PETITION DATE**

I, Evan Gershbein, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.      I am the Senior Vice President of Corporate Restructuring Services at Kurtzman Carson Consultants LLC ("**KCC**"), whose offices are located at 2335 Alaska Avenue, El Segundo, California 90245.

2.      I am authorized to submit this declaration (this "**Declaration**") in support of the *Debtors' Application for Entry of an Order, Pursuant to 28 U.S.C. § 156(c), Approving the Retention and Appointment of Kurtzman Carson Consultants LLC as the Claims and Noticing Agent for the Debtors, Effective as of the Petition Date* (the "**Application**"),[2] pursuant to the terms and conditions set forth in the Services Agreement, a copy of which is annexed as Exhibit 1 to the Proposed Order.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

## KCC'S QUALIFICATIONS

3.      KCC specializes in providing comprehensive chapter 11 administrative services, including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all other parties in interest.  Further, KCC has experience working with, and will continue to work with, the Clerk's office to ensure that the services provided conform with all of the Court's procedures, the Local Rules, and the provisions of any orders entered by the Court.

4.      The Debtors' estates and their creditors will benefit from KCC's retention because KCC has developed efficient and cost-effective methods in this area of expertise.  KCC is fully equipped to handle the volume of mailing involved in properly sending the required notices to and processing the claims of creditors in these chapter 11 cases.  KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.

5.      KCC has substantial experience in matters of this size and complexity, and has acted as the official claims and noticing agent in many large bankruptcy cases filed in this district.  See, e.g., In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 27, 2014); In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns, Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041 (BLS) (Bankr. D. Del.

Apr. 24, 2013); <u>In re Otelco Inc.</u>, No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); <u>In re</u>

<u>Ormet Corp.</u>, No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).

<b><u>SERVICES PROVIDED</u></b>

6.      As agent and custodian of the Court records pursuant to section 156(c) of

title 28 of the United States Code, KCC will perform, at the request of the Clerk's office, the

Claims and Noticing Services set forth in the Application.  In addition, at the Debtors' request,

KCC will perform such other noticing, claims, balloting, technical, and support services

specified in the Application.

7.      The Services Agreement sets forth the terms and conditions by which

KCC will render services to the Debtors during these chapter 11 cases.  The proposed terms and

conditions of KCC's engagement as set forth in the Services Agreement are consistent with, and

typical of, other claims and noticing agent engagements in chapter 11 cases approved in this and

other districts.

8.      The Claims Registers shall be opened to the public for examination

without charge during regular business hours and on a case-specific website maintained by KCC.

9.      KCC will follow the notice and claim procedures that conform to the

guidelines promulgated by the Clerk's office or as otherwise directed by the Court.

<b><u>PROFESSIONAL COMPENSATION</u></b>

10.      Subject to the Court's approval, the Debtors have agreed to compensate

KCC for professional services rendered in connection with these chapter 11 cases pursuant to the

Services Agreement.  KCC believes that the rates for its claims and noticing processing services

are comparable to the rates charged by its competitors for similar services.

11.      KCC respectfully submits that the fees and expenses incurred by KCC are

administrative in nature and should not be subject to the standard fee application procedures for

01:17632699.2

3

professionals.  Specifically, KCC requests authorization to be compensated on a monthly basis (in the ordinary course of business and in accordance with the terms and conditions set forth in the Services Agreement).  KCC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee, and any party in interest who specifically requests service of the monthly invoices.

12.     If any dispute arises relating to the Services Agreement or KCC's monthly invoices, the parties will meet in an attempt to resolve the dispute.  If a resolution is not achieved, the parties will seek resolution of the matter from the Court.

13.     Before the Petition Date, KCC received a retainer from the Debtors in the amount of $40,000 to be applied in satisfaction of obligations incurred pursuant to the Services Agreement.  Although certain expenses and fees may have been incurred but not yet applied to the retainer, such amounts, if any, would be less than the balance of the retainer as of the Petition Date.  KCC seeks to hold such retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

## DISINTERESTEDNESS

14.     KCC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that KCC and its professional personnel:

a.      are not creditors, equity security holders, or insiders of the Debtors;

b.      are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

c.      do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

01:17632699.2

4

<u>See</u> 11 U.S.C. § 101(14).

