# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 15-11874 (____) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTIONS
105(a), 363 AND 364 OF THE BANKRUPTCY CODE, (I) AUTHORIZING
(A) PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY
COURSE OF BUSINESS IN CONNECTION WITH INSURANCE PROGRAMS,
INCLUDING PAYMENT OF POLICY PREMIUMS AND BROKER FEES, AND
(B) CONTINUATION OF INSURANCE PREMIUM FINANCING PROGRAMS;
AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK
AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this motion (this "**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit C (the "**Proposed Order**"), pursuant to sections 105(a), 363(b) and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), (i) authorizing, but not directing, the Debtors to (a) continue and, to the extent necessary, renew liability, property and other insurance programs and pay policy premiums and broker fees arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business, and (b) continue the Debtors' insurance premium financing programs and renew or enter into new premium financing programs, as necessary, under substantially similar terms, and (ii) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

foregoing.  The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Blake Barnett In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b) and 364 of the Bankruptcy Code.

## BACKGROUND

**A.      General**

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.      The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

5.      Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## B.      Insurance Programs[3]

6.      The Debtors maintain, among others, insurance programs for directors and officers, general liability, property, umbrella, and crime, as described below (collectively, the "**Insurance Programs**"), through several different insurance carriers (each, an "**Insurance Carrier**," and collectively, the "**Insurance Carriers**"), including under the insurance contracts listed on <u>Exhibit A</u> attached hereto.[4]

### i.      D&O Insurance Programs

7.      As is common with a business of this kind, the Debtors maintain insurance coverage for all of their directors and officers that covers, among other things, defense costs, settlements, court awards and pre- and post-judgment interest arising from claims brought by third parties alleging that an insured is liable for an error, misstatement, misleading statement, improper act, omission, neglect or breach of duty (the "**D&O Insurance Program**").  The aggregate annual premium for the D&O Insurance Program is approximately $330,000.  Prior to

---

[3]  The descriptions of the Debtors' Insurance Programs provided herein, including, without limitation, the PFA (as defined below), are intended only as a summary, and the actual terms of such Insurance Programs shall govern in the event of any inconsistency with the descriptions set forth herein.

[4]  In addition to the Insurance Programs discussed herein and the insurance contracts listed on <u>Exhibit A</u> attached hereto, the Debtors maintain insurance policies with respect to the Debtors' workers' compensation program (the "**Workers' Compensation Program**"), at least a portion of which are financed under the PFA.  These policies are described in the *Debtors' Motion for an Order, Pursuant to Sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code, (A) Authorizing (I) Payment of Prepetition Employee Wages, Salaries and Other Compensation; (II) Reimbursement of Prepetition Employee Business Expenses; (III) Contributions to Prepetition Employee Benefit Programs and Continuation of Such Programs in the Ordinary Course; (IV) Payment of Workers' Compensation Obligations; (V) Payments for Which Prepetition Payroll Deductions Were Made; (VI) Payment of All Costs and Expenses Incident to the Foregoing Payments and Contributions; and (VII) Payment to Third Parties of All Amounts Incident to the Foregoing Payments and Contributions and (B) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto* (the "<u>Employee Wage Motion</u>") filed concurrently herewith.  Other than as the Workers' Compensation Program pertains to the PFA, any relief requested with respect to the Workers' Compensation Program is requested in the Employee Wage Motion.

the Petition Date, the D&O Insurance Program was renewed through and including the dates set forth on Exhibit A attached hereto.   With the exception of any premiums under the D&O Insurance Program that have been financed, as set forth more fully below and on Exhibit A attached hereto, there are no outstanding premiums under the D&O Insurance Program as of the Petition Date.

### ii.    Liability, Property, Umbrella, and Crime Insurance Programs

8.    The Debtors maintain commercial general liability insurance that insures for, among other things, employment, fiduciary, premises, automobile, aviation, operational and personal injury liability (the "**Liability Insurance Program**").   The aggregate annual premium for the Liability Insurance Program is approximately $2.2 million, which includes the premium attributable to the Workers' Compensation Program.   Prior to the Petition Date, the insurance policies comprising the Liability Insurance Program were renewed through and including the various dates set forth on Exhibit A attached hereto.   In addition to any premiums under the Liability Insurance Program that have been financed, as set forth more fully below and on Exhibit A attached hereto, the aggregate amount of outstanding premiums under the Liability Insurance Program as of the Petition Date is approximately $100,000 (exclusive of the amount of any outstanding premiums under the Workers' Compensation Program as of the Petition Date).

9.    The Debtors maintain property insurance that insures the Debtors' property for perils such as, but not limited to, fire, earthquake, flood and service interruptions (the "**Property Insurance Program**").   The aggregate annual premium for the Property Insurance Program is approximately $1.6 million.   Prior to the Petition Date, the insurance policies comprising the Property Insurance Program were renewed through and including the dates set forth on Exhibit A attached hereto.   With the exception of any premiums under the

Property Insurance Program that have been financed, as set forth more fully below and on Exhibit A attached hereto, there are no outstanding premiums under the Property Insurance Program as of the Petition Date.

10.     The Debtors maintain certain umbrella insurance policies that insure the Debtors for certain losses in excess of the coverage provided by the Debtors' primary insurance policies (the "**Umbrella Insurance Program**").  The aggregate annual premium for the Umbrella Insurance Program is approximately $370,000.  Prior to the Petition Date, the insurance policies comprising the Umbrella Insurance Program were renewed through and including the dates set forth on Exhibit A attached hereto.  Other than any premiums under the Umbrella Insurance Program that have been financed, as set forth more fully below and on Exhibit A attached hereto, there are no outstanding premiums under the Umbrella Insurance Program as of the Petition Date.

11.     The Debtors maintain crime insurance that insures the Debtors for damages caused by crimes committed against the Debtors, such as employee theft, forgery, and computer fraud (the "**Crime Insurance Program**").  The aggregate annual premium for the Crime Insurance Program is approximately $100,000.  The Crime Insurance Program has been renewed through and including the dates set forth on Exhibit A attached hereto.  With the exception of any premiums under the Crime Insurance Program that have been financed, as set forth more fully below and on Exhibit A attached hereto, there are no outstanding premiums under the Crime Insurance Program as of the Petition Date.

