## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) | Case No. 15-11874 (____) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105(a), 363(c), 503(b)(1), 1107(a), AND 1108 OF THE BANKRUPTCY CODE, AUTHORIZING (I) THE DEBTORS TO HONOR PREPETITION OBLIGATIONS RELATED TO CUSTOMER PROGRAMS AND OTHERWISE CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND (II) BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO

Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors in possession (each a "**Debtor**," and collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), pursuant to sections 105(a), 363(c), 503(b)(1), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq</u>. (the "**Bankruptcy Code**"), (i) authorizing, but not directing, the Debtors, in their discretion, to continue, maintain, implement new, and/or terminate, and to pay, honor, and otherwise satisfy pre-petition obligations related to, their pre-petition customer practices and programs, in the ordinary course of business and in a manner consistent with past practice, and (ii) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing. The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Blake Barnett In Support of Chapter 11 Petitions and First Day Motions* (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

"**First Day Declaration**").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(c), 503(b)(1), 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

**A.        General**

2.        On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.        The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

5.      Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

**B.      The Debtors' Customer Programs**

6.      The success and viability of the Debtors' business depends upon the loyalty of their customers.  To maximize customer loyalty, the Debtors have maintained and followed, in the ordinary course of their business, practices and programs for the benefit of their customers (collectively, the "**Customer Programs**"), including, but not limited to, the Customer Programs described below.  The Debtors use the Customer Programs to reward customer loyalty, provide services and goods to attract customers to their stores, and provide incentives to buy products from their stores.  Many, if not most, of the Customer Programs are standard in the retail food business.  Without the ability to continue the Customer Programs and to satisfy the related pre-petition obligations, the Debtors risk surrendering their market share of business to their competitors.  Moreover, some of the Customer Programs described herein are charitable contribution programs.

*i.      Return, Refund, Exchange, Price-Guarantee,*
*and Rain-Check Policies*

7.      Consistent with industry practice, the Debtors have traditionally maintained return, refund, exchange, price-guarantee and rain-check policies with respect to both cash and credit purchases to accommodate their customers' needs (the "**Return and Exchange Policies**").  The Return and Exchange Policies provide each of the Debtors' customers with the comfort that they will receive full consideration in the event that merchandise purchased is not to the customer's expectation, is damaged, is defective, is incorrectly processed, or is not available.

Accordingly, the Debtors seek to maintain, in the ordinary course of business, the Return and Exchange Policies with respect to merchandise purchased prior to or following the Petition Date.

### ii.    *Gift Cards*

8.      As part of their operations, the Debtors sell gift cards (the "**Gift Cards**") that are accepted as payment for purchases in the ordinary course of its business.   The denominations of the Gift Cards sold by the Debtors generally range from $5 to $1,000.   Gift Card redemptions for Haggen, Inc. in July 2015 were approximately $122,430.   Gift Card redemptions for Haggen North and Haggen South in July 2015 were $34,680 and $79,720, respectively.   In order to (a) maintain customer relations and the orderly flow business, and (b) to ensure that customers will continue to purchase Gift Cards (which are not an insignificant source of revenue), the Debtors request authority to honor the Gift Cards purchased pre-petition that are presented by customers post-petition, in the ordinary course of business.   Additionally, no individual holder of Gift Card(s) shall be paid in excess of $2,775, the priority deposit amount set forth in section 507(a)(7) of the Bankruptcy Code, on account of the Debtors' pre-petition Gift Card obligations.   Although the Debtors intend to honor prepetition Gift Cards, the Debtors do not currently intend to continue issuing new Gift Cards after the Petition Date.

### iii.    *Coupons and Store Promotions*

9.      The Debtors maintain a coupon redemption program pursuant to which they honor store coupons, as well as additional promotions for specified amounts of time on specific products (collectively, the "**Coupons and Store Programs**").   The Debtors distribute their Coupons and Store Programs through weekly and bi-weekly advertising circulars, and through social media and text messages.   To preserve the goodwill of their customer base, the Debtors seek authorization to honor the Coupons and Store Promotions issued prior to the

Petition Date in a manner consistent with their ordinary business practices, and to continue to issue Coupons and Store Promotions subsequent to the Petition Date in the ordinary course of business.

