## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) | Case No. 15-11874 (____) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(4) AND 507(a)(5) OF THE BANKRUPTCY CODE, (A) AUTHORIZING (I) PAYMENT OF PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION; (II) REIMBURSEMENT OF PREPETITION EMPLOYEE BUSINESS EXPENSES; (III) CONTRIBUTIONS TO PREPETITION EMPLOYEE BENEFIT PROGRAMS AND CONTINUATION OF SUCH PROGRAMS IN THE ORDINARY COURSE; (IV) PAYMENT OF WORKERS' COMPENSATION OBLIGATIONS; (V) PAYMENTS FOR WHICH PREPETITION PAYROLL DEDUCTIONS WERE MADE; (VI) PAYMENT OF ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (VII) PAYMENT TO THIRD PARTIES OF ALL AMOUNTS INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors in possession (each a "**Debtor**," and collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), pursuant to sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq.</u> (the "**Bankruptcy Code**"), (a) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to (i) pay prepetition employee wages, salaries and other accrued compensation, (ii) reimburse prepetition employee business expenses, (iii) make contributions to prepetition benefit programs and continue such programs in the ordinary course of their business, (iv) pay prepetition union

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

dues and deductions and continue making contributions to union benefit plans, (v) honor workers' compensation obligations, (vi) make payments for which prepetition payroll deductions were made, (vii) pay processing costs and administrative expenses relating to the foregoing payments and contributions, and (viii) make payments to third parties incident to the foregoing payments and contributions, and (b) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing. The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Blake Barnett In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**").[2]  In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

01:17656478.1

## BACKGROUND

### A.    General

2.    On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.    The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

5.    Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

### B.    The Debtors' Employees

6.    As of August 28, 2015, the Debtors employed approximately 10,880 employees across three business units: 2,000 at Haggen, Inc. ("**Haggen, Inc.**"); 3,730 at Haggen Opco North, LLC ("**Haggen North**"); and 5,140 at Haggen Opco South, LLC ("**Haggen South**").  Approximately 685 of the Debtors' employees are salaried, with the balance accruing wages on an hourly basis.  Approximately 80%, or 8,700, of the employees are union members: 1,600 at Haggen, Inc., 2,680 at Haggen North, and 4,420 at Haggen South (collectively, the "**Union Employees**", and together with the Debtors' non-union employees, the "**Employees**").[3]

---

[3]    Additionally, the Debtors work with approximately 12 independent contractors at the store locations and such independent contractors are included in the definition of "Employees" for the purposes of this Motion.

7.      The Employees, as with any business entity, perform a variety of critical functions for the Debtors, and their knowledge, skills and understanding of the Debtors' infrastructure, business operations and vendor relations is essential to the success of these chapter 11 cases.  Without the continued service and dedication of the Employees, it will be difficult, if not impossible, to operate the Debtors' business without an unexpected or inopportune interruption and to prosecute these chapter 11 cases in a manner that will maximize the value of the Debtors' estates.  Thus, to successfully accomplish the foregoing, to minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as otherwise expected, and to maintain employee morale and a focused workforce during this critical time, the Debtors believe that it is necessary and in the best interest of their estates and all stakeholders to seek the relief requested herein.

## **RELIEF REQUESTED**

8.      By this Motion, the Debtors request the Court enter the Proposed Order, authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to: (a) pay prepetition Employee wages, salaries, paid time off, and other accrued compensation; (b) reimburse prepetition Employee business expenses; (c) make contributions to prepetition benefit programs provided to Employees, the most significant of which are described below, and continue such programs in the ordinary course of business with respect to the Employees; (d) pay prepetition union dues and deductions and continue making contributions to union benefit plans; (e) honor workers' compensation obligations; (f) make payments for which prepetition payroll deductions were made; (g) pay processing costs and administrative expenses relating to the foregoing payments and contributions; and (h) make payments to third parties incident to the foregoing payments and contributions (collectively, and as described in greater

01:17656478.1

4

detail below, the "**Employee Wages and Benefits**").   The Debtors also request this Court authorize the Banks to honor and process check and electronic transfer requests related thereto.

