**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 15-11874 (____) |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR AN ORDER, PURSUANT TO SECTIONS 105(a), 345, 363 AND 503(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2015 AND LOCAL RULE 2015-2, (A) AUTHORIZING AND APPROVING (I) CONTINUED USE OF CASH MANAGEMENT SYSTEM AND (II) USE OF PREPETITION BANK ACCOUNTS AND BUSINESS FORMS, (B) AUTHORIZING BANKS PARTICIPATING IN THE CASH MANAGEMENT SYSTEM TO HONOR CERTAIN TRANSFERS AND CHARGE CERTAIN AMOUNTS, (C) WAIVING THE REQUIREMENTS OF SECTION 345(b) ON AN INTERIM BASIS, (D) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY CLAIMS AND (E) GRANTING RELATED RELIEF**

Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors-in-possession (each a "**Debtor**," and collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), pursuant to sections 105(a), 345, 363 and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rule 2015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2(a) and (b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (a) approving the Debtors' continued use of (i) their current cash management system and (ii) the Debtors' existing bank accounts and business forms, including, authorizing the Debtors to open and close bank accounts; (b) authorizing, but not directing, all banks participating in the cash management system to honor certain transfers

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

and charge bank fees and certain other amounts; (c) authorizing the Debtors' deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith on an interim basis; (d) granting administrative expense status to post-petition intercompany claims; and (e) granting related relief. The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of Blake Barnett In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**").[2] In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 345, 363 and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2015 and Local Rule 2015-2(a) and (b).

## BACKGROUND

2. On September 8, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**01:17656568.1**

4. No request has been made for the appointment of a trustee or examiner and no official committee of creditors has been appointed in these chapter 11 cases.

5. Additional information about the Debtors' business, capital structure and the events leading up to the Petition Date are set forth in the First Day Declaration, which is incorporated herein by reference.

## THE DEBTORS' CASH MANAGEMENT SYSTEM

6. As described in the First Day Declaration, in the ordinary course of business, the Debtors utilize an integrated, centralized cash management system to efficiently collect, concentrate and disburse funds generated by their operations (the "**Cash Management System**"). The Cash Management System allows the Debtors to collect and disburse the cash generated by their business, pay their financial obligations, centrally control and monitor corporate funds and available cash, comply with the requirements of their financing agreements, reduce administrative expenses and efficiently obtain accurate financial data. Accordingly, any disruption to the Cash Management System would unnecessarily and significantly hinder the Debtors' complex day-to-day operations and impede the successful administration of their chapter 11 estates.

7. As of the Petition Date, the Debtors' Cash Management System is comprised of approximately 66 bank accounts at various financial institutions (the "**Bank Accounts**").[3] The depository bank accounts are predominantly maintained with PNC Bank and U.S. Bank, although accounts are also maintained at other banks (collectively, the "**Banks**").[4]

[3] A list and description of each of the Debtors' Bank Accounts is attached hereto as Exhibit B.

[4] The Debtors' Banks include: Bank of America, N.A. ("**Bank of America**"), BMO Harris Bank ("**BMO**"), Citizens Alliance, Solutran/Lake Region State Bank, PNC Bank ("**PNC**"), U.S. Bank ("**US Bank**") and Wells Fargo Bank, N.A. ("**Wells Fargo**").

8. As explained in further detail below, the Cash Management System operates in three phases. First, cash and other receivables generated from the Debtors' operations are deposited into various deposit accounts, which are designated by type of receipt and, in some instances, geographic location. Next, the cash is concentrated from the various accounts into a main concentration account. The final phase of the Cash Management System is disbursement. The Debtors maintain various disbursement accounts, which are designated by the type of disbursement.

9. Disbursements are initiated from various sources, as further described below. Haggen, Inc. has a separate cash disbursement system from Haggen North (as defined below) and Haggen South (as defined below). With respect to Haggen, Inc., the various disbursements are approved pursuant to an approval matrix. The Chief Financial Officer receives and reviews a daily list of electronic funds transfers and wire transfers, as well as a daily list of checks. The Chief Financial Officer must approve any and all transactions over $20,000, while the Controller at Haggen, Inc. has the authority to approve any and all transactions under $20,000. The Controller reviews and approves disbursements on Wednesdays and Fridays.

10. The disbursement process for Haggen North and Haggen South is similar to the process described above. However, the disbursements are processed through either the Oracle, the DSD system or the Albertson's legacy systems at Supervalu. Moreover, the Chief Financial Officer must approve any and all transactions over $10,000. The Vice President and Controller only has approval authority for disbursements up to $10,000. The Chief Financial Officer also receives a daily list of electronic funds transfers and wire transfers, as well as a daily list of checks, before they are approved. Payments are generated on a daily basis.

