## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | Case No. 15-11874 (____) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION (1) FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO SECTIONS 105(a), 363(b), 503(b), 1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS (A) ARISING UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT AND THE PACKERS AND STOCKYARDS ACT OF 1921, (B) OF LIEN VENDORS, AND (C) OF CRITICAL VENDORS AND SERVICE PROVIDERS, (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO, AND (III) GRANTING CERTAIN RELATED RELIEF, AND (2) FOR ENTRY OF A FINAL ORDER, PURSUANT TO SECTIONS 105(a) AND 503(b)(9) OF THE BANKRUPTCY CODE, ESTABLISHING EXCLUSIVE PROCEDURES FOR THE ASSERTION, RESOLUTION, ALLOWANCE AND SATISFACTION OF CLAIMS ARISING UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this motion (this "**Motion**") for the entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the "**Proposed Interim Order**") and Exhibit B (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), respectively, pursuant to sections 105(a), 363(b), 503(b), 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business: (a) prepetition claims arising under the Perishable Agricultural Commodities Act of 1930 (as amended, modified or supplemented from time to time, "**PACA**"), the Packers and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

Stockyards Act of 1921 (as amended, modified or supplemented from time to time, "**PASA**")

and any all state statutes of similar effect[2] of PACA and PASA vendors (collectively, the

"**PACA/PASA Vendors**," whose claims shall be identified herein collectively as the

"**PACA/PASA Claims**"); (b) prepetition claims upon which a lien may arise as a result of the

Debtors' shipping and distribution network, mechanic's liens, artisan's liens, materialman's liens

or any other similar liens (collectively, the "**Lien Vendors**," whose claims shall be identified

herein collectively as the "**Lien Claims**"); and (c) prepetition claims of certain critical vendors

and service providers (collectively, the "**Critical Vendors**," whose claims shall be identified

herein collectively as the "**Critical Vendor Claims**"); (ii) authorizing banks and other financial

institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests

related to the foregoing; and (iii) upon entry of the Proposed Final Order, pursuant to sections

105(a) and 503(b)(9) of the Bankruptcy Code, establishing exclusive procedures (the "**Proposed

503(b)(9) Procedures**") for the assertion, resolution, allowance and satisfaction of claims asserted

pursuant to section 503(b)(9) of the Bankruptcy Code in these chapter 11 cases ("**Asserted

503(b)(9) Claims**").   The facts and circumstances supporting this Motion are set forth in the

concurrently filed *Declaration of Blake Barnett In Support of Debtors' Chapter 11 Petitions and

First Day Motions* (the "**First Day Declaration**").[3]   In further support of this Motion, the

Debtors respectfully state as follows:

---

[2] Some states have enacted statutes granting protections similar to that of PACA and PASA.  Accordingly, the relief requested in this Motion with respect to PACA/PASA Vendors and PACA/PASA Claims is also requested with respect to the goods, claims and claimants under those state statues having an effect and purpose similar to PACA and PASA.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(8), 541, 1107(a) and 1108 of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.      General**

2.      On September 8, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with this Motion, the Debtors have also filed certain other motions and applications seeking certain "first day" relief.

3.      The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

5.      Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

01:17643491.4

**B.**     **Vendor Claims**

6.     As described in greater detail below, various third parties may be able to assert liens against statutorily-created trust assets or against the assets of the Debtors and their estates, including the PACA/PASA Vendors and the Lien Vendors.  In addition, due to the nature of the Debtors' business operations, certain vendors may possess administrative claims pursuant to section 503(b)(9) of the Bankruptcy Code.  Also, the Debtors have determined, in an exercise of their business judgment, that their continued receipt of certain goods and services from the Critical Vendors is necessary to ensure that there are not any unexpected or inopportune interruptions in the Debtors' business operations, and to preserve and maximize the value of estates.  Without the relief requested herein, the Debtors believe that many of the PACA/PASA Vendors, the Lien Vendors, and the Critical Vendors (each, a "**Vendor**," and collectively, the "**Vendors**") may cease delivering goods and providing services to the Debtors, which could have devastating consequences for the Debtors' efforts in connection with these chapter 11 cases.

7.     The Debtors estimate that, as of the Petition Date, their aggregate amount of outstanding accounts payable is approximately $90-95 million.

*i.*     *PACA/PASA Claims*

8.     As set forth more fully in the First Day Declaration, the Debtors operate a grocery store chain which, in the ordinary course, purchases a variety of consumable goods to sell directly to the Debtors' customers and to use in connection with the preparation of certain prepared foods that are sold to customers.  These consumable goods include, among other items, meat, poultry, dairy products, frozen foods, and produce, and are purchased from a diverse range of vendors, including agricultural growers.  These goods are used and sold daily and continuously in the Debtors' stores.

01:17643491.4

9.      Prior to the Petition Date, certain of the Vendors sold goods to the Debtors that may be deemed (i) "perishable agricultural commodities," as such term is defined under PACA, and/or (ii) "livestock," as that term is defined by PASA, and other eligible goods covered by state statutes of similar effect to PACA and PASA.  To ensure that the Debtors continue to receive a constant supply of fresh fruits, vegetables, meat, poultry and other similar consumable goods on a postpetition basis, the Debtors seek authority, but not direction, in their discretion, to continue to pay PACA/PASA Claims in the ordinary course of business and consistent with their historical practices.

10.      Congress enacted PACA to regulate the sale of "perishable agricultural commodities."  7 U.S.C. § 499a; see Endico Potatoes, Inc. v. CIT Group/Factoring, 67 F.3d 1063, 1067 (2d Cir. 1995).   Under PACA, the term "perishable agricultural commodity" is generally defined as "fruits and fresh vegetables of every kind and character" "whether or not frozen or packed in ice."  7 U.S.C. § 499a(b)(4).  PACA provides various protections to fresh fruit and vegetable sellers, including the establishment of a statutory constructive trust (a "**PACA Trust**"), consisting of a purchaser's entire inventory of food or other derivatives of perishable agricultural commodities, the products derived therefrom and the proceeds related to any sale of the commodities or products (collectively, the "**PACA Trust Assets**").   See 7 U.S.C. § 499e(c)(2).

11.      PASA creates a statutory trust (the "**PASA Trust**") scheme which is virtually identical to PACA's in respect of the delivery of "livestock" and other eligible goods (collectively, the "**PASA Trust Assets**").   "Livestock" is generally defined as cattle, sheep, swine, horses, mules, or goats.

12.     PACA Trust Assets and PASA Trust Assets are preserved as a non-segregated floating trust and may be commingled with non-trust assets.  However, courts in this district and other districts have consistently held that such assets are not property of a debtor's estate.  See In re CFP Liquidating Estate, 405 B.R. 694 (Bankr. D. Del. May 21, 2009); In re Long John Silver's Restaurants, Inc., 230 B.R. 29, 32 (Bankr. D. Del. 1999); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993).

13.     PACA and PASA require that certain procedural steps be taken by a seller in order to preserve its rights as a trust beneficiary.  Specifically, a vendor must provide written notice to the purchaser of such goods and its intent to preserve the benefits of the PACA Trust or the PASA Trust, as applicable.  See In re HR. Hindle & Co., 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993); In re Richmond Produce Co., 112 B.R. 364 (Bankr. N.D. Cal. 1990).  Written notice under PACA and PASA may be accomplished by either (a) including the statutorily-mandated language on the face of the vendor's invoices or (b) providing written notice to the purchaser of the PACA or PASA goods within 30 days after the time payment is due.  Beneficiaries of a PACA Trust or PASA Trust that adhere to the statutory notice requirements are generally entitled to prompt payment from the PACA Trust Assets or PASA Trust Asses, as applicable, ahead of secured, priority and unsecured creditors of a debtor's estate.  See "R" Best Prod., Inc. v. 646 Corp., No. 00-CV-8536, 2002 WL 31453909, at *1 (S.D.N.Y. Oct. 31, 2002).  However, a vendor's failure to comply with the notice requirements renders its claim a general unsecured claim in a debtor's chapter 11 case.  See In re HR. Hindle, 149 B.R. at 786.

14.     Application of PACA and PASA is limited to sales to commission merchants, brokers, and dealers.  See 7 U.S.C. § 499e(c).  "Dealer," as such term is defined in PACA, is "any person engaged in the business of buying or selling in wholesale or jobbing

quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b). The Debtors believe that a certain portion of the goods purchased from their vendors may qualify as "perishable agricultural commodit[ies]" under PACA or "livestock" under PASA.

