## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 15-11874 (KG) |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref. Docket No. 13** |

**ORDER (I) AUTHORIZING THE DEBTOR LOAN PARTIES TO (A) OBTAIN
POSTPETITION FINANCING ON A FINAL BASIS AND (B) UTILIZE CASH
COLLATERAL OF PRE-PETITION SECURED PARTIES ON AN FINAL BASIS, (II)
AUTHORIZING DEBTOR HAGGEN HOLDINGS, LLC TO ENTER INTO CERTAIN
RELATED TRANSACTIONS, (III) GRANTING ADEQUATE PROTECTION, (IV)
MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF,
PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363(C), (D) & (E), 364(C), 364(D)(1),
364(E) AND 507(B)**

Upon the motion (the "**Motion**"), dated September 9, 2015, of Haggen, Inc. ("**Haggen**"),

Haggen Opco South, LLC ("**OPCO South**"), Haggen Opco North, LLC ("**OPCO North**",

together with OPCO South and Haggen, collectively the "**Borrowers**" and each individually a

"**Borrower**"), Haggen Acquisition, LLC ("**Acquisition Holdings**"), and Haggen Operations

Holdings, LLC ("**Operations Holdings**", together with Acquisition Holdings, collectively the

"**Guarantors**" and each individually a "**Guarantor**"; the Guarantors, together with the

Borrowers, are referred to collectively as the "**Debtor Loan Parties**" and each individually as a

"**Debtor Loan Party**"; and with Haggen Holdings, LLC, the "**Debtors**"), on behalf of the debtor

parties to the DIP Financing Documents (as defined below), each as a Debtor and Debtor-in-

Possession in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to

Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507(b) of Title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rules 2002, 4001,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

seeking, among other things:

(1)    authorization and approval for the Borrowers to obtain post-petition loans, advances and other financial accommodations (the "**Post-Petition Financing**") on a final basis from PNC Bank, National Association, in its capacity as agent (in such capacity, the "**DIP Agent**") for itself and the other financial institutions from time to time party to the DIP Credit Agreement (as defined below) as lenders (collectively, the "**DIP Lenders**"), under or in connection with the debtor-in-possession revolving credit facility (the "**DIP Facility**") in an aggregate amount up to $215,000,000 and otherwise in accordance with this Final Order, and to enter into on a final basis that certain the Debtor-In-Possession Revolving Credit and Security Agreement with the DIP Agent and the DIP Lenders, attached hereto as **Exhibit 2** (as amended by that certain First Amendment to Debtor-In-Possession Revolving Credit and Security Agreement substantially in the form attached hereto as **Exhibit 3** and as further amended, supplemented, extended or otherwise modified from time to time in accordance with the terms thereof and this Final Order, the "**DIP Credit Agreement**"), which shall reflect in all material respects the terms and conditions set forth in this Final Order (the DIP Credit Agreement, the Final Order (defined below) together with all other agreements, documents and instruments to be executed or delivered in connection therewith, collectively, the "**DIP Financing Documents**"). The DIP Facility shall be used in part for working capital and to refinance, in whole or in part at the DIP Agent's option, the outstanding principal balance of the revolving loans and obligations under the Revolving Credit and Security Agreement dated as of February 12, 2015 (as amended, supplemented, extended or otherwise modified from time to time, the "**Pre-Petition Revolving Credit Agreement**"), by and among Haggen, OPCO South, and OPCO North, (collectively, the "**Pre-Petition Borrowers**") and PNC Bank, National Association as Agent (the "**Pre-Petition Agent**") and the financial institutions party thereto from time to time (collectively, the "**Pre-Petition Lenders**"), and which shall indefeasibly satisfy in full the outstanding obligations under the Pre-Petition Financing Documents (as defined below).  The Pre-Petition Credit Agreement and all other agreements, documents and instruments executed or delivered with, to, or in favor of the Pre-Petition Agent and the Pre-Petition Lenders, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection with the Pre-Petition Credit Agreement or related thereto, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated or replaced at any time prior to the Petition Date, are collectively referred to herein as   the "**Pre-Petition Financing Documents**";

(2)    authorization for the Guarantors to enter into the DIP Credit Agreement pursuant to which each Guarantor (i) guarantees all Obligations[2] arising under the DIP Credit Agreement, and (ii) pledges and grants a Lien on all of its assets;

(3)    the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to Sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Order;

---

[2]  Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the DIP Credit Agreement.

(4)     to grant to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, priming liens, security interest and pledges on all of the DIP Collateral (defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which liens shall be senior to all liens, except that such liens shall be junior solely to (i) the Carve-Out (as defined below) and (ii) Permitted Liens (as defined below);

(5)     authorizing the Debtor Loan Parties' use of "cash collateral" (the "**Cash Collateral**") which term shall include, without limitation, all cash and cash equivalents of the Debtor Loan Parties, whenever or wherever acquired, and the proceeds of all DIP Collateral (defined below) pledged to the Secured Parties (defined below), Haggen Property North (defined below), and Haggen Property South, LLC (defined below), as contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein;

(6)     granting adequate protection to each Pre-Petition Lender and Issuer (as defined in the Pre-Petition Credit Agreement) (the "**Pre-Petition Issuer**," together with the Pre-Petition Agent and Pre-Petition Lenders, the "**Pre-Petition Secured Parties**," together with the DIP Agent and DIP Lenders, the "**Secured Parties**") under and in connection with the Pre-Petition Financing Documents in accordance with the terms set forth herein;

(7)     granting adequate protection to Haggen Property North, LLC ("**Haggen Property North**") and Haggen Property South, LLC ("**Haggen Property South**," together with Haggen Property North, the "**Propco Lenders**") in connection with that those certain subordinated promissory notes dated August 21, 2015 and that certain Subordinated Loan Agreement dated August 21, 2015 (collectively, the "**Subordinated Loan Agreement**"), pursuant to which Borrowers obtained a subordinated loan in the original principal amount of $25,000,000 (the "**Subordinated Loan**") to the extent that Propco Lenders hold valid, perfected, enforceable and unavoidable liens as of the Petition Date solely to the extent that Propco Lenders are entitled to same pursuant to and in accordance with the Intercreditor Agreement (defined below).

(8)     authorizing Haggen Holdings, LLC to grant releases, covenants not to sue, and other accommodations as provided in this Final Order and reaffirm certain prepetition guaranties; and

(9)     modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h).

Notice of the Motion, the relief requested therein, and the Final Hearing (as defined below) (the "**Notice**") having been served by the Debtor Loan Parties in accordance with Rule 4001(c) on: (i) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtor Loan Parties' thirty (30) largest unsecured creditors; (v) counsel to the DIP Agent and the DIP Lenders and the Pre-Petition Secured Parties; (vi) the Propco Lenders;

(vii) all parties known to the Debtor Loan Parties who hold any liens or security interest in the Debtor Loan Parties' assets who have filed UCC-1 financing statements against the Debtor Loan Parties, or who, to the Debtor Loan Parties' knowledge, have asserted any liens on any of the Debtor Loan Parties' assets; (viii) all landlords and warehouseman of the Debtor Loan Parties; and (ix) all creditors known to the Debtor Loan Parties to be holding a judgment against the Debtor Loan Parties. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). (collectively, the "**Noticed Parties**").

The initial hearing on the Motion having been held by this Court on September 10, 2015 (the "**Interim Hearing**") and the final hearing on the Motion having been held by this Court on October 15, 2015 (the "**Final Hearing**").

Based upon the record presented to the Court by the Debtors at the Interim Hearing and the Final Hearing, including the Motion, the Declaration of Jonathan P. Goulding in support of the Motion [Docket No. 14] and the other filings and pleadings in the Cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

        A.     Petition. On September 8, 2015 (the "**Petition Date**"), each Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code. The Debtor Loan Parties continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

        B.     Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Final Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Final Order to the extent not inconsistent herewith.

is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Committee Formation</u>:   On September 21, 2015, the U.S. Trustee appointed the Official Committee of Unsecured Creditors for the Debtors (the "**Committee**").

      D.    <u>Notice</u>. Under the circumstances, the Notice given by the Debtor Loan Parties of the Motion, the Final Hearing and the relief sought herein has been given to Noticed Parties pursuant to Fed. R. Bankr. P. 4001(c)(2).

