# EXHIBIT 3

# FIRST AMENDMENT TO DIP CREDIT AGREEMENT

## FIRST AMENDMENT TO

## DEBTOR-IN-POSSESSION REVOLVING CREDIT AND SECURITY AGREEMENT

This **FIRST AMENDMENT TO DEBTOR-IN-POSSESSION REVOLVING CREDIT AND SECURITY AGREEMENT** (this "Amendment") is made as of October 15, 2015 among **HAGGEN, INC.**, a Washington corporation ("Haggen"), **HAGGEN OPCO NORTH, LLC**, a Delaware limited liability company ("Haggen Opco North"), **HAGGEN OPCO SOUTH, LLC**, a Delaware limited liability company ("Haggen Opco South" and, together with Haggen Opco North, Haggen, and each Person joined to the Credit Agreement as a borrower from time to time, collectively, the "Borrowers", and each a "Borrower"), Haggen Acquisition, LLC, a Delaware limited liability company ("Haggen Acquisition"), Haggen Operations Holdings, LLC, a Delaware limited liability company ("Operations Holdings", and together with Haggen Acquisition and each Person joined to the Credit Agreement as a debtor guarantor from time to time, collectively, the "Debtor Guarantors", and each a "Debtor Guarantor"), the financial institutions which are now or which hereafter become a party to the Credit Agreement (collectively, the "Lenders" and each individually a "Lender"), and **PNC BANK, NATIONAL ASSOCIATION** ("PNC"), as agent for Lenders (PNC, in such capacity, "Agent").

## RECITALS

A. The Borrowers, Lenders and Agent are party to that certain Debtor-in-Possession Revolving Credit and Security Agreement dated as of September 11, 2015 (as the same may hereafter be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"). All capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Credit Agreement.

B. The Borrowers have requested that Agent and Lenders agree to modify certain terms of the Credit Agreement and consent to certain transactions, and Agent and Lenders have so agreed, in each case subject to the terms and conditions contained herein.

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Amendments to Credit Agreement**.

1.1 Defined Term (New). As of the Effective Date, the following defined term is added to Section 1.2 of the Credit Agreement in the proper alphabetical order:

"First Amendment Date" shall mean October 15, 2015.

1.2 Defined Terms (Amended and Restated). As of the Effective Date, the following defined terms in Section 1.2 of the Credit Agreement are hereby amended and restated as follows:

"Maximum Revolving Advance Amount" shall mean the amount equal to (A) $215,000,000 minus the outstanding amount of all Pre-Petition Obligations, minus (B) an amount equal to 75% of the Aggregate Liquidity Pharmacy Proceeds received by Loan Parties and applied to the Obligations in accordance with this Agreement and the Interim Order and Final Order, minus (C) an amount equal to 75% of the Aggregate Liquidity 363 Proceeds received by Loan Parties and applied to the Obligations in accordance with this Agreement and the Interim Order and Final Order.

"Permitted Overadvance" shall mean (a) from the First Amendment Date through and including November 29, 2015, $40,000,000, (b) from November 30, 2015 through and including December 18, 2015, $72,000,000; provided however, that in the event that Borrowers receive and apply to the Obligations Aggregate Liquidity 363 Proceeds (for the avoidance of doubt not including proceeds received from Inventory sales in connection with Approved Prescription List Sales) at any time prior to November 30, 2015 or thereafter, the amount set forth in this subsection (b) shall be reduced dollar for dollar by such proceeds until such time as the Permitted Overadvance equals $25,000,000 and (c) at all times thereafter, $25,000,000.

1.3 Bankruptcy Defaults and Events of Default. As of the Effective Date, clauses (iii) and (iv) of Section 10.7(o) shall be amended and restated in their entirety as follows:

(iii) the Loan Parties shall fail to obtain an order of the Bankruptcy Court on terms and conditions and in form and substance reasonably acceptable to Agent approving the Planned GOB Sales (the "Planned GOB Sales Order") on or before October 15, 2015, or (iv) the GOB Liquidator shall have failed to commence the "going out of business sales" at substantially all of the Planned GOB Stores as communicated to the Agent and in accordance with the Planned GOB Stores Liquidator Agreement on or before October 16, 2015 with respect to any locations subject to an asset purchase agreement (as of the date of the First Amendment) and October 31, 2015 with respect to any other location that is a Planned GOB Store;

1.4 Bankruptcy Defaults and Events of Default. As of the Effective Date, the reference to November 20, 2015 contained in Section 10.7(q) shall be amended to read December 18, 2015.

