**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | Case No. 15-11874 (KG) |
| Debtors. | **Hearing Date: Oct. 19, 2015 at 11:00 a.m. EDT**<br>**Objection Deadline: Oct. 16, 2015 at 12:00 p.m. EDT** |
| | **Re: Docket No. 262** |

### LIMITED OBJECTION OF DDR CORP., KFT ENTERPRISES, NO. 1, L.P., LA JOLLA MANAGEMENT, REGENCY CENTERS, L.P., TERRAMAR RETAIL PROPERTIES, AND WEINGARTEN REALTY INVESTORS TO THE DEBTORS' MOTION TO SELL SUBSTANTIALLY ALL OF THEIR ASSETS

DDR Corp., KFT Enterprises, No. 1, L.P., La Jolla Management, Regency Centers, L.P., Terramar Retail Properties, and Weingarten Realty Investors (collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, submit this limited objection (the "Objection") to the above-captioned debtors' (the "Debtors") *Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 and 507 for Approval of: (I) (A) Global Bidding Procedures, (B) Bid Protections, (C) Form and Manner of Notice of Sale Transactions and Sale Hearing, and (D) Assumption and Assignment Procedures; and (II) (A) Purchase Agreements, (B) Sale of Certain of the Debtors Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Leases* (the "Motion").[2]  In support of this Objection, the Landlords respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases are: Haggen Holdings, LLC, Haggen Operations Holdings, LLC, and Haggen, Inc.

[2] Docket No. 262.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1.      The Landlords do not seek to prevent the Debtors from conducting an expeditious process for the marketing and sale of substantially all or a portion of Debtors' assets, including its interests in unexpired nonresidential leases of real property.  Any such sale process, however, must ensure that affected parties, including Debtors' landlords, receive sufficient information to assess and analyze the financial condition of a proposed assignee of Debtors' leases well in advance of any objection deadline so that landlords may have sufficient time to analyze them and prepare an objection, if necessary.

2.      The Debtors' proposed Bidding Procedures (as defined below) must be modified to clearly state that landlords are automatically to bid on their own leases and credit bid some or all of the undisputed cure amount for a particular lease.  Additionally, any landlord credit bidding on its own lease should not be required to submit a cash deposit; rather, only landlords submitting cash bids should be required to comply with the deposit requirements set forth in the Bidding Procedures.

3.      Furthermore, the proposed Bidding Procedures fail to include procedures necessary for the assumption and assignment of shopping center leases.[3]  While the Bidding Procedures require the bidders to furnish the Debtors with certain adequate assurance information, they do not require that landlords be provided with such information, even with respect to the Stalking Horse Bidders, prior to any objection deadline or even the sale hearing.  It is not clear at what point in the sale process, if at all, landlords will receive adequate assurance of future performance from any bidders.  Any sale process must ensure that landlords of shopping center leases receive sufficient information to assess and analyze the financial condition of a

2

proposed assignee to any objection deadline, and certainly prior to the sale hearing, in order to satisfy the requirements of section 365 of the Bankruptcy Code.  Accordingly, the proposed sale timeline must be modified to provide a reasonable amount of time for the landlords to assess whether the winning bidder has provided adequate assurance of future performance as required by section 365 and to prepare and file an objection, if necessary.

4.     The proposed Bidding Procedures are also vague and inadequate because they do not address the treatment of any subleases or licenses contained in the leases.  Any counterparty to a lease containing a sublease or license has no notice regarding whether the sublease or license will be included in a bid for the primary Lease, will be rejected, or will be dealt with via a separate motion to be filed by the Debtors at a later date.

