## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
|  | ) Case No. 15-11874 (KG) |
| HAGGEN HOLDINGS, LLC, *et al.*,[1] | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) |
|  | ) Ref. Docket No. 262 |

## ORDER GRANTING DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363, 365, 503 AND 507 AND FED. R. BANKR. P. 2002, 6004 AND 6006 FOR APPROVAL OF (I) GLOBAL BIDDING PROCEDURES, (II) BID PROTECTIONS, (III) FORM AND MANNER OF NOTICE OF SALE TRANSACTIONS AND SALE <u>HEARING, AND (IV) ASSUMPTION AND ASSIGNMENT PROCEDURES</u>

Upon consideration of the motion (the "**Motion**")[2] of the Debtors in the above-captioned

chapter 11 cases, pursuant to sections 105, 363, 365, 503 and 507 of the Bankruptcy Code and

Bankruptcy Rules 2002, 6004, 6006, 9008 and 9014, for (i) an order approving (a) the Global

Bidding Procedures attached hereto as **Exhibit 1,** (b) the Bid Protections granted to each

Stalking Horse Bidder as provided in such bidder's Stalking Horse Agreement, (c) the form and

manner of notice of each Auction, Sale Transaction and Sale Hearing, (d) the Assumption and

Assignment Procedures, including the procedures for determining Cure Costs, and (e) a date for

the Auctions and Sale Hearings (collectively, the "**Bidding and Auction Process**"); and (ii)

orders authorizing (a) the sale of the Assets, as defined and identified in each Stalking Horse

Agreement (including any Additional Stores (as defined in the Motion)), and any Additional

Stores free and clear of all liens, claims, encumbrances, and other interests pursuant to section

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

[2] Capitalized terms used but not defined herein shall have the meanings given them in the Motion or the Global Bidding Procedures, as applicable.

363(f) of the Bankruptcy Code and (b) the assumption and assignment of the Applicable

Transferred Contracts (as defined  below) and identified in each Stalking Horse Agreement

(including any Additional Contracts (as defined in the Motion)) (collectively, the "**Sale**

**Transactions**"), all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order; and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

having been given as provided in the Motion; and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the relief requested in the Motion

as to the Bidding and Auction Process (the "**Hearing**"); and all of the proceedings had before the

Court; and the Court having reviewed the Motion, the Moses Declaration and the Goulding

Declaration; and the Court having found and determined that the relief sought in the Motion as to

the Bidding and Auction Process is in the best interests of the Debtors, their estates and creditors,

and all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

     A.    This Court has jurisdiction to hear and determine the Motion and to grant

the relief requested herein with respect to the Bidding and Auction Process pursuant to 28 U.S.C.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

§§ 157 and 1334 and the Amended Standing Order. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008 and 9014.

C.      Good and sufficient notice of the Motion, the Bidding and Auction Process and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Global Bidding Procedures. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.      The Debtors and their advisors, including Sagent Advisors, LLC, engaged in a robust and extensive marketing and sale process to solicit and develop the highest or best offer for the Stores.

E.      The bid of each Stalking Horse Bidder as reflected in the Stalking Horse Agreement of such Stalking Horse Bidder (such Stalking Horse Bidder, the "**Applicable Stalking Horse Bidder**" and the Stalking Horse Agreement applicable to such Stalking Horse Bidder, the "**Applicable Stalking Horse Agreement**"), represents the highest or best offer the Debtors have received to purchase the Assets included in an Applicable Stalking Horse Agreement (the "**Applicable Assets**").

F.      Each of Gelson's Markets ("**Gelson's**") and Smart & Final Stores, LLC ("**Smart & Final**") shall act as the "**Stalking Horse Bidder**" under a Stalking Horse Agreement, respectively, and be subject to higher or better offers in accordance with the Global Bidding Procedures and the Applicable Stalking Horse Agreement.

