**Exhibit 1**

Global Bidding Procedures

## GLOBAL BIDDING PROCEDURES

### Overview

On September 8, 2015, Haggen Holdings, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On October [ ], 2015, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order (the "**Global Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Global Bidding Procedures**") for the consideration of the highest or otherwise best price for the stores, as identified on Schedules 1 and 2 attached hereto, and related assets (collectively, the "**Stores**"), on the terms and conditions set forth herein.

Two stalking horse bids (collectively, the "**Stalking Horse Bids**") have been submitted by Gelson's Markets and Smart & Final Stores, LLC (collectively, the "**Stalking Horse Bidders**"). Each of the Stalking Horse Bidders has executed a separate agreement (each, a "**Stalking Horse Agreement**") for the purchase of non-overlapping groups of Stores (each such group, a "**Stalking Horse Package**"). For reference, the Stalking Horse Bids and the Stores that are part of the related Stalking Horse Packages are set forth on Schedule 1 attached hereto. For reference, the Stores that are not included in a Stalking Horse Package are set forth on Schedule 2 attached hereto.

The Stalking Horse Bids are subject to higher or better offers submitted in accordance with the terms and conditions of these Global Bidding Procedures. These Global Bidding Procedures describe, among other things: (A) the procedures for bidders to submit bids for one or more Stores, including the Stalking Horse Packages; (B) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below); (C) the negotiation of bids received; (D) the conduct of one or more subsequent auctions (an "**Auction**"); and (E) the ultimate selection of the Successful Bidder(s) (as defined below) and Court approval thereof (collectively, the "**Bidding Process**").

The Debtors reserve the right to extend any of the bidding deadlines or other dates set forth in these Global Bidding Procedures without further Order of the Bankruptcy Court subject to providing notice as described below; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadlines set forth in a Stalking Horse Agreement.

In addition to these Global Bidding Procedures, the Bankruptcy Court has authorized the Debtors, with the assistance of their advisors, to market and sell Stores and other assets pursuant to going-out-of-business sale procedures (the "**GOB Sale Guidelines**"). Notwithstanding anything to the contrary herein, the Debtors may choose to utilize the GOB Sale Guidelines to market or sell any of their Stores that are not included in a Stalking Horse Package.

## Summary of Important Dates

| | |
|---|---|
| **October 26, 2015** | Global Non-Binding Indication of Interest Date |
| **November 2, 2015, at 5:00 p.m. (ET)** | Global Binding Bid Deadline |
| **November 6, 2015, at 5:00 p.m. (ET)** | Deadlines for Cure Objections and Adequate Assurance Objections for Applicable Transferred Contract<br><br>Deadline for Cure Objections for Lease Contracts (as defined in the Global Bidding Procedures Order) |
| **November 6, 2015, at 5:00 p.m. (ET)** | Objection Deadline to Sale of Stores to Applicable Stalking Horse Bidder |
| **November 6, 2015** | Deadline for Debtors to Designate and Publish Qualified Bidders; select Baseline Bids; and Publish Stores to be included in the Auction |
| **November 9, 2015** | Auction, at a time and location to be determined and announced by a filing on the docket of these chapter 11 cases, or such other time as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids; provided that such other time is no earlier than two business days following the delivery of such notice |
| **November 12, 2015, at 4:00 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections with respect to Sale Hearing held on November 13, 2015 (if any) |
| **November 13, 2015, at 2:00 p.m. (ET)** | Sale Hearing if Auction is not Conducted or if Applicable Stalking Horse Bidder, After the Applicable Auction, is Successful Bidder and such Successful Bid for the Applicable Stalking Horse Package does not add any Additional Contracts that were not identified in its original Stalking Horse Bid |

| | |
|---|---|
| **November 19, 2015 at 6:00p.m. (ET)** | Objection Deadline to Sale of Stores to Successful Bidder or the Applicable Stalking Horse Bidder if Auction is Conducted and Sale Hearing does not otherwise occur on November 13, 2015 |
| | Deadlines for Cure Objections for Additional Contracts (other than Lease Contracts) |
| | Deadlines for Adequate Assurance Objections for (1) Applicable Transferred Contracts, if Successful Bidder other than the Applicable Stalking Horse Bidder prevails at the Auction and (2) Additional Contracts |
| **November 23, 2015, at 4:00 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections with respect to Sale Hearing held on November 24, 2015 (if any) |
| **November 24, 2015, at 2:00 p.m. (ET)** | Sale Hearing if Auction is Conducted and Sale Hearing does not otherwise occur on November 13, 2015 |

**Marketing Process**

Assets to be Sold

All of the Debtors' Stores are available for sale. A party who is interested in purchasing any of the Stores may submit a bid to purchase:

(A)  a Stalking Horse Package; or

(B)  one or more Stores, in any combination, whether or not such Store is included in a Stalking Horse Package; provided that the bids for Stores in a Stalking Horse Package comply with the requirements set forth in the applicable Stalking Horse Agreement.

Global Non-Binding Indication of Interest Date

If you are interested in purchasing any of the Stores, whether individually, in combination or in connection with a Stalking Horse Package, you should contact the Debtors' advisors by **no later than October 26, 2015** (the "**Global Indication of Interest Date**") in writing expressing your interest and identifying the Stores in which you are expressing such interest at: Sagent Advisors, LLC, by contacting Scott Moses (212-904-9350;

smoses@sagentadvisors.com)    or    Gregory    Grambling    (212-904-9372; ggrambling@sagentadvisors.com).

Note that submitting an indication of interest by the Global Indication of Interest Date does not obligate you to submit a formal bid or to participate in the sale process and does not exempt you from also having to submit a Qualified Bid by the Global Bid Deadline in order to participate in any subsequent Auction for the Stores on which you are indicating an interest, all as described below; provided, that the Debtors may consider Bids from parties who have not submitted indications of interest to the Debtors prior to the Global Indication of Interest Date.

Access to Diligence

To participate in the diligence process and receive access to due diligence information with respect to any of the Stores, a party must submit to the Debtors or their advisors:

> (A)  documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

> (B)  an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

> (C)  a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties (as defined below), that the interested party has a *bona fide* interest in consummating a sale transaction;

> (D)  sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties, to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion); and

> (E)  a non-binding written indication of interest identifying the Stores in which the party is interest in purchasing.

An interested party shall be a **"Potential Bidder"** if the Debtors determine in their reasonable discretion, after consultation with the Consultation Parties, that such interested party (A) has satisfied the above requirements or (B) is otherwise deemed to be a Potential Bidder. As soon as practicable, the Debtors will deliver to such Potential Bidder: (X) an information package containing information and financial data with respect to the Stores in which such Potential Bidder has expressed an interest; and (Y) access to the Debtors' confidential electronic data room concerning the Stores (the **"Data Room"**).

Once an interested party is deemed a Potential Bidder, its identity may, in the Debtors' discretion, be disclosed to the Stalking Horse Bidders.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

<u>Due Diligence</u>

Until the Global Bid Deadline (as defined below), the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to:

(A)    Scott Moses (212-904-9350; smoses@sagentadvisors.com) or Gregory Grambling (212-904-9372; ggrambling@sagentadvisors.com); and/or

(B)    Frank Merola, Esq. (310-556-5802; fmerola@stroock.com) or Sayan Bhattacharyya, Esq. (212-806-5723; sbhattacharyya@stroock.com).