15.　　Further, KCC represents that:

a.　　it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as claims and noticing agent;

b.　　by accepting employment in these chapter 11 cases, KCC waives any right to receive compensation from the United States government in its capacity as claims and noticing agent;

c.　　in its capacity as claims and noticing agent, KCC will not be an agent of the United States and will not act on behalf of the United States; and

d.　　KCC will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these chapter 11 cases.

16.　　In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "**Potential Parties in Interest**") in these cases.  The list of Potential Parties in Interest is attached hereto as <u>Exhibit I</u>.  The results of the conflict check were compiled and reviewed by employees of KCC under my supervision.

17.　　To the best of my knowledge, neither KCC nor any of its personnel have any relationship with the Debtors that would impair KCC's ability to serve as claims and noticing agent.  The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors.  KCC has not and will not represent the separate interests of any such creditor in these cases.  Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

01:17632699.2

5

18.     KCC   is   an   indirect   subsidiary   of   Computershare   Limited ("**Computershare**").  Computershare is a financial services and technologies provider for the global securities industry.  Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estate or any class of creditors or equity security holders.

19.     KCC may also have relationships with other professionals to be retained by the Debtors.

20.     To the best of my knowledge and except as disclosed herein, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as would be required by section 327(a) of the Bankruptcy Code.  KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

## INDEMNIFICATION

21.     As part of the overall compensation payable to KCC under the terms of the Services Agreement, KCC is entitled to certain indemnification obligations, which are described in detail in the Services Agreement.  Specifically, the Services Agreement provides that the Debtors will indemnify and hold harmless KCC, its subcontractors, and their respective personnel under certain circumstances specified in the Services Agreement.  KCC has, however, agreed to the modifications described in the Application and provided for in the proposed order attached as Exhibit A to the Application.

22.     The terms of the Services Agreement and indemnification provisions were negotiated  between  KCC  and  the  Debtors  at  arm's  length,  and  I  believe  that  these

indemnification provisions, the Debtors' proposed modifications thereto, and the Services

Agreement are reasonable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge, information and belief.

Dated: September 8, 2015

By:  */s/ Evan Gershbein*
        Evan Gershbein
        Senior Vice President, Corporate Restructuring Services
        Kurtzman Carson Consultants, LLC

01:17632699.2

# EXHIBIT I

**(Potential Parties in Interest)**

**<u>Debtor & Affiliates</u>**
Haggen Holdings LLC
Haggen Opco North LLC
Haggen Opco South LLC
Haggen Acquisition LLC
Haggen Operations Holdings LLC
Haggen Inc.

**<u>Directors/Officers</u>**
William M. Shaner
Blake Barnett
Derrick W. Anderson
John D. Clougher
John Caple
Cecilio Rodriquez
Michael Niegsch

**<u>Known Affiliates</u>**
HHI Corp.
Comvest Haggen Holdings III, LLC
Comvest Haggen Holdings IV, LLC
Haggen Holdings, LLC
Haggen Operations Holdings, LLC
Haggen Property Holdings, LLC
Haggen Property Holdings II, LLC
Haggen Property Holdings III, LLC
Haggen Fuel Holdings, LLC
Haggen OpCo South, LLC
Haggen OpCo North, LLC
Haggen Acquisition, LLC
Haggen Property South, LLC
Haggen Property North, LLC
Haggen, Inc
Haggen, SLB
Comvest Investment Partners III, L.P.
Comvest Investment Partners IV, L.P.
Comvest Investment Partners IV-A, L.P.