**B.     Financed Programs**

12.     It is not economically advantageous for the Debtors to pay the premiums on each of their Insurance Programs on an annualized basis.  Accordingly, from time to time, in

the ordinary course of their business, the Debtors finance the premiums on certain of the Insurance Programs.  As of the Petition Date, the Debtors were financing the D&O Insurance Program, the Liability Insurance Program, the Property Insurance Program, and the Umbrella Insurance Program, or portions thereof (collectively, the "**Financed Programs**"),[5] pursuant to a premium finance agreement (the "**PFA**") with Flatiron Capital, a copy of which is attached hereto as Exhibit B.  The following is a summary of the significant terms of the PFA:

| Approximate Monthly Payment | Number of Monthly Payments | Commencement Date for Monthly Payments |
| --- | --- | --- |
| $233,000 | 10 | March 12, 2015 |

**C.    Broker Fees**

13.    In connection with the Insurance Programs, the Debtors obtain brokerage services from Willis of New York, Inc. (the "**Broker**").  The Broker assists the Debtors in obtaining comprehensive insurance for the Debtors' operations by, among other things, assisting the Debtors' with the procurement and negotiation of the Insurance Programs and the PFA, and enabling the Debtors to obtain those policies and the PFA on advantageous terms at competitive rates.  Pursuant to a service agreement with the Broker, the Debtors are to pay the Broker a fee of $1.05 million for the Broker's services, which is payable in quarterly installments of $262,500 due on March 12, June 12, September 12, and December 12, 2015 (the "**Broker Fees**").  Prior to the Petition Date, the Debtors made the first and second quarterly payments for the Broker Fees, and anticipate making the third and fourth payments in the ordinary course of business.  To the extent that the such quarterly payments for the Broker Fees or any portion thereof constitute prepetition obligations, the Debtors seek authorization, but not direction, to make such payments in the ordinary course of business.

---

[5] Exhibit A attached hereto identifies which of the Insurance Programs (or portions thereof) are Financed Programs.

## RELIEF REQUESTED

14.     By this Motion, the Debtors request the Court enter the Proposed Order, (i) authorizing, but not directing, the Debtors to (a) continue and, to the extent necessary, renew the Insurance Programs and pay policy premiums and broker fees arising thereunder or in connection therewith, including such prepetition obligations arising in the ordinary course of business, and (b) continue the Financed Programs and enter into new premium financing programs, as necessary, under substantially similar terms, and (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto.

## BASIS FOR RELIEF

**A.     The Court Should Authorize, But Not Direct, the Debtors,
in Their Discretion, to Make Necessary Payments Related to
the Insurance Programs to Maintain Existing Insurance Coverage**

15.     Maintaining the Debtors' insurance coverage under the Insurance Programs is a crucial ordinary-course-of-business transaction.  Authority to pay any prepetition amounts that may be due and owing related to the Insurance Programs—to the extent that the Debtors determine that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment of the coverage, benefits or proceeds provided under the Insurance Programs—is necessary, as the insurance coverage provided under the Insurance Programs is essential for preserving the value of the Debtors' assets and, in most cases, such coverage is required by the various contracts and state and federal laws that govern the Debtors.  See, e.g., 28 U.S.C. § 959(b) (chapter 11 debtor obligated under federal law to operate chapter 11 business according to the laws of the states where business and properties are located).  Further, under the chapter 11 operating guidelines issued by the United States Trustee for Region 3 pursuant to 28 U.S.C. § 586, the Debtors are obligated to maintain during these

chapter 11 cases certain types of insurance coverage, which coverage is provided by certain of the policies included in the Insurance Programs.

16.    In addition, the Debtors may need to renew or replace certain of their Insurance Programs during the pendency of these chapter 11 cases.  The nonpayment of any premiums, deductibles, or related fees under any of the Insurance Programs could result in one or more of the Insurance Carriers increasing future insurance premiums, declining to renew their insurance policies or refusing to enter into new insurance agreements with the Debtors.  If the Insurance Programs lapse without renewal, the Debtors may be exposed to substantial liability for first party property claims, and third party liability claims to the detriment of all parties in interest.

17.    Similarly, the services provided by the Broker are critical to ensuring that the Debtors obtain the necessary insurance coverage on advantageous terms at competitive rates, and the Broker has a significant amount of institutional knowledge regarding the Debtors' insurance needs.  If the Debtors were forced to replace the Broker, the Debtors would necessarily be required to spend time, energy and resources getting a new insurance broker up to speed on the Debtors' insurance needs.

18.    Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court may use its equitable powers under section 105 of the Bankruptcy Code to permit a debtor in possession to pay prepetition claims when payment is necessary to effectuate a debtor's bankruptcy goals and essential to the continued operation of the business.  See Miltenberger v. Logansport. C. & S.W.R. Co., 106 U.S. 286 (1882); In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Just for Feet, Inc., 242 B.R.

821, 825 (D. Del. 1999) (under necessity of payment doctrine prepetition claims may be paid if essential to the continued operation of the business during reorganization); In re Columbia Gas Sys., Inc., 171 B.R. 189, 192 (Bankr. D. Del. 1994) (recognizing that necessity of payment doctrine authorizes payment of prepetition claims when "such payment is essential to the continued operation of the business").

19.      In addition, the Court may authorize the Debtors to pay prepetition premiums to maintain insurance coverage under section 363(b) of the Bankruptcy Code.  In particular, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Thus, under this section, a court may authorize a debtor to pay certain prepetition claims.  See Ionosphere Clubs, 98 B.R. 174, 175-77 (S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); In re UAL Corp., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction); In re Jillian's Entm't Holdings, Inc., Case No. 04-33192 (DTS) (Bankr. W.D. Ky. June 22, 2004).

20.      Furthermore, reflecting the recognition that payment of pre-petition claims associated with a debtor's insurance program is critical to a debtor's chapter 11 efforts, courts in this District have routinely granted the relief requested herein in other chapter 11 cases.  See, e.g., In re Natrol, Inc., Case No. 14-11446 (BLS) (June 23, 2014); In re Bicent Holdings LLC, Case No. 12-11304 (KG) (Apr. 24, 2012).

**B.      The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Under the PFA and Renew the PFA and/or Enter Into New Premium Financing Agreements In the Ordinary Course of Business**

21.      If the Debtors are unable to continue making payments under the PFA, Flatiron Capital may be permitted to terminate the Financed Programs.  The Debtors would then be required to obtain replacement insurance on an expedited basis and likely at a significantly increased cost.  If the Debtors are required to obtain replacement insurance and to pay a lump sum premium for such insurance in advance, this payment may be the same or greater than what the Debtors currently pay to Flatiron Capital under the PFA.  Even if Flatiron Capital is not permitted to terminate the Financed Programs, any interruption of payments would severely and adversely affect the Debtors' ability to finance premiums for future policies.  Thus, in view of the importance of maintaining the related insurance coverage and preserving their cash flow by financing their insurance premiums, the Debtors believe that it is in the best interest of their estates and creditors for the Court to authorize the Debtors to honor their obligations under the PFA.  Any other alternative would likely require considerable cash expenditures and would be detrimental to the Debtors' chapter 11 efforts.