*iv.*      ***Bus Passes***

10.    A number of the Debtors' stores sell bus passes for regional transit services.  At the end of each month, the Debtors are invoiced by certain authorities for the bus passes sold, less the Debtors' commission (the "**Bus Pass Proceeds**").  The Debtors seek authority to continue to sell bus passes and to remit the Bus Pass Proceeds, including pre-petition proceeds, to the proper authorities, in the ordinary course of business.

*v.*      ***Dry Cleaning***

11.    Haggen, Inc. has relationships with three dry cleaning companies to facilitate dry cleaning services for its customers.  In each case, Haggen, Inc. acts as a depository for the customers' clothing to be dry cleaned, which is then picked up by the dry cleaning companies and returned to Haggen, Inc. after being processed.  The customer picks up the clothes from Haggen, Inc. and provides payment to Haggen, Inc. for the services provided. Haggen, Inc. then remits to the dry cleaning companies 75% of the proceeds (the "**Dry Cleaning Proceeds**") collected and retains 25% of such proceeds as its commission.  Haggen, Inc. requests authority to continue this arrangement and to remit the Dry Cleaning Proceeds collected, including proceeds collected pre-petition, to the participating dry cleaning companies in the ordinary course of business.

*vi.*      ***Lottery Programs***

12.    Many of the Debtors' stores sell lottery tickets that are sponsored by the states in which such stores are located.  In the ordinary course of their business, the Debtors

collect and remit to the appropriate state authorities the cost of lottery tickets, cash out the winnings for certain tickets, and retain commissions generally ranging from six to seven percent of ticket sales (collectively, the "**Lottery Payments**").  The Debtors seek authority to continue to collect and remit the Lottery Payments, including funds collected pre-petition, under their existing lottery programs, in the ordinary course of business.

### vii.        *Catering Deposits*

13.      Haggen, Inc. offers catering services to its customers and, in connection with the same, accepts deposits (the "**Catering Deposits**") for services to be performed.  As of August 8, 2015, Haggen, Inc. held approximately $168,400.98 in Catering Deposits.  Haggen, Inc. requests authority to apply, in the ordinary course of business, any pre-petition Catering Deposits to the post-petition purchases of the items for which such deposits were paid.  All but seven of the deposits are less than the $2,775 the priority deposit amount set forth in section 507(a)(7) of the Bankruptcy Code, and deposits exceeding such amount are approximately $20,535 in the aggregate.

### viii.        *Charitable Giving Programs*

14.      The Debtors facilitate charitable donations in a number of ways, including by (a) delivering food purchased and donated by customers, and (b) facilitating electronic donations at the point of sale, which are accounted for as a liability (collectively, the "**Charitable Giving Programs**").  The Debtors seek authority to continue, in the ordinary course of business, to administer the Charitable Giving Programs, including administering the funds donated pre-petition.

### ix.        *Utility Payments*

15.        Certain of the Debtors' stores provide their customers with the ability to pay utilities bills at such stores.  After collecting the payments on account of the customers' utility bills (the "**Utility Payments**"), the Debtors then remit the Utility Payments to the applicable utility companies.  Accordingly, the Debtors seek authority to continue to collect and remit the Utility Payments, including payments collected pre-petition, in the ordinary course of business.

### x.        *Money Orders and MoneyGram*

16.        Certain of the Debtors' stores offer customers various services through MoneyGram, including (a) providing customers with the ability to purchase money orders issued by MoneyGram, in which case the Debtors remit the collected funds to MoneyGram; and (b) facilitating money transfers through MoneyGram by either (i) accepting customer payments to facilitate a transfer of funds by MoneyGram to third parties, in which case the Debtors remit the collected payments to MoneyGram, or (ii) disbursing to customers funds transferred by third parties through MoneyGram, in which case MoneyGram remits payment to the Debtors (such payments referred to in clauses (a) and (b) above, collectively, the "**MoneyGram Payments**"). The Debtors seek authority to continue to collect and remit the MoneyGram Payments, including payments collected pre-petition, in the ordinary course of business.

### xi.        *Oregon City Football*

17.        Certain stores operated in Oregon by Haggen, Inc. sell tickets to local events on behalf of the organizers and remit the ticket sale proceeds (the "**Oregon City Football Proceeds**") to the event organizers.  Haggen, Inc. seeks authority to continue to collect and remit

the Oregon City Football Proceeds, including funds collected pre-petition, to such event organizers in the ordinary course of business.