I.    **OBLIGATIONS ON ACCOUNT OF EMPLOYEE WAGES, REIMBURSABLE BUSINESS EXPENSES, DEDUCTIONS, AND PAYROLL TAXES**

   A.    <u>**Unpaid Wages**</u>

   9.    Historically, the Debtors' combined gross aggregate payroll liability is approximately $26.4 million per month.   Employees at Haggen, Inc. are paid wages and salaries on a bi-weekly basis, with a gross aggregate payroll of approximately $2.1 million.   Employees at Haggen North and Haggen South are paid on a weekly basis, with a gross aggregate payroll of approximately $1.9 million and $3.6 million, respectively.   The weekly and bi-weekly payments are issued on Fridays, for the period ending the preceding Saturday.   Due to the bi-weekly and weekly payroll schedules, combined gross aggregate payrolls alternate from approximately $5.6 million to $7.7 million every other Friday.   The Debtors' most recent payroll payment for Haggen North and Haggen South was made on September 4, 2015, for the period ending August 29, 2015, and the most recent payroll payment made for Haggen, Inc. was made on August 28, 2015, for the period ending August 22, 2015 (the "**Last Payrolls**").

   10.    Based on historical payrolls, the Debtors believe that approximately $10.2 million in the aggregate remains outstanding, as of the Petition Date, on account of unpaid accrued wages, salaries, gratuities, overtime pay and other compensation due from the Debtors to the Employees (collectively, the "**Unpaid Wages**"), exclusive of any amounts attributable to uncashed paychecks on account of the Last Payroll.

   11.    The Debtors' failure to remit full payment of the amount that the Debtors believe remains outstanding, as of the Petition Date, on account of Unpaid Wages would inflict great financial hardship on the Employees and would seriously damage morale and impair the

Debtors' chapter 11 efforts.  The full commitment of the Employees is required for the Debtors to successfully navigate the chapter 11 process.

12.     The Debtors, therefore, request authority from the Court to satisfy obligations owed to the Employees on account of Unpaid Wages, including, without limitation, to allow pre-petition checks on account of Unpaid Wages that were not cashed prior to the Petition Date to be honored on a post-petition basis notwithstanding the commencement of these chapter 11 cases.  No individual Employee shall be paid more than $12,475 (together with Paid Time Off) for any Unpaid Wages.[4]  Additionally, the Debtors request authority to satisfy any administrative fees or costs incurred in connection with the payment of such Unpaid Wages, including fees incurred prepetition.

### B.      Reimbursable Expenses

13.     Prior to the Petition Date, and in the ordinary course of their business, the Debtors directly or indirectly reimbursed their Employees for certain expenses incurred on behalf of the Debtors in the scope of their employment, including, without limitation, lodging and other similar business travel expenses (collectively, the "**Reimbursable Expenses**").  The Reimbursable Expenses are incurred in the ordinary course of the Debtors' business operations and include, without limitation, expenses for meals, travel, car rentals and other business-related expenses.  Most Employees initially incur and pay such expenses by using personal funds or credit cards, but are subsequently reimbursed by the Debtors after submission and approval of expense reimbursement requests.  The Debtors also directly reimburse third party credit card providers for Reimbursable Expenses incurred by Employees on company credit cards.

---

[4]  To the extent that an Employee does have a claim for any Unpaid Wages that exceeds, together with accrued and unpaid prepetition Paid-Time Off, the $12,475 cap provided for under section 507(a)(4) of the Bankruptcy Code, the Debtors only seek authority under this Motion to honor such claim up to such cap.  To the extent the Debtors seek to make payments on account of Unpaid Wages or Paid Time Off in excess of the priority cap, they will seek such authority by separate motion.

14.     On average, the Debtors incur and reimburse approximately $100,000 per month in Reimbursable Expenses, of which approximately $40,000 is incurred and reimbursed by Haggen, Inc. and approximately $30,000 each by Haggen North and Haggen South.  The Debtors estimate that, as of the Petition Date, approximately $100,000 in Reimbursable Expenses remain unpaid.

15.     The Reimbursable Expenses were all incurred on the Debtors' behalf and with the understanding that the Employees would be reimbursed for any and all such amounts. Accordingly, and to avoid harming the Employees who incurred the Reimbursable Expenses, the Debtors request authority to (a) continue reimbursing the Employees for Reimbursable Expenses in accordance with their prepetition practices and policies, and (b) pay unpaid Reimbursable Expenses to the Employees.