**A. <u>Receipts</u>**

(i) *<u>Haggen North and Haggen South</u>*

11. The funds generated by the operations of the stores owned by Haggen OpCo North, LLC ("**Haggen North**") and Haggen OpCo South, LLC ("**Haggen South**") are initially deposited into various accounts, depending upon the source of the deposited funds. Haggen North and Haggen South maintain separate accounts for cash deposits, credit card deposits, check deposits, pharmacy receipts and prescription payments by Medicare/Medicaid (collectively, the "**Opco Deposit Accounts**"). At least once per day, the funds in the Opco Deposit Accounts are transferred into a PNC bank account, ending in 1634, held by Haggen Operations Holdings, LLC (the "**PNC Master Concentration Account**").

(ii) *<u>Haggen, Inc.</u>*

12. The funds generated by the Haggen, Inc. stores are also deposited into various accounts depending upon the source of the funds. Separate deposit accounts are maintained, designated primarily by location, for cash payments, check payments, credit card receipts and pharmacy receipts (collectively, the "**Haggen Deposit Accounts**"). As more fully described below, all funds are ultimately transferred into the PNC Master Concentration Account.

13. Credit card payments received by the Haggen, Inc. stores are deposited into a PNC bank account, ending in 5117, held by Haggen, Inc. and then transferred to the PNC Master Concentration Account.

14. Similarly, pharmacy receipts by the Haggen, Inc. stores (other than credit card payments discussed in the prior paragraph) are deposited into a BMO bank account, ending in 0401, held by Haggen, Inc. and then transferred to a secured account (the "**Haggen, Inc.**

**Secured Account**"). From the Haggen, Inc. Secured Account, the funds are transferred to the PNC Master Concentration Account.

15. Cash and checks received by the stores owned by Haggen, Inc. (other than pharmacy receipts) are deposited into the accounts set forth on Exhibit C hereto (the "**Haggen, Inc. Deposit Accounts**"). The funds in the Haggen, Inc. Deposit Accounts are then transferred to a bank account at US Bank, ending in 3045 (the "**US Bank Master Account**"). From the US Bank Master Account, the funds are transferred to another account at US Bank, ending in 6123 (the "**US Bank Concentration Account**") and then to the PNC Master Concentration Account.

**B. Other Accounts**

16. In addition to the above referenced bank accounts, Haggen, Inc. maintains a bank account at US Bank, ending in 5178, solely for the purpose of holding a $4,500 deposit for the City of Bellingham. Haggen Holdings, LLC also maintains a standalone account at US Bank for the purpose of transferring cash between operating entities.

**C. Disbursements**

17. Each morning, PNC sweeps the PNC Master Concentration Account for application to the outstanding PNC loan balance.

18. On a daily basis, the Debtors submit a draw request to PNC for the amounts that the Debtors calculate will be needed for daily disbursements. PNC then funds the account from the line of credit maintained by the Debtors with PNC (the "**PNC Credit Line**") into a PNC bank account, ending in 1626, held by Haggen Operations Holdings, LLC (the "**PNC Master Disbursement Account**").

19. From the PNC Master Disbursement Account, funds are transferred in the ordinary course of business to other disbursement accounts reflected on Exhibit D hereto (the "**Disbursement Accounts**") for the payment of various operating expenses. A variety of

Disbursement Accounts are maintained for recurring payments the Debtors make in the ordinary course of business, including payments of state and local taxes, electronic payments for operating expenses, payments by check to vendors, payroll checks, payroll payments made by direct deposits, payments to lottery agencies and electronic and check payments to liquor suppliers.

## RELIEF REQUESTED

20. By this Motion, the Debtors request the Court enter the Proposed Order: (a) approving the Debtors' continued use of (i) their current cash management system and (ii) their existing bank accounts and business forms, including, authorizing the Debtors to open and close bank accounts; (b) authorizing, but not directing, all banks participating in the Cash Management System to honor certain transfers and charge Bank Fees (as defined below) and certain other amounts; (c) authorizing the Debtors' deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith on an interim basis; (d) granting administrative expense status to post-petition intercompany claims; and (e) granting related relief.

## BASIS FOR RELIEF

### A. The Court Should Authorize the Debtors' Uninterrupted Use of Their Existing Cash Management System

21. The Debtors seek authority to continue utilizing their current Cash Management System, as described above. It is critical that the Debtors be able to consolidate management of cash and centrally coordinate transfers of such funds in order to efficiently and effectively operate their business. In particular, given the significant volume of cash transactions processed through the Cash Management System each day, it is crucial to maintain the Cash Management System in its current state. Maintenance of the existing Cash Management System

will prevent any unexpected or inopportune interruption to the Debtors' business operations, while protecting the Debtors' cash for the benefit of their estates. Conversely, requiring the Debtors to change their Cash Management System at this critical time would cause unnecessary disruption to the Debtors and their business affairs.

*(i) The Debtors' Continued Use of Existing Bank Accounts is Necessary*

22. As described above, the Debtors' Cash Management System is comprised of approximately 66 bank accounts that are utilized on a regular basis. The Debtors maintain each of their respective Bank Accounts at financial institutions insured by the Federal Deposit Insurance Corporation (the "**FDIC**"). The Cash Management System utilizes these Bank Accounts to effectively and efficiently collect, transfer and disburse funds as needed in the Debtors' general business operations.