15. As a result, insofar as those vendors abide by the notice requirements of PACA or PASA, as applicable, such vendor will be eligible to assert PACA/PASA Claims granting them priority ahead of all other creditors in the Debtors' chapter 11 cases. Accordingly, payment of PACA/PASA Claims at this time will not prejudice or affect the amount available for distributions to other creditors of the Debtors. To ensure that the Debtors continue to receive the supply of fresh fruits, vegetables, meat, poultry and other similar consumable goods that is necessary to ensure that there are not any unexpected or inopportune interruptions in the Debtors' business operations, it is imperative that the Debtors be authorized to pay the PACA/PASA Claims in the ordinary of business and consistent with their historical practices.

16. Any PACA/PASA Vendor which accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority, against the Debtors, their property, their estates, and any PACA Trust Assets or PASA Trust Assets, as applicable, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

17. As of the Petition Date, the Debtors estimate that aggregate amount of the PACA/PASA Claims is approximately $5.2 million.

### ii. *Lien Claims*

### (a) **Distribution Network Vendor Claims**

18. The Debtors operate a significant number of grocery stores in the ordinary course of business. An integral component of operating the stores is the efficient flow of

inventory and products to and from the Debtors' retail stores and distribution facilities. Accordingly, the Debtors rely extensively on, among others, numerous common commercial carriers, movers, shippers, warehousemen, truckers, shipping auditing services, customs brokers, and certain other third-party vendors and service providers (collectively, the "**Distribution Network Vendors**").    The Distribution Network Vendors ship, transport, store, and deliver inventory, raw materials, and other products used in the Debtors' ordinary course operations.    As such, at all times, the Distribution Network Vendors maintain possession of products vital to the Debtors' operations.    As of the Petition Date, many of the Distribution Network Vendors had claims for storage, transportation, and related services previously provided to the Debtors (collectively, and together with any custom duties, the "**Distribution Network Vendor Claims**").

19.    If the Debtors fail to pay the Distribution Network Vendor Claims, the Debtors believe that many of the Distribution Network Vendors may stop providing their essential services to the Debtors.    The Debtors believe that any such interruption in obtaining the services and cooperation of the Distribution Network Vendors would (i) delay necessary shipments of goods to the Debtors' stores and facilities, (ii) undermine the Debtors' ability to maintain the selection of inventory at their stores necessary to retain customer loyalty (and thus impair the Debtors' ability to generate ongoing operating revenue), and (iii) adversely and irreparably affect the Debtors' ability to continue operating on a post-petition basis.    Moreover, even if suitable alternative vendors are available, the time necessary to identify replacement providers and integrate them into the Debtors' operations would likely cause a significant disruption to the Debtors' operations.    During any such transition period, the Debtors would lose access to valuable goods held by the Distribution Network Vendors.

01:17643491.4

20.     The Distribution Network Vendors may also have the right under federal or state law to assert certain possessory liens on the goods or property in their possession, which secure the charges or expenses incurred in connection with the transportation of such goods.[4] Because the perfection and maintenance of the liens held by Distribution Network Vendors in most cases is dependent upon possession, it is anticipated that the Distribution Network Vendors will refuse to deliver or release such goods before their claims have been satisfied and their liens extinguished.   Such a material disruption in the Debtors' business would delay the shipment of goods to the Debtors' stores and ultimately impair the Debtors' ability to operate their business in the ordinary course.   As such, the Debtors have determined, in the exercise of their business judgment, that payment of the Distribution Network Vendor Claims is necessary to avoid costly disruptions to the Debtors' operations and to maintain the appropriate levels  of inventory and product mix expected by the Debtors' customers, to continue to generate revenue and maximize the value of the estates for the benefit of all stakeholders.

21.     Although it is difficult to estimate with precision the Distribution Network Vendor Claims outstanding at any given moment, the Debtors estimate that the amount of outstanding prepetition Distribution Network Vendor Claims is approximately $2.8 million.

---

[4]  For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  U.C.C. § 7-307(1); see also U.C.C. § 7-209(a) ("[A] warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law."). Substantially similar versions of these provisions of the U.C.C. have been enacted in each of the major domestic jurisdictions in which the Debtors do business.

(b)    **Miscellaneous Lien Claims**

22.    In the ordinary course of business, the Debtors engage various service providers to repair, maintain, and improve the Debtors' real and personal property (collectively, the "**Miscellaneous Lien Vendors**").    These Miscellaneous Lien Vendors could potentially assert liens, including mechanic's liens, artisan's liens, materialman's liens and other similar liens, against the Debtors' property for amounts that the Debtors owe to them (collectively, the "**Miscellaneous Lien Claims**").    Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is excluded from the automatic stay.    Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."    11 U.S.C. § 546(b)(1)(A).

23.    If the Debtors are unable to pay the Miscellaneous Lien Claims, they risk losing access to critical property, which could immediately and irreparably harm the Debtors to the detriment of all stakeholders.    Accordingly, the Debtors seek authority, in their discretion, to pay and discharge, on a case-by-case basis, the Miscellaneous Lien Claims that the Debtors believe have created, or could give rise to, a lien against the Debtors' property, regardless of whether the related Miscellaneous Lien Vendors have already perfected their interests.

24.    The Debtors estimate that, as of the Petition Date, the aggregate amount of the Miscellaneous Lien Claims is approximately $3.2 million.

iii.    *Critical Vendor Claims*

25.    The Debtors' business depends on, among other things, the Debtors' ability to retain their vendors and maintain their reputation and customer loyalty within the industry in which they operate.    The Debtors need to be able to assure their customers, vendors,

and employees that, notwithstanding the filing of these chapter 11 cases, the Debtors will nonetheless be able to provide customers with a high quality grocery store.  The Debtors, like all grocery store operators, must keep a large variety of goods readily available to satisfy customer demands.  Without a full supply of products and services, the Debtors would suffer a swift attrition in customer patronage, which would be difficult to restore.  The result of any such outcome would likely be irreparable harm to the Debtors.

26.    To maintain consistency and keep their businesses running efficiently and seamlessly, the Debtors have developed a research and product development, purchasing, inventory, and delivery system that relies significantly on a large number of third parties which supply the Debtors with food products, material goods, and supplies, and provide services necessary to maintain and repair the Debtors' real and personal property and provide other essential services.  It is essential that the Debtors be able to maintain their business relationships with, and honor outstanding payment obligations to, certain key vendors and service providers – the Critical Vendors – in light of the role that they play in the day-to-day in the Debtors' business.  To prevent the commencement of these chapter 11 cases from causing an unexpected or inopportune interruption to their business operations, the Debtors are seeking to pay Critical Vendor Claims to ensure the Debtors' continued receipt of goods and services and favorable credit terms from the Critical Vendors.

27.    To identify the Critical Vendors, the Debtors have reviewed their accounts payable and prepetition vendor lists to identify those creditors most essential to the Debtors' operations pursuant to the following criteria:  (i) whether certain quality specifications or other requirements of the Debtors' customers prevent the Debtors from obtaining a vendor's products or services from alternative sources within a reasonable timeframe; (ii) whether, if a

vendor is not a single source supplier, the Debtors have sufficient product in inventory to continue their operations while a replacement vendor is put in place; and (iii) whether a vendor meeting the foregoing criteria is able or likely to refuse to ship product to the Debtors postpetition if its prepetition balances are not paid.

28.     The Debtors estimate that, as of the Petition Date, the aggregate amount of the Critical Vendor Claims is approximately $25 million.  This estimate does not include any amounts attributable to the PACA/PASA Claims or Lien Claims; however, the Debtors believe that a significant portion of the Critical Vendor Claims would be entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

**C.     Proposed 503(b)(9) Procedures**

29.     Section 503(b)(9) of the Bankruptcy Code provides for the allowance, as an administrative expense, of the value of any goods sold to the Debtors in the ordinary course of their business and received by the Debtors within twenty days before the Petition Date. Specifically, the Section provides that:

> After notice and a hearing, there shall be allowed, administrative expenses . . . including—
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under [the Bankruptcy Code] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

30.     During the twenty-day period immediately preceding the Petition Date, the Debtors purchased on credit various goods in the ordinary course of their business and for use in their operations.  In many instances, the invoices for the goods were not received prior to the Petition Date, or the Debtors were unable to pay the vendors and suppliers who delivered these

01:17643491.4

goods to the Debtors during the twenty-day period prior to the Petition Date. Thus, the Debtors believe these vendors are likely to assert claims under section 503(b)(9) of the Bankruptcy Code in these chapter 11 cases. Based on their books and records, the Debtors estimate that such claims may be asserted by more than approximately 500 vendors.