      E.    <u>Debtor Loan Parties' Acknowledgments and Agreements</u>. Without prejudice to the rights of any other party (but subject to the limitations contained in paragraph 5.1 below), the Debtor Loan Parties admit, stipulate, acknowledge and agree that:

      (i)    <u>Pre-Petition Financing Documents</u>. Prior to the commencement of the Cases, the Pre-Petition Secured Parties made loans, advances and provided other financial accommodations pursuant to the Pre-Petition Financing Documents to the Pre-Petition Borrowers. Haggen Acquisition and Operations Holdings (collectively, the "**Pre-Petition Guarantors**") guaranteed the obligations of the Pre-Petition Borrowers under the Pre-Petition Revolving Credit Agreement pursuant to those certain Guaranty Agreements executed by each of the Pre-Petition Guarantors.

      (ii)    <u>Pre-Petition Obligations Amount</u>. As of September 7, 2015, the aggregate amount of all Obligations (as defined in the Pre-Petition Revolving Credit Agreement) owing by the Pre-Petition Borrowers to the Pre-Petition Secured Parties under and in connection with the Pre-Petition Financing Documents was not less than $176,560,347.87, including without limitation (i) Revolving Advances outstanding under (and as defined in) the Pre-Petition Revolving Credit Agreement in the amount of $165,655,897.43, (ii) undrawn Letters of Credit under (and as defined in) the Pre-Petition Revolving Credit Agreement in the amount of $10,100,000, (iii) the unpaid Forbearance Fee in the amount of

01:17659294.1

$450,000, (iv) accrued interest in the amount of $259,353.29, and (v) miscellaneous fees including, without limitation, accrued and unpaid Treasury Management fees, unused line fees, and collateral management fees, in an amount not less than $95,097.15, together with all other accrued and unpaid interest accruing thereon, and all fees (including without limitation prepayment fees), costs, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto under the Pre-Petition Financing Documents, (collectively, the "**Pre-Petition Obligations**").   The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Pre-Petition Borrowers and Pre-Petition Guarantors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, priority, enforceability and nonavoidability of any of the Pre-Petition Obligations.

(iii)    Pre-Petition Collateral.   As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Financing Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by Debtor Loan Parties to the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, upon the Collateral (as defined in the Pre-Petition Credit Agreement, hereafter the "**Pre-Petition Collateral**"), subject to other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Pre-Petition Secured Parties, but only to the extent valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the lien of Pre-Petition Lenders as of the Petition Date (collectively, the "**Permitted Liens**" and each a "**Permitted Lien**").   The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, priority, enforceability

6

and non-avoidability of any of the Pre-Petition Secured Parties' liens, claims or security interests in the Pre-Petition Collateral.

(iv)    Propco Lenders Obligations.  Prior to the commencement of the Cases, Borrowers obtained the Subordinated Loan from Propco Lenders pursuant to the Subordinated Loan Agreement.  Propco Lenders assert that the obligations owing by Borrowers to Propco Lenders under the Subordinated Loan Agreement are secured by a second subordinated lien on the Pre-Petition Collateral (the "**Pre-Petition Propco Lenders Collateral**"), subject to the Intercreditor Agreement (defined below).  As of the Petition Date, the obligations owing by Debtor Loan Parties under the Subordinated Loan Agreement is $25,000,000 ("**Propco Lenders Subordinated Indebtedness**").  For the avoidance of doubt, the Debtor Loan Parties make no admission, stipulation, acknowledgement or agreement pursuant to this Final Order with respect to the validity, priority, enforceability, and non-avoidability of any of the Propco Lenders' asserted liens, claims or security interests in the Pre-Petition Propco Lenders Collateral or the Propco Lenders Subordinated Indebtedness.

(v)    Intercreditor Agreement.  Borrowers, the Pre-Petition Agent and the Propco Lenders are parties to that certain Intercreditor Agreement dated as of August 21, 2015 (as amended, restated, supplemented, reaffirmed or otherwise modified from time to time, the "**Intercreditor Agreement**"), which governs the respective rights, obligations and priorities of the Secured Parties and Propco Lenders with respect to the matters referred to therein, including, without limitation, the use of Cash Collateral and the DIP Facility.  The liens and security interests granted to Propco Lenders in the Pre-Petition Propco Lenders Collateral are governed by and subject to the Intercreditor Agreement and are junior in all respects to the liens and security interests granted to the Pre-Petition Secured Parties, in the Pre-Petition Collateral and Secured Parties in the DIP Collateral.  See Paragraphs 2, 3, 4 and 6 of the Intercreditor Agreement.

7

F.      Adequate Protection.

(i)      Adequate Protection Obligations. The Debtor Loan Parties acknowledge and agree that:

a.      the Pre-Petition Secured Parties are entitled to adequate protection resulting from the (1) provisions of this Final Order granting first priority and/or priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility, (2) use of the Cash Collateral, (3) use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral, and/or (4) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code; and

b.      for the Pre-Petition Propco Lenders Collateral in which Propco Lenders held valid, perfected, enforceable and unavoidable liens on the Petition Date, Propco Lenders are being provided with adequate protection to the extent it is otherwise entitled, resulting from the (1) provisions of this Final Order granting first priority and/or priming liens on the Pre-Petition Propco Lenders Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility, (2) use of the Cash Collateral, (3) use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Propco Lenders Collateral, and/or (4) the imposition of the automatic stay under Bankruptcy Code section 362(a) or otherwise pursuant to Bankruptcy Code sections 362(a), 363(c), 364(c) and 364(d)(1).

Which as to (i)a. and b. the amount by which any such stay, use, sale, lease or grant results in any decrease in value of (x) the Pre-Petition Secured Parties interests in the Pre-Petition Collateral and (y) the Propco Lenders' interest in the Pre-Petition Propco Lenders Collateral collectively shall be referred to hereafter as the "**Adequate Protection Obligations**".

(ii)      First Lien/Second Lien Adequate Protection. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection for the Adequate

8

Protection Obligations, the Debtor Loan Parties have agreed to provide the Pre-Petition Secured Parties with First Lien Adequate Protection, and Propco Lenders with the Second Lien Adequate Protection (each as defined below), it being understood that the Second Lien Adequate Protection is being provided solely to the extent it is determined that Propco Lenders are entitled thereto.

(iii)    Necessity for Adequate Protection. The adequate protection and other treatment proposed to be provided by the Debtor Loan Parties pursuant to this Final Order are consistent with, *inter alia*, the Intercreditor Agreement, and authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cash Collateral, and facilitate the Debtor Loan Parties' ability to continue their business operations because of the need for a DIP Facility.

G.    Adequate Protection for Financing/Cash Collateral/Non-Impairment. The security interests and liens granted hereunder to (a) the DIP Agent, for the benefit of the DIP Lenders, under section 364(c) and (d) of the Bankruptcy Code, and (b) to the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, under sections 105, 361 and 363 of the Bankruptcy Code, are appropriate because, among other things: (a) the Pre-Petition Secured Parties do not object to the entry of this Final Order; (b) by virtue of paragraphs 2, 3, 4 and 6 and the other provisions of the Intercreditor Agreement, Propco Lenders have consented to the security interests and priming liens granted to the DIP Agent for the use of Cash Collateral for the benefit of the DIP Lenders and the First Lien Adequate Protection pursuant to this Final Order and the use of Cash Collateral, and (c) the holders of Permitted Liens, to the extent they are legal, valid, binding, continuing, enforceable and fully perfected, are not being impaired by this Final Order.

H.    Preliminary Findings Regarding the Postpetition Financing.

(i)     Postpetition Financing.    Borrowers and the Guarantors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described, and on the terms and conditions set forth, in this Final Order and the DIP Financing Documents.    Notwithstanding the Secured Parties' willingness to extend such financial accommodations, the Pre-Petition Obligations shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the Pre-Petition Financing Documents.

(ii)     Reserved.

(iii)     Fair and Reasonable. Based on the record presented to the Court by the Debtor Loan Parties, it appears that the terms of the DIP Credit Agreement, the DIP Financing Documents and the DIP Facility are fair and reasonable and reflect Borrowers' and Guarantors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(iv)     Need for Post-Petition Financing.  The Debtor Loan Parties do not have sufficient available sources of working capital to operate their businesses in the ordinary course without the Post-Petition Financing and the ability to use Cash Collateral as described in this Final Order. The Debtor Loan Parties' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtor Loan Parties' continued viability.  The ability of the Debtor Loan Parties to obtain sufficient working capital and liquidity through the proposed Post-Petition Financing and the use of Cash Collateral on the terms set forth in the DIP Financing Documents and this Final Order is vital to the preservation and maximization of the value of the Debtor Loan Parties' currently operating businesses pending a sale of the assets of the Debtor Loan Parties.  Accordingly, the Debtor Loan Parties have an immediate need to obtain authorization

10

to use Cash Collateral for the limited purpose set forth herein and obtain the Post-Petition Financing in order to, among other things, permit the orderly continuation of the operation of their operating businesses, preserve jobs for employees, maintain vendor support and minimize the disruption of their business operations, manage and preserve the assets of the Debtor Loan Parties' bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "**Estates**") in order to maximize the recoveries to creditors of the Estates.