1.5 Bankruptcy Defaults and Events of Default. As of the Effective Date, Section 10.7(r) shall be amended and restated in its entirety as follows:

(r) the Loan Parties shall fail (i) to deliver to Agent a draft of the Core Stores Offering Memorandum (as defined below) on or before October 13, 2015 and (ii) to finalize and commence distribution of an offering memorandum/marketing memorandum prepared by the Investment Bank to market and solicit bids for a Core Stores Sale (in one or more transactions/in lot or in whole) on or November 2, 2015 (the "Core Stores Offering Memorandum");

**1.6** <u>Bankruptcy Defaults and Events of Default</u>. As of the Effective Date, the reference to October 22, 2015 contained in Section 10.7(s) shall be amended to read November 9, 2015.

**1.7** <u>Bankruptcy Defaults and Events of Default</u>. As of the Effective Date, the reference to November 13, 2015 contained in Section 10.7(t) shall be amended to read December 1, 2015.

**1.8** <u>Bankruptcy Defaults and Events of Default</u>. As of the Effective Date, the reference to January 18, 2016 contained in Section 10.7(v) shall be amended to read January 19, 2016.

**1.9** <u>Bankruptcy Defaults and Events of Default</u>. As of the Effective Date, the reference to October 5, 2015 contained in Section 10.7(aa) shall be amended to read October 15, 2015.

**1.10** <u>Bankruptcy Defaults and Events of Default</u>. As of the Effective Date, new Section 10.7(ff) shall added to the Credit Agreement as follows:

(ff) termination or breach by any Person of any purchase agreement related to an Approved 363 Sale (as set forth in Section 10.7(q) hereof) or any material agreement executed and delivered in connection therewith or any Person party to any such agreement attempts to terminate, challenges the validity of, or its obligations under any such agreement, in either case, unless Debtors have delivered to Agent additional purchase agreements, in form and substance satisfactory to Agent and Required Lenders, evidencing that Agent shall receive Aggregate Liquidity 363 Proceeds as contemplated in Section 10.7(q) hereof.

**2.** **Consent**. Agent and Lenders hereby consent to the payment of "PTO" payments as set forth in the Budget as required by Section 10.7(g) of the Credit Agreement.

**3.** **Representations and Warranties**. Loan Parties warrant and represent to Agent and Lenders that:

**3.1** **Reaffirmation of Representations and Warranties**. By execution of this Amendment, Loan Parties reconfirm all warranties and representations made to Agent and Lenders under the Credit Agreement and the Other Documents and restate such warranties and representations in all material respects as of the date hereof, except to the extent such representations and warranties expressly relate solely to an earlier date (in which case such representations and warranties shall have been true and correct in all material respects on and as of such earlier date).

**3.2** **Additional Representations and Warranties**. The execution and delivery by Loan Parties of this Amendment and the performance of the obligations of Loan Parties hereunder and the consummation by Loan Parties of the transactions contemplated hereby: (i) are within the powers of Loan Parties; (ii) are duly authorized by each Loan Party; (iii) are not in contravention of the terms of the Organizational Documents of any Loan Party or of any Loan Party's contractual obligations; (iv) do not require the consent, registration or approval of any governmental authority or any other person or entity; (v) do not contravene any statute, law, ordinance regulation, rule, order or other governmental restriction applicable to or binding upon any Loan Party; and (vi) will not, except as contemplated

3

herein for the benefit of Agent and Lenders, result in the imposition of any liens upon any property of Loan Parties under any existing indenture, mortgage, deed of trust, loan or other material agreement or instrument to which any Loan Party is a party or by which it or any of its property may be bound or affected.

3.3 **Enforceability**. This Amendment is a legal, valid and binding obligation of Loan Parties and is enforceable against Loan Parties in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally, by general equitable principles or by principles of good faith and fair dealing.

3.4 **Events of Default**. No Default or Event of Default has occurred and is continuing under the Credit Agreement.

4. **Reaffirmation of Covenants**. Loan Parties hereby reaffirm all of the covenants contained in (i) the Credit Agreement as amended or affected hereby and (ii) the Other Documents, and Loan Parties covenant to abide thereby until the satisfaction in full of the Obligations under the Credit Agreement and the termination of the Lenders' commitments to make Advances under the Credit Agreement.

5. **Effectiveness Conditions**. The Agent's and Lenders' undertakings hereunder are subject to the satisfaction of all of the following conditions, and shall become effective on the earliest date (the "Effective Date") when all such conditions have been satisfied:

5.1 Agent shall have received a fully executed copy of this Amendment;

5.2 If this Amendment shall be signed on behalf of any Loan Party by any person other than a person whose name, title and specimen signature were included on an officer's certificate previously delivered to Agent, Agent shall have received an incumbency certificate for such Borrower, as the case may be; and

5.3 Agent shall have received such other documents as Agent or counsel to Agent may reasonably request.

6. **Indemnity**. Each Borrower and each Guarantor shall indemnify, defend and hold harmless Agent, each Lender and the directors, officers, agents, employees and advisers of Agent and each Lender from and against any and all losses, claims, damages, liabilities, deficiencies, judgments or expenses (excluding lost profits and indirect, special and consequential damages) incurred by any of them arising out of or by reason of any litigation, investigation, claim or proceeding which arises out of or is in any way related to this Amendment, the Credit Agreement, the Other Documents, the Collateral or the transactions contemplated hereby or thereby, except to the extent that any of the foregoing arises out of the willful misconduct, gross negligence, fraud or bad faith of any of them (as determined by a court of competent jurisdiction in a final and non-appealable judgment).