5.     Lastly, under these circumstances, there is no basis for an advance waiver of the stay under Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

### <u>BACKGROUND</u>

6.     On September 8, 2015 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with this Court.  Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  These cases are jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

7.     The Landlords are the owners or managing agents for the owners of numerous shopping centers located throughout the United States.  The Debtors lease retail space from the Landlords pursuant to written leases (the "<u>Leases</u>") for the stores at the locations listed

---

[3]     Most or all of the Leased Premises (as defined below) are located in shopping centers as that term is used in

on the attached <u>Exhibit A</u> (the "<u>Leased Premises</u>").  Most or all of the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

        8.      On October 3, 2015, the Debtors filed the Motion on shortened notice which seeks, among other things, to establish bidding procedures for the sale of the Leases (the "<u>Bidding Procedures</u>") to Smart & Final Stores, LLC or Gelson's Markets (collectively, the "<u>Stalking Horse Bidders</u>"), or to the party with the highest and best bid at an auction (together with the Stalking Horse Bidders, the "<u>Proposed Assignee</u>").

        9.      The Motion proposes a timeline for the sale of leases (the "<u>Proposed Sale Timeline</u>") as set forth in more detail in the column entitled "Debtors' Proposed Sale Timeline" in the table attached hereto as **Exhibit B**.  The Landlords dispute the Proposed Sale Timeline and seek the approval of different dates, as set forth in the column entitled "Landlords' Proposed Sale Timeline" (the "<u>Landlords' Proposed Sale Timeline</u>").

## <u>ARGUMENT</u>

**I.     The Bidding Procedures Must Specify That Landlords Are Automatically Qualified to Bid and Credit Bid on Their Leases**

       10.     Currently, the Bidding Procedures neither specify that lease counterparties are automatically qualified to bid on their own leases nor provide a deadline by which lease counterparties must submit bids for their own leases.  The Bidding Procedures must be amended to provide that landlords are automatically qualified to bid on their leases and attend the auction(s).  The Bidding Procedures must also clarify that a landlord may credit bid some or all of the undisputed cure amount for its lease.  If a lease counterparty credit bids some or all of the undisputed cure amount for its own lease, such counterparty should not be required to post a

---

section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

cash deposit for its bid to be considered a qualified bid.  Rather, only landlords submitting cash bids should be required to comply with the deposit requirements set forth in the Bidding Procedures.  While these requirements are appropriate for third-party bidders, landlords need not submit cash deposits for a credit bid.

11.     Because the Landlords will likely wish to credit bid, the Proposed Sale Timeline should be modified to ensure that the Landlords receive the cure notices for their Leases well in advance of the bid deadline in order to prepare their credit bids.  As set forth in the Landlords' Proposed Sale Timeline, the Debtors should serve cure notices for all leases on or before Thursday, October 22, 2015, regardless of whether the bidder for a particular lease is a Stalking Horse Bidder.

## II.     The Debtors and the Proposed Assignee Must Provide the Landlords with Adequate Assurance of Future Performance

12.     Shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of obtaining adequate assurance of future performance from any proposed assignee of a real property lease.  *See In re Joshua Slocum, Ltd.*, 922 F. 2d 1081, 1086–1087 (3d Cir. 1990); *see also In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002).

13.     In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance–

> (A)  of the source of the rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor because the lessee under the lease;
>
> (B)  that any percentage rent due under such lease will not decline substantially;
>
> (C)  that assumption or assignment of such lease is subject to all of the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provision, and will not breach any such provision contained in any

5

other lease, financing agreement, or master agreement relating to such shopping center; and

(D)  that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).  The Debtors bear the burden of demonstrating adequate assurance of future performance.  *See In re Rachel Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

14.     In order to determine whether the requirement of adequate assurance of future performance will be satisfied, the Landlords and their counsel must be provided, at a minimum, with an adequate assurance package ("Adequate Assurance Package") containing the following information:

(i)     The exact name of the Successful Bidder and the exact name of the entity which is going to be designated as the Proposed Assignee of the Lease;

(ii)    The Proposed Assignee's and/or any guarantor's audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2012, 2013, and 2014;

(iii)   The number of stores the Proposed Assignee operates and all trade names that the Proposed Assignee uses;

(iv)    A statement setting forth the Proposed Assignee's intended use of the premises;

(v)     The Proposed Assignee's retail experience and experience operating in-line stores in a shopping center;

(vi)    The Proposed Assignee's 2015 and 2016 business plans, including sales and cash flow projections; and

(vii)   Any financial projections, calculations, and/or financial pro-formas prepared in contemplation of purchasing the Leases.