G.    Pursuit of each Applicable Stalking Horse Bidder as a "stalking-horse" and its Applicable Stalking Horse Agreement as a "stalking-horse" sale agreement is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.    The Applicable Stalking Horse Agreement provides the Debtors with the opportunity to sell the Applicable Assets, in order to preserve and realize their optimal value.    Each of the Applicable Stalking Horse Agreements will enable the Debtors to secure a fair and adequate baseline price for the Applicable Assets at the auction for the Applicable Assets (the "**Applicable Auction**") and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

H.    The Bid Protections, including, but not limited to, any Termination Payments (as defined in the Motion) or "Break-Up Fee" (as such term is defined in the Applicable Stalking Horse Agreement, the "**Applicable Termination Payment**"), (i) have been negotiated by the Applicable Stalking Horse Bidder and the Debtors and their respective advisors at arms' length and in good faith and (ii) are necessary to ensure that the Applicable Stalking Horse Bidder will continue to pursue its Applicable Stalking Horse Agreement and the sale transaction contemplated thereby (the "**Applicable Sale Transaction**").    The Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, (u) is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (v) shall be treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, (w) is commensurate to the real and material benefits conferred upon the Debtors' estates by the Applicable Stalking Horse Bidder, (x) is fair, reasonable, and appropriate, including in light of the size and nature of the Applicable Sale

Transaction, the necessity to announce a sale transaction for the Applicable Assets and the efforts that have been and will be expended by the Applicable Stalking Horse Bidder, (y) has been negotiated by the parties and their respective advisors at arms' length and in good faith, and (z) is necessary to ensure that the Applicable Stalking Horse Bidder will continue with the Applicable Sale Transaction. Each Applicable Stalking Horse Bidder has expended, and will continue to expend, considerable time, money, and energy pursuing the proposed Applicable Sale Transaction; and the Bid Protections, including, but not limited to, any Applicable Termination Payments are a material inducement for, and condition of, each Applicable Stalking Horse Bidder's execution of the Applicable Stalking Horse Agreement. Unless it is assured that the Bid Protections, including, but not limited to, any Applicable Termination Payment, will be available, the Applicable Stalking Horse Bidder is unwilling to remain obligated to consummate the Applicable Sale Transaction or otherwise be bound under the Applicable Stalking Horse Agreement (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Global Bidding Procedures).

I.       The Global Bidding Procedures are reasonable and appropriate under the circumstances of these chapter 11 cases, were negotiated in good faith and at arms' length by the Debtors and the Stalking Horse Bidders, and represent a fair and appropriate method for maximizing the value of the Debtors' estates.

J.       The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Global Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Bid Protections, including, but not limited to, any Applicable Termination Payment (to the extent payable under the Applicable Stalking Horse Agreement), and (iv) the

form and manner of notice of the Applicable Auction and Sale Hearing for the Applicable Sale Transaction.

K. The Global Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Applicable Assets.

L. None of the Applicable Stalking Horse Bidders is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Applicable Stalking Horse Bidder and the Debtors. The Applicable Stalking Horse Bidder and its respective counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Applicable Stalking Horse Bidders' negotiation of its Bid Protections and the Global Bidding Procedures and the Applicable Stalking Horse Bidders' negotiation and entry into the Applicable Stalking Horse Agreement.

M. The Assumption and Assignment Procedures, including notice of proposed Cure Costs, are reasonable and appropriate and consistent with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures have been tailored to provide adequate, timely, and proper notice of, among other things, the proposed assumption and assignment of the Store Leases, the Assigned Subleases, and the Assigned Contracts (as such terms are defined, as applicable, in each Applicable Stalking Horse Agreement, the "**Applicable Transferred Contracts**") to the Applicable Stalking Horse Bidder, the proposed Cure Costs relating thereto, and the procedures and deadlines for objecting thereto.

No other or further notice of the potential assumption, assignment, and/or transfer of any Applicable Transferred Contract is required.

N.    The Global Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Global Bidding Procedures, the Assumption and Assignment Procedures, the Applicable Auctions, the Sale Hearing and the Applicable Sale Transactions (including the sale of the Applicable Assets (as set forth under the Applicable Stalking Horse Agreement) free and clear of any liens, claims, encumbrances or interests pursuant to section 363(f) of the Bankruptcy Code) (with such liens, claims, encumbrances or interests attaching to the proceeds of any such sale), and any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion, the Applicable Sale Transactions or the assumption and assignment of the Applicable Transferred Contracts except as expressly required herein.

O.    Nothing contained herein shall prejudice or impair the right to credit bid, as set forth in the Global Bidding Procedures, of PNC Bank, National Association, (A) as agent under that certain Debtors-in-Possession Revolving Credit and Security Agreement, dated as of September 11, 2015 (the "**DIP Facility**"), and (B) as agent under that certain Revolving Credit and Security Agreement, dated as of February 12, 2015 (the "**Credit Facility**").