The Debtors will simultaneously distribute via the Data Room in written form any additional diligence materials not previously provided to the Stalking Horse Bidders or any other Potential Bidder to all Potential Bidders for the Stores to which such diligence materials relate (including, if applicable, the Stalking Horse Bidders) and the Consultation Parties.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder or (B) these Global Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Stores to any person or entity who is not a Potential Bidder or a Consultation Party or who does not comply with the participation requirements set forth above.

<strong>Auction Qualification Procedures</strong>

<u>Global Bid Deadline</u>

A Potential Bidder that desires to make a bid on one or more Stores shall deliver written and electronic copies of its bid in <u>both</u> PDF and MS-WORD format to the Notice Parties (as defined below) so as to be received no later than **November 2, 2015 at 5:00 p.m. (ET)** (the "**Global Bid Deadline**"); <u>provided</u> that the Debtors may extend the Global Bid Deadline without further Order of the Bankruptcy Court, subject to providing notice to the Consultation Parties.

**Any party that does not submit a bid by the Global Bid Deadline will not be allowed to (A) submit any offer after the Global Bid Deadline, or (B) participate in any Auction;** <u>provided</u> that the foregoing shall not preclude the Debtors, after the Global Bid Deadline, from

considering bids from any party on any Stores not included in an applicable Auction, including pursuant to the GOB Sale Guidelines.

Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Global Bid Deadline that identifies the purchaser by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a sale transaction), and any other party that will be participating in connection with the bid or the sale transaction, and includes, at a minimum, the following information (each, a "**Bid**"):

(A)  Proposed Stores and Valuation.  Each Bid must clearly identify and list the particular Stores, additional assets (such as inventory) and liabilities that the Potential Bidder seeks to acquire, whether individually, in combination or in connection with a Stalking Horse Package. The Bid must identify, on a per Store basis, the valuations, in U.S. dollars, that the Potential Bidder associates with each of those Stores and a description of any significant assumptions on which such valuations are based. To the extent the Bid proposes to purchase additional assets associated with the Stores, such as fixtures or equipment, the Bid shall clearly identify the value, in U.S. dollars, associated with such assets.

(B)  Marked Agreements.  Each Bid must include a copy of an asset purchase agreement reflecting the terms and conditions of the Bid, which agreement must be marked to show any proposed amendments and modifications to either (a) to the extent such Bid does not include Stores in any Stalking Horse Package, the form of purchase agreement posted by the Debtors in the Data Room or (b) to the extent such Bid includes Stores in a particular Stalking Horse Package, the applicable Stalking Horse Agreement (each, a "**Marked Agreement**").

(C)  Unconditional Offer. A statement that the Bid is formal, binding and unconditional (except for those conditions expressly set forth in the applicable Marked Agreement) and is not subject to any due diligence or financing contingency and is irrevocable until the first business day following the closing of the proposed sale transaction, except as otherwise provided in these Global Bidding Procedures.

(D)  Form of Consideration. Unless the Bid includes a credit bid (as described below), a statement confirming that the Bid is based on an all-cash offer, including, in the case of a bid for a Stalking Horse Package, sufficient cash consideration to pay any applicable Termination Payment (as such term is defined in the applicable Stalking Horse Agreement); provided that any Bid that includes a credit bid shall also include a cash component sufficient to pay, and earmarked exclusively for payment of, any

applicable Termination Payment (if such Bid relates to a Stalking Horse Package).

(E)    Purchase Price; Minimum Bid.

    1.    Stalking Horse Package. Bidders may submit Bids for any specified Stalking Horse Package; provided that Bids for any Stores in the Stalking Horse Package satisfy the overbid requirements set forth in the applicable Stalking Horse Agreement for Stores included in such Stalking Horse Package (the "**Minimum Overbid Requirement**").

    2.    Bids for Individual Stores or Combination of Stores. Bidders may also submit Bids for individual Stores or combinations of Stores, whether or not such Stores are included in a Stalking Horse Package (each a "**Partial Bid**"); provided that Bids for any Stores in the Stalking Horse Package satisfy the requirements set forth in the applicable Stalking Horse Agreement for Stores included in such Stalking Horse Package (the "**Minimum Bid Requirement**"). The Debtors will determine, after consultation with the Consultation Parties, whether such Bids qualify as Qualified Bids. Generally, to be considered a Qualified Bid, the Debtors, in consultation with the Consultation Parties, must conclude that a Partial Bid, when taken together with other Partial Bids, satisfies the criteria for being a Qualified Bid in accordance with these Global Bidding Procedures and any applicable Stalking Horse Agreement.

    To the extent that a Bid includes Stores included in a particular Stalking Horse Package and others that are not included in that same Stalking Horse Package, the Bidder shall be required to submit separate Bids (and separate Marked Agreements in accordance with subsection B above) with respect to those Stores subject to a Stalking Horse Package and those Stores that are not included in such Stalking Horse Package.

(F)    Required Approvals. A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings and (ii) of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate the business and Stores included in its Bid from and after closing the sale transaction and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtor's legal counsel to discuss and explain Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Marked Agreement.

(G)     <u>Financing Sources</u>. A Bid must contain written evidence of a commitment for financing or other evidence that the Debtors determine, in their business judgment, demonstrates that the Bidder wherewithal to consummate and perform obligations. A Bid must further contain appropriate contact information for any financing sources. For the avoidance of doubt, the source and manner of financing of a Bid need not be the same as, or more certain than, the source and manner of financing of the Stalking Horse Bidder.

(H)     <u>Executory Contracts and Unexpired Leases</u>. Each Bid must include a list of all executory contracts, unexpired leases, and unexpired subleases that the Bidder proposes to assume.

(I)     <u>As Is, Where Is</u>. Each Bid must include a written acknowledgement and representation that the Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Assets before making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Stores in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Stores or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed markup of the Stalking Horse Purchase Agreement.

(J)     <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. Except as provided with respect to a Stalking Horse Bidder in a Stalking Horse Agreement, a statement that the Bid does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

(K)     <u>Adequate Assurance Information</u>. Information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Potential Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Potential Bidders.

Notwithstanding the foregoing, if a Bid for a Store is submitted by the landlord under the real property lease for such Store (a "**Landlord Lease Bid**"), such landlord need not satisfy the requirements set forth in subsections (F) and (K) above with respect to such Store.

A Potential Bidder must also accompany its Bid with: (A) a Deposit (as defined below); (B) the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by

8

the Potential Bidder; (C) written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the applicable Marked Agreement) and such other evidence of ability to consummate the transaction contemplated by the applicable Marked Agreement, as acceptable in the Debtors' business judgment, in consultation with the Consultation Parties, including a description of each investor and any additional party or parties investing in the transaction included in the applicable bid and such party's financial position; (D) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Marked Agreement; (E) a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; (F) in the case of a bid for a Stalking Horse Package, if the value of the bid relative to the applicable Stalking Horse Agreement includes additional non-cash components (such as fewer contingencies than are in the Stalking Horse Agreement), a detailed analysis of the value of any additional non-cash component of the Bid and back-up documentation to support such value; and (G) if the bid includes an asset purchase agreement that is not executed, a signed statement that such bid is irrevocable until the first business day following the closing or closings of the applicable sale transaction.