**<u>Bankruptcy Professionals</u>**
Stroock & Stroock & Lavan LLP
Bush Strout & Kornfeld
FTI
Alvarez & Marsal
Young Conaway Stargatt & Taylor, LLP
Kurtzman Carson Consultants, LLC

**5% or More Equity Holders**
Comvest Investment Partners III, L.P.
Comvest Investment Partners IV, L.P.
Comvest Investment Partners IV-A, L.P.
HHI Corp.
Comvest Haggen Holdings III, LLC
Comvest Haggen Holdings IV, LLC
Management Incentive Equity
Haggen Holdings, LLC
Haggen Operations Holdings, LLC
Haggen Property Holdings, LLC
Haggen Property Holdings II, LLC
Haggen Property Holdings III, LLC
Haggen Fuel Holdings, LLC
Haggen OpCo South, LLC
Haggen OpCo North, LLC
Haggen Acquisition, LLC
Haggen Property South, LLC
Haggen Property North, LLC
Haggen, Inc
Haggen, SLB


**Bankruptcy Judges**
Brendan L. Shannon
Kevin J. Carey
Kevin Gross
Laurie Selber Silverstein
Christopher S. Sontchi
Mary F. Walrath

**U.S. Trustee Office**
 Andrew R. Vara
Benjamin Hackman
Christine Green
David Buchbinder
Diane Giordano
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
James R. O'Malley
Jane Leamy
Jeffrey Heck
Juliet Sarkessian
Karen Starr
Lauren Attix

Linda Casey
Mark Kenney
Michael Panacio
Michael West
Natalie Cox
Ramona Vinson
Richard Schepacarter
Shakima L. Dortch
T. Patrick Tinker
Tiiara Patton
Timothy J. Fox, Jr.
Tony Murray


**Banks/Lender/UCC Lien Parties/Administrative Agents**
PNC Bank, National Association
JPMorgan Chase Bank, N.A.
KeyBank, N.A.
U.S. Bank National Association
CIT Finance LLC
Signature Bank
Unified Grocers, Inc
Nestle Dreyer'S Ice Cream Company
Hewlett-Packard Financial Services Company
Wells Fargo Financial Leasing, Inc.
Harris N.A.
American Greetings Corporation
Papyrus-Recycled Greetings, Inc
American Bank Note Company, As Agent For The Unites States Postal Service

**Bondholders – Indentured Trustees**
Nevada Department of Taxation
San Diego Gas & Electric
Southern California Edison
City of Tacoma Public Utilities
Southern California Gas Company
Pacific Gas and Electric Company
Southwest Gas Corporation
City of Scottsdale, AZ
UNS ELECTRIC, INC.
City of Boulder City
Tucson Electric Power Company
State of Washington, Dept. of Labor & Industries
Washington Department of Licensing
APS (Arizona)
City of Lompoc
UNS Gas, Inc

Springfield Utility Board
NV Energy
Los Angeles Dept of Water & Power

**Franchisees/Subleases**
Starbucks Corporation
J & M Distribution
Cardtronics USA, Inc.
Peoples Bank
Haggen, Inc.
Top Bean, Inc.
Wells Fargo Bank, NA
Outerwall Inc.
Pacific Convenience & Fuels, LLC
Convenience Retailers, LLC
Brumer Law Group, P.C.
Advanced Fresh Concepts Franchise Corp.
Haggen Opco North, LLC
U.S. Bank National Association
U.S. Bank National Association
Tullock, Brenda
Rimmer, Joel
Rimmer Family Enterprises, Inc.
Haggen Opco South, LLC
Laguna Beach Resorts LLC
Wescom Credit Union
Los Angeles SMSA Limited Partnership
New Cingular Wireless PCS, LLC
North County Farmers' Market Association
New Albertson's, Inc.
Compass Bank
Reading Tree Inc.
The Vons Companies, Inc.
Palomar Health
Safeway Inc.
Frost Brown Todd LLC
Cardivan, LLC
Department of Motor Vehicles
Market Gaming, LLC
Alaska USA Federal Credit Union
The Woods Coffee, Inc.
The Woods Coffee
JPMorgan Chase Bank, National Association
Eyeco Optometry, P.S.
ZAW Food & Beverage WA LLC
Bank of America, National Association

Haggen, Inc.
The Shred Stop, LLC
Edwin Stickle Group, Inc.
Mercurys Madness Inc.
Cascade Bank
Haggen Inc.