22.      The PFA grants Flatiron Capital a security interest in the Financed Programs, including all unearned premium, return premium, dividend payments and loss payments thereof.  Security interests created by premium finance arrangements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.), 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.), 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  Therefore, if the Debtors fail to make the required payments under the PFA, Flatiron Capital could seek relief from the

automatic stay, either to cancel the Debtors' Financed Programs in accordance with the terms of the PFA or to seek adequate protection of its investment. See Universal Motor Express, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay). Accordingly, the practical solution from the Debtors' perspective is to continue making the premium financing payments required under the PFA.

23.    In addition, the Court should also authorize the Debtors to renew or enter into new premium finance agreements post-petition in the ordinary course of business.

24.    Section 363(c)(1) of the Bankruptcy Code provides that "the trustee [or a debtor in possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(b)(1) of the Bankruptcy Code provides that, "[t]he trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

25.    The Debtors submit that the renewal of the PFA and/or the execution of new premium finance agreements constitute transactions in the ordinary course of business, within the meaning of section 363(c)(1) of the Bankruptcy Code, that do not require prior bankruptcy court approval.

26.    Neither the Bankruptcy Code nor its legislative history provide a framework for analyzing whether a transaction is in the ordinary course of business. The Third Circuit, however, has developed a two-part inquiry, including a "horizontal dimension" test and a "vertical dimension" test, for determining whether a transaction is in the ordinary course of

business under section 363(c)(1).   See In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir.

1992); see, e.g., In re Nellson Nutraceutical, Inc., 369 B.R. 787, 791 (Bankr. D. Del. May 24,

2007); Braunstein v. McCabe, 571 F. 3d 108, 124-25 (1st Cir. 2009).   The horizontal dimension

test focuses on whether, from an industry wide perspective, the transaction is "of the sort

commonly undertaken by companies in that industry." In re Roth American, Inc., 975 F.2d 202

at 953.   The vertical dimension test (or creditor's expectation test) focuses on the vantage point

of a hypothetical creditor and inquires whether the transaction subjects the creditor to economic

risk of a nature different from those the creditor accepted when it decided to extend credit to the

debtor. Id.

       27.    The Debtors believe that the renewal of the PFA and/or the execution of

new premium finance agreements satisfies the "horizontal dimension" test because maintaining

insurance coverage and entering into related premium financing agreements is a common

industry practice.   Drabkin v. A.I. Credit Corp., 800 F.2d 1153, 1154 (Fed. Cir. 1986) (Such a

premium financing agreement is a "common commercial arrangement.").    The "vertical

dimension" test is also satisfied because the Debtors' maintenance of insurance under premium

finance agreements does not subject the Debtors' creditors to any economic risk, but rather,

serves to protect the Debtors' creditors from economic risk.   Accordingly, the renewal of the

PFA and/or the execution of new premium finance agreements constitute "ordinary course" uses

of estate property under section 363(c)(1) of the Bankruptcy Code.   See In re Roth American,

975 F.2d at 952 n.4 (citing U.S. v. Estate of Deutscher, 115 B.R. 592, 598-99 (M.D. Tenn. 1990),

for the proposition that "trustee's use of fund to . . . reinstate insurance was in ordinary course of

business").

28.    Indeed, the Debtors submit that it may be outside the ordinary course of business for them to fail to renew the PFA or enter into new premium finance agreements to obtain insurance coverage.  See In re Lavigne, 114 F.3d 379, 383-84 (2d Cir. 1994) (cancellation of insurance policy was not in the ordinary course of business).    Nevertheless, out of an abundance of caution, the Debtors have filed this Motion seeking entry of the Proposed Order, to the extent necessary, approving, under section 363 of the Bankruptcy Code, the Debtors' post-petition renewal of the PFA and/or the execution of new premium finance agreements.

29.    The Court may also authorize the Debtors to enter into new premium finance agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.  See 11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies. See generally In re Schwinn Bicycle Co., 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium financing agreements).

30.    Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates.  See, e.g., In re General Growth Properties, Inc., 412 B.R. 122, 125-26 (Bankr. S.D.N.Y.,  May 14, 2009) (granting motion for post-petition financing upon finding that a) "no comparable credit [was] available on more favorable terms"; b) that the debtors needed post-petition financing to "to preserve [their] assets and continue their operations; and c) that the terms and conditions of the DIP Documents had been negotiated in good faith); In re Budget Group, Inc., Case No. 02-12152, 2002 Bankr. LEXIS 1050 (Bankr. D. Del. Aug, 1, 2002) (authorizing funding of acquisition of property on a secured basis where

acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties").  Because a borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, the Court should authorize the Debtors to renew the PFA and/or the execute new premium finance agreements post-petition.

31.     Finally, courts in this District have in other chapter 11 cases have regularly authorized debtors to continue their pre-petition and enter into new post-petition insurance premium financing agreements.  See, e.g., In re Trump Entertainment Resorts, Inc., Case No. 14-12103 (KG) (Sept. 10, 2014); In re Bicent Holdings LLC, Case No. 12-11304 (KG) (Apr. 24, 2012).

**C.    The Court Should Authorize the Banks to Honor and Process the Debtors' Payments Related to the Insurance Programs and the PFA**

32.     The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

**SATISFACTION OF BANKRUPTCY RULE 6003**

33.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), any motion seeking to use property of the estate pursuant to section

363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." As set forth throughout this Motion, any disruption of the Debtors' Insurance Programs, including the Finance Programs and the related PFA, would substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and maximize the value of their estates.

34. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

35. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, any disruption in the Debtors' insurance coverage would be detrimental to the Debtors, their creditors and estates, and would impair the Debtors' ability to optimize their business performance at this critical time as they begin the chapter 11 process.

36. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Order.