***xii.***  ***Skagit Speedway***

18.  Certain stores operated in Washington by Haggen, Inc. sell tickets to local events held at Skagit Speedway on behalf of the organizers and remit the ticket sale proceeds (the "**Skagit Speedway Proceeds**") to the event organizers.  Haggen, Inc. seeks authority to continue to collect and remit the Skagit Speedway Proceeds, including funds collected pre-petition, to such event organizers in the ordinary course of business.

***xiii.***  ***Bellingham Family Fair***

19.  Certain stores operated in the Bellingham, Washington area by Haggen, Inc. sell tickets to the Bellingham Family Fair on behalf of the organizers and remit the ticket sale proceeds (the "**Bellingham Family Fair Proceeds**") to the event organizers.  Haggen, Inc. seeks authority to continue to collect and remit the Bellingham Family Fair Proceeds, including funds collected pre-petition, to such event organizers in the ordinary course of business.

***xiv.***  ***Student Donations***

20.  Haggen, Inc. stores accept donations (the "**Student Donations**") on behalf of local school districts and remit the funds to those school districts.  Haggen, Inc. seeks authority to continue to collect and remit the Student Donations, including funds collected pre-petition, to the participating school districts in the ordinary course of business.

**RELIEF REQUESTED**

21.  By this Motion, the Debtors request the Court to enter the Proposed Order, (i) authorizing, but not directing, the Debtors, in their discretion, to continue, maintain, implement new, and/or terminate any of the Customer Programs, and to pay, honor, and

otherwise satisfy pre-petition obligations related to the Customer Programs, in the ordinary course of business and in a manner consistent with past practice, and (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto.

## BASIS FOR RELIEF

**A.    The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Continue to Support and Honor the Customer Programs and Related Obligations**

### I.    The Customer Programs Are Essential to Avoid Unexpected or Inopportune Interruption to the Debtors' Business Operations

22.    The Debtors respectfully submit that continuing, maintaining, replacing, initiating, and terminating their Customer Programs is in the ordinary course of their business and permitted by sections 363(c), 503(b), 1107(a) and 1108 of the Bankruptcy Code, without further application to the Court.  However, out of an abundance of caution, the Debtors seek authority, but not direction, as they deem appropriate, to continue, renew, replace, implement, modify and/or terminate the Customer Programs, and to honor their undisputed pre-petition obligations related thereto, in the ordinary course of business and in accordance with pre-petition practices.

23.    Honoring and supporting the Customer Programs will enable the Debtors to retain, maintain, and create valuable customer relationships, which will strengthen the Debtors' business and their prospects for successfully prosecuting these chapter 11 cases.  The necessity of the Customer Programs in the Debtors' highly competitive industry cannot be overstated and many of the Customer Programs are standard practice.  If the Debtors' obligations under the Customer Programs cannot be honored in the ordinary course of business, it is likely that the Debtors' customers would quickly shift patronage to competitors, thereby adversely impacting the Debtors' business and, thus, their ability to maximize the value of their assets for the benefit of all stakeholders.  Simply put, the Debtors will almost certainly suffer an irreparable

loss of customer support and confidence should they fail to honor the Customer Programs and the obligations related thereto in the ordinary course and without interruption.

24.     To the extent any pre-petition claims under the Customer Programs represent priority claims under section 507(a)(7) of the Bankruptcy Code, pursuant to section 1129(a)(9), holders of such claims are entitled to receive payment in full (subject to the statutory cap) under a chapter 11 plan.

25.     The relief requested herein will protect the Debtors' customer relationships and goodwill, and help maintain and maximize the value of the Debtors' estates, during this critical time.  For the foregoing reasons, the Debtors respectfully submit that entry of the Proposed Order is in the best interests of the Debtors, their estates, and creditors.

## II.     The Relief Requested Herein Is Supported by the Doctrine of Necessity

26.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business. property of the estate …." 11 U.S.C. § 363(b)(1).

27.     Furthermore, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the post-petition payment of pre-petition claims where such payment is necessary to preserve the value of a debtor's estate. See, e.g., Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127

(Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); see In re Just for Feet, Inc., 242 B.R. 821, 824–25 (D. Del. 1999) (citing In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of pre-petition claims of vendors found to be critical to the debtor's continued operation).

28.     In a long line of well-established cases, federal courts consistently have permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport, C. & S. W. Ry. Co., 106 U.S. 286, 311–12 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus") (internal citations omitted); Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of pre-petition claims beyond railroad reorganization cases).