## C.     **Withheld Amounts, Including Taxes**

16.     During each applicable pay period, the Debtors routinely deduct certain amounts from the Employees' pay, including, without limitation, (a) garnishments, child support and similar deductions, and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein, such as the Employee's share of health care benefits, insurance premiums, 401(k) contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "**Wage Deductions**"), and forward those amounts to various third-party recipients.  On average, the Debtors have historically deducted approximately $9,235,000 in the aggregate in Wage Deductions from the Employees' pay per month.  The Debtors believe that, as of the Petition Date, approximately $3,140,000 has not been remitted to the various third-party recipients on account of the Wage Deductions.  Accordingly, the Debtors seek authority to continue to forward prepetition Wage Deductions to the applicable third-party

recipients on a postpetition basis in the ordinary course of their business, as routinely done prior to the Petition Date.

17.     Furthermore, the Debtors are required by law to withhold from the Employees' pay amounts related to, among other things, federal, state and local income taxes and social security and Medicare taxes (collectively, the "**Trust Fund Taxes**") for remittance to the appropriate federal, state or local taxing authorities.  The Debtors must then match from their own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "**Payroll Taxes**").  Historically, on a monthly basis, Haggen, Inc. remits approximately $1,053,000 in Trust Fund Taxes and  $440,000 in Payroll Taxes.  On a monthly basis, Haggen North remits approximately $1,703,000 in Trust Fund Taxes and $1,085,000 in Payroll Taxes, and Haggen South remits $3,132,000 in Trust Fund Taxes and $1,980,000 in Payroll Taxes.  The Debtors believe that, as of the Petition Date, approximately $1,620,000 and $1,301,000 have not been remitted on account of the Trust Fund Taxes and Payroll Taxes, respectively.

18.     By this Motion, the Debtors seek authority, but not the direction, from the Court to remit Wage Deductions, Trust Fund Taxes and Payroll Taxes in the ordinary course of business, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

## II.     EMPLOYEE BENEFITS

19.     The Debtors provide their eligible Employees, directly or indirectly, and in the ordinary course of business, with a number of employee benefits, including, but not limited to: (a) medical, dental, vision and prescription insurance; (b) paid sick and vacation days and other paid time off; (c) a 401(k) retirement savings plan; and (d) certain other miscellaneous

employee benefits, including life insurance and disability benefits (collectively, the "**Employee Benefits**").

A.      **Health Benefits**

20.      The Debtors sponsor several employee health and welfare benefit plans, including medical, dental, vision, and prescription coverage ("**Health Benefits**"), which vary by employee and Debtor entity.  As set forth in greater detail in Part III below, the Debtors pay an aggregate of approximately $6,000,000 per month pursuant to a variety of CBAs (as defined below) to cover the Health Benefits and related obligations on account of the Debtors' approximately 8,700 Union Employees.

21.      Of the Debtors' approximately 2,180 non-union Employees, 1,460 receive certain Health Benefits, for which the Debtors pay an aggregate of approximately $985,000 per month pursuant to a variety of contracts with third-party insurance administrators.  Of that amount, on a monthly basis, Haggen, Inc. covers approximately $240,000, Haggen North covers approximately $410,000, and Haggen South covers approximately $335,000 in Health Benefits on account of each of their respective non-union Employees.  As of the Petition Date, the Debtors estimate that approximately $985,000 in the aggregate is currently due in connection with the Health Benefits.

22.      In addition to Health Benefits paid directly by the Debtors, certain Employees make contributions in connection with various benefit plans. The Employee contributions are withheld from their wages every payroll cycle.  Specifically, Haggen, Inc. withholds approximately $30,000 per bi-weekly pay period, and Haggen North and Haggen South withhold approximately $32,000 and $28,000, respectively, on a weekly basis. The

Debtors remit those funds to the various third-party insurance administrators, together with the Debtors' obligations with respect to Health Benefits as detailed above.