23. The Cash Management System provides significant benefits to the Debtors, including the ability to: (i) closely track, and thus control, all corporate funds; (ii) ensure cash availability; and (iii) reduce administrative expenses by facilitating the movement of funds. A disruption in the Cash Management System could cause delays in the collection and disbursement of funds, thus impeding the Debtors' ability to avoid an harmful interruption in their operations during the pendency of these chapter 11 cases. Furthermore, the Debtors' chapter 11 cases will be facilitated by preserving the "business as usual" atmosphere and avoiding the distractions that would inevitably be associated with a substantial disruption in the Cash Management System.

24. The Debtors believe that only if the Bank Accounts are continued in their current form can the Debtors proceed through the chapter 11 process in an efficient and cost effective manner. Without the requested relief, the Debtors will suffer significant harm from the almost complete operational paralysis that would result from having to adopt new cash

management systems and open new bank accounts. Accordingly, to avoid substantial disruption to the normal operation of their business, the Debtors request that they be permitted to continue to use their Bank Accounts with the same account numbers.

25. The Debtors will ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court. The Debtors will also maintain records of post-petition transfers within the Cash Management System, so that transfers and transactions will be documented in their books and records to the same extent such information was maintained by the Debtors prior to the Petition Date.

26. The Debtors further request that their Banks be authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the applicable Debtor as debtor-in-possession without interruption. Absent this relief, the United States Trustee established guidelines would require the Debtors to close all of their prepetition bank accounts and open new accounts. Allowing the Debtors to continue to use their prepetition bank accounts will assist the Debtors in accomplishing a smooth transition to operating as debtors-in-possession.

27. The Debtors also seek authority to implement ordinary course changes to their Cash Management System as the Debtors may determine that such changes in the Cash Management System are beneficial to their business. As part of these ordinary course changes, the Debtors request authority to open and close bank accounts. The Debtors request that the Banks be authorized, but not directed, to honor the Debtors' requests to open or close any bank accounts.

*(ii) The Debtors Continued Use of Their Existing Business Forms is Necessary*

28. In the ordinary course of their businesses, the Debtors use a multitude of checks and other business forms, including, but not limited to, letterhead, purchase orders, and invoices (collectively, the "**Business Forms**"). By virtue of the nature and scope of the Debtors' business operations and the large number of suppliers of goods and services with whom the Debtors deal on a regular basis, it is important that the Debtors be permitted to continue to use their existing checks and other Business Forms without alteration or change. Pursuant to Local Rule 2015-2(a), and to avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they not be required to include the legend "Debtor-in-Possession" and the corresponding bankruptcy case number on any existing Business Forms or checks.

29. As parties that presently conduct business with the Debtors likely will be aware of the Debtors' status as debtors-in-possession, the alteration of the Debtors' checks and Business Forms would be unnecessary and unduly burdensome. Further, this Court has allowed the Debtors to use their prepetition business and check forms without the "Debtor-in-Possession" label in other large cases. See, e.g., In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. Jul. 23, 2013) (the "**OnCure Order**"); In re AFA Investment Inc., Case No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012) (the "**AFA Investment Order**"); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011) (the "**Harry & David Order**").

**B. The Court Should Grant the Debtors a Waiver of the U.S. Trustee Guidelines**

30. The Debtors further request from the Court a waiver of certain bank account and related requirements (including, without limitation, the operating guidelines

established by the U.S. Trustee that require debtors to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts and to provide new business forms and stationary) of the United States Trustee to the extent that such requirements are inconsistent with (i) the Debtors' practices in connection with their Cash Management System or (ii) any action taken by the Debtors in accordance with any order granting the relief requested in this Motion or any other order entered in these chapter 11 cases.

31. As described above, the Debtors' ability to continue their Cash Management System in the ordinary course of their business is essential to their operations. In light of the substantial size and complexity of the Debtors' operations, any disruption in the Debtors' cash management procedures will hamper the Debtors' efforts to preserve and enhance the value of their estates.

32. The Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The relief requested herein is both necessary and appropriate to allow the Debtors to successfully administer these chapter 11 cases, to optimize their post-petition business performance and to maximize the value of their estates.

33. Accordingly, the Debtors request that the Court waive the strict enforcement of the requirement that the Debtors open new bank accounts. The Debtors further request that their existing Bank Accounts be deemed debtor-in-possession accounts and that the Debtors be authorized to maintain and continue using these accounts in the same manner and

with the same account numbers, styles and document forms as those employed during the prepetition period.

34. A centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992). The Third Circuit agreed, stating that requiring the maintenance of all accounts separately "would be a huge administrative burden and economically inefficient." In re Columbia Gas Sys, Inc., 997 F.2d 1039, 1061 (3d Cir.1993).