31.     The Debtors believe that, in all likelihood, there will be some uncertainty among these vendors as to the procedures and methods they must undertake to properly assert claims pursuant to section 503(b)(9) of the Bankruptcy Code. This uncertainty may result in numerous inquiries and demands on the Debtors' employees and professionals, as well as the initiation of piecemeal litigation, which would divert the attention of the Debtors and their professionals from the more pressing task of administering these chapter 11 cases.

32.     To avoid the resulting distraction, delay, and expense that may ensue, the Debtors seek entry of the Proposed Final Order, (a) authorizing them to establish exclusive procedures for the assertion, resolution, allowance, and satisfaction of Asserted 503(b)(9) Claims, and (b) prohibiting vendors from pursuing the assertion or collection of Asserted 503(b)(9) Claims outside of the Proposed 503(b)(9) Procedures.

33.     The Proposed 503(b)(9) Procedures are as follows:

(a)     Any person or entity (a "**503(b)(9) Claimant**") asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code shall prepare a proof of claim (a "**Proof of 503(b)(9) Claim**"), using the form attached to the Proposed Final Order as Exhibit 1 (the "**Proof of 503(b)(9) Claim Form**"), that is written in the English language and sets forth (a) the alleged value (in denominated lawful currency of the United States) of the goods that the 503(b)(9) Claimant contends that the Debtors received within twenty days prior to the Petition Date; (b) documentation, including invoices, receipts, bills of lading and the like, identifying the goods for which the claim is being asserted; (c) documentation identifying which of the Debtors such goods were shipped to, the date such goods were received by such Debtors, and the alleged value of such goods; and (d) a statement indicating (i) whether the value of such goods listed in the Proof of 503(b)(9) Claim represents a combination of services and goods, (ii) if applicable, the percentage of alleged value related to services and related to goods, and (iii) whether the 503(b)(9)

Claimant has filed any other claim against any Debtor regarding the goods underlying the Proof of 503(b)(9) Claim.

(b)      All Proofs of 503(b)(9) Claims shall be filed with (i) Haggen Claims Processing Center, c/o KCC, 2335 Alaska Avenue, El Segundo, CA 90245, and (ii) proposed co-counsel to the Debtors, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038-4982 (Attn: Matthew G. Garofalo), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801 (Attn: Ian J. Bambrick), so as to be received no later than sixty days after the Proposed Final Order is entered by the Court (the "**503(b)(9) Claim Filing Deadline**").  All 503(b)(9) Claimants shall be forever barred from asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code after the expiration of the 503(b)(9) Claim Filing Deadline.

(c)      Except as otherwise ordered by the Court or agreed, in writing, by the Debtors and the applicable 503(b)(9) Claimants, the Debtors shall have seventy-five days after the 503(b)(9) Claim Filing Deadline to subsequently file with the Court any objections ("**503(b)(9) Claim Objections**") to the Asserted 503(b)(9) Claims (the "**503(b)(9) Claim Objection Deadline**").  To the extent that the Debtors do not file a 503(b)(9) Claim Objection with respect to a particular Asserted 503(b)(9) Claim on or before the 503(b)(9) Claim Objection Deadline, such claim shall be deemed allowed without the need for further action of the Debtors and their estates or the applicable 503(b)(9) Claimant.

(d)      503(b)(9) Claimants shall have thirty days from the 503(b)(9) Claim Objection Deadline to file with the Court and serve any responses ("**503(b)(9) Claim Objection Responses**") to any 503(b)(9) Claim Objections (the "**503(b)(9) Claim Objection Response Deadline**").

(e)      The Debtors shall have twenty-one days from the 503(b)(9) Claim Objection Response Deadline to file with the Court and serve any replies to any 503(b)(9) Claim Objection Responses (the "**503(b)(9) Claim Objection Reply Deadline**").

(f)      Except as otherwise ordered by the Court or agreed, in writing, by the Debtors and the applicable 503(b)(9) Claimants, any 503(b)(9) Claim Objections not consensually resolved by the Debtors and the applicable 503(b)(9) Claimants shall be heard by the Court at the next omnibus hearing in these chapter 11 cases that is not less than thirty days following the 503(b)(9) Claim Objection Reply Deadline.

(g)      The Debtors are authorized, but not required, to negotiate, in their sole discretion, with any 503(b)(9) Claimant to resolve any 503(b)(9) Claim Objection and 503(b)(9) Claim Objection Response, and except as otherwise provided in another order of the Court, approval of any such resolution shall be subject to entry of an order of the Court approving the same.

(h)    To the extent an Asserted 503(b)(9) Claim is allowed, such Asserted 503(b)(9) Claim shall be satisfied solely pursuant to and as set forth in such plan of reorganization or liquidation as may be confirmed by the Court in these chapter 11 cases, and in the event that such a plan is not confirmed, then pursuant to any order of the Court addressing the treatment in these chapter 11 cases of allowed claims pursuant to section 503(b)(9) of the Bankruptcy Code; provided, however, that if a 503(b)(9) Claimant is a party to an executory contract that is assumed in these chapter 11 cases, nothing herein shall prevent payment in full of any cure amount associated with such contract.

(i)    Nothing in the Proposed 503(b)(9) Procedures is intended or shall be deemed to impair, prejudice, waive or otherwise affect (i) any rights of the Debtors and their estates with respect to setoff or recoupment or under section 502(d) of the Bankruptcy Code or (ii) any rights and remedies of the Debtors and their estates with respect to actions under chapter 5 of the Bankruptcy Code.

9.    The Debtors request that the Proposed 503(b)(9) Procedures be the sole and exclusive method for the assertion, resolution, allowance, and satisfaction of any Asserted 503(b)(9) Claims (however, the 503(b)(9) Procedures are not intended and shall not be deemed to limit or otherwise affect the rights of the Debtors under the Proposed Orders to pay, honor or otherwise satisfy Vendor Claims as provided for herein), and that all 503(b)(9) Claimants be prohibited from invoking any other means of asserting claims pursuant to section 503(b)(9) of the Bankruptcy Code, including, without limitation, the filing of a motion for allowance or to compel payment of any such claims.

10.    Within three business days of the entry of the Proposed Final Order, the Debtors propose to serve on all parties known to have sold goods to any of the Debtors within the six months preceding the Petition Date a notice of the 503(b)(9) Claim Filing Deadline in the form of notice attached to the Proposed Final Order as Exhibit 2 (together with a copy of the Proof of 503(b)(9) Claim Form), and the Debtors submit that such notice constitutes adequate and sufficient notice of the 503(b)(9) Claim Filing Deadline.

**RELIEF REQUESTED**

34.     By this Motion, the Debtors request the Court enter the Proposed Orders, (i) authorizing, but not directing, the Debtors, in their discretion, to pay the PACA/PASA Claims, Lien Claims, and Critical Vendor Claims (each, a "**Vendor Claim**," and collectively, the "**Vendor Claims**") subject to the caps provided for in the Proposed Interim Order and the Proposed Final Order, as summarized immediately below, (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) upon entry of the Proposed Final Order, establishing the Proposed 503(b)(9) Procedures as the exclusive procedures for the assertion, resolution, allowance and satisfaction of Asserted 503(b)(9) Claims.

|  | Proposed Interim Order Cap | Proposed Final Order Cap |
|---|---|---|
| PACA/PASA Claims | $5.2 million | $5.2 million |
| Lien Claims | $6 million | $6 million |
| Critical Vendor Claims | $15 million | $25 million |

35.     The Debtors further request that they be authorized, but not required, in their discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Vendor and the Debtors in the six months prior to the Petition Date (collectively, the "**Customary Trade Terms**"), or such other trade terms as are agreed to by the Debtors and the Vendor.