(v)    No Credit Available on More Favorable Terms. The Debtor Loan Parties are unable to procure financing, under existing circumstances, on more favorable terms and conditions than from the DIP Agent and the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Financing Documents, including, without limitation, that they are unable to obtain credit in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense, and they are also unable to obtain credit allowable under Sections 364(c)(1) or (c)(2) of the Bankruptcy Code, without the grant to the DIP Agent and the DIP Lenders, subject to the Carve-Out, of the DIP Liens and the DIP Superpriority Claim (each as defined herein) pursuant to Sections 346(c) and (d) of the Bankruptcy Code, in each case on the terms and conditions set forth in the DIP Financing Documents and this Final Order.

(vi)    Budget. Based on the record presented to the Court by the Debtor Loan Parties, it appears that the Debtor Loan Parties have prepared and delivered to the DIP Agent and the DIP Lenders an Updated Budget (the "**Updated Budget**"), which has been approved by the DIP Agent and the DIP Lenders in accordance with the DIP Credit Agreement. A copy of the Updated Budget is annexed hereto as **Exhibit 1**. The Updated Budget has been thoroughly reviewed by the Debtor Loan Parties and their management and sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The Debtor Loan Parties believe in good faith that the Updated Budget, subject to Permitted

11

Variances (as defined in the DIP Credit Agreement) is achievable and will allow the Debtor Loan Parties to operate in Chapter 11 without the accrual of unpaid post-petition administrative expenses during the term of the Updated Budget. The DIP Agent and the DIP Lenders are relying upon the Debtor Loan Parties' compliance with the Updated Budget, subject to Permitted Variances, in determining to consent to the use of Cash Collateral for the limited purposes expressly set forth herein and to enter into the Post-Petition Financing provided for herein.

(vii)   <u>Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363 (m).</u> Based on the record presented to the Court by the Debtor Loan Parties, it appears that the terms of the DIP Financing Documents and this Final Order are fair, just, reasonable and appropriate under the circumstances, reflect the Debtor Loan Parties' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Based on the record before this Court, it appears (and the Debtor Loan Parties have stipulated) that the Debtor Loan Parties and each of the Secured Parties have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents, the DIP Facility and the Debtor Loan Parties' use of Cash Collateral, respectively, all subject to the terms of this Final Order. Any credit extended under the terms of this Final Order shall be deemed to have been extended in "good faith" by the Secured Parties as that term is used in Section 364(e) and 363(m) of the Bankruptcy Code.

(viii)   <u>No Objection/Propco Lenders Consent.</u> Pre-Petition Secured Parties' have no objection to the DIP Facility and the use of Cash Collateral solely on the terms and conditions set forth in this Final Order, and the Propco Lenders consented to the terms of financing and use of cash collateral by virtue of the Intercreditor Agreement, *inter alia*, paragraphs 2, 3, 4 and 6. Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to

12

constitute, a finding that the interests of the Pre-Petition Secured Parties are or will be adequately protected with respect to any additional financing, or any non-consensual use of Cash Collateral. The DIP Agent and the DIP Lenders have indicated a willingness to provide the DIP Facility, but solely on the terms and conditions set forth in this Final Order and in the DIP Financing Documents.

(ix)    <u>Reserved.</u>

(x)    <u>Good Cause</u>.    The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor Loan Parties and their Estates, as its implementation will, among other things, provide the Borrowers with the necessary liquidity to (a) minimize disruption to the Borrowers on-going businesses and on-going operations and to permit the Debtor Loan Parties to sell their assets, (b) preserve and maximize the value of the Borrowers' Estates, and (c) avoid immediate and irreparable harm to the Borrowers, their businesses, their employees and their assets.

(xi)    <u>Immediate Entry</u>.    Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(c)(2). No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Final Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    <u>Authorization and Conditions to Financing</u>.

1.1    <u>Motion Granted</u>.    The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order. This Order shall be referred to herein as the "**Final Order**."

1.2     Authorization to Borrow and Use of Loan Proceeds.  The Borrowers are hereby authorized and empowered to immediately borrow and obtain Advances (and, at the discretion of the DIP Agent and the DIP Lenders, Letters of Credit) and the Borrowers and Guarantors are hereby authorized and empowered to incur indebtedness and obligations owing to the DIP Agent and the DIP Lenders on the terms and subject to the conditions set forth in the DIP Financing Documents and this Final Order up to the maximum amount of $215,000,000; in such amounts as may be made available to the Borrowers by DIP Lenders in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Financing Documents.  The Borrowers may only use the proceeds of the Advances and any other credit accommodations provided to the Borrowers pursuant to the terms and conditions of the DIP Financing Documents and upon entry of this Final Order, Advances may be used to refinance, in whole or in part, the outstanding principal balance of amounts owing under the Pre-Petition Financing Documents as elected by the DIP Agent in its sole and absolute discretion from time to time.  At such time as the Advances have been used to refinance the outstanding balance owed under the Pre-Petition Financing Documents, at the DIP Agent's discretion, the Letters of Credit issued under the Pre-Petition Financing Documents shall be deemed issued under the DIP Financing Documents.  All rights to the discretionary roll-up are subject to the rights reserved in Section 5.1 herein.

1.3     Financing Documents.

1.3.1  Authorization.  The Debtor Loan Parties are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement.  At Closing, Debtor Haggen Holdings, LLC reaffirmed its obligations under its pre-petition limited guaranty including the DIP Facility and provided other accommodations as provided herein.

14

1.3.2  <u>Approval</u>.  The DIP Financing Documents and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Final Order.

1.3.3  <u>Amendment of DIP Financing Documents</u>.  The Debtor Loan Parties, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any non-material modification of the DIP Financing Documents without further order of this Court or any other modification to the DIP Financing Documents upon five (5) business days' advance notice to counsel for the Committee; provided however, that notice of any material modification or amendment to the DIP Financing Documents shall require the consent of the Committee and the U.S. Trustee.  If the Committee or U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

1.4  <u>Payment of Prepetition Debt</u>.  The Debtor Loan Parties are authorized to pay the Pre-Petition Obligations to the Pre-Petition Secured Parties in accordance with Sections 1.5 and 1.6 of this Final Order.

1.5  <u>Payments and Application of Payments</u>.  The Debtor Loan Parties are authorized and shall make all payments and transfers of Debtor Loan Parties' Estate property to the DIP Agent and the DIP Lenders as provided, permitted and/or required under the DIP Financing Documents, which payments and transfers, subject to Section 5.1 herein, shall not be avoidable or recoverable from the DIP Lenders under Section 547, 548, 550, 553 or any other section of the Bankruptcy Code or subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  The DIP Agent and the DIP Lenders shall apply the proceeds of the DIP Collateral (as defined below), and any other amounts or payments received by the DIP Agent in respect of the Pre-Petition Obligations

15

and the Post-Petition Obligations (as defined in the DIP Financing Documents) (collectively, the "**Obligations**") in accordance with the DIP Financing Documents and this Final Order, in such order and manner determined by the DIP Agent, including, without limitation, applying all payments, proceeds and other amounts either to the Pre-Petition Obligations or to the Post-Petition Obligations in the DIP Agent's and Pre-Petition Agent's sole and absolute discretion. Without limiting the generality of the foregoing, the Debtor Loan Parties are authorized and shall, without further order of this Court, pay or reimburse the DIP Agent and the DIP Lenders, in accordance with, *inter alia*, Section 16.9 of the DIP Credit Agreement and the provisions of the other DIP Financing Documents, for all actual, reasonable, and documented costs and expenses, including, without limitation, all professional fees, consultant fees, appraisal fees, and legal fees and expenses paid or incurred by the DIP Agent and the DIP Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this Final Order, all of which shall be and are included as part of the principal amount of the Obligations and secured by the DIP Collateral (as defined below); provided that DIP Agent shall send a redacted summary invoice (subject in all respects to applicable privilege or work product doctrines) to Debtor Loan Parties, the United States Trustee and counsel to the Committee and (a) if no objection has been raised within ten (10) days from delivery of such invoice, the Debtor Loan Parties shall immediately thereafter pay the invoice in full, and (b) to the extent a timely objection setting forth in reasonable detail the basis upon which the objecting party disputes any portion of such invoice, the Debtor Loan Parties shall immediately thereafter pay the undisputed portion of such invoice. To the extent the parties are not able to resolve the disputed portion of an invoice, either party may file with the Court a motion, on at least ten (10) days prior written notice, for a hearing to resolve the objection.