7. **Miscellaneous**.

7.1 **JURY TRIAL WAIVER**. EACH BORROWER, EACH GUARANTOR, AGENT AND EACH LENDER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AMENDMENT, THE CREDIT

AGREEMENT, THE OTHER DOCUMENTS OR ANY OTHER AGREEMENTS OR TRANSACTIONS RELATED HERETO OR THERETO.

7.2 **Governing Law**. This Amendment shall be governed by and construed and interpreted in accordance with the laws of the State of New York.

8. **Further Assurances**. At Agent's or any Lender's written request, each Borrower and each Guarantor shall promptly execute any other document or instrument and/or seek any consent or agreement from any third party that the Agent or any Lender reasonably determines is necessary to evidence or further the intent of the parties as set forth in this Amendment. Agent is hereby authorized to file and/or record in such public records as Agent deems reasonably necessary such financing statements and/or continuations of existing financing statements (or modifications thereto) as Agent deems reasonably necessary and to take such other actions as may be reasonably necessary, in order to continue and maintain the perfection of its liens created under the Credit Agreement and the Other Documents.

9. **Counterparts**. This Amendment may be executed by one or more of the parties to this Amendment by facsimile or "pdf" and in any number of separate counterparts, each of which, when so executed, shall be deemed an original, and all of said counterparts taken together shall be deemed to constitute but one and the same instrument.

10. **Successors and Assigns**. The provisions of this Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that Borrowers and Guarantors may not assign or transfer any of their rights or obligations under this Amendment, the Credit Agreement, or any Other Documents without the prior written consent of Agent and Lenders.

11. **Entire Agreement**. This Amendment, together with the Credit Agreement and the Other Documents, embodies the entire agreement and understanding among the parties hereto, and supersedes all prior or contemporaneous agreements and understandings of such persons, verbal or written, relating to the subject matter hereof and thereof. Except as otherwise expressly provided in this Amendment, nothing herein shall be deemed to amend or modify any provision of the Credit Agreement, as previously amended, or any Other Document, each of which shall remain in full force and effect and continue to be binding upon and inure to the benefit of the parties thereto and their respective permitted successors and assigns.

12. **No Third Parties Benefited**. This Amendment is made and entered into for the sole protection and legal benefit of Borrowers, Agent, Lenders, Guarantors and their permitted successors and assigns, and no other person or entity shall be a direct or indirect legal beneficiary of, or have any direct or indirect cause of action or claim in connection with this Amendment, the Credit Agreement or any Other Documents. Lenders and Agent shall have no obligation to any person or entity not a party to this Amendment, the Credit Agreement or the Other Documents.

13. **Severability**. If any provision of this Amendment is determined by a court of competent jurisdiction to be unenforceable, such determination shall not affect any other provision hereof.

14. **Construction and Interpretation**. The parties have participated jointly in the negotiation and drafting of this Amendment. Any rule of construction or interpretation otherwise

requiring this Amendment to be construed or interpreted against any party by virtue of the authorship of this Amendment shall not apply to the construction and interpretation hereof.

*[Signature Page Follows]*

   **IN WITNESS WHEREOF**, the parties hereto have executed this Amendment as of the day and year first above written.

          **HAGGEN, INC.**

          By: _____
          Name: Blake Barnett
          Title: Chief Financial Officer

          **HAGGEN OPCO NORTH, LLC**

          By: _____
          Name: Blake Barnett
          Title: Chief Financial Officer

          **HAGGEN OPCO SOUTH, LLC**

          By: _____
          Name: Blake Barnett
          Title: Chief Financial Officer

          **HAGGEN ACQUISITION, LLC**

          By: _____
          Name: Blake Barnett
          Title: Chief Financial Officer

          **HAGGEN OPERATIONS HOLDINGS, LLC**

          By: _____
          Name: Blake Barnett
          Title: Chief Financial Officer

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]

**PNC BANK, NATIONAL ASSOCIATION**
as a Lender and as Agent


By:_____
Name:
Title:

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]

**JPMORGAN CHASE BANK, N.A.**
as a Lender


By:_____
Name:
Title:

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]

**KEYBANK, N.A.**
as a Lender


By:_____
Name:
Title:

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]

**U.S. BANK NATIONAL ASSOCIATION**
as a Lender


By:_____
Name:
Title:

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]

**CIT FINANCE LLC**
as a Lender


By:_____
Name:
Title:

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]

**SIGNATURE BANK**
as a Lender


By:_____
Name:
Title:

[Signature Page to First Amendment to DIP Revolving Credit and Security Agreement (Haggen)]