6

III.    **The Bidding Procedures Must Require that Bidders Timely Provide Adequate Assurance of Future Performance Information to be Considered "Qualified Bidders"**

15.    As proposed, the Bidding Procedures do not contain any mechanism for providing adequate assurance of future performance information to the Landlords.  While the Bidding Procedures propose deadlines by which counterparties must object to adequate assurance information, they fail to specify when counterparties will receive any such adequate assurance information.  Accordingly, the Bidding Procedures should be modified to specify that bidders must submit to the Debtors an Adequate Assurance Package containing the information set forth above in order to submit a qualified bid.  The Debtors should then serve the Adequate Assurance Package on the respective counterparty and its counsel on a confidential basis (i) no later than October 22, 2015, for those leases included in a Stalking Horse Package, and (ii) no later than November 5, 2015, for those leases not included in a Stalking Horse Package, as set forth in the Landlords' Proposed Sale Timeline.  The Adequate Assurance Package should be sent to the applicable landlord via overnight mail and via email, if the email address is known to the Debtors.  This will give the Landlords sufficient time to consider the adequate assurance information and determine whether or not an objection is necessary.

16.    The Bidding Procedures should further be modified to specify that the Landlords will not use any confidential adequate assurance information for any purpose other than (i) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided and (ii) in support of any objection by a landlord relating to adequate assurance of future performance.  The Landlords should be permitted to rely on that information in an objection and to file such objection under seal without the need to seek further authority from the Court.

**IV.**    **Alternate Bidders Should Not Escape Judicial Scrutiny**

17.    The proposed Bidding Procedures further seek to grant Debtors the authority, in the event that a Successful Bidder fails to consummate an approved purchase of the assets prior to the Back-Up Bid Expiration Date, to effect the sale of such assets to the Back-Up Bidder(s) as if it were the Successful Bid.  The grant of such advance authority to complete a sale to a Back-Up Bidder does not contemplate any further proceedings or further order of this Court.  There is absolutely no authority permitting the Debtors to proceed with the assumption and assignment of leases and executory contracts without notice or judicial scrutiny of the successful purchaser-assignee, in complete defiance of the procedures and protections provided to lessors and contract parties under Bankruptcy Code section 365.

**V.**    **The Bidding Procedures Must Specify the Treatment of Subleases and/or Licenses Contained in the Leases**

18.    Many of the Leases contain subleases or licenses allowing other businesses, such as gas stations or coffee shops, to operate on the Leases Premises.  Further, some of Debtors' grocery store locations have separate "pad" leases for gas stations that are not mentioned in the Motion.  The Bidding Procedures are silent with respect to the treatment of any ancillary subleases or licenses contained in the Leases; specifically, it is unclear whether any sublease or license contained in a Lease will be included in the bid for that Lease.  The Landlords request that the Bidding Procedures be modified to clarify whether subleases and/or licenses will be included in a bid for the primary lease, or will be dealt with separately via a separate motion to be filed by the Debtors at a later date.  Similarly, the Debtors' proposed treatment of its gas station leases, adjacent to grocery locations being marketed for assignment, should be clarified and such leases should either be clearly included in the Motion or expressly dealt with through one or more separate, later motions.

## VI.    An Advance Waiver of the Stay Under Bankruptcy Rules 6004(h) and 6006(d) is Inappropriate

19.    The Motion seeks an advance waiver of the fourteen-day stay of Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure following entry of any one of the orders approving the relief requested by the Motion.  Such an advance blanket waiver is unjustified and inappropriate.