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    The Motion is granted to the extent set forth herein.

2.    All objections to the relief granted herein that have not been withdrawn with prejudice, waived or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

01:17859013.1

7

**Notice of Sale Transaction**

3.      The Global Sale Notice and the Global Publication Sale Notice, substantially in the forms annexed hereto as **Exhibit 2** and **Exhibit 3**, respectively, are approved.

4.      All parties in interest shall receive or be deemed to have received good and sufficient notice of (a) the Motion, (b) the Assumption and Assignment Procedures, including the proposed assumption and assignment of the Applicable Transferred Contracts to the Applicable Stalking Horse Bidder pursuant to the Applicable Stalking Horse Agreement or to a Successful Bidder, (c) the Applicable Auction, (d) the Applicable Sale Transaction, including the sale of the Applicable Assets (as set forth under the Applicable Stalking Horse Agreement) free and clear of all liens, claims, encumbrances or other interest, and (e) the Sale Hearing, and no further notice of the foregoing shall be required, if:

(a)      As soon as practicable, but no later than three (3) days[4] after entry of this Order, the Debtors shall cause the Global Sale Notice to be filed with the Court and served by email, mail, facsimile or overnight delivery on: (1) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (2) counsel to PNC Bank, National Association, as agent under the Debtors' Credit Facility and DIP Facility; (3) counsel to the Creditors' Committee; (4) all parties known by the Debtors to assert a lien on any of the Stores; (5) all persons known or reasonably believed to have asserted an interest in any of the Stores; (6) all non-Debtor parties to any of the unexpired leases of the Stores (the "**Lease Contracts**") and Additional Contracts and their counsel of record, if any; (7) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Stores or making an equity investment in the Debtors within the three (3) months prior to the Petition Date; (8) the Office of the United States Attorney for the District of Delaware; (9) the Office of the Attorney General in each state in which the Debtors operate; (10) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (11) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (12) all environmental authorities having jurisdiction over any of the Stores, including the Environmental Protection Agency; (13) counsel to each

---

[4] All references to "days" shall be calendar days, unless expressly noted.

Stalking Horse Bidder; (14) all of the multiemployer pension plans to which any of the Debtors is a contributing employer and all of the single employer defined benefit plans to which any Debtor is a contributor; (15) all of the labor unions that represent employees of any Debtor; (16) the Federal Trade Commission; (17) the United States Attorney General/Antitrust Division of Department of Justice; (18) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); (19) counsel of record in the FEHA Class Action (as defined in the Gelson's Stalking Horse Agreement); and (20) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases under Bankruptcy Rule 9010(b) as of the date of entry of this Order (collectively, the "**Sale Notice Parties**"); and

(b) As soon as practicable, but no later than four (4) days after entry of this Order, the Debtors shall cause the Global Publication Sale Notice to be published on the website of the Debtors' claims and noticing agent and once in the *Los Angeles Times*, and once in the *Wall Street Journal*, western edition.

### The Global Bidding Procedures and the Auctions

5. The Global Bidding Procedures, attached hereto as **Exhibit 1**, are incorporated herein and approved, and shall apply with respect to any bids for, and the auction and sale of, all of the Debtors' Stores and related assets, including the Applicable Assets set forth under the Applicable Stalking Horse Agreement. The Debtors are authorized to take all actions necessary or appropriate to implement the Global Bidding Procedures.

6. The deadline for submitting Qualified Bids (the "**Global Bid Deadline**") is **November 2, 2015 at 5:00 p.m. (ET)**. Any party that does not submit a Qualified Bid by the Global Bid Deadline in accordance with the Global Bidding Procedures will not be allowed to (a) submit any offer after the Global Bid Deadline or (b) participate in the Auction (including the Applicable Auction); provided that the foregoing shall not preclude the Debtors, after the Global Bid Deadline, from considering bids from any party on any Stores not included in an Applicable Auction, including pursuant to the GOB Sale Guidelines. Each Applicable Stalking Horse

Bidder is a Qualified Bidder and the bid reflected in the Applicable Stalking Horse Agreement is a Qualified Bid for all purposes and requirements pursuant to the Global Bidding Procedures.