The submission of a Bid by the Global Bid Deadline shall constitute a binding and irrevocable offer to acquire the Stores or other assets reflected in such Bid.

Deposit

To qualify as a Qualified Bid, each Bid must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the proposed purchase price (or only with respect to Stores not included in a Stalking Horse Package such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) (the "**Deposit**"), to be deposited, prior to the Global Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**") pursuant to the escrow agreement to be provided by the Debtors to the Potential Bidders (the "**Escrow Agreement**"); provided that with respect to a Landlord Lease Bid, the landlord may deduct from its Deposit the amount of any undisputed monetary obligations that constitute the cure costs for the applicable real property lease.

Review of Bids

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all Bids to the Consultation Parties.

The Debtors will evaluate timely submitted Bids, in consultation with the Consultation Parties, and may engage in negotiations with Potential Bidders who submitted Bids complying with the preceding paragraphs as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Bid. In evaluating the Bids, the Debtors may take into consideration the following non-binding factors:

1.   the amount of the Bid and the Stores and other assets proposed to be acquired;

2. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates after the payment of any applicable Termination Payment; provided that the Debtors shall review, evaluate and consider any Bids for a Stalking Horse Package (including a combination of Bids for a Stalking Horse Package) separate from and independent of, and shall not take into consideration when evaluating such Bid for a Stalking Horse Package, any other Stores that may be included in such Bid;

3. any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities through a credit bid;

4. the value to be provided to the Debtors under the Bid for the Stores included therein (individually and in the aggregate);

5. the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals;

6. the impact on employees, collective bargaining agreements (including claims that may be asserted), trade creditors and landlords; and

7. any other factors the Debtors may reasonably deem relevant.

<u>Designation of Qualified Bidders</u>

A bid will be considered a "**Qualified Bid**," and each Potential Bidder that submits a Qualified Bid will be considered a "**Qualified Bidder**," if the Debtors determine, after consultation with the Consultation Parties, that such Bid:

(A) meets the requirements set forth in these Global Bidding Procedures; and

(B) satisfies the following:

i. with respect to a Bid for a Stalking Horse Package or a Partial Bid for Stores included in a Stalking Horse Package, such Bid must satisfy the requirements (including the Minimum Bid Requirement and the Minimum Overbid Requirement) set forth in the applicable Stalking Horse Agreements; and/or

ii. with respect to a Store that is not included in a Stalking Horse Package, such Bid proposes a purchase price that would be acceptable to the Debtors for such Store or the Debtors believe should proceed to an auction for one or a combination of Stores included in such Bid, or such Bid is submitted by the landlord under the real property lease for such Store.

The Debtors reserve the right to work with any Bidder in advance of the Auctions to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. The Debtors may accept a single Bid or multiple Bids for non-overlapping Stores such that, if taken together, such Bid or Bids would otherwise meet the standards for a single Qualified Bid as to a Stalking Horse Package (taking into account, in each case, the terms, conditions and requirements set forth in the applicable Stalking Horse Agreement) or any other Store or combination of Stores that the Debtors determine to auction (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the applicable Auction). If a Bid is received and, in the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the Bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not the Bid is a Qualified Bid.

The Debtors, after consultation with the Consultation Parties, will have the right to determine that a Bid is not a Qualified Bid if any of the following conditions are satisfied:

(A)     A Potential Bidder has failed to comply with reasonable requests for additional information from the Debtors;

(B)     Any Bid for Stores included in the Stalking Horse Package that does not include a cash component sufficient to pay, and earmarked exclusively for payment of, an applicable Termination Payment shall not be a Qualified Bid; or

(C)     The terms of the Bid are burdensome or conditional in view of the proposed purchase price or, in the case of a Bid or combination of Bids for a Stalking Horse Package, are materially more burdensome or conditional than the terms of the applicable Stalking Horse Agreement, and are not offset by a material increase in purchase price, which determination (as made by the Debtors in consultation with the Consultation Parties) may take into consideration, among other things:

   i.     whether the Bid does not provide sufficient cash consideration to pay transfer taxes, cure costs or other cash costs of the transaction (including, if applicable, any Termination Payment);

   ii.    whether the Bid includes a non-cash instrument or similar consideration that is not freely marketable.

Each Stalking Horse Bidder is a Qualified Bidder and each Stalking Horse Bid is a Qualified Bid as to the applicable Stalking Horse Package. Should it decide to credit bid, each of (A) PNC Bank, National Association, as agent (the "**DIP Agent**") under that certain Debtor-In-Possession Revolving Credit Agreement, dated September 11, 2015 (the "**DIP Credit Agreement**") and (B), PNC Bank, National Association, as agent under that certain Revolving Credit and Security Agreement, dated February 12, 2015 (in each capacity, a "**Secured Lender**"), is a Qualified Bidder and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Global Bid Deadline, complies with the above requirements set forth under the heading "Designation of Qualified Bidders," complies with section 363(k) of the

Bankruptcy Code, complies with the requirements for a credit bid, and includes, to the extent the credit bid is for a Stalking Horse Package, a cash component sufficient to pay, and earmarked exclusively for payment of, an applicable Termination Payment.

### Pre-Auction Procedures

Determination and Announcement of Baseline Bids

In consultation with the Consultation Parties, the Debtors shall make a determination regarding:

(A)  the Store or combination of Stores to be auctioned by the Debtors, including a Stalking Horse Package (each, an **"Auction Package"**); provided that an Auction Package for a Stalking Horse Package may not include less than all of the Stores in such Stalking Horse Package;

(B)  the Store or Stores included in an Auction Package;

(C)  the highest or best Qualified Bid (or collection of Qualified Bids) determined for each Auction Package (each, a **"Baseline Bid"** and such bidder or group of bidders, a **"Baseline Bidder"**) to serve as the starting point at the Auction for such Auction Package;

(D)  which Bids have been determined to be Qualified Bids and the Auction Package applicable to such Qualified Bid (provided that the Debtors may permit a Qualified Bidder to bid on any other Auction Package); and

(E)  the time and place for the auction (each, an **"Auction"**) of each such Auction Package.

On **November 6, 2015, at 5:00 p.m. (ET)** (the **"Designation Deadline"**), the Debtors shall file notice of the foregoing on the Court's docket and publish such notice on the website of their claims and noticing agent and in the Data Room. As soon as practicable after the Designation Deadline, but in no event later than one day after the Designation Deadline, the Debtors will provide copies of each Baseline Bid to the Consultation Parties and the Stalking Horse Bidders and copies of each bid of a Qualified Bidder for any Stores in the applicable Stalking Horse Package.

Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein; provided that any Qualified Bid may be improved at the Auction as set forth herein.

Except as provided in a Stalking Horse Agreement, the Debtors are under no obligation to (A) select any Baseline Bid, or (B) conduct separate Auctions for any Stores, whether before

or after selecting a Baseline Bid. Notwithstanding anything to the contrary contained herein, the Debtors may elect, in their reasonable discretion, and after consultation with the Consultation Parties, to adjourn any Auction.