**<u>Landlords</u>**
Agra Five Cities, LLC
Allen, John Lawrence
Alo, Andrea
Alo, Princess
Antone Corp.
Bank of the West
Bates, Ashlee
Benis, Christopher T.
Berger, Esther S.
Berger, Robert  E.
Berke Enterprises, Ltd.
Bertholf, Rick
Bethel GARP, LLC
BGN Fremont Square Ltd.
Blankenship, Rudy
Bremerton School District 100-C
BRNK Beaverton, LLC
BRNK Simi Valley, LLC
Brown, Thomas A.
Bryan, Craig
Buckner, Esq., William D.
Cali, Ann Marie
Campbell, Patric
Chang, Esq., Tim T.
Chase, Rodney A.
Christensen, James A.
Close, Greg
Cole AB Tucson AZ, LLC
Cole MT Tucson AZ, LLC
Coleman, Kristy
COMM 2006-FL12 California SPE Limited Partnership
Corriere, Paul
Crown Valley South, L.L.C.
Daper, Glee
Dawson , Arthur
Dee, John
DS Hawk Common Square, LLC
Emmerson, Ronald

F.F. Fund Corp.
FW CA - Rancho San Diego Village, LLC
Gambril, Clayton
Grayson, Barclay
Griffin, Jr., Robert E.
Grim, Esq., Douglas R.
HEC - RNBT LLC
Hogan, Jeff  C.
Huntley, John
Island Ventures, L.L.C.
January Company
Jebbia, Philip Raymond
Kaercher, Marv
Kearl, Jane G
KFT Enterprises, No. 1, L.P.
Kipp, M. Scott
Lakeview Business Center LLC
Leake, Esq., Michael  R.
Levon Investments, LLC
Li, Betty
Li, Ronald
Lieun LLC
Lincoln Center
Luo, Lanying
Madison Lake Forest, Inc.
Mann Investments Inc.
Marquez, Diana
Mayville, Jelita
McCann, Terry
McKinley, Inc.
McKinnie, Michele
Meriwest Credit Union
MGP X Properties, LLC
MGP X Properties, LLC,
MGP X REIT, LLC
Michaelsen, John E.
Mirelis, Heidi A.
Moattar, Esq., Kamran
Moss, Richard F.
Mullay, CPM, Katie
Newbury Oaks Marketplace LLC
Nourafshan, Jack
Ojeda, Martha
Ordemann, Walt
Overbay, John J.
PK I Olympia Square LLC

PKII Milwaukee Marketplace LLC
Prochelo, Michael
Rangel, Ann
Regency Centers Corporation
Regency Centers, L.P.
Regency Magi, LLC
Richards, Dan
ROIC Oregon LLC
ROIC Washington, LLC
Rosenthal, Eric
Rustin, Mary
Sachs, Caroline
Sackos, Gregory A.
Scheman, Diane
Shah, Ben
Shockey, John
Shooshani, Tony
Singh, Ajendra
Smith, E. Morris
Smith, Kristie
Spirit SPE HG 2015-1, LLC
Terramar Retail Centers, LLC
The Benenson Capital Company, LLC
The Irvine Community Development Company LLC
Tompkins, Nicholas
Trails End Marketplace, LLC
Turnpike Center, LLC
Ukkestad, Dan
Van Eyck, Elizabeth
Vestar California XXI, L.L.C.
Weinberg, Esq., Jed L.
Weingarten Nostat, Inc.
Whitaker, Laura
Whitestone Terravita Marketplace, LLC
Wiesenthal, Mark
Williams, Deborah
Williams, Sharon
Wolff, Kara
Wolfson, Esq., Ken
Zurzolo, Esq., Debby


**<u>Litigation</u>**
Albertson's Holdings LLC
Albertson's LLC
Kersey, Noel

Olson, Richard
Osborn, Simeon J.

**<u>Unions</u>**
UFCW  367
UFCW  555
BCTGM 9
BCTGM 114
TEAMSTERS 38
UFCW  21
UFCW  1439
UFCW  770
UFCW  135
UFCW  324
UFCW  8
UFCW  1167
UFCW  1428
UFCW  1442
UFCW  99
UFCW  711
BAKERS 37
BAKERS 31
SEIU 1877