## RESERVATION OF RIGHTS

37. Nothing in the Proposed Order or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii)

shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, (iii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against an Insurance Carrier, or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

38.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; and (v) counsel to the Debtors' pre-petition and post-petition lenders. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

39.     The Debtors have not previously sought the relief requested herein from this or any other Court.

*Remainder of this page intentionally left blank*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: September 8, 2015
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*

Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
Ian J. Bambrick (No. 5455)
Ashley E. Jacobs (No. 5635)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (*pro hac vice* pending)
Sayan Bhattacharyya (*pro hac vice* pending)
Matthew G. Garofalo (*pro hac vice* pending)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*PROPOSED COUNSEL TO THE DEBTORS
AND DEBTORS-IN-POSSESSION*

**<u>EXHIBIT A</u>**

**List of Insurance Contracts**

| INSURANCE CARRIER | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | TYPE OF POLICY | POLICY NUMBER | POLICY TERM | FINANCED |
|---|---|---|---|---|---|---|---|---|---|
| AIG Specialty Ins Company | 70 Pine Street | | New York | NY | 10270 | Directors & Officers/Employment Practices Liability/Fiduciary Liability | 01-614-48-77 | 10/03/2014 - 10/03/2016 | No |
| AIG Specialty Ins Company | 70 Pine Street | | New York | NY | 10270 | Network Security/Privacy | 3206661 | 02/12/2015 - 02/12/2016 | Yes |
| Allied World Assurance Company | Park Tower, 15th Floor | Gubelstrasse 24 | Zug | | 6300 | Property | 030943581A | 02/12/2015 - 02/12/2016 | Yes |
| Allied World National Assurance Company | 3424 Peachtree Road NE | | Atlanta | GA | 30326 | Excess | 0306-4555 | 02/12/2015 - 02/12/2016 | Yes |
| Allied World National Assurance Company | 3424 Peachtree Road NE | | Atlanta | GA | 30326 | Pollution Legal Liability | 0309-4354 | 02/12/2015 - 02/12/2016 | No |
| Alterra Excess and Surplus Insurance | 9020 Stony Point Parkway | Suite 325 | Richmond | VA | 23235 | Property | MKLS11XP002872 | 02/12/2015 - 02/12/2016 | Yes |
| American Bankers Insurance Co | 11222 Quail Roost Drive | | Miami | FL | 33157-6596 | Flood | AF50620477 | 04/10/2015 - 04/10/2016 | No |
| American Bankers Insurance Co | 11222 Quail Roost Drive | | Miami | FL | 33157-6596 | Flood | 9718926 | 04/22/2015 - 04/22/2016 | No |
| American Bankers Insurance Co | 11222 Quail Roost Drive | | Miami | FL | 33157-6596 | Flood | 9718977 | 04/22/2015 - 04/22/2016 | No |
| American Bankers Insurance Co | 11222 Quail Roost Drive | | Miami | FL | 33157-6596 | Flood | 87055517052015 | 03/09/2015 - 03/09/2016 | No |
| American Bankers Insurance Co | 11222 Quail Roost Drive | | Miami | FL | 33157-6596 | Flood | 87055553802015 | 04/01/2015 - 04/01/2016 | No |
| Aspen Specialty Insurance Company | 316 North Fifth Street | | Bismark | ND | 58502 | Property | PRAF4UG15 | 02/12/2015 - 02/12/2016 | Yes |
| Chubb Custom Insurance Co | 15 Mountain View Road | | Warren | NJ | 07059 | Property | 4473438300 | 02/02/2015 - 02/12/2016 | Yes |
| Colony Insurance Company | P O Box 469012 | | San Antonio | TX | 78246-9012 | Property | XP262606 | 02/02/2015 - 02/12/2016 | Yes |
| Columbia Casualty Co | 333 South Wabash Avenue | | Chicago | IL | 60604 | Pharmacy Liability | HMA 4032224458-0 | 02/12/2015 - 02/12/2016 | Yes |
| Endurance American Specialty | 750 Third Ave, Floors 2 & 10 | | New York | NY | 10017 | Property | CPN10006455400 | 02/02/2015 - 02/12/2016 | Yes |
| Gemini Ins Co | 475 Steamboat Road | | Greenwich | CT | 06830 | Side A Directors & Officers | 18014856 | 02/12/2015 - 10/03/2015 | Yes |
| General Security Indemnity Company | 199 WATER STREET, SUITE 2100 | | New York | NY | 10038-3526 | Property | T023445101743 | 02/02/2015 - 02/12/2016 | Yes |
| Great American Fidelity Insurance | 301 E. Fourth Street | | Cincinnati | OH | 45202 | Property | CPP461467200 | 02/02/2015 - 02/12/2016 | Yes |
| Greenwich Insurance Co | 87 Greenwich Avenue | | Greenwich | CT | 06830 | General/Products Liabilty | RGE3000708 | 02/12/2015 - 02/12/2016 | No |
| Greenwich Insurance Co | 87 Greenwich Avenue | | Greenwich | CT | 06830 | Liquor Liability (Part Of Gl) | RGE3000708 | 02/12/2015 - 02/12/2016 | No |
| Greenwich Insurance Co | 87 Greenwich Avenue | | Greenwich | CT | 06830 | Automobile | RAG9437737 | 02/12/2015 - 02/12/2016 | Yes |
| Houston Casualty Co | 13403 Northwest Freeway | | Houston | TX | 77040 | Excess Directors & Officers | 14-MG-15-A12278 | 02/12/2015 - 10/03/2015 | Yes |
| Hudson Specialty Insurance Company | 851 Napa Valley Corporate Way, Suite N | | Napa | CA | 94558 | Property | HCS101110 | 02/02/2015 - 02/12/2016 | Yes |
| Hudson Specialty Insurance Company | 851 Napa Valley Corporate Way, Suite N | | Napa | CA | 94558 | Property | HCS101111 | 02/02/2015 - 02/12/2016 | Yes |
| Landmark American Insurance Company | 945 East Paces Ferry Road | Suite 1800 | Atlanta | GA | 30326 | Property | LHD391029 | 02/02/2015 - 02/12/2016 | Yes |
| Liberty Ins Underwriters Inc | 55 Water Street | 18th Floor | New York | NY | 10041-0034 | Excess Directors & Officers | DONYAA318D001 | 02/12/2015 - 10/03/2015 | Yes |
| Lloyds of London | 25 W 53rd | St #14 | New York | NY | 10019 | Network Security/Privacy | W17CDB150101 | 02/12/2015 - 02/12/2016 | Yes |