29.     This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical pre-petition claims not explicitly authorized by the Bankruptcy Code. See Just for Feet, 242 B.R. at 826 (finding that "[t]o invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization.'") (internal citations omitted); In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'") (internal citations omitted);

<u>In re Boston & Me. Corp.</u>, 634 F.2d 1359, 1382 (1ˢᵗ Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).

30.     The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of pre-petition claims. In one case, a bankruptcy court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under [section] 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" <u>In re Structurelite Plastics Corp.</u>, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (internal citations omitted).

31.     As explained above, the Debtors' ability to honor the terms of the Customer Programs is essential to avoid any unexpected or inopportune interruption to the Debtors' business operations. If the Debtors cannot continue, maintain, implement new, and/or terminate the Customer Programs in a manner consistent with their past business practices, customers will lose confidence in the Debtors and may begin to patronize the Debtors' competitors that do provide such programs, thereby damaging the Debtors' business to an extent that far exceeds the cost associated with honoring and continuing the Customer Programs.

32.     Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

### III.     The Court Should Authorize the Debtors to Continue the Customer Programs and Satisfy Obligations Related Thereto as a Valid Exercise of the Debtors' Fiduciary Duties

33.     Authority for the relief requested herein also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors, operating their business as a debtor in possession under sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate and

operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (internal citations omitted). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

34.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a pre-petition claim." Id. The CoServ court specifically noted that preplan satisfaction of pre-petition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." Id. at 497–98. The court provided a three-pronged test for determining whether a preplan payment on account of a pre-petition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

35.     Continuing and maintaining, and honoring the obligations under, the Customer Programs meets each element of the CoServ court's standard. As described herein, the success and ultimate viability of the Debtors' business is dependent upon, among other things, customer loyalty and customers having continued and uninterrupted access to the various services provided to them under the Customer Programs. The Debtors therefore believe that they can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of

the Bankruptcy Code by having the authority, but not the direction, of the Court to satisfy

outstanding pre-petition obligations arising from or related to the Customer Programs.

### IV. Payment of Certain of the Obligations Under the Customer Programs Now Will Not Affect Creditor Recoveries in These Chapter 11 Cases

36.     Certain of the claims arising from the Customer Programs arguably

constitute priority claims (up to the statutory cap) under section 507(a)(7) of the Bankruptcy

Code, which must be paid in full under a plan of reorganization.    Section 507(a)(7) provides

seventh-level priority treatment for:

> [A]llowed unsecured claims of individuals, to the extent of $2,775
> for each such individual, arising from the deposit, before the
> commencement of the case, of money in connection with the
> purchase, lease, or rental of property, or the purchase of services,
> for the personal, family, or household use of such individuals, that
> were not delivered or provided.

11 U.S.C. §507(a)(7).  Claims arising on account of certain of the Customer Programs, including

the Gift Cards and the Catering Deposits, while not specifically mentioned in section 507(a)(7),

are arguably customer deposits as defined in the statute.   See 4 Alan N. Resnick & Henry J.

Sommer, Collier on Bankruptcy ¶ 507.09 (16th ed.).

37.     Courts in this District have recognized that honoring the terms of customer

programs in the ordinary course of business and retaining customer patronage and loyalty is, in

fact, both critical to a debtor's ability to preserve and maximize the value of its estate and to

maximize creditor recoveries and, as such, regularly grant relief consistent with that which the

Debtors are seeking in this Motion.   See, e.g., In re Trump Entm't Resorts, Inc., Case No. 14-

12103 (KG) (Sept. 10, 2014); In re Energy Future Holdings Corp., Case No. 14-10979 (CSS)

(June 4, 2014); In re F & H Acquisition Corp., Case No. 13-13220 (KG) (Dec. 17, 2013); In re

Gatehouse Media, Inc., Case No. 13-12503 (MFW) (Sept. 30, 2013).