23.     By this Motion, the Debtors seek authority to: (a) continue to provide the Health Benefits in the ordinary course of business to the Employees; (b) continue making contributions to such benefit programs; (c) continue to pay amounts related thereto, including premiums and claim amounts; and (d) pay such amounts to the extent that they remain unpaid on the Petition Date.

### B.     Paid Time Off

24.     The Debtors provide various forms of paid time off, including vacation pay, sick pay, holiday pay, and payments for various forms of leave to all qualifying full-time and part-time Employees as a paid time-off benefit ("**Paid Time Off**").  Union Employees are eligible for Paid Time Off in accordance with the terms of the applicable CBA.  With respect to non-union Employees, the Debtors provide a range of Paid Time Off related to such Employee's tenure with the Debtors.  Such employees are generally provided with 1-4 weeks of vacation time, plus additional personal days and sick days.

25.     The Debtors estimate that, as of the Petition Date, approximately $24.2 million in Paid Time Off is accrued but unpaid.  By this Motion, the Debtors request authority, but not direction, from the Court to continue to honor their Paid Time Off policies in the ordinary course of business, and to pay, in their discretion, prepetition amounts related thereto up to $12,475 (together with Unpaid Wages) per eligible Employee.

### C.     Additional Employee Benefits

*i.*     *401(k) Plan*

26.     The Debtors offer a 401(k) plan comprised of employer and Employee contributions (collectively, the "**401(k) Plan**").  The program permits eligible Employees to

defer a portion of their wages into the 401(k) Plan.  The 401(k) Plan is also funded by matching contributions made by the Debtors.  Historically, on a monthly basis, Haggen, Inc. contributes approximately $26,000 toward the 401(k) Plan and withholds from wages of participating Employee contributions of approximately $139,000.  On average, Haggen North and Haggen South accrue monthly matching liabilities of approximately $62,000 and $70,000, respectively, and withhold from wages of participating Employees weekly contributions of approximately $154,000 and $237,000, respectively, on account of the 401(k) Plan.  Additionally, a discretionary employer contribution match in the approximate amount of $367,000 is scheduled to be funded at the end of the Debtors' fiscal year.

27.     The Debtors estimate that approximately $566,000 in the aggregate is owed to the 401(k) Plan as of the Petition Date with respect to the Employees.  The Debtors seek authorization, but not direction, to pay amounts associated with the 401(k) Plan, including prepetition amounts and amounts owed to any 401(k) Plan fiduciaries.

ii.      *Life Insurance*

28.     The Debtors provide basic life insurance ("**Life Insurance**") to eligible Employees, which is administered by USAble for Haggen Inc. and by Standard Insurance Company for Haggen North and Haggen South.  Under this policy, the Debtors pay the premiums for the Life Insurance.  Additionally, the Life Insurance costs the Debtors approximately 35,000 per month in premiums and administrative expenses.

29.     As of the Petition Date, the Debtors estimate that, inclusive of unpaid premiums and administrative expenses, approximately $35,000 is currently past due in connection with the Life Insurance.

01:17656478.1

iii.     *Disability Benefits*

30.     The Debtors also provide long-term and supplemental disability benefits to certain of their executives (collectively, the "**Disability Benefits**").  The long-term disability benefits are provided through USAble for Haggen Inc. and through Standard Insurance Company for Haggen North and Haggen South, while the short-term disability benefits are provided through USAble for Haggen Inc. and Ameriben for Haggen North and Haggen South.  These Disability Benefits cost the Debtors, in the aggregate, approximately $46,000 per month in premiums and administrative expenses.  As of the Petition Date, the Debtors estimate that, inclusive of unpaid premiums and administrative expenses, approximately $46,000 is currently past due in connection with the Disability Benefits.

## III.     UNION DUES, DEDUCTIONS, AND CONTRIBUTIONS

31.     As of the Petition Date, the Debtors, in the aggregate, employed approximately 8,700 Employees (collectively, the "**Union Employees**") under 58 collective bargaining agreements (each, a "**CBA**," and collectively, the "**CBAs**").  The Debtors withhold union dues (collectively, the "**Union Dues**") from the wages of the Union Employees and remit such funds to the unions.