35. Bankruptcy courts, including courts in this District, routinely permit chapter 11 debtors to maintain their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." See, e.g., OnCure Order (allowing debtors to continue their existing cash management system on a postpetition basis); AFA Investment Order (same); Harry & David Order (same); see also In re Columbia Gas Sys., 997 F.2d at 1061 (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code). Courts in this circuit have recognized that allowing a debtor to maintain existing cash management systems is often appropriate. See, e.g., In re Genesis Health Ventures, Inc., 402 F.3d 416, 424 (3d Cir. 2005); In re Kindred Healthcare, Inc., 2003 WL 22327933, at *1 (Bankr. D. Del. Oct. 9, 2003); In re Columbia Gas Sys., 997 F.2d at 1061 (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

36. Finally, the Debtors submit that relief similar to that requested herein is routinely approved in chapter 11 cases in this District. See, e.g., In re Source Home Entertainment, LLC, Case No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014) (the "**Source Home Order**"); In re Natrol, Inc., Case No. 14-11446 (BLS) (Bankr. D. Del. June 23, 2014) (the "**Natrol Order**"); In re Orchard Supply Hardware Stores Corp., Case No. 13-11565 (CSS) (Bankr. D. Del. June 18, 2013) (the "**Orchard Supply Order**").

**C. The Court Should Authorize Banks Participating in the Cash Management System to Honor Certain Transfers and Charge Bank Fees and Certain Other Amounts**

37. Contemporaneously with the filing of this Motion, the Debtors have filed various motions for authorization to pay certain prepetition debt. With respect to some of this debt, prior to the Petition Date, the Debtors issued checks that have yet to clear the banking system. With respect to other debt, the Debtors intend to issue checks postpetition on account of such prepetition debt once the Court enters an order permitting the Debtors to take such action. The Debtors intend to inform their Banks of which prepetition checks the Banks should honor pursuant to orders of the Court authorizing such payment.

38. As a result of the foregoing, the Debtors request the Banks be authorized, but not directed, to accept and honor all representations from the Debtors as to which checks, drafts, wires or automated clearing house transfers ("**ACH Transfers**") should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date. Pursuant to the relief requested in this Motion, the Banks will not be liable to any party on account of (i) following the Debtors' instructions or representations as to any order of this Court, (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (iii) an innocent mistake made despite

implementation of reasonable item-handling procedures. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

39. Finally, the Debtors request authority for the Banks to charge and the Debtors to pay or honor both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "**Bank Fees**"). The Debtors also request the Banks be authorized, but not directed, to charge back returned items to the Bank Accounts in the normal course of business.

40. The Debtors require this relief to minimize the disruption of the Cash Management System and their Bank Accounts and to assist them in accomplishing a smooth transition to operating in chapter 11. Authority for debtors to pay Bank Fees and banks to charge back returned items has been routinely granted in other chapter 11 cases. See, e.g., OnCure Order; AFA Investment Order; Harry & David Order.

**D. The Court Should Waive the Deposit Requirements of Section 345(b) of the Bankruptcy Code on an Interim Basis**

41. The Debtors request that the Court waive the requirements of section 345(b) of the Bankruptcy Code on an interim basis and permit them to maintain their deposits in their accounts in accordance with their existing deposit practices until such time as the Debtors obtain the Court's approval to deviate from the guidelines imposed under section 345(b) of the Bankruptcy Code on a final basis, to the extent necessary.

42. Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or

investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b).

43. A court may, however, relieve a debtor-in-possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause." 11 U.S.C. § 345(b). Local Rule 2015-2(b) provides that if a motion for a waiver of the restrictions imposed by section 345(b) "is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held." Del. Bankr. L.R. 2015-2(b). As this Motion is being filed on the Petition Date and the Debtors have in excess of 200 creditors, the Debtors request that the Court enter an order waiving, on an interim basis, for a period of sixty (60) days from the Petition Date, the requirements of section 345(b) of the Bankruptcy Code.

44. The Debtors believe that they are in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code because most, if not all, of the Bank Accounts are maintained at U.S. Trustee-approved depository institutions. Nevertheless, out of an abundance of caution, the Debtors request an interim waiver of the requirements of section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtors' current practices. Given the complexity of the Debtors' Cash Management System and the relative security of the Cash Management System, the Debtors submit that cause exists to grant an interim waiver of the requirements of section 345(b) in the manner requested herein.

45. Finally, the Debtors submit that relief similar to that requested herein is routinely approved in chapter 11 cases in this District. See, e.g., Source Home Order; Natrol Order; Orchard Supply Order.

**E. The Court Should Provide Administrative Priority Status to Post-Petition Intercompany Claims**

46. To facilitate operations, the Debtors engage in intercompany transactions and transfers (collectively, the "**Intercompany Transfers**"). The Intercompany Transfers may result in intercompany receivables and payables (collectively, the "**Intercompany Claims**").

47. To ensure that each individual Debtor will not, at the expense of its own creditors, fund the operations of an affiliated entity, the Debtors respectfully request that the Court, pursuant to section 503(b)(1) of the Bankruptcy Code, authorize the Debtors to treat Intercompany Claims arising after the Petition Date in the ordinary course of business as administrative expenses. If the Court authorizes the Debtors to treat Intercompany Claims as administrative expenses, then each entity utilizing funds flowing through the Cash Management System and receiving services through intercompany arrangements should continue to bear the ultimate repayment responsibility for such ordinary course transactions and their related share of the cost of services provided.