36.     To the extent that the Debtors determine, in their business judgment, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, the Debtors propose that a letter (a "**Vendor Letter**") be sent to the Vendor, along with a copy of any order granting this Motion (the "**Vendor Order**"), including, without limitation, the following terms:

01:17643491.4

a.      The amount of the Vendor's estimated pre-petition claim, after accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of the Vendor Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

b.      The amount and timing of any payment agreed to be paid in satisfaction of such estimated pre-petition claim by the Debtors, subject to the terms and conditions as set forth in the Vendor Order;

c.      The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.      The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "**Lien**") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining pre-petition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.      The Vendor's acknowledgment that it has reviewed the terms and provisions of the Vendor Order and consents to be bound thereby;

f.      The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.      If a Vendor which has received payment of a pre-petition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any payments received by the Vendor on account of such pre-petition claim shall be deemed to have been in payment of any then outstanding post-petition obligations owed to such Vendor, such Vendor shall immediately repay to the Debtors any payments received on account of its pre-petition claim to the extent that the aggregate amount of such payments exceed the post-petition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation, and the Vendor's pre-petition claim shall be reinstated as a pre-petition claim in these chapter 11 cases and subject to the terms of any bar date order entered in these chapter 11 cases.

37.      Any such Vendor Letter, once agreed to by the Debtors and a Vendor, shall be the agreement between the parties that governs their post-petition trade relationship (the

"**Trade Agreement**").   The Debtors request that they be authorized, but not required, in their discretion, to enter into Trade Agreements with the Vendors.

## BASIS FOR RELIEF

**A.     The Court Should Authorize, But Not Direct, the
Debtors, in Their Discretion, to Pay the Vendor Claims**

### I.     The Vendors Are Essential To Avoiding Any Unexpected or Inopportune Interruption to the Debtors' Business Operations

38.     The Debtors believe that the goods and services provided by the Vendors are necessary to ensure that there are not any unexpected or inopportune interruptions to the Debtors' operations, because the Vendors are the most cost-efficient and, in many cases, the only source from which the Debtors can procure critical goods and services within a timeframe that would permit the Debtors to avoid unanticipated interruptions, delays or shutdowns in their operations.   Any failure to pay the Vendor Claims would, in the Debtors' business judgment, result in the Vendors refusing to provide necessary goods and services to the Debtors.   Any unexpected or inopportune interruption, delay or shutdown in the Debtors' operations resulting from a refusal by the Vendors to do business with the Debtors on a post-petition basis would have disastrous effects on the Debtors' business and undermine the Debtors' ability to preserve and maximize the value of their estates.

39.     As noted above, the PACA/PASA Vendors will be eligible to assert the PACA/PASA Claims, likely granting them priority ahead of all other secured, priority and unsecured creditors in the Debtors' chapter 11 cases.   The Lien Vendors may assert and perfect possessory, construction, materialman's, mechanic's or other similar statutory liens on the Debtors' assets, thereby jeopardizing the Debtors' ability to prosecute these chapter 11 cases in a timely and efficient manner.

01:17643491.4

40.     With respect to the Critical Vendor Claims, the Debtors have reviewed their accounts payable and undertaken a process to identify those vendors which are essential to avoid any unexpected or inopportune interruptions to their operations.  The Debtors have further developed certain procedures that, if and when implemented, in their discretion and business judgment, will ensure that the Critical Vendors receiving payment of their Critical Vendor Claims will continue to provide goods and services to the Debtors based upon the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Vendors.

41.     The Debtors believe that authority to pay the Vendor Claims is vital to their efforts to preserve and maximize the value of their estates.  If the Proposed Orders are not entered, the Debtors believe that many of the Vendors will refuse to do business with the Debtors and some may have to cease their own operations.  Such a result would be damaging to the Debtors' efforts to successfully prosecute these chapter 11 cases, to the detriment of the Debtors' estates and creditors.  Moreover, the continued availability of trade credit in amounts and on terms consistent with the Debtors' pre-petition trade terms is critical.  The retention or reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.  Conversely, a deterioration in post-petition trade credit available to the Debtors, together with a disruption in the Debtors' receipt of necessary goods and services, would, among other things, increase the amount of liquidity needed by the Debtors post-petition, and impede the Debtors' chapter 11 efforts.

42.     Finally, the Debtors' payment of a significant portion of the PACA/PASA Claims and the Critical Vendor Claims merely affects the timing of such payments, and not the amount to be received by these Vendors on account of their Vendor Claims, as the Debtors

believe that many of these claims are likely entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code.

43.      For the foregoing reasons, the Debtors respectfully submit that entry of the Proposed Order is in the best interests of the Debtors, their estates, and creditors.

## II.      The Relief Requested Herein Is Supported by the "Doctrine of Necessity"

44.      Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business. property of the estate…." 11 U.S.C. § 363(b)(1).

45.      Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the post-petition payment of pre-petition claims where such payment is necessary to preserve the value of a debtor's estate. See, e.g., Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M. D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); see In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999) (citing In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of pre-petition claims of vendors found to be critical to the debtor's continued operation).

01:17643491.4

46.    In a long line of well-established cases, federal courts consistently have permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport, C. & S. W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of pre-petition claims beyond railroad reorganization cases).

47.    This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical pre-petition claims not explicitly authorized by the Bankruptcy Code. See Just for Feet, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's [continued operation].");  In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim is essential to the continued operation of [the debtor], payment may be authorized"); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of pre-petition claims.  In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers

under section 105(a) to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" In re Structurelite Plastics Corp., 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

48.     As explained above, the goods and services provided by the Vendors are essential to ensure that there is not an unexpected or inopportune interruption to the operation of the Debtors' business.  The Debtors submit that the total amount to be paid to the Vendors is minimal compared to the importance and necessity of the Debtors' uninterrupted receipt of the necessary goods and services provided by the Vendors.  Moreover, the Debtors do not believe there are cost-effective or readily accessible alternatives to the Vendors.

49.     Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

### III.     The Court Should Authorize Payment of the Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties

50.     Authority for satisfying the Vendor Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors, operating their business as a debtor in possession under sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  Id.

51.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  Id.  The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial

enhancement of the estate," Id., and also when the payment was to "sole suppliers of a given

product." Id. at 498.  The court provided a three-pronged test for determining whether a preplan

payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.
> Second, unless it deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss of economic advantage
> to the estate or the debtor's going concern value, which is
> disproportionate to the amount of the claimant's prepetition claim.
> Third, there is no practical or legal alternative by which the debtor
> can deal with the claimant other than by payment of the claim.

Id.

52.    Payment of the Vendor Claims meets each element of the CoServ court's

standard.  As described above, the Debtors believe that the Vendor Claims encompass the claims

of those Vendors that:  have claims against PACA Trust Assets or PASA Trust Assets; are able

to assert and perfect liens against the Debtors' property; are entitled to administrative priority

claims that must be satisfied in full under any chapter 11 plan; or would otherwise refuse, or

would be unable to, provide goods and services to the Debtors on a post-petition basis if their

pre-petition balances are not paid, thereby creating the significant risk that the Debtors will

experience an unexpected or inopportune interruption to their operations.  Any such interruption

would diminish estate value and frustrate the Debtors' chapter 11 efforts.  The  harm and

economic disadvantage that would stem from the failure of any of the Vendors to perform is

disproportionate to the amount of the Vendor Claims.

53.    Finally, the Debtors have examined other options short of payment of the

Vendor Claims and have determined that, to avoid an unexpected or inopportune interruption to

their business operations, there exists no practical alternative to their payment of the Vendor

Claims.  Therefore, the Debtors can only meet their fiduciary duties as debtors in possession

under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Vendor Claims.

IV.     **Payment of the PACA/PASA Claims In the Ordinary Course of Business Is Warranted**

54.     The prompt and full payment of the PACA/PASA Claims should be authorized by the Court.  As described above, assets governed by PACA and PASA do not constitute property of the Debtors' estates.  See In re Kornblum & Co., 81 F.3d 280, 284 (2d Cir. 1995); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348 (S.D.N.Y. 1993).  As a result, the distribution of assets to holders of PACA/PASA Claims falls outside the priority scheme set forth in the Bankruptcy Code, and such holders are entitled to payment from the PACA Trust Assets or the PASA Trust Assets, as applicable, ahead of the Debtors' other creditors.  See, e.g., In re Magic Rests., Inc., 205 F.3d 108, 110 (3d Cir. 2000); Consumers Produce Co. v. Volante Wholesale Produce, Inc., 16 F.3d 1374, 1377-78 (3d Cir. 1994).  Moreover, the disposition of any PACA Trust Assets and PASA Trust Assets is subject to the jurisdiction of the bankruptcy court.  See Monterey Mushrooms, Inc. v. Carolina Produce Distribs., Inc., 110 B.R. 207, 209 (W.D.N.C. 1990); Allied Growers Co-Op, Inc. v. United Fruit & Produce Co., 86 B.R. 14, 16 (Bankr. D. Conn. 1988).  Accordingly, the relief requested herein with respect to PACA/PASA Claims does not prejudice the Debtors' creditors or any party in interest in the chapter 11 cases.