      1.6      <u>Interest and Fees</u>.  The rate of interest to be charged for the Advances under the Post-Petition Obligations pursuant to the DIP Credit Agreement shall be the rates set

forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement. The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement, including without limitation the Commitment Fee in the amount of $1,525,000, which is fully earned upon execution of the DIP Credit Agreement and payable in two installments as follows: $987,500 due and payable upon the Closing Date (as defined in the DIP Credit Agreement), and $537,500 due and payable on the earlier of (x) the Termination Date (as defined in the DIP Credit Agreement), or (y) any earlier accelerations of the Post-Petition Obligations (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Credit Agreement. The rate of interest to be charged on the Pre-Petition Obligations shall be the rates set forth in the Pre-Petition Financing Documents and shall accrue and be payable at the times and in the manner set forth in the Pre-Petition Financing Documents. Any and all fees charged under the Pre-Petition Financing Documents shall be as set forth in the Pre-Petition Financings Documents and shall be payable at the times set forth in the Pre-Petition Financing Documents; provided that any prepayment fee under the Pre-Petition Financing Documents shall be deferred until the Termination Date.

　　　　1.7　　Continuation of Prepetition Procedures. All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to the DIP Agent and the DIP Lenders and the funding pursuant to the Pre-Petition Credit Agreement, including any lockbox and/or blocked depository bank account arrangements, will be the same under the DIP Financing Documents and are hereby approved and shall continue without interruption after the commencement of the Cases, provided that the practices and procedures are otherwise consistent with the terms of the *Order, Pursuant to Sections 105(a), 345, 363 and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2015 and Local Rule 2015-2 (A) Authorizing and Approving (I) Continued Use of Cash management System and (II) Use of Prepetition Bank Accounts and Business Forms, (B) Authorizing Banks Participating*

17

*in the Cash Management System to Honor Certain Transfers and Charge Certain Amounts, (C) Waiving the Requirements of Section 345(b) on an Interim Basis, (D) Granting Administrative Expense Status to Post-Petition Intercompany Claims and (E) Granting Related Relief.*

Section 2.    Cross-Collateralization, Adequate Protection and Superpriority Administrative Claim Status.

    2.1    Cross-Collateralization.

        2.1.1  DIP Lien Grant.  To secure the prompt payment and performance of any and all Obligations (including without limitation, all Pre-Petition Obligations and Post-Petition Obligations) of the Borrowers and Guarantors to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority (subject to the Permitted Liens, the Carve-Out, and, with respect to MoneyGram Payment Systems, Inc. ("**MoneyGram**"), valid and unavoidable interests in prepetition and postpetition property, whether pursuant to statute or that certain Master Trust Agreement dated February 10, 2015 between MoneyGram and Haggen Operations Holdings, LLC, as the beneficiary of a trust existing as of the Petition Date), security interests and liens in and upon (such security interests and liens collectively, the "**DIP Liens**") all present and after acquired property of the Debtor Loan Parties of any nature whatsoever, including without limitation, all accounts receivable, inventory, general intangibles, chattel paper, real property and leaseholds and proceeds thereof (*provided, however*, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, or any federal law, regulation or order thereunder or any DIP Lender's internal regulatory or compliance requirements would require the completion of flood due diligence and/or obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then in such event the

18

Prepetition Agent and the DIP Agent shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests), fixtures, machinery, equipment, commercial tort claims, deposit accounts, cash and cash equivalents, investments, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property, inter-company notes or receivables due to each Debtor, all of the Collateral (as defined in the Pre-Petition Revolving Credit Agreement and the DIP Credit Agreement), and all causes of action whether pursuant to federal or state law, and as to all of the foregoing, all rents, issues, products, proceeds and profits generated by any of the foregoing (being sometimes collectively referred to in this Final Order as the "**DIP Collateral**"). For the avoidance of doubt, DIP Collateral shall not include claims and causes of action under Section 544, 547 and 548 of the Bankruptcy Code, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, whether pursuant to federal law or applicable state law (collectively, "**Avoidance Actions**") of the Debtor Loan Parties or their Estates. Further, for the avoidance of doubt, Propco Lenders shall have no lien or claim to the proceeds of the Albertson's Commercial Tort Claims (as defined in the DIP Credit Agreement), estate claims against the Debtors' officers and directors, or other commercial tort claims as adequate protection. The Obligations shall also include all indemnification obligations of Debtor Loan Parties to the Pre-Petition Secured Parties arising under the Pre-Petition Financing Documents, including without limitation the obligations arising under Sections 2.2(f), 2.2(g), 3.10, 6.4, 15.1(b), and 16.5 of the Pre-Petition Revolving Credit Agreement which survive payment in full of the Pre-Petition Obligations. Further, as consideration to Pre-Petition Secured Parties for their agreement to the terms hereof and as replacement collateral for the Pre-Petition Collateral used, consumed or sold by the Borrowers and/or Guarantors in the Cases, to the extent of any diminution in value of the Pre-Petition

Collateral, the DIP Collateral shall also secure the Pre-Petition Obligations. Subject to the provisions of Section 2.3.1, the DIP Liens, subject to the Carve-Out, shall be:

(A) <u>Liens on Unencumbered Assets</u>. Pursuant to Section 364(c)(2) of the Bankruptcy Code, continuing valid, perfected, enforceable, first priority, fully perfected liens on and security interests in all of the Debtor Loan Parties' right, title, and interest in and to and under all DIP Collateral that is not otherwise encumbered by a valid, perfected security interest on or lien on the Petition Date or a security interest that constitutes a valid and effective lien perfected after the Petition Date that is not avoidable under Section 546(b) of the Bankruptcy Code (the "**Unencumbered Property**").

(B) <u>Liens on Encumbered Assets.</u> Pursuant to Section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, second priority and fully perfected lien on and security interest (other than as set forth in clause (C) below) in all of the Debtor Loan Parties' right, title, and interest, in and to and under all DIP Collateral which is subject to, as of the Petition Date, a Permitted Lien that was perfected prior to the Petition Date or that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(C) <u>Priming Liens on Encumbered Assets.</u> Subject to Permitted Liens and any security interest that constitutes a valid and effective lien perfected after the Petition Date that is not avoidable under Section 546(b) of the Bankruptcy Code and that are senior to the security interests and liens held by the Pre-Petition Agent, on behalf of the Pre-Petition Secured Parties, pursuant to section 364(d) of the Bankruptcy Code, valid,

20

enforceable, fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtor Loan Parties' right, title and interest in, to and under all DIP Collateral, including, without limitation, priming security interests and priming liens which are senior to (i) the security interests and liens held by the Pre-Petition Agent, on behalf of the Pre-Petition Secured Parties; (ii) the security interests and liens held by Propco Lenders; and (iii) the Adequate Protection Liens (as defined below).

(D) <u>Liens Senior to Certain Other Liens.</u>  Notwithstanding anything to the contrary contained in this Final Order, the DIP Liens and the First Lien Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided or preserved for the benefit of the Debtor Loan Parties or their estates under section 551 of the Bankruptcy Code or (ii) any intercompany or affiliate liens of the Debtor Loan Parties.

2.1.2  <u>Post-Petition Lien Perfection</u>.  This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, leasehold mortgages, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of any Borrower or any Guarantor (a "**Perfection Act**").  Notwithstanding the foregoing, if the DIP Agent and/or the Pre-Petition Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, each of the DIP Agent and the Pre-Petition Agent is authorized to

21

perform such act, and the Debtor Loan Parties are authorized to perform such act to the extent necessary or required by the DIP Agent and/or the Pre-Petition Agent, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Agent and/or the Pre-Petition Agent may choose to file, record or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Order in accordance with applicable law. Should the DIP Agent and/or Pre-Petition Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Order.