20.    Rule 6006(d) provides that:

> "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

The 1999 Advisory Committee Note to Rule 6006(d) provides:

> "[s]ubdivision (d) is added to provide sufficient time for a party to request a stay pending appeal of an order authorizing the assignment of an executory contract or unexpired lease under § 365(f) of the Code before the assignment is consummated. . . . The court may, in its discretion, order that Rule 6006(d) is not applicable so that the executory contract or unexpired lease may be assigned immediately in accordance with the order entered by the court. Alternatively, the court may order that the stay under Rule 6006(d) is for a fixed period less than 10 [now 14] days."

21.    The Rule 6006(d) stay provides a short period of time that "is often needed and essential to an objecting party intending to appeal because if the assignment is closed in the absence of a stay, then any appeal by the objecting party may well be moot."  *Collier on Bankruptcy* ¶ 6006.04, at 6006-19 (16th ed. 2015); *see also In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 92 (Bankr. W.D. Tex. 2000) (in reviewing a similar provision in former Rule 6004(g) [now Rule 6006(h)] observing that "[a] party seeking to obtain appellate review of just such a sale should not find its efforts frustrated by a 'quick closing' that renders an appeal moot.") *Collier* further observes that:

9

"[I]f an objection has been filed and is being overruled, the court should eliminate or reduce the 14-day stay period *only upon a showing that there is a sufficient business need to close the assignment within the 14-day period and that the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected*. If the objecting party informs the court that it intends to appeal and seek a stay, then the stay period should not be reduced to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the court determines that the need to proceed sooner outweighs the objecting party's interests." (*Id.* at 6006-19 to 20 [emphasis added].)

22.     The expedited relief sought by the Motion, with significant details and evidence yet to be disclosed, affects the legitimate interests of landlords. There is a possibility that an appeal of any ruling on one or more issues may be warranted under the circumstances. Preclusion of the stay provided by Rules 6004 and 6006 to allow a landlord a meaningful opportunity to appeal undermines the protections afforded landlords by section 365. Here, (i) the Federal Rules of Bankruptcy Procedure presumptively favor the 14-day stay, (ii) Rules 6004 and 6006 were adopted expressly to allow objecting parties time to appeal, and (iii) the asserted fact that Debtors desire to quickly and efficiently sell the assets while they still have realizable value is not sufficient grounds to abrogate landlords' due process protections and the right to appeal without the appeal effectively being rendered moot. The Debtors simply have not demonstrated sufficient "cause" to justify the extraordinary remedy of an *advance* blanket waiver of the stay provided by Rules 6004 and 6006 at this stage of the proceedings.

23.     This Court should deny the Debtors' request for any advance waiver of the fourteen-day period under Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

## <u>RESERVATION OF RIGHTS</u>

24.     The Landlords reserve the right to amend and/or supplement this Objection and to raise any additional objections to the Motion at the hearing to consider the Motion.

25.     The Landlords also reserve the right to object to the assumption and assignment of the Leases to the Proposed Assignee on any basis, including, without limitation, that the Debtors have failed to provide adequate assurance of future performance by the Debtors or the Proposed Assignee.

11

## CONCLUSION

**WHEREFORE**, the Landlords request that the Court enter an order (i) clarifying that landlords are automatically qualified to bid and credit bid on their own leases and attend the auction; (ii) compelling the Debtors and/or the Proposed Assignee to provide the Landlords with adequate assurance of future performance in advance of the objection deadlines and sale hearing; (iii) requiring the Debtors to clarify whether the Motion impacts the subleases and licenses; (iv) denying the Debtors' request for any advance waiver of the fourteen-day period under Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure; (v) denying the Motion unless it is modified as requested herein; and (vi) granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        October 16, 2015