7.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Applicable Auction and the terms and conditions of the sale or transfer of the Applicable Assets identified under the Applicable Stalking Horse Agreement.

8.      If the Applicable Stalking Horse Bidder's bid, as reflected in the Applicable Stalking Horse Agreement, is the only Qualified Bid in respect of the Applicable Assets identified under the Applicable Stalking Horse Agreement that is received by the Debtors by the Global Bid Deadline, (a) no Applicable Auction will be conducted for the Applicable Assets, (b) the Applicable Stalking Horse Bidder will be the Successful Bidder for the Applicable Assets, and (c) the Sale Hearing shall proceed on November 13, 2015 at 2:00 p.m. (ET) for the Court to consider the approval of the Applicable Sale Transaction as set forth in the Global Bidding Procedures.

9.      If at least one Qualified Bid for the Applicable Assets (other than the Applicable Stalking Horse Bidder's bid) is received by the Global Bid Deadline, the Debtors will conduct the Applicable Auction for such Applicable Assets.  The Auction will take place on November 9, 2015 at a time and location to be determined and announced by a filing on the docket of these chapter 11 cases, or such other time as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids; provided that such other time is no earlier than two business days following the delivery of such notice.

10.     Subject to Paragraph 19 below, as part of its bid, each Potential Bidder must provide the Notice Parties (as defined in the Global Bidding Procedures) with information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Potential Bidder; (b) the name of the proposed tenant that will act as the assignee; ~~and~~ (c) a contact person for the proposed assignee that the non-Debtor counterparty may directly contact in connection with the adequate assurance of future performance, ‸ The Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; ~~(y) the potential assignee's intended use for the space~~ and (y) financial statements, tax returns and annual reports. The Debtors and the other Notice Parties shall keep confidential all Adequate Assurance Information provided to them under this Paragraph or Paragraph 19 and shall be permitted to use and disclose such Adequate Assurance Information only as provided in this Order unless the Potential Bidder or Stalking Horse Bidder that provided such Adequate Assurance Information otherwise consents in writing.

11.     Each Qualified Bidder participating in the Auction shall confirm in writing that (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction and (b) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.   All proceedings at an Auction shall be transcribed.

and (d) the potential assignee's intended use for the space.

12.    Subject to the rights of an Applicable Stalking Horse Bidder under its Applicable Stalking Horse Agreement, the Global Bidding Procedures (including the consultation rights of the Consultation Parties described therein) and this Order, the Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Global Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is a Baseline Bid; (d) subject to the terms of the Global Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to an Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Global Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an Applicable Auction and/or the applicable Sale Hearing in open court without further notice or as provided in this Order and in the Global Bidding Procedures; (g) modify the Global Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion at any time with or without prejudice.

### The Sale Hearing and Sale Objections Deadlines

13.    If more than one Qualified Bid is received for the Applicable Assets, the applicable Sale Hearing shall be held before this Court on **November 24, 2015 at 2:00 p.m. (ET)**; provided, however, that the applicable Sale Hearing shall be held before this Court on **November 13, 2015 at 2:00 p.m. (ET)**, if (a) the bid of the Applicable Stalking Horse Bidder, as reflected in the Applicable Stalking Horse Agreement, is the only Qualified Bid received for the Applicable Assets, or (b) the Applicable Stalking Horse Bidder, after the Applicable Auction, is the Successful Bidder and such Successful Bid for the Applicable Assets does not add any Additional Contracts that were not identified in its original Stalking Horse Bid. In the Debtors'

01:17859013.1

12

reasonable discretion (after consultation with the Consultation Parties and with the consent of the Applicable Stalking Horse Bidder or, if an Applicable Auction is held, the Successful Bidder), the applicable Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (a) an announcement of such adjournment at the Sale Hearing or at the Applicable Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in a Stalking Horse Agreement. A hearing to consider the sale of an Additional Store shall be held before this Court on **November 24, 2015 at 2:00 p.m. (ET)**. The Debtors may adjourn or reschedule any Sale Hearing relating to the sale of an Additional Store without notice or with limited and shortened notice to parties, including by (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