<u>Failure to Receive Qualified Bids</u>

With respect to each Stalking Horse Package, if no Qualified Bid other than the one submitted by the applicable Stalking Horse Bidder is received by the Global Bid Deadline, the Debtors will not conduct the Auction for such Stalking Horse Package, and shall file and serve a notice indicating that the Auction has been cancelled with respect to such Stalking Horse Package, that the applicable Stalking Horse Bidder is the Successful Bidder as to such Stalking Horse Package and that the Sale Hearing as to the applicable Stalking Horse Bidder will be conducted on **November 13, 2015, at 2:00 p.m. (ET)**.

With respect to any Stores not included a Stalking Horse Package, if only one Qualified Bid is received by the Global Bid Deadline, the Debtors may, after consultation with the Consultation Parties, (A) determine to consummate a sale transaction with the Qualified Bidder who submitted such Qualified Bid and shall file and serve a notice identifying the Qualified Bidder, the terms of the Qualified Bid, and notice of the sale hearing applicable to such Qualified Bid or (B) conduct the Auction with respect to any such Stores.

Except as provided in a Stalking Horse Agreement, nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder.

**The Sale Hearing and Sale Order**

At one or more hearings before the Bankruptcy Court (each, a "**Sale Hearing**"), the Debtors will seek the entry of orders authorizing and approving, *inter alia*, the applicable sale transactions (each, a "**Sale Order**"). Each Sale Order shall authorize and approve the applicable sale transaction:

(A)     if no other Qualified Bid (which, for purposes of this subparagraph includes a combination of Bids, subject to the requirements of these Global Bidding Procedures, that together would constitute a Qualified Bid for the Stores in such Stalking Horse Package) is received by the Debtors in respect of a particular Stalking Horse Package, to the applicable Stalking Horse Bidder that submitted a bid for such package pursuant to the terms and conditions set forth in the Applicable Stalking Horse Agreement;

(B)     if another Qualified Bid is received by the Debtors in respect of a particular Stalking Horse Package, to the applicable Stalking Horse Bidder that submitted a Qualified Bid for such package and/or such other Qualified Bidder(s) that submitted a Qualified Bid for such package as the Debtors, in the exercise of their business judgment and, after consultation with the Consultation Parties, determine, following an auction, to have made the highest or best bid, consistent with these Global Bidding Procedures and the applicable Stalking Horse Agreement; or

(C)     with respect to any Stores not included in a Stalking Horse Package (i) if the Store or Stores are auctioned pursuant to these Global Bidding Procedures, to the highest or best bidder(s) for one or more Stores, or (ii) if only one Qualified Bid is received for such Store or Stores, to the Qualified Bidder that submitted such bid .

In the Debtors' reasonable discretion (after consultation with the Consultation Parties and with the consent of the applicable Stalking Horse Bidder or, if an Applicable Auction is held, the Successful Bidder), any Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (B) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing; provided that nothing herein shall authorize the Debtors to unilaterally extend any date or deadline set forth in a Stalking Horse Agreement.

## Auction Procedures

If there are one or more Qualified Bids for an Auction Package, the Debtors may conduct one or more Auctions for such Auction Package on **November 9, 2015**, at a time and location to be determined and announced by a filing on the docket of these chapter 11 cases, or such other time as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids; provided that such other time is no earlier than two business days following the delivery of such notice; and provided, further, that with respect to each Stalking Horse Package, if no Qualified Bid other than the one submitted by the applicable Stalking Horse Bidder is received by the Global Bid Deadline, the Debtors will not conduct the Auction for such Stalking Horse Package. Only Qualified Bidders will be eligible to participate at an Auction, subject to such limitations as the Debtors may impose in good faith, and Qualified Bidders will be only be permitted to bid on such Stores included in their Qualified Bids. Professionals and/or other representatives of the Consultation Parties and all creditors of the Debtors will be permitted to attend and observe an Auction; provided that such parties provide co-counsel for the Debtors one (1) day's written notice of their intent to attend the Auction.

At any Auction, Qualified Bidders (including the Stalking Horse Bidders) will be permitted to increase their bids. For each Baseline Bid, bidding will start at the purchase price and terms proposed in the applicable Baseline Bid, and will proceed thereafter in increments of 2% of the applicable Baseline Bid.

To the extent not previously provided (which shall be determined by the Debtors), a Qualified Bidder submitting an overbid must submit at the Debtors' request, as part of its overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction proposed by such overbid.

The Debtors may adopt rules, after consultation with the Consultation Parties, for an Auction at any time that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding Process and are not inconsistent with these Global Bidding Procedures or the

applicable Stalking Horse Agreement. At the start of an Auction, the Debtors shall describe the terms of the applicable Baseline Bid. Any rules adopted by the Debtors will not unilaterally modify any of the terms of a Stalking Horse Agreement (as may be consensually modified at any Auction) without the consent of the applicable Stalking Horse Bidder. Any rules developed by the Debtors will provide that all bids in a particular Auction will be made and received in one room, on an open basis, and all other bidders participating in that Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders participating in that Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other bidders throughout the entire Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order any Bid (other than a Stalking Horse Bid) that, in the Debtors' judgment, is: (A) inadequate or insufficient; (B) not in conformity with the requirements of the Bankruptcy Code, these Global Bidding Procedures or the terms and conditions of the applicable sale transaction or applicable Stalking Horse Agreement; or (C) contrary to the best interests of the Debtors and their estates.

Prior to the conclusion of an Auction, the Debtors, after consultation with the Consultation Parties, will: (A) review and evaluate each Bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating a sale transaction; provided that in reviewing and evaluating the bids, the Debtors shall review, evaluate and consider any Bids for a Stalking Horse Package (including a combination of Bids for a Stalking Horse Package) separate from and independent of, and shall not take into consideration when evaluating such bid for a Stalking Horse Package, any other Stores or related assets that may be included in such bid; (B) determine the highest or best offer or collection of offers for an Auction Package (as applicable to each Auction Package, a "**Successful Bid**"); (C) except as provided in a Stalking Horse Agreement, determine which Qualified Bid is the next highest or best bid for such Auction Package (as applicable to each Auction Package, the "**Back-Up Bid**"); and (D) notify all Qualified Bidders participating in an Auction, prior to its conclusion, the successful bidder for such Auction Package (the "**Successful Bidder**"), the amount and other material terms of the Successful Bid and the identity of the party that submitted the Back-Up Bid for such Auction Package (the "**Back-Up Bidder**"). Under no circumstances shall any Stalking Horse Bidder be selected as a Back-Up Bidder without such Stalking Horse Bidder's express written consent.

Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction.

The Debtors will not accept any bid or offer or enter into any understanding or agreement, to sell or otherwise dispose of any of the "Assets" (as defined in the applicable Stalking Horse Agreement) other than in accordance with these Global Bidding Procedures and the applicable Stalking Horse Agreement.