| INSURANCE CARRIER | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | TYPE OF POLICY | POLICY NUMBER | POLICY TERM | FINANCED |
|---|---|---|---|---|---|---|---|---|---|
| National Union Fire Ins Co of Pittsburgh | 175 Water Street | 18th Floor | New York | NY | 10038 | Crime | 01-593-23-77 | 10/03/2014 - 10/03/2016 | No |
| Safety National Casualty Corp | 1832 Schuetz Road | | St Louis | MO | 63146 | Workers Compensation Bond | SIB2995WA | 07/01/2014 - 07/01/2015 | No |
| Safety National Casualty Corporation | 1832 Schuetz Road | | St Louis | MO | 63146 | Excess Workers Compensation  (State Of WA) | AGC4052642 | 02/12/2015 - 02/12/2016 | Yes |
| Scottsdale Insurance Company | 8877 N. Gainey Center Drive | | Scottsdale | AZ | 85258 | Property | AJS0000173 | 02/02/2015 - 02/12/2016 | Yes |
| Sompo Japan Insurance Company | 777 Third Avenue | 24th Fl | New York | NY | 10017-1414 | Property | PEP48175A0 | 02/02/2015 - 02/12/2016 | Yes |
| Starr Indemnity & Liab Co | 399 Park Ave. | 8th Floor | New York | NY | 10022 | Excess Directors & Officers | SISIXFL21208615 | 02/12/2015 - 10/03/2015 | Yes |
| Starr Surplus Lines Insurance Company | 399 Park Ave. | 8th Floor | New York | NY | 10022 | Property | SLSTPTY10713915 | 02/02/2015 - 02/12/2016 | Yes |
| Westchester Fire Ins Co | 436 Walnut Street | | Philadelphia | PA | 19106 | Excess Directors & Officers/Employment Practices Liability | G27559980 001 | 02/12/2015 - 10/03/2015 | Yes |
| Wright National  Flood | 801 94th Ave North, Ste 110 | | St. Petersburg | FL | 33702 | Flood | 461150684675 | 06/04/2014 - 06/04/2016 | No |
| Wright National  Flood | 801 94th Ave North, Ste 110 | | St. Petersburg | FL | 33702 | Flood | 46115064246004 | 02/01/2015 - 02/01/2016 | No |
| XI Insurance America, Inc | 2727 Turtle Creek Blvd | | Dallas | TX | 75219 | Workers Compensation (All States Except WA) | RWD3000708 | 02/12/2015 - 10/03/2015 | No |
| XI Insurance America, Inc | 2727 Turtle Creek Blvd | | Dallas | TX | 75219 | Umbrella | US00070232LI15A | 02/12/2015 - 10/03/2015 | Yes |
| XI Insurance America, Inc | 2727 Turtle Creek Blvd | | Dallas | TX | 75219 | Equipment Breakdown | US00070229PR15A | 02/12/2015 - 10/03/2015 | Yes |

**<u>EXHIBIT B</u>**

**PFA**



PREMIUM FINANCE AGREEMENT

SECURITY AGREEMENT, DISCLOSURE STATEMENT AND LIMITED POWER OF ATTORNEY

Flatiron Capital
1700 Lincoln St. 12th Floor
Denver, CO 80203

"LENDER"

SEND PAYMENTS TO:
FLATIRON CAPITAL
PO Box 712195
DENVER, CO 80271-2195

CHECK APPROPRIATE BOX(S)
☑ COMMERCIAL
☑ RENEWAL

PHONE: 800-800-2767   FAX: 800-813-8428

QUOTE NUMBER  468515

| PRODUCER (Insurance Agent/Broker) NAME, ADDRESS and PHONE NUMBER | BORROWER (Insured) NAME, ADDRESS, and PHONE NUMBER | BORROWER in Bankruptcy Chapter |
|---|---|---|
| Willis of New York (NEWY)<br>One World Financial Center<br>200 Liberty Street 6th Floor<br>New York, NY 10281<br><br>212-915-8888<br>AGENT NO. 315670 | Haggen Holdings LLC<br>Haggen Inc & Haggen Operations Holdings LLC<br><br>PO Box 9704<br>Bellingham, WA 98227<br>360-733-8720 | 7  11  13<br><br>BORROWER SSN/FEIN<br><br>XXXXX4583 |

## 1. SCHEDULE OF FINANCED POLICIES

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1)<br>FIN TXS/FEES (2)<br>NON-FIN TXS/FEES (3) |
|---|---|---|---|---|---|---|---|
| 96   Columbia Casualty Company (CNA) | PROF | HMA 4032224458 | 2/12/2015 | 25% | | 12 | $35,580.00<br>$747.18<br>$0.00 |

Additional Policies Are Listed On The Attached Schedule of Policies

## 2. CERTAIN FINANCIAL TERMS

| A | -B | =C | +D | +E | =F : (C+D+E) | |
|---|---|---|---|---|---|---|
| TOTAL PREMIUMS AND RELATED FEES | DOWN PAYMENT REQUIRED FROM BORROWER | AMOUNT FINANCED Amount of credit provided to you or on your behalf. | STATE SPECIFIED TAXES OR FEES | TOTAL FINANCE CHARGES Dollar amount the credit will cost you. | TOTAL OF PAYMENTS Amount paid after making all scheduled payments. | ANNUAL PERCENTAGE RATE Cost of your credit as a yearly rate. |
| $2,707,041.03 | $406,056.15 | $2,300,984.88 | $0.00 | $31,650.82 | $2,332,635.70 | 2.99% |

## 3. PAYMENT SCHEDULE

| NUMBER OF PAYMENTS | PAYMENT FREQUENCY | | DAY OF MONTH PAYMENTS ARE DUE | AMOUNT OF EACH PAYMENT | FIRST PAYMENT DUE DATE |
|---|---|---|---|---|---|
| | Monthly | Quarterly | | | |
| 10 | Monthly | | 12th | $233,263.57 | 3/12/2015 |

## 4. REQUIRED DISCLOSURES

**SECURITY INTEREST:** Borrower hereby grants Lender a security interest in all insurance policies listed above and all unearned premium, return premium, dividend payments, and loss payments thereof.

**LATE CHARGE:** If a payment is not made by the 5th day past due (or such later date as required by law), then Borrower will be charged a late charge (SEE SECTION 10 "LATE CHARGE" ON THE ADDITIONAL PROVISIONS PAGE OF THIS AGREEMENT FOR STATE SPECIFIC INFORMATION).

**PREPAYMENT:** If Borrower pays off early, Borrower will not have to pay a penalty and may be entitled to a refund of part of the finance charge.

**CONTRACT REFERENCE:** See the rest of this Agreement below, and ADDITIONAL PROVISIONS page, for additional information about nonpayment, default, required prepayment in full before the scheduled date, prepayment refunds and penalties.

## 5. PAYMENT PROVISIONS: Borrower promises to pay to Lender at Lender's address above, or such other place as Lender may designate, the Total of Payments shown above in consecutive periodic payments in the number, amounts, and at the dates disclosed in the above "Payment Schedule" until loan is fully paid. Any payments made by Borrower after default shall be credited to the then outstanding balance due under this Agreement. INSURED agrees that all installment payments due under this Agreement must be made directly to LENDER and payment made by INSURED to any other person, firm, agency or corporation do not constitute payment unless and until received by LENDER.