**B.**    **The Court Should Authorize the Banks to Honor and Process**
        **Payments Related to the Customer Programs**

38.    The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay pre-petition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

39.    Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy pre-petition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." There is no question that the Debtors' failure to honor their Customer Programs would likely result in immediate and irreparable harm to the Debtors' customer relations. As discussed above and in the First Day Declaration, the Customer Programs are an integral part of the shopping experience provided by the Debtors to their customers, and are essential to the Debtors' success in retaining customer satisfaction, sustaining goodwill, and ensuring that the Debtors remain competitive notwithstanding the commencement of these chapter 11 cases. Restricting or canceling the Customer Programs or failing to satisfy any obligations related thereto could jeopardize the Debtors' customer relationships and irreparably harm the Debtors' reputation and ability to assure that customers continue to patronize their stores. Thus, if the relief requested herein is not granted, the Debtors' failure to honor and

support the Customer Programs and satisfy the obligations related thereto would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' chapter 11 efforts.

40.    For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

41.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in the Debtors' ability to continue, and pay, honor, or otherwise satisfy their obligations related to the Customer Programs would be detrimental to the Debtors, their creditors and estates, and would impair the Debtors' ability to optimize their business performance at this critical time as they begin the chapter 11 process.

42.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Order.

## RESERVATION OF RIGHTS

43.    Nothing in the Proposed Order or this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

01:17656510.1

## NOTICE

44.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; and (v) counsel to the Debtors' pre-petition and post-petition lenders. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

45.     The Debtors have not previously sought the relief requested herein from this or any other Court.

***Remainder of page intentionally left blank***

01:17656510.1

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order granting the

relief requested herein and such other and further relief as is just and proper.

Dated: September 8, 2015          Respectfully submitted,
       Wilmington, Delaware

                               YOUNG CONAWAY STARGATT & TAYLOR, LLP

                               */s/ Robert F. Poppiti, Jr.*
                               Matthew B. Lunn (No. 4119)
                               Robert F. Poppiti, Jr. (No. 5052)
                               Rodney Square
                               1000 North King Street
                               Wilmington, DE 19801
                               Telephone: (302) 571-6600
                               Facsimile: (302) 571-1256

                               -and-

                               STROOCK & STROOCK & LAVAN LLP
                               Frank A. Merola (*pro hac vice* pending)
                               Sayan Bhattacharyya (*pro hac vice* pending)
                               Matthew G. Garofalo (*pro hac vice* pending)
                               180 Maiden Lane
                               New York, New York 10038
                               Telephone: (212) 806-5400
                               Facsimile: (212) 806-6006

                               *PROPOSED COUNSEL TO THE DEBTORS*
                               *AND DEBTORS-IN-POSSESSION*

01:17656510.1

**EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) Case No. 15-11874 (____) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. _____** |

**ORDER, PURSUANT TO SECTIONS 105(a), 363(c), 503(b)(1), 1107(a), AND**
**1108 OF THE BANKRUPTCY CODE, AUTHORIZING (I) THE DEBTORS**
**TO HONOR PREPETITION OBLIGATIONS RELATED TO CUSTOMER PROGRAMS**
**AND OTHERWISE CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY**
**COURSE OF BUSINESS AND (II) BANKS TO HONOR AND PROCESS CHECK AND**
**ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "**Motion**")[2] of Haggen Holdings, LLC and

its above-captioned affiliated debtors and debtors in possession (collectively, the "**Debtors**") for

the entry of an order, pursuant to sections 105(a), 363(c), 503(b)(1), 1107(a), and 1108 of title 11

of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their discretion, to

continue, maintain, implement new, and/or terminate any of the Customer Programs, and to pay,

honor, and otherwise satisfy prepetition obligations related to the Customer Programs in the

ordinary course of business and in a manner consistent with past practice, and (ii) authorizing the

Banks to honor and process check and electronic transfer requests related to the foregoing; and upon

consideration of the Motion and all pleadings related thereto, including the First Day

Declaration; and due and proper notice of the Motion having been given; and it appearing that no

other or further notice of the Motion is required; and it appearing that the Court has jurisdiction

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to continue, maintain, implement new, and/or terminate the Customer Programs, in the ordinary course of business and in a manner consistent with past practice.

3.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, and otherwise satisfy (including, without limitation, through setoffs and recoupments) prepetition obligations relating to the Customer Programs, in the ordinary course of business and in a manner consistent with past practice.

4.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

01:17656510.1

5.     Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

6.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

7.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

8.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

9.     Notwithstanding anything to the contrary in this Order, any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor in possession financing facility and the use of cash collateral and any budget in connection therewith.

10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  September _____, 2015
            Wilmington, Delaware

_____
United States Bankruptcy Judge

01:17656510.1

-3-