32.     The estimated amount of unremitted Union Dues owed as of the Petition Date is approximately $71,000 in the aggregate in connection with the Haggen, Inc. CBAs, $91,000 in the aggregate in connection with the Haggen North CBAs, and $204,500 in the aggregate in connection with the Haggen South CBAs.  The Debtors believe that because unremitted Union Dues are held for payment to a third-party (i.e., the unions), they are properly deemed to be held in trust and, therefore, such amounts do not constitute property of the Debtors' estates.  Out of an abundance of caution, however, the Debtors seek authority, but not the

direction, from the Court to pay Union Dues in the ordinary course of business, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

33.     During each applicable pay period, as set forth above the Debtors also routinely deduct certain amounts from the Union Employees' pay for, among other things, deductions payable pursuant to certain of the Union Employees' benefit plans, including, without limitation, for health care benefits, insurance premiums, and 401(k) contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "**Union Deductions**"), and forward those amounts to various third-party recipients.  On average, the Debtors have historically deducted approximately $365,000 in the aggregate in Union Deductions from the Union Employees' pay per month.  Accordingly, the Debtors seek authority to continue to forward these prepetition Union Deductions to the applicable third-party recipients on a postpetition basis in the ordinary course of their business, as routinely done prior to the Petition Date.

34.     In addition, the Debtors are required by the CBAs[5] to contribute to certain union benefit plans, including union health and welfare funds, pension funds, apprentice training funds, and annuity funds (collectively, the "**Union Contributions**").   The Debtors seek authority, but not the direction, from the Court to pay Union Contributions in the ordinary course of business, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

## IV.    WORKERS' COMPENSATION PROGRAM

35.     The Debtors maintain workers' compensation insurance for the Employees at the statutorily-required level (the "**Workers' Compensation Policy**").  The aggregate annual

---

[5]  Nothing in the Motion or the Proposed Order is intended or shall be deemed to impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates under section 1113 of the Bankruptcy Code with respect to the CBAs.

premium for the Workers' Compensation Policy is approximately $1,250,000. Prior to the Petition Date, the Workers' Compensation Policy was renewed through February 2016. The aggregate amount of outstanding premiums under the Workers' Compensation Policy as of the Petition Date is approximately $190,000.

36.     Actual losses pursuant to the Workers' Compensation Policy are billed to the Debtors' workers' compensation carriers/third-party administrators (together, the "**Workers' Compensation Providers**"), and the Workers' Compensation Providers are subsequently reimbursed by the Debtors on a monthly basis. In connection with the Debtors' workers' compensation program (as described herein, the "**Workers' Compensation Program**"), the Debtors are required to post letters of credit in the approximate amount of $10,100,000. As of the Petition Date, the Workers' Compensation Providers are owed approximately $130,000 in the aggregate on account of the Workers' Compensation Program, which includes, among other things, amounts to be reimbursed by the Debtors for actual losses paid by the Workers' Compensation Providers and for related administrative expenses.

37.     To ensure that claims incurred under the Workers' Compensation Program are resolved, the Debtors must pay outstanding prepetition liabilities associated with the Workers' Compensation Program, as well as outstanding policy premiums under the Workers' Compensation Policy, as such amounts become due and owing. For the claims administration process in these chapter 11 cases to operate as efficient as is possible, and to ensure that the Debtors comply with state law requirements, the Workers' Compensation Program must continue in the ordinary course of business.

38.     Accordingly, the Debtors request authority, but not direction, in their discretion, to continue to maintain the Workers' Compensation Program in the ordinary course of

business, and to pay prepetition amounts related thereto, including, without limitation, outstanding premiums under the Workers' Compensation Policy and payments for workers' compensation claims, deductibles and fees for administrative costs and other amounts required in connection with the program, as such amounts become due in the ordinary course of the Debtors' business.

## BASIS FOR RELIEF

### I.      The Court Should Authorize, But Not Direct, the Debtors, In Their Discretion, To Pay or Otherwise Honor Employee Wages and Benefits

39.     The Debtors seek the relief requested herein because any delay in paying or otherwise honoring Employee Wages and Benefits could severely disrupt the Debtors' relationship with the Employees and irreparably impair the Employees' morale at a time when their continued dedication, confidence and cooperation are most critical to the Debtors and the success of these chapter 11 cases.  The Debtors face the risk that the success of these cases, their ability to operate their business without any unexpected or inopportune interruption, may be severely jeopardized if the Debtors are not immediately granted authority to pay Employee Wages and Benefits.