48. The Debtors track all fund transfers and can ascertain, trace, and account for the Intercompany Transfers as needed. If the Intercompany Transfers were to be discontinued, the Cash Management System and the Debtors' operations could be unnecessarily disrupted to the detriment of the Debtors and their creditors and other stakeholders.

49. For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

**SATISFACTION OF BANKRUPTCY RULE 6003(b)**
**AND WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

50. Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek immediate entry of an order granting the Debtors (i) the authority to continue to pay the Bank Fees and (ii) a waiver of any stay of the effectiveness of such an order.

51. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to pay all or part of a claim that arose before the filing of the petition". Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

52. The continued use of the Bank Accounts, Cash Management System and Business Forms, and the payment of Bank Fees are necessary to prevent the immediate and irreparable damage to the Debtors' operations. Accordingly, the Debtors submit that ample cause exists to justify: (i) the immediate entry of an order granting the relief sought herein pursuant to Bankruptcy Rule 6003(b) and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**NOTICE**

53. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest

unsecured creditors; and (v) counsel to the Debtors' pre-petition and post-petition lenders. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

54. The Debtors have not previously sought the relief requested herein from this or any other Court.

**CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 9, 2015
Wilmington, Delaware

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*

Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (*pro hac vice* pending)
Sayan Bhattacharyya (*pro hac vice* pending)
Matthew G. Garofalo (*pro hac vice* pending)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*PROPOSED COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION*

# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 15-11874 (____) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Docket No. _____** |

**ORDER, PURSUANT TO SECTIONS 105(a), 345, 363 AND 503(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2015 AND LOCAL RULE 2015-2, (A) AUTHORIZING AND APPROVING (I) CONTINUED USE OF CASH MANAGEMENT SYSTEM AND (II) USE OF PREPETITION BANK ACCOUNTS AND BUSINESS FORMS, (B) AUTHORIZING BANKS PARTICIPATING IN THE CASH MANAGEMENT SYSTEM TO HONOR CERTAIN TRANSFERS AND CHARGE CERTAIN AMOUNTS, (C) WAIVING THE REQUIREMENTS OF SECTION 345(b) ON AN INTERIM BASIS, (D) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY CLAIMS AND (E) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") for the entry of an order, pursuant to sections 105(a), 345, 363 and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2015 and Local Rule 2015-2, (a) approving the Debtors' continued use of (i) their current Cash Management System and (ii) the Debtors' existing bank accounts and business forms, including, authorizing the Debtors to open and close bank accounts; (b) authorizing, but not directing, all banks participating in the Cash Management System to honor certain transfers and charge bank fees and certain other amounts; (c) authorizing the Debtors' deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith on an interim basis; (d) granting administrative expense status to post-petition intercompany

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

claims and (e) granting related relief; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized in the reasonable exercise of their business judgment, to: (i) designate, maintain and continue to use, with the same account numbers, all of their Bank Accounts in existence on the Petition Date (including, without limitation, those bank accounts identified on Exhibit B to the Motion); (ii) use, in their present form, any and all checks and other documents related to the Bank Accounts; (iii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as used prior to the Petition Date; (iv) implement ordinary course changes to their Cash Management System; and (v) open new bank accounts or close any of the Bank Accounts as the Debtors may deem necessary and appropriate; provided, however, that prior to opening any new bank accounts or closing any of the Bank Accounts, the Debtors shall provide notice of the Debtors' intentions with respect thereto, within three (3) days, to (i) the U.S. Trustee; (ii) DIP

Agent[3]; and (iii) counsel for any official committee appointed in these cases; provided, further, however, that the Debtors shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement (a "**UDA**") with the U.S. Trustee, or at such banks that are willing to promptly execute such an agreement. Any new domestic bank account opened by the Debtors shall be established at an institution insured by the FDIC or the Federal Savings and Loan Insurance Corporation and that is organized under the laws of the United States or any State therein, or in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, on the list of authorized bank depositories for the District of Delaware.

3. Subject to the protections provided to the Banks in Paragraph 6 of this Order, the Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the applicable Debtor as debtor-in-possession without interruption, and in the ordinary course in a manner consistent with any agreements between the Bank and the applicable Debtor that existed prior to the Petition Date, and to receive, process, honor and pay any and all checks, drafts, wires, ACH Transfers or other electronic transfer requests issued, payable through, or drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof or other parties entitled to issue instructions with respect thereto, as the case may be; provided, however, that no checks issued against the Bank Accounts prior to the commencement of these chapter 11 cases shall be honored, except as otherwise authorized by an order of this Court and directed by the Debtors.