55.     Furthermore, payment of the PACA/PASA Claims will inure to the benefit of the Debtors' estates by preserving goodwill between the Debtors and the PACA/PASA Vendors.  Any delays in satisfying amounts owed to the PACA/PASA Vendors could adversely affect the Debtors' ability to obtain certain consumable goods, thereby undercutting the Debtors' efforts in connection with these chapter 11 cases.  Failing to pay the PACA/PASA Claims in the ordinary course of business could subject the Debtors to numerous claims and adversary proceedings, including motions by the PACA/PASA Vendors for relief from the automatic stay

and/or injunctive relief, which would result in the unnecessary expenditure of time, effort, and money by the Debtors, their management team and their professional advisors.

56.    Lastly, in certain circumstances, officers or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA and PASA.  See Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); see also Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc., 217 F.3d 348, 350 (5th Cir. 2000) (court will inquire (a) whether the individual's involvement with the corporation was sufficient to establish legal responsibility and (b) whether the individual, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA or PASA creditors, to determine personal liability). Thus, to the extent that any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the Debtors' officers and directors may be subject to lawsuits during the pendency of these chapter 11 cases.  Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors in their attempt to successfully prosecute these chapter 11 cases and, moreover, could lead to the assertion of substantial indemnification claims under the Debtors' governing documents, employment agreements, and applicable laws, to the detriment of all of the Debtors' stakeholders.

57.    Finally, courts in this District have routinely granted similar relief with respect to the treatment of PACA and PASA claims.  See, e.g., In re F & H Acquisition Corp., Case No. 13-13220 (KG) (Dec. 17, 2013).

**V.    Payment of the PACA/PASA Claims, Lien Claims and Critical Vendor Claims Now Will Not Affect Creditor Recoveries In These Chapter 11 Cases**

58.    The relief requested herein will not affect the recovery of creditors in these cases.  As stated above, assets governed by PACA and PASA do not constitute property of the

Debtors' estates, and the PACA/PASA Vendors are entitled to payment from the PACA Trust Assets or PASA Trust Assets, as applicable, ahead of the Debtors' other creditors. The Debtors' requested relief therefore affects only the timing of the Debtors' payment for the PACA/PASA Claims, and will not prejudice the recovery of other creditors.

59.    Additionally, in instances where the amounts owed to the Lien Vendors is less than the value of the goods that could be held to secure the related Lien Claims, such parties are arguably fully-secured creditors of the Debtors' estates. In such instances, payment now only provides such parties with what they would be entitled to receive under a chapter 11 plan, only without any interest costs that might otherwise accrue during these chapter 11 cases.

60.    Also, certain of the Vendors may be entitled to request an administrative expense priority claim under section 503(b)(9) of the Bankruptcy Code to the extent that the Debtors received goods, in the ordinary course of business, within the twenty-day period immediately prior to the Petition Date. Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, the Debtors must pay the claims in full to confirm a chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority). Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay. Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they choose to do so, or the Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan. Thus, for those PACA/PASA Claims and Critical Vendor Claims that would otherwise qualify for administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code, which the

Debtors believe is a significant portion of such Vendor Claims, payment of these Vendor Claims now affects the timing, but not the amount, of such payment. As a result, the Debtors respectfully submit that they should have the authority (but not the direction) to pay such claims, in the ordinary course of business, during the pendency of these cases, to the extent necessary to preserve and maximize the value of their estates.

61.     Since the enactment of section 503(b)(9) of the Bankruptcy Code, courts in this jurisdiction have exercised their discretion and have routinely authorized the payment of prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11 case. See, e.g., In re Trump Entertainment Resorts, Inc., Case No. 14-12103 (KG) (interim order, Sept. 10, 2014, and final order, Oct. 6, 2014). Indeed, in granting a request for similar relief, at least one judge in this District asked an objecting United States Trustee, "[a]rguably, would you agree that the debtor would be able to pay the 503(b)(9) claims without Court approval?" Transcript of Hearing Held on Oct. 31, 2006, at 24:14-16, In re Dura Auto., Case No. 06-11202 (KJC) (approving payment of claims under section 503(b)(9) of the Bankruptcy Code as part of "first day" relief).

62.     As explained above, it is critical to the Debtors' chapter 11 efforts that they continue to receive goods and services, as applicable, from the Vendors on an uninterrupted basis throughout the chapter 11 process. The Debtors believe that without the relief requested herein, many of the Vendors may cease delivering goods and providing services to the Debtors, which could have devastating consequences for the Debtors and their estates.

63.     Reflecting the recognition that payment of pre-petition claims of certain essential suppliers and vendors is, in fact, critical to a debtor's ability to preserve and maximize creditor recoveries, courts in this district regularly grant relief consistent with that which the

Debtors are seeking in this Motion.  See, e.g., In re Trump Entertainment Resorts, Inc., Case No. 14-12103 (KG) (interim order, Sept. 10, 2014, and final order, Oct. 6, 2014) (authorizing payment of PACA/PASA, critical vendor and lien claims).

64.     Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

**B.      The Court Should Authorize the Banks to Honor and Process
the Debtors' Payments on Account of the Vendor Claims**

65.     The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

**C.      The Court Should Approve the Proposed 503(b)(9) Procedures as
the Sole and Exclusive Method for the Assertion, Resolution,
Allowance, and Satisfaction of any Asserted 503(b)(9) Claims**

66.     In the ordinary course of their business, the Debtors purchase a substantial amount of goods from a variety of vendors, and accordingly, they expect that numerous claims pursuant to section 503(b)(9) of the Bankruptcy Code may be asserted in these chapter 11 cases. Deferring litigation of claims and establishing uniform procedures for resolving such claims is a common practice in chapter 11 cases, as is the establishment of a bar date.  See Fed. R. Bankr. P. 3003(c)(3) ("The court shall fix . . . the time within which proofs of claim or interest may be filed."); see also Graceway Pharmaceuticals, LLC, Case No. 11-13036 (PJW) (Bankr. D. Del. Oct. 17, 2011) (order establishing exclusive procedures for the assertion, resolution and

01:17643491.4

28

satisfaction of claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code); In re Smurfit-Stone Container Corporation, Case No. 09-10235 (BLS) (Bankr. D. Del. Mar. 10, 2009) (same).  Moreover, the Debtors believe that the Proposed 503(b)(9) Procedures will facilitate the Debtors' ability to negotiate with the 503(b)(9) Claimants, expediting the resolution of the Asserted 503(b)(9) Claims and assisting with the orderly and economical administration of these chapter 11 cases.

67.    Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  The Debtors submit that establishing and implementing the Proposed 503(b)(9) Procedures is necessary and appropriate, and that the Proposed 503(b)(9) Procedures are consistent with the intent of section 503(b)(9) of the Bankruptcy Code.  The Debtors ability to address the Asserted 503(b)(9) Claims in this uniform manner will assist in the timely resolution of such claims, and promote the efficient administration of these chapter 11 cases.

68.    The Debtors submit that the Proposed 503(b)(9) Procedures comply with the Bankruptcy Rules and provide sufficient time for all 503(b)(9) Claimants to assert claims pursuant to section 503(b)(9) of the Bankruptcy Code.  Further, because the proposed procedures will provide notice to all parties known to have sold goods to any of the Debtors within the six months preceding the Petition Date, the Debtors submit that the proposed notice procedures are reasonably calculated to provide notice to all parties that may wish to assert a claim pursuant to section 503(b)(9) of the Bankruptcy Code in these chapter 11 cases.