2.1.3  Reserved.

2.1.4  Intercreditor Agreement.  Notwithstanding anything to the contrary contained herein, the liens and security interests granted to the Secured Parties to secure the Obligations shall have priority over any and all liens and security interests granted to Propco Lenders to secure obligations of any of the Debtor Loan Parties owing to Propco Lenders and the rights of the parties with respect to such liens and security interests shall be governed by the Intercreditor Agreement.  So long as any Obligations are outstanding under the Pre-Petition Financing Documents, the DIP Financing Documents or DIP Lenders' commitment to make Advances under the DIP Credit Agreement has not been terminated, and the releases in Section 5.4 hereof are not effective, Propco Lenders shall (i) take no action to foreclose upon or otherwise exercise remedies against any Pre-Petition Propco Lenders Collateral or DIP Collateral, (ii) be deemed to have consented to any release of Pre-Petition Propco Lenders

22

Collateral or DIP Collateral in connection with any disposition of any Pre-Petition Propco Lenders Collateral or DIP Collateral authorized under the Pre-Petition Financing Documents or the DIP Financing Documents and, effective upon such release, be deemed to release its liens therein, and (iii) not file any financing statement, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the Pre-Petition Propco Lenders Collateral or DIP Collateral.

      2.2     Superpriority Administrative Expense.  For all Obligations (including without limitation, all Pre-Petition Obligations and the Post-Petition Obligations) now existing or hereafter arising and for diminution in value of any Pre-Petition Collateral used by the Debtor Loan Parties pursuant to this Final Order, the DIP Financing Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim in the Borrowers' and Guarantors' Estates pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of any of such Debtor Loan Parties, whether now in existence or hereafter incurred by any of such Debtor Loan Parties, and over any and all administrative expenses, adequate protection claims or priority claims of the kind specified in, or ordered pursuant to the Bankruptcy Code, including without limitation, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**DIP Superpriority Claim**"), subject only to the Carve Out, provided, however, that the DIP Superpriority Claim shall not be payable from or have recourse to Avoidance Actions or their proceeds.

      2.3     Carve Out.

2.3.1 <u>Carve Out</u>. The DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Claims shall be subject only to the right of payment of the following expenses (collectively, the "**Carve-Out**"):

a.       statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) with respect to the Borrowers (the "**Statutory Fees**"); and

b.       the reasonable fees, costs, and expenses actually incurred on or after the Petition Date and prior to the Trigger Date (defined below), and that are allowed and payable by order of the Court under Sections 328, 330, or 331 of the Bankruptcy Code, and any interim compensation procedures order, as applicable (collectively, the "**Allowed Professional Fees**"), by Debtors' bankruptcy counsel, Young Conaway Stargatt and Taylor, LLP and Stroock & Stroock & Lavan LLP, (collectively, "**Debtors' Bankruptcy Counsel**"), Debtors' corporate counsel, Akerman LLP, and Debtors' financial advisors, Alvarez and Marsal North America, LLC ("**A&M**"), retained under Section 327 of the Bankruptcy Code, professionals retained by the Committee, and any court-appointed claims administrator (collectively, the "**Professionals**"), in a cumulative, aggregate sum of (i) for the period prior to the occurrence of the Trigger Date, not to exceed the lesser of (A) the weekly amounts budgeted to be funded for each such Professional in accordance with the Budget, exclusive of the Permitted Variance, for the time period preceding the Trigger Date (to the extent the Trigger Date occurs mid-week, pro-rated for such week) and (B) the actual allowed amount of such Professional Fees incurred on or after the Petition Date up through and including the Trigger Date, and (ii) for the time period following a Trigger Date, (i) an amount not to exceed $150,000 for (x) Debtors' Bankruptcy Counsel (collectively) and (y) A&M, and (ii) an amount not to exceed $150,000 for professionals retained by the Committee (collectively, the "**Carve-Out Cap**").

c.       The "**Trigger Date**" shall mean the date of an Event of Default under the DIP Credit Agreement and delivery of a written notice (the "**Carve-Out Notice**") by

the DIP Agent to (i) the U.S. Trustee, (ii) the Debtors and the Debtors' counsel, (iii) counsel for the Committee, and (iv) the Propco Lenders.

        d.     Subject to the terms of this Final Order, the Carve-Out Cap shall be allocated on a Professional by Professional basis based on the amounts budgeted to be funded for each Professional pursuant to the Budget, exclusive of the Permitted Variance; provided however, that with respect to the Debtors' counsel the allocated amounts shall be as set forth in a schedule consistent with the Budget acceptable to DIP Agent.

        2.4     <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, nor the proceeds of any Advances, Letters of Credit or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations (whether Pre-Petition Obligations or Post-Petition Obligations) or the Secured Parties' liens on and security interests in the Collateral, or any similar action against the Propco Lenders in respect of the Propco Lenders Subordinated Indebtedness, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations (whether Pre-Petition Obligations or Post-Petition Obligations) or the Secured Parties' liens on and security interests in the pre-petition Collateral or the DIP Collateral, or any similar action against the Propco Lenders in respect of the Propco Lenders Subordinated Indebtedness, or (iii) preventing, hindering or delaying the Secured Parties' or Propco Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any in accordance with the terms and conditions of this Final Order, (b) a request to use the Cash Collateral without the prior written consent of the Secured Parties, except to the extent expressly permitted herein, (c) a request for authorization to obtain Debtor-in-

Possession financing or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders, without the prior written consent of the DIP Agent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the Secured Parties, or any of them, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Secured Parties, or any of them, under Chapter 5 of the Bankruptcy Code; provided, however, that, inclusive within the Carve Out Cap, an amount not to exceed $150,000 in the aggregate of the indebtedness incurred pursuant to the DIP Facility may be used to pay Allowed Professional Fees of the Committee to investigate (but not prosecute) claims against and objections with respect to the Pre-Petition Obligations and pre-petition liens and security interests of the Pre-Petition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Pre-Petition Secured Parties), provided further, that the Secured Parties shall reasonably cooperate in providing their underlying documents evidencing their secured claims to counsel to the Committee. Notwithstanding the foregoing, nothing in this Final Order shall be deemed to (a) limit the ability of the Committee's professionals to be paid from proceeds of Avoidance Actions, (b) preclude this Court from awarding fees and expenses to Committee professionals pursuant to sections 328 and 330 of the Bankruptcy Code for such expenses and related disbursements; nor (c) relieve any plan proponent of the obligation to satisfy the confirmation requirement of paying all allowed administrative expense claims for such services and related disbursements.

2.5     Carve Out Reserve.  At the DIP Agent's sole discretion, the DIP Agent may at any time establish (and adjust) a reserve against the amount of Advances or other credit accommodations that would otherwise be made available to the Borrowers pursuant to the lending formulae contained in the DIP Credit Agreement in respect of the Carve-Out. Nothing

01:17659294.1

contained herein shall limit, modify or restrict in any way the DIP Agent's rights to establish (and adjust) any other reserves in accordance with the DIP Financing Documents.

2.6    Payment of Carve Out.

2.6.1 The Debtors shall maintain a segregated account established by the Debtors' at a bank or financial institution agreed upon by the parties ("**Account Holder**") for the payment of Allowed Professional Fees (the "**Carve-Out Reserve Account**") which account shall be funded by or on behalf of the Debtors in accordance with the Budget on a weekly basis until the occurrence of the Trigger Date provided there is availability under the DIP Credit Agreement. After the Trigger Date, the Carve-Out Reserve Account shall continue to be funded up to the Carve-Out Cap. From funds in the Carve-Out Reserve Account, the Account Holder shall pay the Professionals the Allowed Professional Fees in connection with the Carve-Out compensation and reimbursement of expenses that accrue following the Petition Date in compliance with and subject to the Carve-Out provisions of Section 2.3 as the same may be due and payable; provided however, that to the extent that Allowed Professional Fees that have accrued from the Petition Date through and including the Trigger Date are less than the amounts funded into the Carve Out Reserve Account, the excess amounts in the Carve Out Reserve Account shall be remitted to the DIP Agent to apply to reduce the Pre-Petition Obligations and/or the Post-Petition Obligations at Agent's sole discretion. For the avoidance of doubt, (a) in making payments from the Carve-Out Reserve Account, the Account Holder shall be entitled to rely upon written certifications of each Professional as to the amount such Professional is due and owing from the Carve-Out Reserve Account; and (b) in no circumstances shall the Account Holder be obligated to pay any Professional other than from funds held, from time to time, in the Carve-Out Reserve Account. Funds held in the Carve Out Reserve Account shall be applied to the Allowed Professional Fees that have been incurred following the Petition Date in the manner set forth in this Final Order in accordance with the procedures established in the Cases

27

with the excess, if any, to be remitted to the DIP Agent as set forth in the preceding sentence. Provided that the amounts DIP Agent is obligated to allocate to Professionals as required in Section 2.3 has been funded, all obligations of the DIP Agent and DIP Lenders and Pre-Petition Agent and Pre-Petition Lenders with respect to the Carve-Out shall be terminated.