KELLEY DRYE & WARREN LLP

By:  */s/ Robert L. LeHane*
     Robert L. LeHane, Esq.
     Gilbert R. Saydah, Jr. Esq. (DE Bar No. 4304)
     Jennifer D. Raviele, Esq.
101 Park Avenue
New York, New York 10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897

*Counsel to DDR Corp., KFT Enterprises, No. 1,*
*L.P., La Jolla Management, Regency Centers, L.P,*
*Terramar Retail Properties, and Weingarten Realty*
*Investors*

## EXHIBIT A

| STORE NO. | MALL NAME | LOCATION |
|---|---|---|
| **DDR Corp.** | | |
| **KFT Enterprises, No. 1, L.P.** | | |
| 2209 | Long Beach, CA | 6235 East Spring Street, Long Beach, CA |
| **La Jolla Management** | | |
| 2183 | El Cajon, CA | El Cajon, CA |
| **Regency Centers, L.P.** | | |
| 2186 | Twin Peaks | Poway, CA |
| 2123 | Cascade Plaza | Everett, WA |
| | Cascade Plaza (Fuel Station) | Everett, WA |
| 2214 | Oakbrook Plaza Shopping Center | Thousand Oaks, CA |
| 2184 | Rancho San Diego Village | 3681 Avocado Blvd/Ave. La Mesa, CA |
| 2151 | Five Points | 3943 State Street, Santa Barbara, CA |
| 2169 | El Camino Shopping Center | 23381 Mulholland Drive, Woodland Hills, CA |
| **Terramar Retail Properties** | | |
| 2070 | Point Fosdick Square | Gig Harbor, WA |
| | Point Fosdick Square (Fuel Station) | Gig Harbor, WA |
| | Tierrasanta Town Center | Tierra Santa Blvd, San Diego, CA |
| **Weingarten Realty Investors** | | |
| | Westminster Center | Westminster, CA |
| 2170 | Chino Hills Marketplace | 4200 Chino Hills Parkway, Chino Hills, CA |

**EXHIBIT B**

| Event | Debtors' Proposed Sale Timeline | Landlords' Proposed Sale Timeline |
|---|---|---|
| Deadline for Debtors to serve cure notices for leases included in a Stalking Horse Package. | 3 days after Bidding Procedures Order is entered | Thursday, Oct. 22, 2015 |
| Deadline For Debtors to serve adequate assurance information for leases included in a Stalking Horse Package. | Unclear | Thursday, Oct. 22, 2015 |
| Global Indication of Interest Deadline. | Monday, Oct. 26, 2015 | |
| Global bid deadline for all leases. | Monday, Nov. 2, 2015 @ 5:00 p.m. (EST) | |
| Deadline to file cure/adequate assurance objections for leases identified in a Stalking Horse Package. | Monday, Nov. 2, 2015 @ 5:00 p.m. (EST) | |
| Deadline for Debtors to provide adequate assurance information for leases not included in a Stalking Horse Package. | Unclear | Thursday, Nov. 5, 2015 |
| Deadline for Debtors to designate and publish qualified bidders, select baseline bids, and publish stores to be included in the auction. | Friday, Nov. 6, 2015 | |
| Objection deadline for sale (if no qualified bidders). | Friday, Nov. 6, 2015 @ 5:00 p.m. (EST) | |
| Auction (time and location TBD). | Monday, Nov. 9, 2015 | |
| Deadline for Debtors to file notice of successful bidders | Unclear | 1 business day after auction |
| Sale hearing (if Stalking Horse Bidder is successful bidder). | Friday, Nov. 13, 2015 | |
| Deadline for Debtors to serve cure notices for leases not included in a Stalking Horse Package. | Friday, Nov. 13, 2015 | Thursday, Oct. 22, 2015 |
| Adequate assurance objection deadline for successful bidders other than stalking horse bidders. | Friday, Nov. 20, 2015 | |
| Sale hearing (if auction is conducted and sale hearing does not occur on November 13, 2015). | Tuesday, Nov. 24, 2015 | |