14.    Objections to an Applicable Sale Transaction (including the sale of the Applicable Assets subject to such objection free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code) and entry of the Sale Orders (other than objections to the provision of adequate assurance of future performance by a Successful Bidder other than the Applicable Stalking Horse Bidder) (each, a "**Sale Objection**") must: (a) be in writing and state with specificity the nature of such objection; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the Court and served on: (i) co-counsel to the Debtors, Stroock & Stroock & Lavan, LLP, 2029 Century Park East, Los Angeles, California 90067 (Attn: Frank Merola, Esq.) and 180 Maiden Lane, New York, New York 10038 (Attn: Sayan Bhattacharyya, Esq.) and Young Conaway Stargatt & Taylor, LLP, Rodney Square,

1000 North King Street, Wilmington, Delaware 19801 (Attn: Matthew Lunn, Esq. and Robert Poppiti, Jr., Esq.); (ii) proposed counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Bradford Sandler, Esq.); (iii) counsel to the Applicable Stalking Horse Bidder; and (iv) counsel to PNC Bank, National Association, as agent under the Debtors' Credit Facility and DIP Facility, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington Delaware 19801 (Attn: Regina Kelbon, Esq. and Michael Graziano, Esq.) (collectively, the "**Objection Notice Parties**") by **November 6, 2015 at 5:00 p.m. (ET)**; provided, however, that if a Sale Objection is related to the sale of an Additional Store, the deadline to object to such sale shall be **November 19, 2015 at 6:00 p.m. (ET)**. All Sale Objections will be heard by the Court at the applicable Sale Hearing.

15.    The failure of any objecting person or entity to timely file and serve a Sale Objection (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Applicable Sale Transaction contemplated by a Applicable Stalking Horse Agreement or any purchase agreement with a Successful Bidder, including the transfer of the Applicable Acquired Assets (as set forth under the Applicable Stalking Horse Agreement subject to the untimely Sale Objection) to the Applicable Stalking Horse Bidder or the Successful Bidder, free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code and as set forth in the Sale Order, and (b) shall be deemed to constitute consent to entry of the Sale Order and consummation of the applicable Sale Transaction and all transactions related thereto.

**The Assumption and Assignment Procedures**

16.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all non-Debtor counterparties, comply in all respects with the Bankruptcy Code, and are approved.

17.     The Cure Notice, substantially in the form annexed hereto as **Exhibit 4**, is approved.

18.     As soon as practicable, but not later than **three (3)** days after the entry of this Order, the Debtors shall file with the Court and serve by first class mail on each non-Debtor party to the Applicable Transferred Contracts and any other Lease Contracts the Cure Notice. Upon service of the Cure Notice, all counterparties to the Applicable Transferred Contracts and any other Lease Contracts shall receive or be deemed to have received good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Applicable Transferred Contracts and any other Lease Contracts. The Debtors shall also post a copy of the Cure Notice on the website for these chapter 11 cases maintained by the Debtors' claims and noticing agent.

19.     Within **three (3) days** after entry of this Order, the Debtors shall provide, in coordination with the Stalking Horse Bidders, Adequate Assurance Information for the Applicable Stalking Horse Bidders to each counterparty to the Applicable Transferred Contracts and its counsel, if known, on a confidential basis; provided that the counterparties' use and disclosure of the Adequate Assurance Information shall be subject to the same restrictions applicable to Cure Notice Parties as set forth in Paragraph 22 below.

20.     As soon as practicable, but no later than one (1) business day after the Auction, the Debtors will file with the Court a notice (the "**Notice of Successful Bidders**"), which shall set forth, among other things, (i) the Successful Bidders and Back-Up Bidders (if

01:17859013.1

any), (ii) the executory contracts and unexpired leases to be assumed and assigned to each of the Successful Bidders, and the property locations subject to each unexpired lease to be assumed and assigned; (iii) the proposed assignee(s) of such executory contracts and unexpired leases; (iv) a certification by the Debtors that the Debtors have provided, or will provide, in coordination with the proposed assignee, the Successful Bidder's Adequate Assurance Information, as set forth in Paragraphs 19 and 22, as applicable, to each affected counterparty of such executory contract or unexpired lease on a confidential basis; and (v) the deadlines (to the extent such deadline has not already passed) and procedures for filing Adequate Assurance Objections (as defined below) in response to the Notice of Successful Bidder.