01:17859013.1

15

### Post-Auction Process

A Successful Bidder shall, within two (2) business days after the close of the Auction, submit to the Debtors revised documentation executed by such Successful Bidder memorializing the terms of the Successful Bid. Promptly following the submission of such documentation, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid and Successful Bidder. The Successful Bid may not be assigned to any party without the consent of the Debtors after consultation with the Consultation Parties. The Debtors shall file a form of the Asset Purchase Agreement for each Successful Bidder no later than November 16, 2015 at 6:00 p.m. (ET).

At a Sale Hearing the Debtors will present a Successful Bid to the Bankruptcy Court for approval.

Except to the extent otherwise provided in a Stalking Horse Agreement, the Back-Up Bid shall remain open and irrevocable until the earliest to occur of (A) 60 days after the completion of the Auction, or such other date as may be provided for in an applicable Stalking Horse Agreement, (B) the consummation of the transaction with the Successful Bidder, or (C) the release of such bid by the Debtors (such date, the "**Back-Up Bid Expiration Date**"). If the transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed the Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid.

The Successful Bid of a Back-Up Bidder will be presented to the Bankruptcy Court for approval at a sale hearing, on notice appropriate under the circumstances.

### Treatment and Return of Deposits

<u>Potential Bidders</u>

Within three (3) business days after the Designation Deadline, the Escrow Agent shall return to each Potential Bidder that was determined not to be a Qualified Bidder, as confirmed by the Debtors, such Potential Bidder's Deposit, without any interest accrued thereon. Upon the authorized return of such Potential Bidder's Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

<u>Qualified Bidders</u>

The Deposit of a Qualified Bidder will be forfeited to the Debtors if (A) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Bid, except as permitted by these Global Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Global Bidding Procedures, or (B) the Qualified Bidder is selected as the Successful Bidder and fails to enter into the required definitive documentation or to consummate the transaction according to these Global Bidding Procedures and the terms of the applicable transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) business days after the receipt by the Escrow Agent of a joint written notice by an authorized officer of the Debtors stating that the Qualified Bidder has breached or failed to

satisfy its obligations or undertakings. Notwithstanding anything to the contrary in these Global Bidding Procedures, the terms for the forfeiture or return of the Deposit submitted by any Stalking Horse Bidder shall be governed by the applicable Stalking Horse Agreement.

With the exception of the Deposit of a Successful Bidder and a Back-Up Bidder, the Escrow Agent shall return to any other Qualified Bidder any Deposit, without any interest accrued thereon, three (3) business days after the execution by the Successful Bidder and the Debtors of the documentation memorializing the Successful Bid, but in no event later than seven (7) business days after the conclusion of a Sale Hearing.

Back-Up Bidder

The Escrow Agent shall return a Back-Up Bidder's Deposit, plus any interest accrued thereon, within three (3) business days after the occurrence of the applicable Back-Up Bid Expiration Date.

The Successful Bidder

The Deposit of a Successful Bidder shall be applied against the cash portion of the Purchase Price of such Successful Bidder upon the consummation of the transaction proposed in the applicable Successful Bid.

Joint Notice to Escrow Agent

The Debtors and, as applicable, the Potential Bidder, Qualified Bidder, and/or Back-Up Bidder agree to execute an appropriate joint notice to the Escrow Agent for the return of any Deposit, to the extent such return is required by these Global Bidding Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

**Notice and Consultation Parties**

Contact Parties

Information that must be provided to the **"Notice Parties"** under these Global Bidding Procedures must be provided to the following parties: (A) Haggen Holdings, LLC, 2211 Rimland Drive, Bellingham, Washington 98226 (Attn: Blake Barnett); (B) co-counsel to the Debtors, Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067 (Attn: Frank Merola, Esq.) and 180 Maiden Lane, New York, New York 10038 (Attn: Sayan Bhattacharyya, Esq.) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Matthew Lunn, Esq. and Robert Poppiti, Jr., Esq.); and (C) Sagent Advisors LLC, 299 Park Avenue, 9th Floor, New York, New York 10171 (Attn: Scott Moses and Gregory Grambling).

Consultation Parties

The term **"Consultation Parties"** as used in these Global Bidding Procedures shall mean: (A) any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the

**"Creditors' Committee"**); (B) PNC Bank, National Association, as agent under that certain Revolving Credit and Security Agreement, dated February 12, 2015; (C) the DIP Agent under the DIP Credit Agreement; and (D) United Food and Commercial Workers International Union.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Global Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment; provided, however, that the foregoing shall not impact any consent rights that the DIP Agent may have under the DIP Credit Agreement.

In the event that any Consultation Party or any member of the Creditors' Committee or an affiliate of any of the foregoing, submits a bid that is a Qualified Bid, any obligation of the Debtors to consult with the bidding party established under these Global Bidding Procedures will be waived, discharged and released without further action; provided that the bidding party will have the same rights as any other Potential Bidder set forth above, and will retain any rights it has under existing orders regarding debtor in possession financing and/or use of cash collateral (to the extent applicable).

If a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Global Bidding Procedures; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Stores and shall not provide any information regarding the sale of the Stores to such member.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Potential Bidders (including the Stalking Horse Bidders) shall be deemed to have (A) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Global Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction, (B) waived any right to a jury trial in connection with any disputes relating to the Global Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction, and (C) consented to the entry of a final order or judgment in any way related to the Global Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the sale transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, after consultation with the Consultation Parties, to alter or terminate these Global Bidding Procedures, to alter or modify any Auction rules or procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Global Bidding Procedures, the

Global Bidding Procedures Order and the applicable Stalking Horse Agreement; provided that the Debtors shall only be permitted to modify or amend the terms of any Stalking Horse Agreement in accordance with the applicable Stalking Horse Agreement.

**Schedule 1**

Stalking Horse Packages

## 8 Stores Included in Stalking Horse Bid of Gelson's Markets

| # | Store | City | Address | State |
|---|-------|------|---------|-------|
| 1 | 2166 | Santa Monica | 2627 Lincoln Blvd | CA |
| 2 | 2214 | Thousand Oaks | 1736 E Avenida De Los Arboles | CA |
| 3 | 2133 | Laguna Beach | 30922 South Pacific Coast Hwy | CA |
| 4 | 2182 | Del Mar | 2707 Via De La Valle | CA |
| 5 | 2138 | Carlsbad | 7660 El Camino Real | CA |
| 6 | 2144 | San Diego | 730 Turquoise St | CA |
| 7 | 2172 | Ladera Ranch | 25636 Crown Valley Parkway | CA |
| 8 | 2177 | Rancho Mirage | 36-101 Bob Hope Drive | CA |