**PREMIUM FINANCE NOTICE TO BORROWER / INSURED: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. (3) KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS. (4) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGES.**

When signed below by you, or on your behalf, you (Borrower) acknowledge receipt of a copy of this Agreement, acknowledge having full power and authority to enter into this Agreement and sign on behalf of all entities named above as Borrowers, and that you agree to the provisions printed above and on the ADDITIONAL PROVISIONS section of this Agreement and that both the front and any subsequent pages constitute the Agreement between Borrower and Lender. Borrower hereby requests Lender to pay the financed portion of its insurance policy premiums listed above, on its behalf.

| 3/9/15 | (signature) | Blake Barnett - CFO |
|---|---|---|
| DATE | SIGNATURE OF BORROWER/INSURED(S) OR DULY AUTHORIZED AGENT OF BORROWER(S) | PRINT NAME & TITLE |

**PRODUCER REPRESENTATION**

THE UNDERSIGNED REPRESENTS AND WARRANTS: By signing or submitting this Premium Finance Agreement, the Producer makes the Producer's Representations and Warranties printed on the ADDITIONAL PROVISIONS page of this Agreement and agrees to be bound to the terms of this Agreement. Producer also agrees that there has been no assignment of any interest in the insurance policy(ies) except for the assignment to Lender and Lender may assign this Agreement, including Producer's Representations and Warranties under its normal course of business.

| 3/9/15 | (signature) | Ken Hicks - SVP |
|---|---|---|
| DATE | SIGNATURE OF PRODUCER (AGENT/BROKER) | PRINT NAME & TITLE |

MStrite JAN 11 v6

## SCHEDULE OF POLICIES

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1) FIN TXS/FEES (2) NON-FIN TXS/FEES (3) |
|---|---|---|---|---|---|---|---|---|
| 1919 | Xl Insurance America Inc | UMB | US00070232LI15A | 2/12/2015 | 35% | | 12 | $300,000.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 306391 | Allied World Assurance Company (I | UMBE | 03064555 | 2/12/2015 | 35% | | 12 | $68,000.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 1260 | Safety National Casualty Corp | WC | AGC4052642 | 2/12/2015 | 0% | ✓ | 12 | $252,322.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 1919 | Xl Insurance America Inc | AUTO | RWD3000708 | 2/12/2015 | 0% | ✓ | 12 | $26,162.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 1265 | Lloyds of London -USE THIS FOR . | CL | W17CDB150101 | 2/12/2015 | 30% | ✓ | 12 | $250,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $5,250.00 |
| | | | | | | | | $0.00 |
| 1670 | AIG Specialty Insurance Company ( | CL | 32006661 | 2/12/2015 | 25% | ✓ | 12 | $175,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $3,675.00 |
| | | | | | | | | $0.00 |
| 99 | Westchester Fire Insurance Company | DO | G27559980001 | 2/12/2015 | 25% | | 8 | $31,900.00 |
| | | | | | | | | $669.90 |
| | | | | | | | | $0.00 |
| 310948 | Starr Indemnity and Liability Compa | DO | SISIXFL21208615 | 2/12/2015 | 25% | | 8 | $12,760.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 90 | Houston Casualty Company (HCC) | DO | 14MG15A12278 | 2/12/2015 | 25% | | 8 | $9,570.00 |
| | | | | | | | | $200.97 |
| | | | | | | | | $0.00 |
| 1853 | Liberty Insurance Underwriters Inc | DO | DONYAA318D001 | 2/12/2015 | 25% | | 8 | $9,570.00 |
| | | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 66 | Gemini Insurance Company | DO | 18014856 | 2/12/2015 | 25% | | 8 | $12,760.00 |
| | | | | | | | | $267.96 |
| | | | | | | | | $0.00 |
| 2117 | Hudson Specialty Insurance Compan | PROP | HCS101110 | 2/12/2015 | 25% | | 12 | $109,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $2,289.00 |
| | | | | | | | | $0.00 |
| 2117 | Hudson Specialty Insurance Compan | PROP | HCS101111 | 2/12/2015 | 25% | | 12 | $55,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $1,155.00 |
| | | | | | | | | $0.00 |
| 2107 | Endurance American Specialty (Trac | PROP | CPN10006455400 | 2/12/2015 | 25% | | 12 | $107,567.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $2,258.91 |
| | | | | | | | | $0.00 |
| 1857 | Great American Fidelity Insurance C | PROP | CPP461467200 | 2/12/2015 | 0% | | 12 | $32,500.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $682.50 |
| | | | | | | | | $0.00 |

| | SCHEDULE OF POLICIES | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1) FIN TXS/FEES (2) NON-FIN TXS/FEES (3) |
| 1980 | Landmark American Insurance Comp | PROP | LHD391029 | 2/12/2015 | 0% | | 12 | $96,868.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $2,034.23 |
| | | | | | | | | $0.00 |
| 13 | Scottsdale Insurance Company | PROP | AJS0000173 | 2/12/2015 | 25% | | 12 | $85,721.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $1,800.14 |
| | | | | | | | | $0.00 |
| 308822 | Sompo Japan Insurance Company of | PROP | PEP48175A0 | 2/12/2015 | 35% | | 12 | $21,358.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 313011 | Starr Surplus Lines Insurance Comp | PROP | SLSTPTY10713915 | 2/12/2015 | 0% | | 12 | $42,718.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $897.08 |
| | | | | | | | | $0.00 |
| 1866 | Chubb Custom Insurance Co | PROP | 4473438300 | 2/12/2015 | 0% | | 12 | $42,718.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $897.08 |
| | | | | | | | | $0.00 |
| 89 | General Security Indemnity Compan | PROP | T0234451501743 | 2/12/2015 | 0% | | 12 | $42,718.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $897.08 |
| | | | | | | | | $0.00 |
| 1919 | Xl Insurance America Inc | PROP | US00070229PR15A | 2/12/2015 | 0% | | 12 | $60,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $0.00 |
| | | | | | | | | $0.00 |
| 311857 | Alterra Excess and Surplus Insuranc | PROP | MKLS11XP002872 | 2/12/2015 | 35% | | 12 | $82,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $1,722.00 |
| | | | | | | | | $0.00 |
| 306379 | Aspen Specialty Insurance Company | PROP | | 2/12/2015 | 35% | | 12 | $325,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $6,825.00 |
| | | | | | | | | $0.00 |
| 306391 | Allied World Assurance Company (l | PROP | 030943581A | 2/12/2015 | 35% | | 12 | $330,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $6,930.00 |
| | | | | | | | | $0.00 |
| 136 | Colony Insurance Company | PROP | XP262606 | 2/12/2015 | 25% | | 12 | $50,000.00 |
| 12600 | AmWins Brokerage of Georgia LLC | | | | | | | $1,050.00 |
| | | | | | | | | $0.00 |