40.     Employees are crucial to the operation of a company's business and they are crucial to the success of a chapter 11 case.  The Debtors simply cannot risk the substantial disruption of their business and affairs that would, in all likelihood, accompany any decline in workforce morale attributable to the Debtors' failure to pay Employee Wages and Benefits in the ordinary course of business.  Absent the requested relief, the Employees would suffer great hardship and, in many instances, financial difficulties, since these monies are needed to enable them to meet their personal obligations.  Additionally, without the requested relief, the Debtors'

stability would be undermined by the potential threat that otherwise loyal Employees at all levels would seek other employment.

41.    Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services, for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor…

11 U.S.C. § 507(a)(4).

42.    Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)    for each such plan, to the extent of –
>
> > (i)    the number of employees covered by each such plan multiplied by $12,475; less
> >
> > (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

01:17656478.1

Id. at § 507(a)(5).

43.     The Debtors believe that the Unpaid Wages are entitled to priority status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, to the extent such wages do not exceed $12,475 per Employee.  The Debtors would therefore be required to pay these claims in full to confirm any chapter 11 plan.  See 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).  Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

44.     Moreover, the vast majority of the Employees rely exclusively on their full compensation or reimbursement of their wages or expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay Unpaid Wages and Reimbursable Expenses.  Additionally, the Debtors believe that if they are unable to honor such obligations, the morale and loyalty of the Employees will be jeopardized at a time when such support is critical to, among other things, their chapter 11 efforts and their ability to effectively prosecute these chapter 11 cases.

45.     Additionally, the Wage Deductions, Trust Fund Taxes, and Payroll Taxes principally represent portions of the Employees' pay that governments (in the case of the Trust Fund Taxes and Payroll Taxes), the Employees (in the case of the voluntary Wage Deductions), and certain authorities (in the case of the involuntarily Wage Deductions) have designated for deduction from the Employees' pay.  The Debtors' failure to pay these amounts could result in hardship to certain Employees and an administrative burden for the Debtors.  Indeed, the Debtors would expect inquiries from garnishors regarding any failure by the Debtors to submit, among

other things, child support and alimony payments that are not the Debtors' property but, rather, have been withheld from the Employees' pay on such parties' behalf. Moreover, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit such payments.

46.    The Employees are essential, among other things, to the orderly and successful prosecution of these chapter 11 cases and to avoid any unexpected or inopportune interruption of the Debtors' business operations. They have an intimate knowledge of the Debtors' infrastructure and operations, and any deterioration in the Employees' morale and welfare at this critical time undoubtedly would adversely impact the Debtors and the success of these cases.

47.    Finally, maintaining the Workers' Compensation Program is justified because applicable state law mandates this coverage. Furthermore, with respect to any claims related to the Workers' Compensation Program, the risk that eligible claimants will not receive timely payments with respect to employment-related injuries could have a devastating effect on the financial well-being and morale of the Employees and their willingness to remain in the Debtors' employ. Entry of the Proposed Order will alleviate any such concerns, as it will allow the Debtors to avoid any unexpected or inopportune interruptions to their business operations, and enable them to maximize the value of the estates for the benefit of all stakeholders.

48.    The Debtors also submit that relief similar to that requested herein is routinely approved in chapter 11 cases in this District. See, e.g., In re Trump Entm't Resorts, Inc., Case No. 14-12103 (KG) (Sept. 10, 2014); In re Source Home Entm't, LLC, Case No. 14-11553 (KG) (June 24, 2014); In re Quantum Foods, LLC, Case No. 14-10318 (KJC) (Feb. 20, 2014).

49.     For these reasons, the Debtors submit that the relief requested herein is necessary, prudent and in the best interests of the Debtors, their estates and creditors, and should therefore be granted.

## II.    The Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of Employee Wages and Benefits

50.     The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.   The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

51.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."   The Debtors believe that, among other things, the success of their chapter 11 efforts will require the continued focus and dedication of the Employees, as any deterioration in employee morale or significant loss in workforce will have an adverse impact on the Debtors' ability, among other things, to continue to operate their business without any unexpected or inopportune interruption and to successfully prosecute these chapter 11 cases. Thus, if the relief requested herein is not granted, the failure to satisfy the Employee Wages and

Benefits would cause the Debtors' estate immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' chapter 11 efforts.