4. Subject to the protections provided to the Banks in Paragraph 6 of this Order, except for those that comply with an order of this Court authorizing payment of certain

[3] As defined in the *Debtors' Motion For Order (i) Authorizing Post-Petition Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Priority, (iii) Authorizing Use Of Cash Collateral And Providing for Adequate Protection, and (iv) Modifying the Automatic Stay, Pursuant to Sections 105, 361, 362, 363, 364 and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014.*

prepetition claims, no checks, drafts, wires, or other electronic transfer requests drawn, issued, or requested on the Bank Accounts before the Petition Date but presented for payment after the Petition Date shall be honored or paid.

5. The operation of the Cash Management System in accordance with the Debtors' normal and customary practice is adequate and sufficient and may be continued on and after the Petition Date.

6. The Banks are authorized, but not directed, to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on, or subsequent to the Petition Date. The Banks shall not be liable to any party on account of: (i) following the Debtors' instructions or representations as to any order of this Court; (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures.

7. The Debtors are authorized to continue to use all their checks, correspondence and Business Forms existing immediately before the Petition Date without reference to the Debtors' status as debtors-in-possession; provided, however, that upon the depletion of any pre-printed check stock and other business forms, the Debtors will obtain new check stock and business forms reflecting their status as debtors-in-possession; provided, further, however, that with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing "Debtor-in-Possession" or "DIP" on such items within ten (10) days of the date of the entry of this Order.

8. For the Banks at which the Debtors hold Bank Accounts that are party to a UDA with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order, the Debtors shall: (i) contact each Bank; (ii) provide such Bank with each of the Debtors' employer identification numbers; and (iii) identify each of their Bank Accounts being held at such Banks as being held by a debtor-in-possession in a bankruptcy case.

9. With regard to Banks that are not a party to a UDA with the U.S. Trustee, within sixty (60) days from the date of the entry of this Order, the Debtors shall use their good-faith efforts to cause the bank to execute a UDA in a form prescribed by the U.S. Trustee. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a UDA in a form prescribed by the U.S. Trustee are fully reserved.

10. The requirements of section 345(b) of the Bankruptcy Code are waived on an interim basis for a period of sixty (60) days from the Petition Date, such that the Debtors are hereby permitted to maintain their deposits in their Bank Accounts in accordance with their existing deposit practices. This Order shall be without prejudice to the Debtors' rights to seek a further interim waiver from this Court of such requirements or to seek approval from this Court to deviate from such requirements on a final basis.

11. The Banks are hereby authorized to debit from the Bank Accounts ordinary course of business Bank Fees and charges without further order of this Court, provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided further that nothing set forth herein shall authorize any of the Banks to

debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

12. Within five (5) business days from the date of the entry of this Order, the Debtors shall (i) serve a copy of this Order on each Bank and (ii) request that each Bank internally code each of the Bank Accounts as "debtor-in-possession" accounts.

13. The Debtors are authorized on and after the Petition Date to engage in Intercompany Transfers in a manner consistent with their practices prior to the Petition Date; provided, however, that the Debtors may not make any intercompany transfers to non-debtor affiliates or subsidiaries absent further order of this Court. Intercompany Claims are hereby granted administrative expense status pursuant to section 503(b)(1) of the Bankruptcy Code.

14. The Debtors shall, in the ordinary course of business, maintain accurate and detailed records of all transfers, including Intercompany Transfers, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between pre-petition and post-petition transactions.

15. Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates or (c) shall be construed as a promise to pay a claim.

16. Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6)

based on the disbursements of each particular Debtor, regardless of which Debtor remits payment for those disbursements.

17. The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

18. The requirements of Bankruptcy Rule 6003(b) are satisfied.

19. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

20. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: September _____, 2015
Wilmington, Delaware