69.     The relief requested in this Motion with respect to the Proposed 503(b)(9) Procedures is therefore prudent and in the best interests of the Debtors, their estates and creditors and other parties in interest, and should be granted in all respects.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

70.     Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  The failure of any Vendor to deliver necessary goods and services to the Debtors would have immediate and detrimental consequences to the Debtors' business and would jeopardize the Debtors' efforts to preserve and maximize the value of their estates, to the detriment and prejudice of all of the Debtors' stakeholders.  As the Debtors operate in the highly competitive retail grocery industry, the Debtors cannot afford any material disruptions of their business operations or present anything less than a "business as usual" appearance to the public.  Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Vendors is critical to avoid any unexpected or inopportune interruption to their operations and increases the likelihood of successfully prosecuting these chapter 11 cases.  Thus, if the relief requested herein is not granted, the Debtors' failure to satisfy the Vendor Claims would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' chapter 11 efforts.

71.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

01:17643491.4

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

72.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in paying the Vendor Claims would be detrimental to the Debtors, their creditors and estates, as the Debtors' ability to manage and run their business operations without any unexpected or inopportune interruption requires, in part, that they continue to receive the goods and services provided by the Vendors.

73.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

## RESERVATION OF RIGHTS

74.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (iii) shall be construed as a promise to pay a claim.

## NOTICE

75.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors; and (v) counsel to the Debtors' pre-petition and post-petition lenders. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-

01:17643491.4

1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

76.    The Debtors have not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully entry of the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 9, 2015    YOUNG CONAWAY STARGATT & TAYLOR, LLP
   Wilmington, Delaware

*/s/ Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
Ian J. Bambrick (No. 5455)
Ashley E. Jacobs (No. 5635)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (*pro hac vice* pending)
Sayan Bhattacharyya (*pro hac vice* pending)
Matthew G. Garofalo (*pro hac vice* pending)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*PROPOSED COUNSEL TO THE DEBTORS
AND DEBTORS-IN-POSSESSION*

01:17643491.4

# **EXHIBIT A**

## **Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | ) Case No. 15-11874 (_____) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. _____** |

**INTERIM ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b), 1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS (A) ARISING UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT AND THE PACKERS AND STOCKYARDS ACT OF 1921, (B) OF LIEN VENDORS, AND (C) OF CRITICAL VENDORS AND SERVICE PROVIDERS, (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO, AND (III) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 503(b), 1107(a) and 1108 of title 11 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their discretion, to pay, in the ordinary course of business, (a) PACA/PASA Claims, (b) Lien Claims, and (c) Critical Vendor Claims, and (ii) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay, honor or otherwise satisfy PACA/PASA Claims in the ordinary course of their business up to an aggregate amount of $5,200,000.  Any PACA/PASA Vendor which accepts payment from the Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority, against the Debtors, their property, their estates, and any PACA Trust Assets or PASA Trust Assets, as applicable, but only to the extent that payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

3.      The Debtors are authorized, but not directed, in their discretion, to pay, honor or otherwise satisfy Lien Claims in the ordinary course of their business up to an aggregate amount of $6,000,000.

4.      The Debtors are authorized, but not directed, in their discretion, to pay, honor or otherwise satisfy Critical Vendor Claims in the ordinary course of their business up to an aggregate amount of $15,000,000.

5.      The Debtors are authorized, but not directed, in their discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Vendor.

01:17643491.4

6.     The Debtors are authorized, but not directed, in their discretion, to enter into Trade Agreements with the Vendors, including, without limitation, on the following terms:

a.     The amount of the Vendor's estimated pre-petition claim, after accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of this Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

b.     The amount and timing of any payment agreed to be paid in satisfaction of such estimated pre-petition claim by the Debtors, subject to the terms and conditions as set forth in this Order;

c.     The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.     The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "**Lien**") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining pre-petition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.     The Vendor's acknowledgment that it has reviewed the terms and provisions of this Order and consents to be bound thereby;

f.     The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.     If a Vendor which has received payment of a pre-petition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of this Court, any payments received by the Vendor on account of such pre-petition claim shall be deemed to have been in payment of any then outstanding post-petition obligations owed to such Vendor, such Vendor shall immediately repay to the Debtors any payments received on account of its pre-petition claim to the extent that the aggregate amount of such payments exceed the post-petition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation, and the Vendor's pre-petition claim shall be reinstated as a pre-petition claim in these chapter 11 cases and subject to the terms of any bar date order entered in these chapter 11 cases.

7.     The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

8.     A final hearing on the relief sought in the Motion shall be conducted on _____, 2015 at _____ (ET).  The deadline by which objections to entry of the Proposed Final Order must be filed is _____, 2015 at 4:00 p.m. (ET).  If no objections to entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

9.     Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

10.     Notwithstanding anything to the contrary in this Order, any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors'

debtor in possession financing facility and the use of cash collateral and any budget in connection therewith.

11.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

12.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

13.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  September _____, 2015
        Wilmington, Delaware        _____

                                    United States Bankruptcy Judge

01:17643491.4

5

**EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HAGGEN HOLDINGS, LLC, *et al.,*[1]<br><br>Debtors. | )   Chapter 11<br>)<br>)   Case No. 15-11874 (____)<br>)<br>)   (Jointly Administered)<br>)<br>)   **Ref. Docket No. _____** |

**FINAL ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 503(b),
1107(a) AND 1108 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE
DEBTORS TO PAY CERTAIN PREPETITION CLAIMS (A) ARISING UNDER
THE PERISHABLE AGRICULTURAL COMMODITIES ACT AND THE PACKERS
AND STOCKYARDS ACT OF 1921, (B) OF LIEN VENDORS, AND (C) OF CRITICAL
VENDORS AND SERVICE PROVIDERS, (II) AUTHORIZING BANKS TO HONOR
AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED
THERETO, (III) ESTABLISHING EXCLUSIVE PROCEDURES FOR THE
ASSERTION, RESOLUTION, ALLOWANCE, AND SATISFACTION OF CLAIMS
ARISING UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE,
AND (IV) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of interim and final orders,

pursuant to sections 105(a), 363(b), 503(b), 1107(a) and 1108 of title 11 of the Bankruptcy Code,

(i) authorizing, but not directing, the Debtors, in their discretion, to pay, in the ordinary course of

business, (a) PACA/PASA Claims, (b) Lien Claims, and (c) Critical Vendor Claims, (ii)

authorizing the Banks to honor and process check and electronic transfer requests related to the

foregoing, and (iii) establishing exclusive procedures for the assertion, resolution, allowance, and

satisfaction of claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code in these

chapter 11 cases ("**Asserted 503(b)(9) Claims**"); and upon consideration of the Motion and all

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

pleadings related thereto, including the First Day Declaration; and due and proper notice of the

Motion having been given; and it appearing that no other or further notice of the Motion is

required; and it appearing that the Court has jurisdiction to consider the Motion in accordance

with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding

and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief

requested in the Motion and provided for herein is in the best interest of the Debtors, their

estates, and creditors; and after due deliberation and sufficient cause appearing therefor, **IT IS**

**HEREBY ORDERED THAT**:

      1.      The Motion is GRANTED on a final basis as set forth herein.

      2.      The Debtors are authorized, but not directed, in their discretion, to pay,

honor or otherwise satisfy PACA/PASA Claims in the ordinary course of their business up to an

aggregate amount of $5,200,000.  Any PACA/PASA Vendor which accepts payment from the

Debtors in satisfaction of its valid PACA/PASA Claim will be deemed to have waived any and

all claims of whatever type, kind, or priority, against the Debtors, their property, their estates,

and any PACA Trust Assets or PASA Trust Assets, as applicable, but only to the extent that

payment has been received by such PACA/PASA Vendor on account of its PACA/PASA Claim.

      3.      The Debtors are authorized, but not directed, in their discretion, to pay,

honor or otherwise satisfy Lien Claims in the ordinary course of their business up to an aggregate

amount of $6,000,000.

      4.      The Debtors are authorized, but not directed, in their discretion, to pay,

honor or otherwise satisfy Critical Vendor Claims in the ordinary course of their business up to

an aggregate amount of $25,000,000.

5.     The Debtors are authorized, but not directed, in their discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Vendor.