2.6.2  Any payment into the Carve-Out Reserve Account or payments of fees and expenses made directly to the Professionals shall permanently reduce the pre-Trigger Date Carve-Out (for fees and expenses incurred before the Trigger Date) or the post-Trigger Date Carve-Out (for fees and expenses incurred on or after the Trigger Date), as applicable, on a dollar-for-dollar basis.

2.6.3  Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of the DIP Agent's and the DIP Lenders' liens and security interests in the DIP Collateral or their DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  The DIP Agent and the DIP Lenders shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4, 2.5 or 2.6 of this Final Order shall be construed to obligate the DIP Agent or any DIP Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

Section 3.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order, pursuant to sections 363(c)(2) of the Bankruptcy Code, the Debtor Loan Parties are authorized to use Cash Collateral in accordance with the DIP Financing Documents.  Nothing in this Final Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor

28

Loan Parties' use of any Cash Collateral or other proceeds resulting therefrom, except as provided for herein.

3.1     Pre-Petition Agent's Adequate Protection. As adequate protection for the interests of the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders and Pre-Petition Issuer, on account of the Adequate Protection Obligations, the Pre-Petition Agent is being provided with adequate protection (collectively, the "**First Lien Adequate Protection**").

3.1.1  First Lien Adequate Protection Liens. The Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Lenders and Pre-Petition Issuer, is hereby granted valid and perfected replacement and additional security interests in, and liens (the "**First Lien Adequate Protection Liens**") on the DIP Collateral to the extent of the Adequate Protection Obligations, which shall be junior in all respect to the DIP Liens, the Permitted Liens and the Carve Out.

a.     The First Lien Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the Petition Date and, subject to Section 5.1, not subject to subordination or avoidance, for all purposes in the Cases and subject only to the DIP Liens, the Permitted Liens and the Carve Out.

b.     Except for the DIP Liens, the Permitted Liens and the Carve Out, the First Lien Adequate Protection Liens shall not be made subject to or pari passu with any lien or security interest by any court order heretofore or hereafter entered in the Cases (unless with the consent of the Pre-Petition Agent and the Pre-Petition Lenders). The First Lien Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made pari passu with or senior to the First Lien Adequate Protection Liens.

29

3.2    First Lien Adequate Protection Claims.  As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, is hereby granted an allowed administrative claim (the "**First Lien Adequate Protection Claim**") against the Debtor Loan Parties' estates under sections 503 and 507(b) of the Bankruptcy Code to the extent that the First Lien Adequate Protection Liens do not adequately protect the diminution in the value of the liens and security interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, which First Lien Adequate Protection Claim shall be subject and subordinate only to the DIP Superpriority Claim and the Carve Out and shall have priority over all other administrative expense claims and unsecured claims against the Debtor Loan Parties or their estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.  Notwithstanding the foregoing, the First Lien Adequate Protection Claim shall not be payable from or have recourse to Avoidance Actions or their proceeds.

3.2.1  Interest.  As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, shall be entitled to interest on account of the outstanding Pre-Petition Obligation, which shall be accrued and payable and paid in accordance with the Pre-Petition Financing Documents.

3.2.2  Additional Adequate Protection.  As further adequate protection, and without limiting any rights of the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for the Adequate Protection Obligations, the Debtor Loan Parties shall pay or reimburse the Pre-Petition Agent for any and all of its accrued and payable reasonable fees, costs, expenses and charges payable under the Pre-Petition Financing

30

Documents, including, without limitation, the fees and expenses of the Pre-Petition Agent as provided in, *inter alia,* Section 16.9 of the Pre-Petition Credit Agreement, whether accrued pre-petition or post-petition, all without further notice, motion or application to, order of, or hearing before, this Court; provided that DIP Agent shall be permitted to add such amounts to the Obligations following submission of a redacted summary invoice to the Debtor Loan Parties, the United States Trustee and the Committee's counsel, of a written invoice (subject in all respects to applicable privilege or work product doctrines) provided no objection has been raised within ten (10) days, and to the extent there is an objection, the Court may resolve the objection. Such written invoices shall include (i) Blank Rome LLP, counsel to the Pre-Petition Agent, (ii) FTI Consulting, consultant to the Pre-Petition Agent; (iii) and any other professional, advisor or agent reasonably retained by the Pre-Petition Agent or its counsel in connection with the Pre-Petition Financing Documents pursuant to the Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

3.3     Right to Credit Bid. In connection with any sale of assets by any Debtor outside of the ordinary course of business that are subject to valid, perfected and enforceable liens held by the Pre-Petition Agent, the Pre-Petition Agent on behalf of the Pre-Petition Lenders, and the DIP Agent on behalf of the DIP Lenders, as the case may be, shall be entitled to credit bid all or any part of the outstanding amount of the Obligations, as applicable, in respect of any such sale.

3.4     Propco Lenders' Adequate Protection. In consideration for and on account of the Adequate Protection Obligations, without conceding any entitlement thereto and solely to the extent that Propco Lenders have not waived its right to seek or request it under the Intercreditor Agreement and solely to the extent the Pre-Petition Propco Lenders Collateral held

by Propco Lenders was subject to valid, perfected, enforceable and unavoidable liens and that it is ultimately determined that Propco Lenders are entitled to such adequate protection, Propco Lenders are being provided with adequate protection (the "**Second Lien Adequate Protection**" and, together with the First Lien Adequate Protection, the "**Adequate Protection**").

      3.4.1 <u>Second Lien Adequate Protection Liens</u>. To the extent of the diminution in value of the Propco Lenders' interests in the Pre-Petition Haggen Lender Collateral, the Propco Lenders are hereby granted valid and perfected replacement security interests in, and liens on all of the Debtor Loan Parties' right, title and interest in, and to the same items and types of DIP Collateral (the "**Second Lien Adequate Protection Liens**," and together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**"), which liens are valid, binding enforceable and fully perfected as of the Petition Date and which liens are subordinate and subject to (i) the DIP Liens, (ii) the First Lien Adequate Protection Liens, (iii) the Permitted Liens and (iv) the Carve Out, provided, however, the Propco Lenders shall have no lien or claim to the proceeds of the Albertson's Commercial Tort Claims (as defined in the DIP Credit Agreement), estate claims against the Debtors' officers and directors, or other commercial tort claims. The Second Lien Adequate Protection Liens are subject to the Intercreditor Agreement.

      3.4.2 <u>Second Lien Adequate Protection Claims</u>. As further adequate protection, to the extent it is determined that Propco Lenders are entitled thereto and to the extent that the Second Lien Adequate Protection Liens do not adequately protect the diminution in the value of Propco Lenders' interest in the Pre-Petition Propco Lenders Collateral, provided that such liens were valid perfected, enforceable and unavoidable, Propco Lenders are hereby granted an allowed administrative claim (the "**Second Lien Adequate Protection Claim**", and together with the First Lien Adequate Protection Claim, the "**Adequate Protection Claims**") against the Debtor Loan Parties' Estates under sections 503 and 507(b) of the Bankruptcy Code,

provided, however, that the Second Lien Adequate Protection Claim shall be subject and subordinate to the (i) DIP Superpriority Claim, (ii) First Lien Adequate Protection Claim and (iii) Carve Out, until all Obligations are indefeasibly paid and satisfied in full, and provided further that the Propco Lenders shall not be permitted to satisfy their Second Lien Adequate Protection Claim, if any, from the proceeds of Avoidance Actions, the Albertson's Commercial Tort Claims (as defined in the DIP Credit Agreement), estate claims against the Debtors' officers and directors, or other commercial tort claims. The Second Lien Adequate Protection Claims are subject to the Intercreditor Agreement.

Section 4.    Default; Rights and Remedies; Relief from Stay.

4.1    Events of Default.  The occurrence of any Event of Default as defined under the DIP Credit Agreement shall constitute an "**Event of Default**" under this Final Order.

4.2    Rights and Remedies Upon Event of Default/Relief from Stay.

4.2.1  Upon the occurrence of and during the continuance of an Event of Default and during the Remedies Notice Period (defined below) (except to the extent that the Secured Parties must protect perishable collateral in which case no notice is required), and without the necessity of seeking relief from the automatic stay or any further Order of the Bankruptcy Court (i) the DIP Agent and DIP Lenders may immediately terminate their obligation to make any advances under the DIP Facility; (ii) the DIP Agent and the Pre-Petition Agent shall be entitled to immediately terminate the Debtor Loan Parties' right to use Cash Collateral, without further application or order of this Court; (iii) the Debtor Loan Parties shall be bound by all restrictions, prohibitions and other terms as provided in this Final Order, the DIP Credit Agreement and the other DIP Financing Documents and the Pre-Petition Financing Documents; and (iv) the DIP Agent and the Pre-Petition Agent shall be authorized to continue to collect all proceeds of the DIP Collateral or Pre-Petition Collateral and apply them to the Obligations and Pre-Petition Obligations, as applicable; provided, however, the Debtors shall be

33

permitted to use Cash Collateral to pay their employees ordinary wages accrued up to the date of the Event of Default as well as the costs of preserving, protecting and maintaining the DIP Collateral and ensuring public safety.