21.     The Debtors will cause to be served by overnight mail no later than two (2) business days after the Auction, upon each non-Debtor counterparty to the executory contracts and unexpired leases to be assumed and assigned, and its counsel (if known) appearing in these cases (collectively, the "**Cure Notice Parties**"), (i) the Notice of Successful Bidders and (ii) the applicable Successful Bidder's Adequate Assurance Information (to the extent not previously provided); provided, however, the Debtors shall provide the Adequate Assurance Information as soon as practicable after the Designation Deadline (as defined in the Global Bidding Procedures) to such landlord that submits a written request, prior to the Designation Deadline, to receive the Adequate Assurance Information by email that specifically identifies each property for which such landlord would like to receive Adequate Assurance Information.

22.     The Cure Notice Parties shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Paragraph. The Cure Notice Parties may not use or disclose, except to representatives, attorneys, advisors and financing sources (collectively,

*→ except for the Stalking Horse Bidders,*

"**Representatives**"), any confidential Adequate Assurance Information for any purpose other than (i) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided, (ii) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by a Cure Notice Party relating to adequate assurance of future performance, and (iii) if the proposed assignee is successful and becomes the tenant under the applicable lease, on a confidential basis, in the ordinary course of the landlord tenant relationship. Any Assignment Objection which includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). This Order authorizes the filing of any such Assignment Objections under seal, and on the docket with such non-public information redacted, without further Order of the Court; provided, that unredacted versions of such Assignment Objections shall be served upon the Debtors, with a copy to the Court's chambers. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

23.     All Objections to any proposed Cure Costs or allegations of any other rights to cure under any Applicable Transferred Contract or Additional Contract (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) with respect to a Cure Objection, state with specificity what cure costs the objecting party believes are required and what action the objecting party alleges is required to be taken to cure any non-monetary default; and (d) be filed with the Court and served on the Objection Notice Parties.

24.     Any Cure Objection in respect of an Applicable Transferred Contract or a Lease Contract (for which a Cure Notice was served in accordance with Paragraph 18 of this order) must be filed and served by **November 6, 2015 at 5:00 p.m.** Any Adequate Assurance Objection in respect of an Applicable Transferred Contract must also be filed and served by **November 6, 2015 at 5:00 p.m. (ET); provided, that if a Successful Bidder other than the Applicable Stalking Horse Bidder prevails at the Auction, then the deadline to file and serve an Adequate Assurance Objection in respect of an Applicable Transferred Contract shall be extended to November 19, 2015 at 6:00 p.m. (ET).**

25.     No later than **November 13, 2015**, the Debtors shall file with the Court and serve by overnight mail upon each non-Debtor counterparty to an Additional Contract (other than Lease Contracts for which the cure notice has already been provided) included in an Auction Package (as such term is defined in the Global Bidding Procedures) and its counsel of record, if any, a notice indicating: (a) the applicable Cure Costs for the Additional Contract (other than a Lease Contract for which the cure notice has already been provided) and (b) that the Debtors may seek to assume and assign the Additional Contracts to a Successful Bidder or a Stalking Horse Bidder, as applicable (such notice, an **"Additional Cure Notice"**). The Debtors shall also post a copy of any Additional Cure Notices on the website for these chapter 11 cases maintained by the Debtors' claims and noticing agent. Upon service of the Additional Cure Notice, all counterparties included on such Additional Cure Notice shall receive or be deemed to have received good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Additional Contracts.

26.     Any Cure Objection in respect to an Additional Contract (other than a Lease Contract for which the Cure Notice has already been provided) must be filed and served

by **November 19, 2015 at 6:00 p.m. (ET)**.  Any Adequate Assurance Objection in respect of an Additional Contract, for which Adequate Assurance Information was provided in accordance with Paragraph 21 of this Order, must be filed and served by **November 19, 2015 at 6:00 p.m. (ET)**.

27.    To the extent that the parties are unable to consensually resolve any Cure Objection or Adequate Assurance Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Cure Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by this Court; provided, however, that if the Cure Objection relates solely to a Cure Dispute, the Applicable Transferred Contract or Additional Contract that is the subject of the Cure Dispute may be assumed by the Debtors and assigned to the Applicable Stalking Horse Bidder or, if an Applicable Auction is held, the Successful Bidder, provided that the cure amount the counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the counterparty) is deposited in a segregated account by the Debtors pending this Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

28.    If no timely Cure Objection is filed and served in respect of an Applicable Transferred Contract or Additional Contract, the Cure Cost identified on the Cure Notice or Additional Cure Notice will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Applicable Transferred Contract or Additional Contract.  Any party (including any non-Debtor counterparty to any Applicable Transferred Contract or any Additional Contract) failing to timely file a Cure Objection (a) shall be forever

barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, the Applicable Stalking Horse Bidder or, if an Applicable Auction is held, the applicable Successful Bidder with respect to such Applicable Transferred Contract or Additional Contract, (b) shall be deemed to have consented to such Cure Costs, and (c) shall be forever barred and estopped from asserting or claiming against the Debtors, the Applicable Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the Applicable Transferred Contract or Additional Contract that any additional amounts are due or defaults exist.