### 28 Stores Included in Stalking Horse Bid of Smart & Final Stores LLC

| # | Store | City | Address | State |
|---|---|---|---|---|
| 1 | 2131 | Paso Robles | 1191 E. Creston Road | CA |
| 2 | 2132 | Westlake Village | 5770 Lindero Canyon Rd | CA |
| 3 | 2134 | Palmdale | 5038 W Avenue N | CA |
| 4 | 2135 | Trabuco Canyon | 21672 Plano Trabuco Rd. | CA |
| 5 | 2137 | Yorba Linda | 21500 Yorba Linda Blvd. | CA |
| 6 | 2139 | Chula Vista | 360 East H St | CA |
| 7 | 2142 | El Cajon | 13439 Camino Canada | CA |
| 8 | 2145 | Carpinteria | 850 Linden Avenue | CA |
| 9 | 2147 | Atascadero | 8200 El Camino Real | CA |
| 10 | 2151 | Santa Barbara | 3943 State St. | CA |
| 11 | 2154 | Newbury Park | 2100 Newbury Road | CA |
| 12 | 2156 | Simi Valley | 5135 Los Angeles Avenue | CA |
| 13 | 2158 | Ventura | 7800 Telegraph Road | CA |
| 14 | 2164 | Redondo Beach | 615 N. Pacific Coast Hwy. | CA |
| 15 | 2168 | Torrance | 21035 Hawthorne Blvd | CA |
| 16 | 2170 | Chino Hills | 4200 Chino Hills Pkwy | CA |
| 17 | 2178 | San Pedro | 1636 W 25th St | CA |
| 18 | 2181 | Carlsbad | 955 Carlsbad Village Dr | CA |
| 19 | 2183 | El Cajon | 2800 Fletcher Pkwy | CA |
| 20 | 2184 | La Mesa | 3681 Avocado Avenue | CA |
| 21 | 2189 | San Diego | 10740 Westview Pkwy | CA |
| 22 | 2195 | Coronado | 150 B Ave | CA |
| 23 | 2205 | San Diego | 10633 Tierra Santa Bl. | CA |
| 24 | 2207 | San Ysidro | 350 W San Ysidro Blvd | CA |
| 25 | 2212 | San Luis Obispo | 1321 Johnson Ave | CA |
| 26 | 2232 | Las Vegas | 1940 Village Center Circle | NV |
| 27 | 2171 | Corona del Mar | 3049 Coast Highway | CA |
| 28 | 2192 | Santee | 9870 Magnolia Ave. | CA |

**Schedule 2**

Additional Stores

## Additional Stores

| Store Number | Address | City | State |
|---|---|---|---|
| 61 | 8515 SW Tualatin-Sherwood Road | Tualatin | OR |
| 75 | 1213 East Wishkah | Aberdeen | WA |
| 2068 | 15805 Pacific Ave. S. | Spanaway / Tacoma | WA |
| 2069 | 1233 N. Liberty Lake Road | Liberty Lake | WA |
| 2070 | 4831 Point Fosdick Dr. NW | Gig Harbor | WA |
| 2071 | 3355 Bethel Rd. SE | Port Orchard | WA |
| 2073 | 16200 SW Pacific Hwy. | Tigard | OR |
| 2077 | 11012 Canyon Rd. East | Puyallup | WA |
| 2078 | 111 S. 38th Street | Tacoma | WA |
| 2079 | 14800 SE Sunnyside Rd | Happy Valley | OR |
| 2080 | 3075 Hilyard St. | Eugene | OR |
| 2082 | 5415 Main Street | Springfield | OR |
| 2083 | 1855 Blankenship Rd | West Linn | OR |
| 2084 | 1120 Campbell Street | Baker City | OR |
| 2085 | 8155 SW Hall | Beaverton | OR |
| 2088 | 5450 River Rd. N. | Keizer | OR |
| 2090 | 10830 SE Oak | Milwaukie | OR |
| 2091 | 19881 SR 2 | Monroe | WA |
| 2092 | 16030 SW Tualatin Sherwood Rd | Sherwood | OR |
| 2095 | 585 Siskiyou Boulevard | Ashland | OR |
| 2097 | 2222 NW Bucklin Hill Road | Silverdale | WA |
| 2099 | 12725 First Ave. S. | Burien | WA |
| 2114 | 211 North Eighth Street | Klamath Falls | OR |
| 2115 | 2900 Wheaton Way | Bremerton | WA |
| 2116 | 15840 1st Avenue South | Burien | WA |
| 2117 | 31009 Pacific Hwy South | West Linn | WA |
| 2118 | 2800 Milton Way | Milton | WA |
| 2119 | 14215 SE Petrovitsky Rd | Renton | WA |
| 2121 | 340 NE Beacon Drive | Grants Pass | OR |
| 2122 | 2740 S. 6th | Klamath Falls | OR |
| 2123 | 7601 Evergreen Way | Everett | WA |
| 2125 | 4300 NE 4th | Renton | WA |
| 2126 | 15332 Aurora Ave. N. | Shoreline | WA |
| 2130 | 1500 N. 'H' Street | Lompoc | CA |
| 2136 | 6240 Foothill Blvd | Tujunga | CA |
| 2140 | 7900 White Lane | Bakersfield | CA |
| 2141 | 1608 Broadway St. | El Cajon | CA |
| 2143 | 2235 University Ave | San Diego | CA |
| 2146 | 163 S. Turnpike Rd | Goleta | CA |
| 2148 | 3500 Panama Lane | Bakersfield | CA |
| 2149 | 175 N. Fairview Ave. | Goleta | CA |
| 2150 | 2010 Cliff Dr. | Santa Barbara | CA |

| Store Number | Address | City | State |
|---|---|---|---|
| 2152 | West 1132 Branch Street | Arroyo Grande | CA |
| 2153 | 2400 Las Posas Rd | Camarillo | CA |
| 2155 | 771 Foothill Blvd | San Luis Obispo | CA |
| 2157 | 2800 Cochran | Simi Valley | CA |
| 2159 | 3830 W Verdugo Ave | Burbank | CA |
| 2160 | 240 S. Diamond Bar Blvd | Diamond Bar | CA |
| 2161 | 8985 Venice Blvd - Ste B | Los Angeles | CA |
| 2163 | 1516 S. Pacific Coast Hwy | Redondo Beach | CA |
| 2165 | 2115 Artesia Blvd | Redondo Beach | CA |
| 2167 | 26518 Bouquet Canyon Road | Saugus | CA |
| 2169 | 23381 Mulholland Dr. | Woodland Hills | CA |
| 2173 | 30252 Crown Valley Parkway | Laguna Niguel | CA |
| 2174 | 2130 Pacific Coast Hwy | Lomita | CA |
| 2175 | 72675 Highway 111 | Palm Desert | CA |
| 2176 | 8850 Foothill Blvd. | Rancho Cucamonga | CA |
| 2179 | 28090 South Western Ave | San Pedro | CA |
| 2180 | 1910 N. Campus Ave. | Upland | CA |
| 2185 | 5630 Lake Murray Blvd | La Mesa | CA |
| 2186 | 14837 Pomerado Road | Poway | CA |
| 2187 | 12475 Rancho Bernardo Rd | Rancho Bernardo | CA |
| 2188 | 7895 Highland Village Place | San Diego | CA |
| 2190 | 5950 Balboa Ave | San Diego | CA |
| 2191 | 671 Rancho Santa Fe | San Marcos | CA |
| 2193 | 505 Telegraph Canyon Rd | Chula Vista | CA |
| 2194 | 870 Third Ave | Chula Vista | CA |
| 2196 | 34442 N. Scottsdale Road | Scottsdale | AZ |
| 2197 | 10380 East Broadway Boulevard | Tucson | AZ |
| 2198 | 8740 East Broadway | Tucson | AZ |
| 2199 | 660 E. Los Angeles Ave | Simi Valley | CA |
| 2201 | 3901 Portola Pkwy | Irvine | CA |
| 2202 | 25872 Muirlands Blvd. | Mission Viejo | CA |
| 2203 | 28751 Los Alisos Blvd. | Mission Viejo | CA |
| 2204 | 422 W Washington St | San Diego | CA |
| 2206 | 14340 Penasquitos Drive | San Diego | CA |
| 2208 | 8200 E. Stockdale Hwy | Bakersfield | CA |
| 2209 | 6235 E Spring St | Long Beach | CA |
| 2210 | 1130 Los Osos Valley Road | Los Osos | CA |
| 2211 | 920 N. Ventura Rd. | Oxnard | CA |
| 2213 | 27095 Mcbean Parkway | Santa Clarita | CA |
| 2215 | 17662 17th Street | Tustin | CA |
| 2216 | 550 E. First St. | Tustin | CA |
| 2217 | 1980 Mcculloch Blvd | Lake Havasu City | AZ |
| 2218 | 174 East Sheldon | Prescott | AZ |
| 2219 | 11475 E. Via Linda | Scottsdale | AZ |