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

6. RIGHT TO PREPAY: Borrower shall have the right to prepay, in whole or in part, the amounts due hereunder at any time without penalty. Upon prepayment in full Borrower shall receive a refund of the unearned finance charge computed in accordance with the Rule of 78's (except in AZ, CA, IA, ME, MA, MO, MT, NJ, OR, PA, UT, VT, and VA, where the refund of any finance charge will be computed by the actuarial method, computed daily as 1/365th). If such prepayment in full occurs before the 1st installment due date, Lender shall retain the finance charge which could be retained if the 1st installment period were 1 month and the loan term which could be prepaid in full on the 1st installment due date (except in AZ, CA, CO, IA, ME, MA, NJ, OR, PA, SD, UT, TX, VT, and VA, where the finance charge retained will be computed based on the number of days from the Inception Date to the date the loan is paid in full). Any finance charge in excess of such amounts shall be refunded to Borrower. If a refund is less than $1.00, no refund shall be made. There is a minimum finance charge as follows: $15 in HI; $25 in CA, CO, ME; $36 in IN.

7. NON-REFUNDABLE FEES: Part of the finance charge includes a $20 nonrefundable fee except as follows: $10 in AK, AZ, CT, DC, DE, KS, LA, MO, NY, PA, WA; $12 in MT and NJ; $15 in AL, KY, MA, NC, RI, SC, TN, VA; $18 in MI; $25 in NV; $50 in OR.

8. BAD CHECK CHARGE: Borrower shall be charged a fee of $20 ($15 in CA, FL, LA, MS, NV, or SD and $10 in AZ, MA or OH, $0 in KY) if payment of Borrower is not honored when presented to the bank on which drawn. If payment is not honored, certified funds may be required for subsequent payments.

9. ATTORNEYS FEES: In the event Lender has to engage an attorney (not an employee of Lender) to collect any unpaid balance, Borrower agrees to pay any and all reasonable and necessary collection costs as allowed by state law (15% in ME, TN; 20% in AZ, FL, MS, MO, NV, NH, NY; 25% in LA, VT; only if principal balance was $1,000 or greater in ID; commercial only in IA, WV; none in KY, SD).

10. LATE CHARGE: So long as financing a commercial insurance policy Borrower shall pay a late payment charge equal to 5% (or such lesser amount as decided by Lender at its sole option) of the payment amount due for each payment not received by Lender within 5 days (or such greater number of days as may be required by applicable law) with the due date counted as Day 1.

11. CANCELLATION CHARGE: If a default by the Borrower results in cancellation of any insurance policy listed in the "Schedule of Financed Policies", the Borrower will pay Lender an amount equal to the maximum cancellation charge permitted by law except no cancellation charge will be assessed in MD.

12. EVENT OF DEFAULT: Lender upon Borrower's default in any payment, or upon any other act of default under this Agreement is authorized to accelerate and declare due and payable the entire unpaid balance of this note, less unearned finance charges. Other acts of default for which the unpaid balance may be accelerated include any check given by Borrower for the down payment or any future payment due under this Agreement which is not honored when presented to the bank on which drawn; misrepresentation by the Borrower as to the policies being finance; or, if any insurance company issuing an insurance policy referred to herein becomes insolvent, suspends business, or ceases to be qualified to do business. Provided in LA and CA, Lender may not cancel nor request cancellation of the policy(ies) or insurance for any default other than a default of payment of money due Lender nor a default consisting of the transfer of policy(ies) to a third party. Interest will accrue on the unpaid balance until Lender has received payment in full. Borrower hereby waives presentment, protest and notice of dishonor. No delay or omission on Lender's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver for any such right or power, nor will Lender's action or inaction impair any such right or power. Borrower agrees unpaid balances may be added to any new premium finance agreement. All terms of this Agreement will apply.

13. LENDER: Flatiron Capital is a division of Wells Fargo Bank, N.A.

14. PAYMENTS AFTER DEFAULT/ REINSTATEMENT: Any payments made to Lender after confirmation of cancellation of the insurance policy or policies has been mailed may be credited to Borrower's accounts without affecting the acceleration of the Agreement and without any liability or obligation on Lender's part to request reinstatement of the cancelled policy or policies.

If Lender requests reinstatement, Borrower agrees that Lender has no liability to Borrower if the policy is not reinstated. Only the insurance company has the authority to reinstate a policy financed pursuant to this Agreement.

15. IRREVOCABLE LIMITED POWER OF ATTORNEY: Borrower irrevocably appoints Lender as attorney-in-fact of Borrower, with full power of substitution and authority upon default to cancel the policy(ies) listed on this Agreement, with full power to sign or otherwise execute the policy(ies) and to collect or receive unearned premiums, dividend payments, and loss payments which may become payable under said policy(ies).

16. AGENT OR BROKER: Borrower understands and agrees that Lender is not acting as an insurance carrier, agent or broker and shall have no liability as such. Borrower understands and agrees that the Producer is the Borrower's insurance agent or broker and not the agent of Lender (except in Virginia if 14 VAC 5-390-70 provides otherwise) and that the Producer as such insurance agent or broker has no power or authority to make agreements or enter into contracts for Lender.

17. EFFECTIVE DATE OF AGREEMENT: This Agreement has no force until Lender's written acceptance is mailed to Borrower.

18. NOTIFYING INSURANCE COMPANY: Borrower authorizes Lender, at Lender's option, to notify any and all insurance companies issuing insurance policies covered by this Agreement of the terms of this Agreement, and Borrower directs that such insurance companies honor all provisions of this Agreement.

19. BORROWER ASSIGNMENT: Borrower represents and warrants to Lender that the insurance policy(ies) listed in, or a binder for such policy(ies), has been issued to Borrower and is (or are) in full force and effect, and that there has been no assignment of any interest in the insurance policy(ies) except for the assignment to Lender provided herein. Borrower agrees that Lender may assign this Agreement without notice to Borrower and in such event this Agreement shall inure to the benefit of and be binding to such assignee.

20. AUDITABLE POLICIES: With regard to any policy set forth in the "Schedule of Financed Policies", which is an auditable or reporting form type, Borrower agrees to promptly pay to the insurance company, the managing general agent or the agent, as applicable, the difference between the actual earned premium generated for the policy and the premiums financed under this Agreement.