52.    For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

53.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth throughout this Motion, any delay in paying the Employee Wages and Benefits would be detrimental to the Debtors, their estates and creditors. Indeed, the Debtors' ability to operate their business without any unexpected or inopportune interruption requires, in large part, an able and willing workforce, which the Debtors currently have in the Employees.

54.    For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Order.

## RESERVATION OF RIGHTS

55.    Nothing in the Proposed Order or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (iii) shall be construed as a promise to pay a claim.

01:17656478.1

## NOTICE

56.    Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; and (v) counsel to the Debtors' pre-petition and post-petition lenders. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

57.    The Debtors have not previously sought the relief requested herein from this or any other Court.

*Remainder of page intentionally left blank*

01:17656478.1

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 8, 2015               Respectfully submitted,
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (*pro hac vice* pending)
Sayan Bhattacharyya (*pro hac vice* pending)
Matthew G. Garofalo (*pro hac vice* pending)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*PROPOSED COUNSEL TO THE DEBTORS*
*AND DEBTORS-IN-POSSESSION*

01:17656478.1

# EXHIBIT A

## Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) Case No. 15-11874 (____) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. _____** |

**ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(4) AND 507(a)(5) OF THE BANKRUPTCY CODE, (A) AUTHORIZING (I) PAYMENT OF PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION; (II) REIMBURSEMENT OF PREPETITION EMPLOYEE BUSINESS EXPENSES; (III) CONTRIBUTIONS TO PREPETITION EMPLOYEE BENEFIT PROGRAMS AND CONTINUATION OF SUCH PROGRAMS IN THE ORDINARY COURSE; (IV) PAYMENT OF WORKERS' COMPENSATION OBLIGATIONS; (V) PAYMENTS FOR WHICH PREPETITION PAYROLL DEDUCTIONS WERE MADE; (VI) PAYMENT OF ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (VII) PAYMENT TO THIRD PARTIES OF ALL AMOUNTS INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (B) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "**Motion**")[2] of Haggen Holdings, LLC

and its above-captioned affiliated debtors and debtors in possession (collectively, the

"**Debtors**") for the entry of an order, pursuant to sections 105(a), 363(b), 507(a)(4) and

507(a)(5) of the Bankruptcy Code, (a) authorizing, but not directing, the Debtors, in

accordance with their stated policies and in their discretion, to pay, honor or otherwise satisfy

Employee Wages and Benefits, including amounts and obligations related to the period prior

to the Petition Date, and (b) authorizing the Banks to honor and process check and electronic

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to (i) pay, honor or otherwise satisfy amounts and obligations on account of Employee Wages and Benefits in the ordinary course of their business, including amounts and obligations related to the period prior to the Petition Date, and (ii) allow pre-petition checks on account of Unpaid Wages that were not cashed prior to the Petition Date to be honored on a post-petition basis notwithstanding the commencement of these chapter 11 cases; provided, however, that no payment to any Employee on account of Unpaid Wages (together with Paid Time Off) shall exceed, in the aggregate, the $12,475 statutory cap provided for under section 507(a)(4) of the Bankruptcy Code.

3.      Subject to Paragraph 2 of this Order, the Debtors are authorized, but not directed, in their discretion, in the ordinary course of their business, to (a) continue to pay, honor or otherwise satisfy Unpaid Wages, Reimbursable Expenses and Paid Time Off,

(b) withhold and remit to the applicable third-parties Wage Deductions, Trust Fund Taxes and Payroll Taxes, (c) continue to remit Union Dues and Union Deductions and make Union Contributions, and (d) administer Employee Benefits and the Workers' Compensation Program.

4.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

5.      Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

6.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

7.      The requirements of Bankruptcy Rule 6003(b) are satisfied.

8.      Notwithstanding anything to the contrary in this Order, any payment

made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor in possession financing facility and the use of cash collateral and any budget in connection therewith.

9.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

Dated:   September _____, 2015
             Wilmington, Delaware

_____

United States Bankruptcy Judge