________________________________________
United States Bankruptcy Judge

# EXHIBIT B

## List of Debtors' Bank Accounts

**DEBTORS' BANK ACCOUNTS**

| Account Holder | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| Haggen Holdings, LLC | U.S. Bank | 8804 | Stand Alone Account |
| Haggen Opco North, LLC | PNC | 2725 | Pharmacy Receipts |
| Haggen Opco North, LLC | PNC | 1562 | EPS Deposits |
| Haggen Opco North, LLC | PNC | 1677 | Cash Deposits |
| Haggen Opco North, LLC | PNC | 4253 | RX Medicare/Medicaid |
| Haggen Opco North, LLC | Wells Fargo | 7563 | Solutran |
| Haggen Opco North, LLC | Citizens Alliance | 5617 | Solutran - Store Check Depository |
| Haggen Opco North, LLC | U.S. Bank | 9056 | Cash Deposits |
| Haggen Opco North, LLC | Bank of America | 9224 | Liquor Distribution |
| Haggen Opco South, LLC | PNC | 1642 | EPS Deposits |
| Haggen Opco South, LLC | PNC | 2717 | Pharmacy Receipts |
| Haggen Opco South, LLC | PNC | 1685 | Cash Deposits |
| Haggen Opco South, LLC | PNC | 4245 | RX Medicare/Medicaid |
| Haggen Opco South, LLC | Wells Fargo | 7571 | Solutran |
| Haggen Opco South, LLC | Citizens Alliance | 5633 | Solutran - Store Check Depository |
| Haggen Opco South, LLC | U.S. Bank | 6064 | Cash Deposits |
| Haggen Opco South, LLC | Bank of America | 9465 | Liquor Distribution |
| Haggen Operations Holdings, LLC | BMO Harris Bank | 9712 | Secured Account |
| Haggen Operations Holdings, LLC | BMO Harris Bank | 4936 | Payroll Account |
| Haggen Operations Holdings, LLC | PNC | 1634 | Master Concentration Account |
| Haggen Operations Holdings, LLC | U.S. Bank | 5087 | Misc. Check Receipts |
| Haggen Operations Holdings, LLC | PNC | 1618 | State & Local Tax |
| Haggen Operations Holdings, LLC | PNC | 1589 | Liquor |
| Haggen Operations Holdings, LLC | PNC | 1597 | Lottery |
| Haggen Operations Holdings, LLC | Bank of America | 9200 | Payroll |
| Haggen Operations Holdings, LLC | Bank of America | 9205 | Payroll |
| Haggen Operations Holdings, LLC | Bank of America | 7860 | Disbursement Master |
| Haggen Operations | PNC | 1626 | Disbursement Account |

| Account Holder | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| Holdings, LLC | | | |
| Haggen Operations Holdings, LLC | U.S. Bank | 5079 | Operating Expenses |
| Haggen Operations Holdings, LLC | Wells Fargo | 5570 | Payroll Direct Deposit |
| Haggen, Inc. | BMO Harris Bank | 0401 | Pharmacy Account |
| Haggen, Inc. | BMO Harris Bank | 9720 | Operating Account |
| Haggen, Inc. | BMO Harris Bank | 5099 | Liquor |
| Haggen, Inc. | BMO Harris Bank | 5178 | City of Bellingham |
| Haggen, Inc. | BMO Harris Bank | 5228 | Liquor |
| Haggen, Inc. | BMO Harris Bank | 4985 | Operating Expenses |
| Haggen, Inc. | BMO Harris Bank | 5123 | Coinstar and Coupon Inflows |
| Haggen, Inc. | PNC | 5117 | EPS Deposits |
| Haggen, Inc. | U.S. Bank | 6123 | Concentration Account |
| Haggen, Inc. | U.S. Bank | 3045 | FPP Master Account |
| Haggen, Inc. | U.S. Bank | 6131 | Store Purchase Account |
| Haggen, Inc. | U.S. Bank | 3052 | Corporate OFC |
| Haggen, Inc. | U.S. Bank | 3060 | Return Items |
| Haggen, Inc. | U.S. Bank | 3078 | Meridian Store No. 11 |
| Haggen, Inc. | U.S. Bank | 3644 | Burlington Store No. 15 |
| Haggen, Inc. | U.S. Bank | 3750 | NWF Store No. 17 |
| Haggen, Inc. | US Bank | 1117 | Fairhaven Market Store No. 25 |
| Haggen, Inc. | US Bank | 3169 | Olympia Store No. 29 |
| Haggen, Inc. | US Bank | 3094 | 36th St Store No. 43 |
| Haggen, Inc. | US Bank | 3768 | Puyallup Top Foods Store No. 47 |
| Haggen, Inc. | US Bank | 3102 | Woburn Store No. 53 |
| Haggen, Inc. | US Bank | 3677 | Stanwood Store No. 55 |
| Haggen, Inc. | US Bank | 3792 | Snohomish Store No. 57 |
| Haggen, Inc. | US Bank | 3128 | Tualatin Store No. 61 |
| Haggen, Inc. | US Bank | 3136 | Ferndale Store No. 63 |
| Haggen, Inc. | US Bank | 3818 | Woodinville Store No. 67 |
| Haggen, Inc. | US Bank | 3669 | Mount Vernon Store No. 69 |
| Haggen, Inc. | US Bank | 3651 | Lake Stevens Store No. 71 |
| Haggen, Inc. | US Bank | 3144 | Cordata Pharmacy Store No. |

| Account Holder | Bank | Last Four Digits of Account No. | Description |
|---|---|---|---|
| | | | 73 |
| Haggen, Inc. | US Bank | 3727 | Grays Harbor Top Foods Store No. 75 |
| Haggen, Inc. | US Bank | 3776 | Marysville Store No. 77 |
| Haggen, Inc. | US Bank | 3151 | Oregon City Store No. 79 |
| Haggen, Inc. | US Bank | 2980 | Arlington Store No. 23 |
| Haggen, Inc. | US Bank | 3701 | Edmonds Top Foods Store No. 45 |
| Haggen, Inc. | US Bank | 8248 | Haggen Catering 921 |
| Haggen, Inc. | Lake Region Bank | 6526 | Return Items – WIC & Checks |