6.     The Debtors are authorized, but not directed, in their discretion, to enter into Trade Agreements with the Vendors, including, without limitation, on the following terms:

a.     The amount of the Vendor's estimated pre-petition claim, after accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of this Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

b.     The amount and timing of any payment agreed to be paid in satisfaction of such estimated pre-petition claim by the Debtors, subject to the terms and conditions as set forth in this Order;

c.     The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.     The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "**Lien**") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining pre-petition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.     The Vendor's acknowledgment that it has reviewed the terms and provisions of this Order and consents to be bound thereby;

f.     The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.     If a Vendor which has received payment of a pre-petition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for

any further order of this Court, any payments received by the Vendor on account of such pre-petition claim shall be deemed to have been in payment of any then outstanding post-petition obligations owed to such Vendor, such Vendor shall immediately repay to the Debtors any payments received on account of its pre-petition claim to the extent that the aggregate amount of such payments exceed the post-petition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation, and the Vendor's pre-petition claim shall be reinstated as a pre-petition claim in these chapter 11 cases and subject to the terms of any bar date order entered in these chapter 11 cases.

       7.     The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

       8.     The following procedures (the "**503(b)(9) Procedures**") are hereby authorized and approved in their entirety and shall apply to all Asserted 503(b)(9) Claims:

      (a)     Any person or entity (a "**503(b)(9) Claimant**") asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code shall prepare a proof of claim (a "**Proof of 503(b)(9) Claim**"), using the form attached hereto as <u>Exhibit 1</u> (the "**Proof of 503(b)(9) Claim Form**"), that is written in the English language and sets forth (a) the alleged value (in denominated lawful currency of the United States) of the goods that the 503(b)(9) Claimant contends that the Debtors received within twenty days prior to the Petition Date; (b) documentation, including invoices, receipts, bills of lading and the like, identifying the goods for which the claim is being asserted; (c) documentation identifying which of the Debtors such goods were shipped to, the date such goods were received by such Debtors, and the alleged value of such goods; and (d) a statement indicating (i) whether the value of such goods listed in the Proof of 503(b)(9) Claim represents a combination of services and goods, (ii) if applicable, the percentage of alleged value related to services and related to goods, and (iii) whether the 503(b)(9)

Claimant has filed any other claim against any Debtor regarding the goods underlying the Proof of 503(b)(9) Claim.

(b)      All Proofs of 503(b)(9) Claims shall be filed with (i) Haggen Claims Processing Center, c/o KCC, 2335 Alaska Avenue, El Segundo, CA 90245, and (ii) proposed co-counsel to the Debtors, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038-4982 (Attn: Matthew G. Garofalo), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801 (Attn: Ian J. Bambrick), so as to be received no later than sixty days after the Proposed Final Order is entered by the Court (the "**503(b)(9) Claim Filing Deadline**").  All 503(b)(9) Claimants shall be forever barred from asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code after the expiration of the 503(b)(9) Claim Filing Deadline.

(c)      Except as otherwise ordered by the Court or agreed, in writing, by the Debtors and the applicable 503(b)(9) Claimants, the Debtors shall have seventy-five days after the 503(b)(9) Claim Filing Deadline to subsequently file with the Court any objections ("**503(b)(9) Claim Objections**") to the Asserted 503(b)(9) Claims (the "**503(b)(9) Claim Objection Deadline**").  To the extent that the Debtors do not file a 503(b)(9) Claim Objection with respect to a particular Asserted 503(b)(9) Claim on or before the 503(b)(9) Claim Objection Deadline, such claim shall be deemed allowed without the need for further action of the Debtors and their estates or the applicable 503(b)(9) Claimant.

(d)      503(b)(9) Claimants shall have thirty days from the 503(b)(9) Claim Objection Deadline to file with the Court and serve any responses ("**503(b)(9) Claim Objection Responses**") to any 503(b)(9) Claim Objections (the "**503(b)(9) Claim Objection Response Deadline**").

(e)      The Debtors shall have twenty-one days from the 503(b)(9) Claim Objection Response Deadline to file with the Court and serve any replies to any 503(b)(9) Claim Objection Responses (the "**503(b)(9) Claim Objection Reply Deadline**").

(f)      Except as otherwise ordered by the Court or agreed, in writing, by the Debtors and the applicable 503(b)(9) Claimants, any 503(b)(9) Claim Objections not consensually resolved by the Debtors and the applicable 503(b)(9) Claimants shall be heard by the Court at the next omnibus hearing in these chapter 11 cases that is not less than thirty days following the 503(b)(9) Claim Objection Reply Deadline.

(g)      The Debtors are authorized, but not required, to negotiate, in their sole discretion, with any 503(b)(9) Claimant to resolve any 503(b)(9) Claim Objection and 503(b)(9) Claim Objection Response, and except as otherwise provided in another order of the Court, approval of any such resolution shall be subject to entry of an order of the Court approving the same.

(h)    To the extent an Asserted 503(b)(9) Claim is allowed, such Asserted 503(b)(9) Claim shall be satisfied solely pursuant to and as set forth in such plan of reorganization or liquidation as may be confirmed by the Court in these chapter 11 cases, and in the event that such a plan is not confirmed, then pursuant to any order of the Court addressing the treatment in these chapter 11 cases of allowed claims pursuant to section 503(b)(9) of the Bankruptcy Code; provided, however, that if a 503(b)(9) Claimant is a party to an executory contract that is assumed in these chapter 11 cases, nothing herein shall prevent payment in full of any cure amount associated with such contract.

(i)    Nothing in the 503(b)(9) Procedures is intended or shall be deemed to impair, prejudice, waive or otherwise affect (i) any rights of the Debtors and their estates with respect to setoff or recoupment or under section 502(d) of the Bankruptcy Code or (ii) any rights and remedies of the Debtors and their estates with respect to actions under chapter 5 of the Bankruptcy Code.

9.    Effective as of the Petition Date, the 503(b)(9) Procedures shall be the sole and exclusive method for the assertion, resolution, allowance, and satisfaction of any Asserted 503(b)(9) Claims; provided, however, that the 503(b)(9) Procedures are not intended and shall not be deemed to limit or otherwise affect the rights of the Debtors under this Order to pay, honor or otherwise satisfy Vendor Claims as provided for herein.

10.    The 503(b)(9) Claimants shall be prohibited from utilizing any other means for the assertion, resolution, allowance, or satisfaction of any Asserted 503(b)(9) Claims, including, without limitation, the filing of a motion for allowance or to compel payment of any Asserted 503(b)(9) Claims.

11.    The Proof of 503(b)(9) Claim Form in substantially the form attached hereto as Exhibit 1 is hereby approved in all respects.

12.    Within three business days of the entry of this Order, the Debtors shall serve on all parties known to have sold goods to any of the Debtors within the six months preceding the Petition Date a notice of the 503(b)(9) Claim Filing Deadline in substantially the form attached hereto as Exhibit 2 (the "**503(b)(9) Claim Filing Deadline Notice**"), which notice

is hereby approved and constitutes adequate and sufficient notice of the 503(b)(9) Claim Filing Deadline, together with a copy of the Proof of 503(b)(9) Claim Form.

13.     The Debtors are hereby authorized to provide supplemental mailings of the 503(b)(9) Claim Filing Deadline Notice (together with a copy of the Proof of 503(b)(9) Claim Form) at any time in advance of the 503(b)(9) Claim Filing Deadline as may be necessary, including, without limitation, when (a) notices are returned by the post office with forwarding addresses, (b) certain parties acting on behalf of parties in interest decline to pass along notices to such interested parties and instead return such interested parties' names and addresses to the Debtors for direct mailing by the Debtors, and (c) additional potential claimants subsequently become known to the Debtors.  Notwithstanding the foregoing, the Debtors shall not be required to provide any additional notice to any party to whom the Debtors mailed the 503(b)(9) Claim Filing Deadline Notice in accordance with the terms of this Order and such notice was returned to the Debtors as undeliverable without a forwarding address.

14.     The Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes to the 503(b)(9) Claim Filing Deadline Notice or the Proof of 503(b)(9) Claim Form as the Debtors deem necessary or appropriate.

15.     On the date the Debtors commence service of the 503(b)(9) Claim Filing Deadline Notice (the "**Service Date**"), the Debtors shall also file on the docket of these chapter 11 cases a copy of the 503(b)(9) Claim Filing Deadline Notice that specifies the actual date of the 503(b)(9) Claim Filing Deadline.  On or prior to the Service Date, the Debtors shall post the

Proof of 503(b)(9) Claim Form and 503(b)(9) Claim Filing Deadline Notice on the website established by KCC for these chapter 11 cases (www.kccllc.net/haggen).

16.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

18.     Notwithstanding anything to the contrary in this Order, any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor in possession financing facility and the use of cash collateral and any budget in connection therewith.