4.2.2 Upon expiration of the Remedies Notice Period (except to the extent that the Secured Parties must protect perishable collateral in which case no notice is required), without further notice, application or order of this Court: (i) all amounts outstanding under the DIP Financing Documents and Pre-Petition Financing Documents shall be automatically accelerated as of the first day of such default; (ii) the DIP Agent and the Pre-Petition Agent shall be entitled to charge the default rate of interest under the DIP Facility and under the Pre-Petition Financing Documents calculated as of the first day of such default; and (iii) both the DIP Agent for the benefit of itself and the DIP Lenders, and the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, shall be entitled to take any act or exercise any other right or remedy as provided in this Final Order, the DIP Financing Documents, the Pre-Petition Financing Documents or applicable law as the DIP Agent or the Pre-Petition Agent may deem appropriate in their sole discretion, including, without limitation, (x) setting off any Obligations or Pre-Petition Obligations with DIP Collateral or Pre-Petition Collateral or proceeds in any Secured Parties' possession, and enforcing any and all rights with respect to the DIP Collateral or Pre-Petition Collateral, and (y) proceed against and realize upon the DIP Collateral or Pre-Petition Collateral or any other assets or properties of the Debtor Loan Parties' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders and the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment of all the Obligations including the Pre-Petition Obligations.    Notwithstanding the foregoing, DIP Agent may continue to apply proceeds

34

received into the lockbox or collection account to reduce the Obligations during the Remedies Notice Period.

Additionally, upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent or the Pre-Petition Agent of their respective rights and remedies under this Final Order, the DIP Financing Documents or Pre-Petition Financing Documents, and provided that the Debtor Loan Parties and the DIP Agent agree upon an acceptable wind down budget with agreed upon carve-out amounts for Debtors' Bankruptcy Counsel and professionals employed by the Committee, the Debtor Loan Parties shall assist the DIP Agent and the Pre-Petition Agent in effecting any sale or other disposition of the DIP Collateral or Pre-Petition Collateral required by the DIP Agent and Pre-Petition Agent, including any sale of DIP Collateral or Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code or assumption and assignment of DIP Collateral or Pre-Petition Collateral consisting of contracts and leases pursuant to section 365 of the Bankruptcy Code, in each case, upon such terms that are designed to maximize the proceeds obtainable from such sale or other disposition that are otherwise acceptable to the DIP Agent and the Pre-Petition Agent, and the Debtor Loan Parties shall fully cooperate with the Secured Parties in their exercise of rights and remedies. All such actions taken by Debtor Loan Parties in connection with this paragraph shall be consistent with their fiduciary duties.

4.2.3 "**Remedies Notice Period**" shall mean the five (5) day period commencing on the delivery of written notice by the DIP Agent of the occurrence of an Event of Default to: (i) Debtor Loan Parties, (ii) Debtors' Bankruptcy Counsel, (iii) counsel for the Committee, and (iv) the U.S. Trustee. During the Remedies Notice Period, the Debtor Loan Parties and/or Committee shall be entitled to seek an emergency hearing with the Court.

4.2.4 Upon and after the occurrence of an Event of Default, and upon the expiration of the Remedies Notice Period, in connection with a liquidation of any of the DIP

Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtor Loan Parties, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtor Loan Parties; provided, however, the DIP Agent may only be permitted to do so in accordance with (a) existing rights under applicable non-bankruptcy law, including, without limitation, applicable leases, (b) their pre-petition landlord's waivers, or (c) further order of the Court on motion and notice appropriate under the circumstances; and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtor Loan Parties, which are owned by or subject to a lien of any third party and which are used by the Debtor Loan Parties in their businesses. The DIP Agent and the DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property (other than the Debtor Loan Parties) for the period of time that the DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Agent actually occupies or uses such assets or properties).

4.2.5    The rights and remedies of the Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Secured Parties may have under the DIP Financing Documents, Pre-Petition Financing Documents or otherwise. The fourteen day stay provisions of Federal Rules of Bankruptcy Procedure 6004(h) and 4001(a)(3) are hereby waived.

4.3    Expiration of Commitment/Relief from Stay.    Upon the expiration of the Borrowers' authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Final Order (except if such authority shall be extended with the prior written consent of the DIP Agent, which consent shall not be implied or

01:17659294.1

construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender) or upon the Termination Date (as defined in the DIP Credit Agreement), unless an Event of Default occurs sooner and the automatic stay has been lifted or modified as provided herein, all of the Obligations shall immediately become due and payable and the Secured Parties shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to the Secured Parties pursuant to the terms and conditions of the DIP Financing Documents or this Final Order, and the DIP Agent, acting on behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Final Order, the DIP Financing Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the DIP Collateral or any other property of the Borrowers' and Guarantors' Estates.

      4.4    <u>Landlord Waiver Agreements</u>.  All rights and remedies granted in any landlord waiver executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition Credit Agreement, and all rights granted to the Secured Parties therein, including the right to access any premises leased by Debtor Loan Parties and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable and applicable to and binding upon the landlords and other parties to such waiver agreements with respect to the DIP Collateral and Obligations.

Section 5.    <u>Representations; Covenants; and Waivers</u>.

      5.1    <u>Objections to Pre-Petition Obligations</u>.  The extent, legality, validity, perfection, enforceability and other matters noted in this Final Order with respect to the Pre-Petition Financing Documents and Secured Parties' liens in the Pre-Petition Collateral and in the DIP Collateral as security for the Pre-Petition Obligations and the Adequate Protection Obligations, are for all purposes subject only to the rights of any party in interest with requisite

01:17659294.1

standing other than the Debtors (including any Chapter 7 trustee appointed during the Challenge Period) (as defined below)) for a period of the earlier of (i) 75 days from the Petition Date or (ii) 60 days from the date of the formation of the Committee (such period hereafter referred to as the "**Initial Challenge Period**"); provided that the Challenge Period shall be extended for (x) for a Chapter 7 trustee for an additional seventy-five (75) days if the Case is converted prior to the expiration of the Initial Challenge Period and for a Chapter 11 trustee who is appointed prior to the expiration of the Initial Challenge Period, and (y) for the Committee for a further extension by agreement with the Secured Parties or for cause shown, provided that the Initial Challenge Period shall only be extended if the Committee timely files a motion with the Bankruptcy Court seeking an extension prior to expiration of the Initial Challenge Period and demonstrates cause for such extension (the "**Extended Challenge Period**", together with the Initial Challenge Period, the "**Challenge Period**"): to seek to (a) challenge in any manner the Pre-Petition Obligations, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with, the Pre-Petition Obligations or the Pre-Petition Financing Documents, or (b) assert or allege any other matters in any way arising out of, relating to, or in connection with, the Pre-Petition Obligations or the Pre-Petition Financing Documents, or (c) challenge the extent, legality, validity, perfection and/or enforceability of any Secured Party's pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code (the actions described in clause (a), (b) and/or (c) above, collectively referred to herein as an "**Objection**"). If an Objection is not timely filed within such Challenge Period (I) the Pre-Petition Obligations shall be deemed allowed in full and the Secured Parties' security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as legal, valid, binding, in full force and effect, non avoidable, perfected and senior to all other liens (subject only to Permitted Liens to the extent such liens are valid, perfected and unavoidable) upon and claims against the Pre-Petition Collateral with respect to all parties in these Cases and