29.    Any party (including any non-Debtor counterparty to any Applicable Transferred Contract or any Additional Contract) failing to timely file an Adequate Assurance Objection (a) shall be deemed to have consented to the assumption, assignment, and/or transfer of such Applicable Transferred Contract or Additional Contract (including the transfer of any related rights and benefits thereunder) to the Applicable Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the Applicable Transferred Contract or Additional Contract; (b) shall be forever barred and estopped from asserting or claiming against the Debtors, the Applicable Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the Applicable Transferred Contract or Additional Contract that any conditions to assumption, assignment, and/or transfer must be satisfied under such Applicable Transferred Contract or Additional Contract or that any related right or benefit under such Applicable Transferred Contract or Additional Contract cannot or will not be available to either of the Applicable Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the Applicable Transferred Contract or Additional Contract.

30.    If no timely Adequate Assurance Objection is filed and served with respect to an Applicable Transferred Contract or Additional Contract, the Applicable Stalking Horse Bidder or, if an Auction is held, the applicable Successful Bidder, will be deemed to have provided adequate assurance of future performance for such Applicable Transferred Contract or Additional Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

31.    The Debtors' assumption and assignment of the Applicable Transferred Contracts and any Additional Contracts to a Successful Bidder is subject to Court approval and the consummation of an applicable Sale Transaction.  Accordingly, absent the closing of such sale, the Applicable Transferred Contracts and Additional Contracts (if any) shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

32.    The inclusion of a contract or other document or Cure Cost on a Cure Notice or Additional Cure Notice shall not constitute or be deemed a determination or admission by the Debtors, the Applicable Stalking Horse Bidder or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims and causes of action with respect to each contract or other document listed on the Cure Notice and Additional Cure Notice. The Debtors' inclusion of an executory contract or unexpired lease on the Cure Notice or Additional Cure Notice shall not be a guarantee that such executory contract or unexpired lease will ultimately be assumed or assumed and assigned. The Cure Notice shall be without prejudice to each Stalking Horse Bidder's rights, if any, under the Stalking Horse Agreement to

subsequently (a) exclude any Applicable Transferred Contract from assumption or assignment or (b) to include Additional Contracts for assumption and assignment.

33.    The Debtors shall provide written notice to the parties to all Transferred Contracts and Additional Contracts that are ultimately assumed and assigned to a Successful Bidder of (a) such assumption and assignment and (b) the identity of the Successful Bidder.

### Reply Deadline

34.    The Debtors shall have until (a) **November 12, 2015 at 4:00 p.m. (ET)**, with respect to a Sale Hearing, if any, held before this Court on November 13, 2015 and (b) **November 23, 2015 at 4:00 p.m. (ET)**, with respect to a Sale Hearing, if any, held before this Court on November 24, 2015, to file and serve a reply to any objection filed in connection with the Sale Transactions, including any Sale Objection, Cure Objection, or Adequate Assurance Objection.

### Bid Protections

35.    The Bid Protections are approved in their entirety, including, without limitation, the following Applicable Termination Payments payable in accordance with, and subject to the terms of, the Applicable Stalking Horse Agreement:

(a)    Gelson's shall be granted the right to a Termination Payment comprised of a break-up fee of $1,000,000, plus reimbursement for up to $700,000 of expenses.

(b)    Smart & Final shall be granted the right to a Termination Payment comprised of a break-up fee of 3% of the cash purchase price, plus reimbursement for up to $1,500,000 of expenses.

Except as expressly provided for herein for the benefit of each Applicable Stalking Horse Bidder, no other termination payments, expense reimbursements, topping fees or any other similar fee or payment are authorized or permitted without further order of the Court.