| Store Number | Address | City | State |
|---|---|---|---|
| 2220 | 1350 N. Silverbell Road | Tucson | AZ |
| 2221 | 3655 W. Anthem Way | Anthem | AZ |
| 2222 | 1416 E. Route 66 | Flagstaff | AZ |
| 2223 | 7450 E. Highway 69 | Prescott Valley | AZ |
| 2225 | 1031 Nevada Hwy | Boulder City | NV |
| 2228 | 2910 Bicentennial Parkway | Henderson | NV |
| 2230 | 575 College Drive | Henderson | NV |
| 2231 | 190 N. Boulder Hwy | Henderson | NV |
| 2233 | 7530 W. Lake Mead Blvd | Las Vegas | NV |
| 2234 | 820 S. Rampart Blvd. | Las Vegas | NV |

01:17771654.1

3

**Exhibit 2**

Global Sale Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAGGEN HOLDINGS, LLC, *et al.,*[1] | ) Case No. 15-11874 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |

## NOTICE OF SALE OF ASSETS

Haggen Holdings, LLC and its affiliates identified in the footnote below (collectively, the "**Debtors**") are seeking to sell or assign certain of their Stores, leases, and related assets (the "**Stores**").

Two parties (the "**Bidders**") have already submitted binding bids (the "**Bids**") for a total of 36 Stores, which Bids are subject to the terms set forth in the applicable purchase agreements (the "**Stalking Horse Agreements**"). Each Bid remains subject to higher and better offers. **A list of the Stores included in each Bid is attached as Exhibit A.**

**A list of the Debtors' other Stores is attached as Exhibit B.**

By order, dated _____, 2015 (the "**Global Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Global Bidding Procedures**" that govern the sale of all of the Debtors' Stores to the highest or best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Global Bidding Procedures Order.

The Debtors have requested the Bankruptcy Court enter orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Stores free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by successful bidders of certain liabilities. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned.

Copies of the Stalking Horse Agreements, the Global Bidding Procedures Order, the Global Bidding Procedures, and the proposed Sale Orders are available upon request to the Debtors' noticing agent, Kurtzman Carson Consultants LLC, at (877) 634-7180, and are available for download at http://www.kccllc.net/haggen.

#### ANY INTERESTED BIDDER SHOULD CONTACT THE DEBTORS' ADVISORS AT:

**Sagent Advisors, LLC**
Scott Moses ((212) 904-9350; smoses@sagentadvisors.com) or
Gregory Grambling (212-904-9372; ggrambling@sagentadvisors.com)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

**PLEASE TAKE NOTE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES:**

- The **deadline to submit a bid** for one or more Stores is **November 2, 2015 at 5:00 p.m. (ET)**. A bid must, among other things, include a deposit in the amount of ten percent (10%) of the proposed purchase price. The failure to abide by the procedures, requirements and deadlines set forth in the Global Bidding Procedures Order and the Global Bidding Procedures may result in the denial of your bid.

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Stores (the "**Sale Objection Deadline**") is:

    o **November 6, 2015 at 5:00 p.m. (ET)** for the 36 Stores included in the current Bids; and

    o **November 19, 2015 at 6:00 p.m. (ET)** for any of the _____ Stores not included in the current Bids.

    Objections must be filed and served in accordance with the Global Bidding Procedures Order. In connection with the proposed sale process, interested bidders may be subject to an expedited discovery process.

- Auctions for Stores have been scheduled for **November 9, 2015 at ___ _ a.m. (ET)**.

- The Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the proposed sales on:

    o **November 13, 2015 at 2:00 p.m. (ET)** if a Bid is the only Qualified Bid (as defined in the Global Bidding Procedures Order) received or the applicable Bidder, after the applicable auction, is the Successful Bidder and such Successful Bid for the applicable assets does not add any Additional Contracts (as defined in the Global Bidding Procedures Order) that were not identified in its original Bid; and/or

    o **November 24, 2015 at 2:00 p.m. (ET)** if more than one Qualified Bid is received and an auction is conducted.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE STALKING HORSE AGREEMENTS (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE STORES AND ASSUMPTION AND ASSIGNMENT OF STORE LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated: _____, 2015          YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                       Matthew B. Lunn (No. 4119)
                                       Robert F. Poppiti, Jr. (No. 5052)
                                       Rodney Square
                                       1000 North King Street
                                       Wilmington, DE 19801

01:17859013.1

Telephone: (302) 571-6600
Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Elizabeth Taveras (admitted *pro hac vice*)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*COUNSEL TO THE DEBTORS
AND DEBTORS-IN-POSSESSION*

01:17859013.1

3

**Exhibit 3**

Global Publication Sale Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAGGEN HOLDINGS, LLC, *et al.*,[6] | ) Case No. 15-11874 (KG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Ref. Docket No. _____ |

## NOTICE OF SALE OF ASSETS

Haggen Holdings, LLC and its affiliates identified in the footnote below (collectively, the "<u>Debtors</u>") are seeking to sell or assign certain of their Stores, leases, and related assets (the "<u>Stores</u>"). Two parties have already submitted binding bids (the "<u>Bids</u>") for a total of 36 Stores, which Bids are subject to the terms set forth in the applicable purchase agreements (the "<u>Stalking Horse Agreements</u>"). Each Bid remains subject to higher and better offers. A list of the Stores included in each Bid and a list of the Debtors' other Stores is available on the Case Website (as defined below).

By order, dated October _____, 2015 [Docket No. __] (the "<u>Global Bidding Procedures Order</u>"), the Bankruptcy Court approved certain "Global Bidding Procedures" that govern the sale of all of the Debtors' Stores to the highest or best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Global Bidding Procedures Order.

The Debtors have requested the Bankruptcy Court enter orders (the "<u>Sale Orders</u>"), which provide, among other things, for the sale of the Stores free and clear of liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by successful bidders of certain liabilities. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned.