21. INSOLVENCY: The Borrower represents they are not insolvent or presently the subject of any insolvency proceeding, nor are any such proceedings contemplated. Or if the named Borrower is the subject of such proceeding it is noted on the premium finance agreement in the space on the 1st page of the Agreement.

22. ADDITIONAL PREMIUMS: Only those premiums shown will be advanced on behalf of the Borrower. Payment of any additional premiums is the responsibility of the Borrower. Should the Borrower desire to finance any additional premiums, written request must be provided to Lender with appropriate down payment.

23. PROHIBITION AGAINST USURY: Under no circumstances shall Borrower have to pay more interest than is allowed under applicable law for this type of loan, and if Lender inadvertently contracts for charges, or receives more interest than allowed, Lender will refund the excess to Borrower.

24. ILLEGALITY: If any provision contained in this Agreement should be invalid, illegal or unenforceable in any respect, it shall not affect or impair the validity, legality and enforceability of the remaining provisions of this Agreement.

25. CHANGES IN WRITING: Lender is authorized to correct errors and omissions in the agreement. Modifications and amendments or waivers made to this Agreement by Borrower must be made in writing to Lender and approved by Lender.

26. FINANCING OPTION: Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.

27. CHOICE OF LAW AND VENUE: This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Colorado, and any action to enforce this Agreement shall be brought in a court of competent jurisdiction located in Denver, Colorado.

## PRODUCER'S REPRESENTATIONS AND WARRANTIES

Producer hereby represents and warrants as follows: (1) This Agreement was complete as to all of its provisions and disclosures before it was signed by the Borrower or its authorized representative (if permitted by applicable law) and Borrower was delivered a completed copy at time of signature. (2) The signature of Borrower is genuine and Borrower, or Producer under written authorization of Borrower, has full power and authority to enter into this Agreement. (3) The insurance policy(ies) listed in this Agreement are in full force and effect and the policy details are correct as stated herein and Producer is authorized by the issuing insurance companies (or their designated general agents) to produce the policy(ies) listed herein. (4) The down payment has been paid by Borrower and forwarded to the respective issuing insurance company(ies) (or general agent(s) on their behalf). (5) Producer acknowledges it is NOT an agent or representative of Lender. (6) Unless noted herein, all policies being financed are cancellable, none are subject to retrospective rating, none are or become fully earned at any time for any reason before the expiration of policy term stated in the schedule of financed policies and each premium financed represents the full anticipated premium for policy term. (7) Any lien or claim on funds of Borrower, or relating to the financed policies made by Producer shall be subordinate to Lender until Lender has been paid all amounts due to it under this Agreement. (8) Shall hold Lender harmless from, and indemnify Lender against, any loss resulting from errors, omissions or inaccuracies of Producer in preparing this agreement. (9) Shall be liable for any loss (up to the Amount Financed plus interest due and collection costs) suffered by Lender, if due to Producer's Representations and Warranties being false. (10) To the best of Producer's knowledge, no proceeding(s) in bankruptcy, receivership or insolvency have been instituted or are contemplated by or against the Insured. (11) All names, addresses, amounts and other statements of fact contained in this Agreement are true and correct. (12) Is duly licensed and authorized to act in its capacity as a broker or agent, as applicable, in connection with the transactions contemplated by this Agreement.

MState JAN 11 v6

## USA PATRIOT Act/Customer Identification Program Disclosure Notice:

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals or business) that is granted a loan. What this means for you: As part of this premium finance agreement, you will be asked for your name, address, federal employer identification number and other information that allows us to identify you. You may also be asked to provide other identifying documents.

---

Flatiron Capital appreciates the opportunity to serve all of your premium financing needs and welcomes any question or inquiry. You may contact our customer service department via email or telephone during regular business hours. Please include your quote or account number on all correspondence and payments.

Email:      **CustomerService@FlatironCapital.net**
Telephone: **800-800-2767**


For correspondence and overnight payments:        For regular mail payments:

Flatiron Capital                                   Flatiron Capital
1700 Lincoln Street, 12th Floor                    P.O. Box 712195
Denver, CO 80203                                   Denver, CO 80271-2195

10/2013 v1

## EXHIBIT C

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | ) Case No. 15-11874 (____) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Ref. Docket No. _____** |

**ORDER, PURSUANT TO SECTIONS 105(a), 363(b) AND 364 OF THE
BANKRUPTCY CODE, (I) AUTHORIZING (A) PAYMENT OF PREPETITION
OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS
IN CONNECTION WITH INSURANCE PROGRAMS, INCLUDING
PAYMENT OF POLICY PREMIUMS AND BROKER FEES, AND
(B) CONTINUATION OF INSURANCE PREMIUM FINANCING PROGRAMS;
AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK
AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of an order, pursuant to

sections 105(a), 363(b) and 364 of the Bankruptcy Code, (i) authorizing, but not directing, the

Debtors to (a) continue and, to the extent necessary, renew the Insurance Programs and pay

policy premiums and broker fees arising thereunder or in connection therewith, including

prepetition obligations arising in the ordinary course of business, and (b) continue the Financed

Programs and renew or enter into new premium financing programs, as necessary, under

substantially similar terms, and (ii) authorizing the Banks to honor and process check and electronic

transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings

related thereto, including the First Day Declaration; and due and proper notice of the Motion

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC
(7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing
address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized to maintain the Insurance Programs without interruption, and to renew, supplement, modify, or enter into new insurance policies, and to incur and pay broker fees in connection therewith, in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, in their discretion, to pay, honor or otherwise satisfy premiums, claims, deductibles, retrospective adjustments, administrative fees, broker fees (including, without limitation, the Broker Fees) and any other obligations that were due and payable or related to the period prior to the Petition Date on account of the Insurance Programs (including the Financed Programs) and the PFA.

4.      The Debtors are authorized to (a) continue, in the ordinary course of business, the Financed Programs and the PFA, and renew or enter into new premium financing programs, as necessary, under substantially similar terms, and (b) pay their installment payments under the Financed Programs and the PFA and any such new premium financing programs as the same become due in the ordinary course of business.

5.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

6.      Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, (c) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against an Insurance Carrier, or (d) shall be construed as a promise to pay a claim.

7.      Notwithstanding anything to the contrary in this Order, any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor in possession financing facility and the use of cash collateral and any budget in connection therewith.

01:17644751.3

3

8.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

9.      The requirements of Bankruptcy Rule 6003(b) are satisfied.

10.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: September _____, 2015
          Wilmington, Delaware

_____

United States Bankruptcy Judge