# EXHIBIT C

## Haggen, Inc. Deposit Accounts

**HAGGEN, INC. DEPOSIT ACCOUNTS**

| Account Holder | Bank | Last Four Digits of Account No. | Source of Funds |
|---|---|---|---|
| Haggen, Inc. | U.S. Bank | 3060 | Return Items |
| Haggen, Inc. | U.S. Bank | 3078 | Meridian Store No. 11 |
| Haggen, Inc. | U.S. Bank | 3644 | Burlington Store No. 15 |
| Haggen, Inc. | U.S. Bank | 3750 | NWF Store No. 17 |
| Haggen, Inc. | U.S. Bank | 1117 | Fairhaven Market Store No. 25 |
| Haggen, Inc. | U.S. Bank | 3169 | Olympia Store No. 29 |
| Haggen, Inc. | U.S. Bank | 3094 | 36th St. Store No. 43 |
| Haggen, Inc. | U.S. Bank | 3768 | Puyallup Top Foods Store No. 47 |
| Haggen, Inc. | U.S. Bank | 3102 | Woburn Store No. 53 |
| Haggen, Inc. | U.S. Bank | 3677 | Stanwood Store No. 55 |
| Haggen, Inc. | U.S. Bank | 3792 | Snohomish Store No. 57 |
| Haggen, Inc. | U.S. Bank | 3128 | Tualatin Store No. 61 |
| Haggen, Inc. | U.S. Bank | 3136 | Ferndale Store No. 63 |
| Haggen, Inc. | U.S. Bank | 3818 | Woodinville Store No. 67 |
| Haggen, Inc. | U.S. Bank | 3669 | Mount Vernon Store No. 69 |
| Haggen, Inc. | U.S. Bank | 3651 | Lake Stevens Store No. 71 |
| Haggen, Inc. | U.S. Bank | 3144 | Cordata Pharmacy Store No. 73 |
| Haggen, Inc. | U.S. Bank | 3727 | Grays Harbor Top Foods Store No. 75 |
| Haggen, Inc. | U.S. Bank | 3776 | Marysville Store No. 77 |
| Haggen, Inc. | U.S. Bank | 3151 | Oregon City Store No. 79 |
| Haggen, Inc. | U.S. Bank | 2980 | Arlington Store No. 23 |
| Haggen, Inc. | U.S. Bank | 3701 | Edmonds Top Foods Store No. 45 |
| Haggen, Inc. | U.S. Bank | 8248 | Haggen Catering 921 |
| Haggen, Inc. | Lake Region Bank | 6526 | Return Items – WIC & Checks |
| Haggen, Inc. | U.S. Bank | 3052 | Corporate OFC (corp. office manual deposits) |
| Haggen, Inc. | BMO Harris Bank | 5123 | Coinstar and Coupon Inflows |

**EXHIBIT D**

**Disbursement Accounts**

## DISBURSEMENT ACCOUNTS

<table>
<tr><th>Account Holder</th><th>Bank</th><th>Last Four Digits Of Account No.</th><th>Disbursements</th></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>PNC</td><td>1618</td><td>Payment of state and local taxes</td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>PNC</td><td>1597</td><td>Payment of lottery agencies in connection with tickets purchased by customers</td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>PNC</td><td>1589</td><td>Electronic payments for liquor purchases</td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>Bank of America</td><td>7860</td><td>Transferred to the following Bank of America accounts for further disbursement as follows:
<table>
<tr><th>Acct Holder</th><th>No.</th><th>Purpose of Account</th></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>9200</td><td>Issuing checks to vendors for accounts payable</td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>9205</td><td>Issuing payroll checks for all Haggen North and Haggen South employees</td></tr>
<tr><td>Haggen Opco North, LLC</td><td>9224</td><td>Liquor payments made by check (cash on delivery) from Haggen North stores</td></tr>
<tr><td>Haggen Opco South, LLC</td><td>9465</td><td>Liquor payments made by check (cash on delivery) from Haggen North stores</td></tr>
</table></td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>U.S. Bank</td><td>5079</td><td>Electronic payments for operating expenses</td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>Wells Fargo</td><td>5570</td><td>Payroll made by direct deposit</td></tr>
<tr><td>Haggen, Inc.</td><td>BMO Harris Bank</td><td>9720</td><td>Further disbursement to the following accounts for disbursement as follows:
<table>
<tr><th>Acct Holder</th><th>No.</th><th>Purpose of Account</th></tr>
<tr><td>Haggen, Inc.</td><td>5099</td><td>Electronic liquor payments</td></tr>
<tr><td>Haggen, Inc.</td><td>5228</td><td>Liquor payments by check from Haggen distribution center</td></tr>
<tr><td>Haggen, Inc.</td><td>6131</td><td>COD checks for liquor at stores</td></tr>
<tr><td>Haggen, Inc.</td><td>4985</td><td>Operating expenses paid by check</td></tr>
<tr><td>Haggen, Inc.</td><td>5123</td><td>Electronic payments (other than liquor); some electronic deposit activity</td></tr>
<tr><td>Haggen Operations Holdings, LLC</td><td>4936</td><td>Funding of payroll</td></tr>
</table></td></tr>
</table>