19.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

20.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

21.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

        22.      This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation of this Order.

Dated: _____, 2015
        Wilmington, Delaware                       _____

                                              United States Bankruptcy Judge

## **EXHIBIT 1**

**Proof of 503(b)(9) Claim Form**

# Proof of 503(b)(9) Claim Form

### Haggen Holdings, LLC, et al., Case No. 15-11874 (___), Jointly Administered

11 U.S.C. § 503(b)(9) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses. . . including . . . the value of any goods received by the debtor within 20 days before the date of commencement of a [bankruptcy case] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Your receipt of this form does not mean you hold a claim that is entitled to treatment pursuant to this section.

Claimants should submit a signed original of this form in order to assert a claim pursuant to section 503(b)(9) of the Bankruptcy Code, together with the accompanying documentation required pursuant to the order of the Bankruptcy Court establishing procedures for the assertion, resolution, allowance and satisfaction of any claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code [Docket No. **], in person or by mail, hand delivery, or overnight courier, to the following address:

   Haggen Claims Processing Center
   c/o KCC
   2335 Alaska Ave
   El Segundo, CA 90245

With copies to:

   (a) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038-4982 (Attn: Matthew G. Garofalo); and

   (b) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801 (Attn: Ian J. Bambrick)

**Debtor against which claim is asserted:  (Check Only One)**

☐ Haggen Holdings, LLC (Case No. 15-_____)    ☐ Haggen Opco South, LLC (Case No. 15-_____)    ☐ Haggen Acquisition, LLC (Case No. 15-_____)

☐ Haggen Operations Holdings, LLC (Case No. 15-_____)    ☐ Haggen Opco North, LLC (Case No. 15-_____)    ☐ Haggen, Inc. (Case No. 15-_____)

**NOTE:  This form must be served upon KCC, Stroock & Stroock & Lavan LLP, and Young Conaway Stargatt & Taylor, LLP at the above-referenced addresses on or prior to [_____], 2015.  This form may be submitted in person or by mail, hand delivery, or overnight courier.  Facsimile, email or other electronic submissions will not be accepted.  Requests shall be deemed filed when actually received by KCC.**

| **Name of Creditor:**<br>*(the person or other entity to whom the debtor owes money or property)*<br><br>**Name and Address Where Notices Should Be Sent:**<br><br><br>**Telephone No.:** | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim.  Attach a copy of statement giving particulars.<br><br>☐ Check this box if you have asserted a reclamation demand for any of the Goods referenced on this claim form.  Attach statement identifying any such goods.<br><br>☐ Check this box if you have filed any other claim against any of the Debtors regarding the goods underlying your claim asserted herein.<br><br>☐ Check this box if the alleged value of the goods underlying your claim asserted herein represents a combination of goods and services.  If you checked this box, provided the percentage of alleged value related to services and to goods on the following line: _____ |
|---|---|
| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: _____ | Check here if this claim:  ☐ replaces  ☐ amends<br>a previously filed claim, dated: _____ |

**1. TOTAL AMOUNT OF SECTION 503(b)(9) CLAIM:  $_____.**

**2. DATE GOODS WERE RECEIVED BY THE DEBTOR: _____.**
Attach proof of delivery of such goods.

**3. BRIEF DESCRIPTION OF CLAIM AND GOODS:**



Attach particular invoices for which any of the amounts described in this form was applied.

| **4.**  **SUPPORTING DOCUMENTS:**  <u>Attach copies of supporting documents</u>, such as invoices, receipts, bills of lading and the like, identifying the goods for which the claim is being asserted, which of the Debtors such goods were shipped to, the date such goods were received by such Debtors, and the alleged value of such goods.  DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  Any attachments must be 8-1/2" by 11".<br><br>**5.**  **DATE-STAMPED COPY:**  To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.<br><br>**6.**  **ORDINARY COURSE CERTIFICATION:**  By signing this claim form, you are certifying that the goods, for which payment is sought hereby, were sold to the Debtors in the ordinary course of business and were received by the Debtors within twenty days prior to September __, 2015, as required by 11 U.S.C. § 503(b)(9). | *Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.* |
|---|---|

| | Print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) | |
|---|---|---|
| _____<br>Date | _____<br>Name                  Title | _____<br>Signature |

## **EXHIBIT 2**

**503(b)(9) Claim Filing Deadline Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 15-11874 (____) |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Ref. Docket No. _____** |

**NOTICE OF ENTRY OF ORDER ESTABLISHING (I) EXCLUSIVE PROCEDURES
FOR THE ASSERTION, RESOLUTION, ALLOWANCE, AND SATISFACTION OF CLAIMS
ARISING UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND
(II) BAR DATE FOR FILING PROOFS OF CLAIM FOR CLAIMS ASSERTED
PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

           **PLEASE TAKE NOTICE** that on September 8, 2015 (the "**Petition Date**"), Haggen Holdings, LLC and its above-captioned affiliated debtors and debtors in possession identified in footnote 1 herein (collectively, the "**Debtors**") each filed a voluntary petition in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**").

           **PLEASE TAKE NOTICE** that on [__], 2015, the Bankruptcy Court entered an order [Docket No. __] (the "**Order**")[2] establishing exclusive procedures (the "**503(b)(9) Procedures**") for the assertion, resolution, allowance, and satisfaction of claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code in these chapter 11 cases ("**Asserted 503(b)(9) Claims**"). Pursuant to the Order, any person or entity (a "**503(b)(9) Claimant**") asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code shall prepare a proof of claim (a "**Proof of 503(b)(9) Claim**"), using the form attached hereto (the "**Proof of 503(b)(9) Claim Form**"), that is written in the English language and sets forth (a) the alleged value (in denominated lawful currency of the United States) of the goods that the 503(b)(9) Claimant contends that the Debtors received within twenty days prior to the Petition Date; (b) documentation, including invoices, receipts, bills of lading and the like, identifying the goods for which the claim is being asserted; (c) documentation identifying which of the Debtors such goods were shipped to, the date such goods were received by such Debtors, and the alleged value of such goods; and (d) a statement indicating (i) whether the value of such goods listed in the Proof of 503(b)(9) Claim represents a combination of services and goods, (ii) if applicable, the percentage of alleged value related to services and related to goods and (iii) whether the 503(b)(9) Claimant has filed any other claim against any Debtor regarding the goods underlying the Proof of 503(b)(9) Claim.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order. To the extent any summary of, or reference to the terms and conditions of, the Order provided in this notice conflicts with the actual terms and conditions of the Order, the actual terms and conditions of the Order shall control.

**PLEASE TAKE NOTICE** that effective as of the Petition Date, the 503(b)(9) Procedures shall be the sole and exclusive method for the assertion, resolution, allowance, and satisfaction of any Asserted 503(b)(9) Claims, and any 503(b)(9) Claimants shall be prohibited from utilizing any other means for the assertion, resolution, allowance, and satisfaction of any Asserted 503(b)(9) Claims, including, without limitation, the filing of a motion for allowance or to compel payment of any Asserted 503(b)(9) Claims.

**PLEASE TAKE NOTICE** that all Proofs of 503(b)(9) Claims shall be filed with (i) Haggen Claims Processing Center, c/o KCC, 2335 Alaska Avenue, El Segundo, CA 90245, and (ii) proposed co-counsel to the Debtors, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038-4982 (Attn: Matthew G. Garofalo), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801 (Attn: Ian J. Bambrick), **so as to be received no later than [_____]** (the "**503(b)(9) Claim Filing Deadline**"). **All 503(b)(9) Claimants shall be forever barred from asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code after the expiration of the 503(b)(9) Claim Filing Deadline**.

**PLEASE TAKE NOTICE** that a copy of the Order and the Proof of 503(b)(9) Claim Form can be obtained free of charge on the website of KCC at www.kccllc.net/haggen.

***PLEASE TAKE NOTICE that the fact that you have received this notice does not mean that you have a claim pursuant to section 503(b)(9) of the Bankruptcy Code in these chapter 11 cases or that the Debtors believe you have a claim***.

Dated:  [_____], 2015
      Wilmington, Delaware

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
Ian J. Bambrick (No. 5455)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (*pro hac vice* pending)
Sayan Bhattacharyya (*pro hac vice* pending)
Matthew G. Garofalo (*pro hac vice* pending)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*PROPOSED COUNSEL TO THE DEBTORS*
*AND DEBTORS-IN-POSSESSION*

01:17643491.4