01:17659294.1

not be subject to any counterclaims, setoff, recoupment, deduction, or claim of any kind or any defenses, or any further objection or challenge by any party at any time, and (II) the Pre-Petition Secured Parties and each their respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Pre-Petition Financing Documents entered into with Borrowers and/or Guarantors prior to the entry of this Final Order and shall not be subject to any further objection or challenge by any party at any time. Nothing in this Final Order shall be deemed to confer standing to commence any action or proceeding on either the Committee, or any other party-in-interest. After expiration of the Challenge Period with no timely Objection having been interposed on behalf of the Debtors' Estates (by the Committee or any other party in interest), the release set forth in Section 5.4 shall be binding on the Debtors' Estates, including any subsequently appointed trustee, case fiduciary or successors and assigns. Further, upon the expiration of the Initial Challenge Period without any requested extension being sought or obtained and the releases in Section 5.4 having become effective with no timely Objection (including, without limitation, any motion for standing) having been interposed or asserted on behalf of the Debtors' Estates (by the Committee or any other party in interest), the Agent and DIP Lenders, the Pre-Petition Agent and Pre-Petition Lenders shall be deemed to have waived their liens and secured claims against the Albertson's Commercial Tort Claims or the proceeds thereof. If, during the Challenge Period, the Committee files a motion for standing with a draft complaint attached thereto, the Challenge Period will be tolled, solely for the Committee and solely with respect to the claims asserted in the draft complaint, until such time as this Court determines whether the Committee has standing to file an Objection. If this Court determines that the Committee has standing to file an Objection, the Challenge Period shall be extended for three (3) business days from the date for entry of the order granting the Committee standing to file an Objection; provided, however, that such an extension shall only

39

apply to those claims that this Court has specifically found that the Committee has standing to assert. For the avoidance of doubt, in the event there is a timely (in accordance with this Section 5.1) and successful Objection in which this Court has determined that the Pre-Petition Secured Parties did not maintain valid, perfected and enforceable liens on the Pre-Petition Collateral, the Court reserves the right to unwind the roll-up only to the extent that such liens were not valid, perfected and enforceable as of the Petition Date; provided, however, the Debtors' Estates and the Committee waive the right to challenge the roll-up on the basis that the Pre-Petition Secured Parties were undersecured as of the Petition Date. For the avoidance of doubt, this Section 5.1 shall not apply to the Propco Lenders or the security interests or liens granted under the Subordinated Loan.

       5.2    <u>Debtors' Waivers</u>. At all times during the Cases, and whether or not an Event of Default has occurred, unless otherwise consented to by the DIP Agent in writing in advance (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), the Debtors irrevocably waive any right that they may have to seek authority: (i) to use Cash Collateral of the Secured Parties under Section 363 of the Bankruptcy Code except to the extent expressly permitted in this Final Order; (ii) until all Obligations are indefeasibly paid and satisfied in full, to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders; (iii) to challenge the application of any payments authorized by this Final Order as pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations; (iv) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction of all Obligations on the effective date of such plan; or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of

the DIP Agent and the DIP Lenders as provided in this Final Order or the DIP Financing Documents or the DIP Agent's and the DIP Lenders' exercise of such rights or remedies.

      5.3    Section 506(c) Claims. Subject to the Carve-Out, no costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against the Pre-Petition Agent or any Pre-Petition Lender, the DIP Agent or any DIP Lender, their respective claims or the Pre-Petition Collateral or the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of the Pre-Petition Agent or DIP Agent, as applicable (and no such consent shall be implied from any other action, inaction or acquiescence by the Pre-Petition Agent or any Pre-Petition Lender and the DIP Agent or any DIP Lender). The Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral.

      5.4    Release.

      5.4.1 In consideration of and as a condition to the DIP Agent and the DIP Lenders making Advances and providing other credit and financial accommodations to the Borrowers pursuant to the provisions of this Final Order and the DIP Financing Documents, each Debtor, on behalf of itself, each estate, and other legal representatives (collectively, the "**Releasors**"), subject to Section 5.1 with respect to all applicable parties other than the Debtors, hereby absolutely releases, forever discharges and acquits each Pre-Petition Secured Party and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Pre-Petition Agent, each Pre-Petition Lender and all such other parties being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of

41

money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses rights of set-off, demands and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, the "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the date of this Final Order, in respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Financing Documents and any Advances, Letters of Credit or other financial accommodations made by the Pre-Petition Secured Parties to the Debtor Loan Parties pursuant to the Pre-Petition Financing Documents; provided that such release shall not be effective with respect to all applicable parties other than the Debtors until the expiration of the Challenge Period. In addition, upon the indefeasible payment in full of all Obligations owed to the DIP Agent and the DIP Lenders by the Debtor Loan Parties and termination of the rights and obligations arising under this Final Order and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent), the DIP Agent and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Financing Documents or this Final Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated)), on terms and conditions reasonably acceptable to the DIP Agent.

5.4.2  Subject to Section 5.1 with respect to all applicable parties other than the Debtors, each Releasor hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory

42

proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released and discharged by each Releasor pursuant to Section 5.4.1 above. If any Releasor violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

Section 6.    Other Rights and Obligations.

6.1    No Modification or Stay of this Final Order. Based upon the record presented to the Court by the Debtor Loan Parties, notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Order, the DIP Financing Documents or any term hereunder or thereunder, or (ii) the dismissal or conversion of one or more of the Cases, the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to Section 364(e) of the Bankruptcy Code and the Final Order and DIP Financing Documents.

6.2    Power to Waive Rights; Duties to Third Parties. The Secured Parties shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Order in respect of the Secured Parties (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s). Any waiver by any Secured Party of any Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor Loan Parties to any Secured Party.

6.3    Disposition of Collateral. The Debtor Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the consent of the DIP Agent, except for sales of the Borrowers' Inventory in the

43

ordinary course of their business or as otherwise permitted in the DIP Credit Agreement. Unless otherwise agreed to by the DIP Agent in writing and except as expressly provided herein or in the DIP Credit Agreement, all proceeds of any sale or other disposition of the Collateral shall be paid over to the DIP Agent on behalf of the DIP Lenders to the extent required by this Final Order.

6.4    Inventory.  The Debtor Loan Parties shall not, without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise.

6.5    Reservation of Rights.  The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of the Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Documents, the Pre-Petition Financing Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

6.6    Modification of the Automatic Stay.  The automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order and the DIP Financing Documents, including without limitation

44

the application of collections, authorization to make payments, granting of liens and perfection of liens.

### 6.7    Binding Effect.

6.7.1  The provisions of this Final Order, the DIP Financing Documents, the Obligations, the DIP Superpriority Claim, First Lien Adequate Protection Liens, First Lien Adequate Protection Claims and any and all rights, remedies, privileges and benefits in favor of the DIP Agent and the DIP Lenders, Pre-Petition Secured Parties provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

6.7.2  Any order dismissing one or more of the Cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Agent's and the DIP Lenders' and the Pre-Petition Secured Parties liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim and DIP Liens and First Lien Adequate Protection Liens and First Lien Adequate Protection Claims of the DIP Agent and the DIP Lenders in the DIP Collateral.

6.7.3  Reserved.

6.7.4  This Final Order shall be binding upon the Debtors, their Estates, all parties in interest in the Cases and their respective successors and assigns, including any

trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtors and shall inure to the benefit of the Secured Parties, the Debtors and their respective successors and assigns, subject to the rights of any Chapter 11 or Chapter 7 trustee pursuant to Section 5.1 above.

6.8     Marshalling.   In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

6.9     Proofs of Claim. Notwithstanding the entry of an order establishing a bar date in any of these Cases, the Pre-Petition Secured Parties shall not be required to file proofs of claim in any of the Cases with respect to any of the Pre-Petition Obligations or any other claims or liens granted hereunder or created hereby. The Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claim in each of the Cases on behalf of all of the Pre-Petition Secured Parties in respect of the Pre-Petition Obligations.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

6.10     Waiver of Bankruptcy Rule 4001(a)(3), 6003(b), 6004(a) and 6004(h). The 21 day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a) and the 14 day stay of 4001(a)(3) and 6004(h) are hereby waived.

6.11     Order Controls.  Unless this Final Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Financing Documents and/or the Pre-Petition Financing Documents or (b) the terms and provisions of this Final Order, then in each case the terms and provisions of this Final Order shall govern.

46

6.12   Objections Overruled.  All objections to the entry of this Final Order are, to the extent not withdrawn, hereby overruled.

6.13   No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

6.14   PACA claims.  Notwithstanding anything to the contrary contained herein, nothing in this Final Order shall impair or impact any valid trust claims under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499t ("PACA"), and all such claims may be paid by the Borrowers in the ordinary course of business.

6.15   Nestle liens.  Notwithstanding anything to the contrary contained herein, nothing in this Final Order is intended to impair any valid, perfected, enforceable, non-avoidable rights in and to the inventory subject to any priority liens of Nestle USA and its affiliates, subsidiaries and divisions, or any identifiable proceeds in existence as of the Filing Date and all parties' rights are preserved, including all rights of the Debtors, and the Bank Group to dispute same.

Section 7.   Service of Final Order.  The Debtors shall promptly mail copies of this Final Order to the Noticed Parties, counsel for the Committee and to any other party that has filed a request for notices with this court

Dated:  October 15, 2015
        Wilmington, Delaware

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

47