36.     The obligations of the Debtors to pay the Applicable Termination Payments to the Applicable Stalking Horse Bidders: (i) to the extent provided in the Applicable Stalking Horse Agreement, shall be entitled to administrative expense claim status under sections 503(b) and/or 507(a)(2) of the Bankruptcy Code; and (ii) shall survive the termination of the Applicable Stalking Horse Agreement.  No subsequent order of the Court can modify the requirement that the Applicable Termination Payment be paid to the Applicable Stalking Horse Bidder pursuant to the terms of this Order.  Smart & Final and Gelson's will provide the U.S. Trustee and counsel to the Creditors' Committee, by electronic mail (but not filing with the court) the following general information:  (1) the name of each entity providing services, a category of the kind of service provided (e.g., engineering, environmental) and the amount charged for which reimbursement is sought; (2) invoices from third party providers other than attorneys and accountants, for which reimbursement is sought; and (3) for attorneys and accountants who charge by the hour and maintain records reflecting services rendered on an hourly basis: (a) name of each person rendering services; (b) title; (c) year admitted to practice; (d) department; (e) hourly rate; (f) general description of services rendered by the firm; and (g) total charged for which reimbursement is sought.  The U.S. Trustee and counsel for the Creditors' Committee will have ten (10) days in which to object, or the expense reimbursement request will be deemed allowed without objection.  If an objection is lodged, all undisputed expense reimbursements will be deemed allowed and will be paid, and any disputed amounts shall be reserved subject to further order of the Court.

37.     Under no circumstances shall any portion of the "Buyer Deposit" (as defined in the Applicable Stalking Horse Agreement) be deemed to be property of any of the Debtors' chapter 11 estates under section 541 of the Bankruptcy Code unless and until such

portion is delivered or required to be delivered to the applicable Debtor, as seller, in accordance with the terms of the Applicable Stalking Horse Agreement, and the Buyer Deposit shall be disbursed only in accordance with the terms of the Applicable Stalking Horse Agreement and the applicable escrow agreement.  Upon termination of an Applicable Stalking Horse Agreement that results in the required payment of a Buyer Deposit back to a Stalking Horse Bidder, the Debtors are authorized and directed to take all steps contemplated under the Applicable Stalking Horse Agreement in order to result in the payment of such Buyer Deposit back to the Stalking Horse Bidder.

38.     The Debtors are authorized and directed to pay the Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, without further order of the Court in accordance with the Applicable Stalking Horse Agreement. The Applicable Termination Payment, to the extent payable under the Applicable Stalking Horse Agreement, shall be (a) paid in cash from the proceeds of any approved sale or (b) credited against the purchase price if, after an Applicable Auction, the Applicable Stalking Horse Bidder's bid, as enhanced at the Applicable Auction, is the Successful Bid and the sale contemplated by the Applicable Stalking Horse Agreement (as enhanced at the Applicable Auction) is consummated.

39.     Subject to the Applicable Stalking Horse Bidder's  compliance with the terms of the Applicable Stalking Horse Agreement, the Applicable Stalking Horse Bidder and the transaction contemplated by the Applicable Stalking Horse Agreement shall constitute a "Qualified Bidder" and a "Qualified Bid," respectively, for all purposes under the Global Bidding Procedures with respect to the Applicable Assets.

01:17859013.1

40.     The Debtors are authorized and directed to observe the terms, conditions and requirements relating to the Bidding Process in each Applicable Stalking Horse Agreement, as such terms, conditions and requirements may be amended or modified in accordance with the terms of such Applicable Stalking Horse Agreement.  In the event of any inconsistency between the Global Bidding Procedures and the Applicable Stalking Horse Agreement with respect to the Bidding Process for the Applicable Stalking Horse Package, the Applicable Stalking Horse Agreement shall govern.

### General Provisions

41.     Prior to mailing the Global Sale Notice, the Cure Notice and any Additional Cure Notice and publishing the Global Publication Sale Notice, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

42.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

43.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these chapter 11 cases, any subsequent chapter 7 or chapter 11 case of the Debtors, or any related proceeding subsequent to entry of this Order, shall conflict with or

01:17859013.1

derogate from the provisions of any Applicable Stalking Horse Agreement or the terms of this Order. This Order shall be binding on any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.

44.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this order.

45.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

46.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated:  October 19, 2015
        Wilmington, Delaware

Kevin Cross
United States Bankruptcy Judge