Copies of the Stalking Horse Agreements, the Global Bidding Procedures Order, the Global Bidding Procedures, and the proposed Sale Orders are available upon request to the Debtors' noticing agent, Kurtzman Carson Consultants LLC, at (877) 634-7180, and are available for download at http://www.kccllc.net/haggen (the "<u>Case Website</u>").

Any interested bidder should contact Scott Moses ((212) 904-9350; smoses@sagentadvisors.com) or Gregory Grambling ((212)-904-9372; ggrambling@sagentadvisors.com) at Sagent Advisors, LLC.

PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:

- The deadline to submit a bid for one or more Stores is November 2, 2015 at 5:00 p.m. (ET). A bid must, among other things, include a deposit in the amount of ten percent (10%) of the proposed purchase price. The failure to abide by the procedures, requirements and deadlines set forth in the Global Bidding Procedures Order and the Global Bidding Procedures may result in the denial of your bid.

---

[6] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583). The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

- The deadline to lodge an objection with the Bankruptcy Court to the proposed sale of the Stores is:

  o   November 6, 2015 at 5:00 p.m. (ET) for the 36 Stores included in the current Bids; and

  o   November 19, 2015 at 6:00 p.m. (ET) for any of the _____ Stores not included in the current Bids.

  Objections must be filed and served in accordance with the Global Bidding Procedures Order.

- Auctions for Stores have been scheduled for November 9, 2015 at _____ a.m. (ET).

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sales on November 13, 2015 at 2:00 p.m. (ET) if the Auction is not conducted or if the applicable Stalking Horse Bidder, after the applicable Auction, is the Successful Bidder and such Successful Bid for the applicable Stalking Horse Package does not add any Additional Contracts that were not identified in its original Stalking Horse Bid, or November 24, 2015 at 2:00 p.m. (ET) if the Auction is conducted and the Sale Hearing does not otherwise occur on November 13, 2015.

THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE STALKING HORSE AGREEMENTS (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE STORES AND ASSUMPTION AND ASSIGNMENT OF STORE LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).

Dated:  _____, 2015          YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                        Matthew B. Lunn (No. 4119)
                                        Robert F. Poppiti, Jr. (No. 5052)
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 571-6600
                                        Facsimile: (302) 571-1256

                                        -and-

                                        STROOCK & STROOCK & LAVAN LLP
                                        Frank A. Merola (admitted *pro hac vice*)
                                        Sayan Bhattacharyya (admitted *pro hac vice*)
                                        Elizabeth Taveras (admitted *pro hac vice*)
                                        180 Maiden Lane
                                        New York, New York 10038
                                        Telephone: (212) 806-5400
                                        Facsimile: (212) 806-6006

                                        *COUNSEL TO THE DEBTORS*
                                        *AND DEBTORS-IN-POSSESSION*

**Exhibit 4**

Cure Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HAGGEN HOLDINGS, LLC, et al.,[1] | ) Case No. 15-11874 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

Haggen Holdings, LLC and its chapter 11 affiliates identified in the footnote below (collectively, the "**Debtors**") are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale of certain of their stores (the "**Stores**"). Two parties (the "**Bidders**") have already submitted binding bids (the "**Bids**") for a total of 36 Stores, and the Debtors are seeking Court approval of these Bids (or such higher and better bids) pursuant to a motion, dated October 3, 2015 [Docket No. __].

**You are receiving this Notice because you may be a party to (i) an unexpired lease for a Store that is subject to the Debtors' proposed sale process (the "Lease Contracts") or (ii) an executory contract or unexpired lease that is proposed to be assumed and assigned to the Bidders (collectively, the "Transferred Contracts", and together with the Lease Contracts, the "Contracts"), or to such other bidders that submit higher or better offers for the Stores.**

The current Bidders are: Gelson's Markets and Smart & Final Stores, LLC.  A list of the Contracts is attached hereto as Exhibit A.  Copies of the Bids are available at http://www.kccllc.net/haggen or by calling (877) 634-7180.

The Debtors have determined the current amounts owing (the "**Cure Costs**") under each Contract and have listed the applicable Cure Costs on Exhibit A.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Contracts, in full satisfaction of all amounts outstanding under the Contracts.

**To the extent that a non-Debtor party to a Transferred Contract objects to (i) the assumption and assignment of such party's Transferred Contract or (ii) the applicable Cure Costs, the non-Debtor counterparty must file and serve an objection in accordance with the Global Bidding Procedures Order (Docket No. __), so as to be received by the parties specified therein by _____, 2015 at 5:00 p.m. (ET).  Copies of the Global Bidding Procedures Order are available for download at http://www.kccllc.net/haggen.**

**To the extent that a non-Debtor party to a Lease Contract (other than a Transferred Contract) objects to the applicable Cure Costs, the non-Debtor counterparty must file and serve an objection**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Haggen Holdings, LLC (7558), Haggen Operations Holdings, LLC (6341), Haggen Opco South, LLC (7257), Haggen Opco North, LLC (5028), Haggen Acquisition, LLC (7687), and Haggen, Inc. (4583).  The mailing address for each of the Debtors is 2211 Rimland Drive, Bellingham, WA 98226.

in accordance with the Global Bidding Procedures Order (Docket No. __), so as to be received by the parties specified therein by _____, 2015 at 5:00 p.m. (ET).

**If no objection is timely received, (i) a non-Debtor party to a Contract shall be deemed to have consented to the assumption and assignment of the Contract and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (ii) the Cure Costs set forth on Exhibit A attached hereto shall be controlling, notwithstanding anything to the contrary in any Contract, or any other document, and the non-Debtor party to a Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them.**

Auctions for the Stores, including the Contracts, will be conducted on November 9, 2015, at ___ _.m. (ET). After the auctions, the Debtors will file and serve a notice that identifies the successful bidders for the Stores, including any Contracts. **If a successful bidder at an auction is not one of the Bidders, then the deadline to object to adequate assurance of future performance by a successful bidder will be extended to November 19, 2015 at 6:00 p.m. (ET); provided that the deadline to object to the Cure Costs shall not be extended.**

The Debtors will seek to assume and assign the Transferred Contracts at a hearing before the Honorable Judge Kevin Gross, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Sixth (6th) Floor, Courtroom #3, Wilmington, Delaware 19801 (a "**Sale Hearing**") on (a) November 13, 2015 at 2:00 p.m. (ET) if the Auction is not conducted or if the applicable Stalking Horse Bidder, after the applicable Auction, is the Successful Bidder and such Successful Bid for the applicable Stalking Horse Package does not add any Additional Contracts that were not identified in its original Stalking Horse Bid, or (b) November 24, 2015 at 2:00 p.m. (ET) if the Auction is conducted and the Sale Hearing does not otherwise occur on November 13, 2015, or (c) at a later hearing, as determined by the Debtors in accordance with the terms of the Global Bidding Procedures Order. A hearing regarding the Cure Costs, if any, may be adjourned at the discretion of the Debtors.

Dated: _____, 2015

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600  Facsimile: (302) 571-1256

-and-

STROOCK & STROOCK & LAVAN LLP
Frank A. Merola (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Elizabeth Taveras (admitted *pro hac vice*)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400  Facsimile: (212) 806-6006

*COUNSEL TO THE DEBTORS*
*AND DEBTORS-IN-POSSESSION*