IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: HAGGEN HOLDINGS, LLC, *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Bankr. Case No. 15-11874 (KG) |
| ANTONE CORP., | : | (Jointly Administered) |
| | : | |
| Appellant, | : | |
| v. | : | Civ. No. 15-1136 (GMS) |
| | : | |
| HAGGEN HOLDINGS, LLC, *et al.*, | : | |
| | : | |
| Appellees. | : | |

### **MEMORANDUM OPINION**

### **I.    INTRODUCTION**

On December 8, 2015, appellant Antone Corp. ("Antone") filed a notice of appeal (D.I. 1) seeking review of a portion of an order (B.D.I. 839)[1] ("Sale Order") entered by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on November 24, 2015, which approved an asset purchase agreement and allowed Haggen Holdings, LLC and certain affiliates ("Debtors") to sell certain assets. In connection with this sale, Antone objected to the assignment of its commercial property lease with debtor HH Opco South, LLC (formerly Haggen Opco South, LLC) on the basis that the assignment must include enforcement of a profit sharing provision contained in the lease, which would entitle Antone to 50% of any net profits upon assignment. Ruling from the bench, the Bankruptcy Court specifically overruled Antone's objection, holding that the profit sharing provision was an unenforceable anti-assignment provision under § 365(f)(1) of the Bankruptcy Code, and approved the sale. (*See* B.D.I. 873, 11/24/15 Hr'g Tr. at 98:14-99:6.) For the reasons that follow, the court will affirm the Sale Order.

---

[1] The docket of the chapter 11 cases, captioned *In re Haggen Holdings, LLC, et al.*, Case No. 15-11874 (KG) (Bankr. D. Del.) is cited herein as "B.D.I. __."

1

## II. BACKGROUND

On September 8, 2015 ("Petition Date"), Debtors filed voluntary petitions with the Bankruptcy Court for relief under chapter 11 of title 11 of the Bankruptcy Code. As of the Petition Date, Debtors owned and operated 164 grocery stores and one pharmacy through three operating companies: Haggen, Inc. (n/k/a HH Legacy, Inc.), Haggen Opco North, LLC (n/k/a HH Opco North, LLC), and Haggen Opco South, LLC (n/k/a HH Opco South, LLC).

On October 3, 2015, the Debtors filed a motion seeking, *inter alia*, approval of bidding procedures to govern the sale of dozens of stores, as well as the assumption and assignment of certain executory contracts and unexpired leases in connection therewith (B.D.I. 262) ("Sale Motion"). The commercial lease between Debtor Haggen Opco South, LLC and Antone (as later amended, the "Lease") was among the leases subject to the Sale Motion. On October 22, 2015, Debtors filed their Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors (B.D.I. 511) ("Cure Notice"). Antone objected to the Cure Notice, arguing that the Debtors' proposed cure amount was insufficient and that assumption and assignment of the Lease must be conditioned on "full performance and compliance of all Lease provisions going forward, including the provision at ¶ 9 of the Lease providing for payment to [Antone] of one-half of the net profit realized by the Debtor . . . upon the assignment and transfer of the Lease to a third party." (*See* B.D.I. 630 at 5.) This profit sharing provision is set forth in ¶ 9(B) of the Lease amendment dated April 8, 1993 and provides, in relevant part:

> In the event Tenant assigns this Lease or sublets more than fifty percent (50%) of the demised premises, Tenant shall deliver to Landlord fifty percent (50%) of any "net profits" (as such term is hereinafter defined) within thirty (30) days of Tenant's receipt thereof pursuant to such assignment or subletting.

(D.I. 11 at A92.) Antone's objection did not cite any case law or authorities in support of its

2

argument that the profit sharing provision must be enforced. (*See* B.D.I. 630.) The objection was supported by the declaration of Sara Antonicelli as president and CEO of Antone ("Antonicelli Declaration").

On November 13, 2015, after conducting a marketing and auction process approved by the Bankruptcy Court, Debtors filed a notice (B.D.I. 707) ("Sale Notice") identifying Good Food Holdings (Bristol Farms) as the "Successful Bidder" for the Debtors' store (Store No. 2204) subject to the Lease, and identifying Good Food Holdings LLC as the assignee of the Lease. (*See* Sale Notice, Ex. A, at 2.) On November 19, 2015, Antone filed a limited objection to the Sale Notice contending that Debtors' proposed cure amount was insufficient and that assumption and assignment of the Lease must be "subject to the Debtors satisfying their obligations," including compliance with the profit sharing provision. (*See* B.D.I. 780 at 3-4.) Again, Antone's objection did not cite any case law or authority to support enforcement of the profit sharing provision. (*See id.*) Antone's limited objection was supported by the declaration of Mike Moser, a California real estate broker with 29 years of experience in retail and commercial leasing, and an advisor and consultant to Antone ("Moser Declaration") (B.D.I. 785.) According to Antone, "[t]he Moser Declaration provides Moser's expert opinion regarding the economic deal terms of the Lease and the underlying rationale for Antone's inclusion of the non-customary provision of fixed minimum rent" in exchange for the profit sharing provision. (D.I. 9 at 6 (citing Moser Decl. at ¶ 7.))

On November 23, 2015, Debtors filed an omnibus reply in further support of the Sale Motion, arguing that a profit sharing provision, such as the one in the Lease, is unenforceable as an anti-assignment provision under § 365(f)(1) of the Bankruptcy Code. (*See* B.D.I. 825 at 19-21.) Debtors cited long-standing precedent holding profit sharing provisions unenforceable and urged the Bankruptcy Court to overrule Antone's objection. (*See id.*)

On November 24, 2015, the Bankruptcy Court held a hearing on the Sale Motion, and

3

Antone argued that the profit sharing provision at issue in the Lease must be distinguished from similar provisions invalidated in the decisions cited by Debtors based on the unique facts and circumstances of this transaction. (*See* B.D.I. 873, 11/24/15 Hr'g Tr. at 89:5-90:13.) According to Antone, the Bankruptcy Court was required to look to the facts and circumstances of this particular case, and based on its declarations,[2] Antone argued that the profit sharing provision was a bargained for element, given in exchange for below-market rent, and should therefore be enforced. (*See id.*) The Bankruptcy Court overruled Antone's objection on the basis that the profit sharing provision "is an anti-assignment provision" and "unenforceable under Section 365(f)(1)." (*Id.* at 98:14-19.) The Bankruptcy Court observed that the profit sharing provision Antone sought to enforce was "very much akin, if not identical" to profit sharing provisions previously held to be unenforceable anti-assignment provisions by several courts, and that enforcing such a provision "would defeat the purpose of Section 365(f)(1) which is to . . . enable the Debtor to realize the full value of its assets." (*Id.* at 98:19-99:6.) As result, the Bankruptcy Court entered the Sale Order which, *inter alia*, approved the sale, authorized assumption and assignment of the Lease, and prohibited enforcement of the profit sharing provision. (B.D.I. 839.)

On December 8, 2015, Antone filed a timely notice of appeal of the Order. (D.I. 1.) The appeal has been fully briefed by the parties. (*See* D.I. 9, 14, 15.)

### III. PARTIES' CONTENTIONS

On appeal, Antone argues that the Bankruptcy Court erred by failing to consider undisputed evidence of the unique facts and circumstances of this transaction in connection with its analysis

---

[2] The transcript reflects that the Antonicelli Declaration and Moser Declarations were admitted without objection, although the Debtors and the creditors' committee questioned their relevance to the dispute. (*See* B.D.I. 873, 11/24/15 Hr'g Tr. at 88:9-10 (admitting declarations); *id.* at 96:9-14 (arguing that "the fact pattern, the back story about how this provision got into the agreement I would suggest is irrelevant under the parol evidence rule. All you need to do is look at the document. The penalty [p]rovision is in there. And I don't think you need to go beyond that and hold an evidentiary hearing.")

4

of the enforceability of the profit sharing provision. (*See* D.I. 9 at 10-11.) According to Antone, an understanding of the bargained-for exchange that led to the profit sharing provision was critical to this analysis, and the Bankruptcy Court's analysis fell short. (*See id.* at 11-12) Antone further argues that the cases cited by the Bankruptcy Court, refusing to enforce provisions "very much akin, if not identical" to the profit sharing provision at issue in this case, are factually distinguishable. (*See id.* at 13-14.)

Conversely, Debtors argue that the Bankruptcy Court correctly determined, based on the plain language of the statute and the clear weight of authority, that a profit sharing provision like the one in the Lease is a de facto anti-assignment provision that is unenforceable by operation of law under § 365(f)(1). (D.I. 14 at 8-9.) As such, Debtors argue the Bankruptcy Court was not required to "balance the equities" or otherwise analyze the facts and circumstances of the case, and that the cases Antone relies on for its proposition that such an analysis is required are factually distinguishable and inapposite. (*See id.* at 10-14.)

### IV. JURISDICTION AND STANDARD OF REVIEW

The court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). The court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) because the appeal concerns a final order disposing of Antone's objections to the assignment of the Lease at issue. The court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Whether the profit sharing provision contained in the Lease agreement between Antone and Debtors is an unenforceable anti-assignment provision pursuant to § 365(f) of the Bankruptcy Code is a legal conclusion requiring *de novo* review. None of the relevant facts are disputed.

5

## V. DISCUSSION

### A. The Profit Sharing Provision is an Unenforceable Anti-Assignment Provision

Section 365(f)(1) of the Bankruptcy Code provides that:

> Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

11 U.S.C. § 365(f)(1). According to the Third Circuit, "[s]ection 365(f) was designed to prevent anti-alienation or other clauses in leases and executory contracts assumed by the [t]rustee from defeating his or her ability to realize the full value of the debtor's assets in a bankruptcy case." *In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1993); *see also Angelone v. Great Atl. & Pac. Tea Co., Inc.*, 2016 WL 6084012, at *4 (S.D.N.Y. Oct. 17, 2016) ("*A & P*") (confirming that § 365(f) is a "powerful tool for advancing one of the [Bankruptcy] Code's central purposes, the maximization of the value of the bankruptcy estate for the benefit of creditors") (internal quotations and citation omitted); *In re Jamesway Corp.*, 201 B.R. 73, 78 (Bankr. S.D.N.Y. 1996) ("[Section] 365 reflects the clear Congressional policy of assisting the debtor to realize the equity in all of its assets.").

Importantly, § 365(f)(1) "is not only concerned with anti-assignment provisions that *prohibit* assignment. It also addresses any such clause that '*restricts, or conditions*,' assignment." *A & P*, 2016 WL 6084012, at *6 (quoting 11 U.S.C. § 365(f)(1) (emphasis in original)). Antone suggests that the profit sharing provision should be enforced because "[n]o evidence was introduced that the assignment could not go forward if the profit from the assignment had to be shared." (*See* D.I. 9 at 11.) This argument must be rejected. "[T]he offending provision may not necessarily be one that directly prohibits assignment of a contract, but may be one that indirectly interferes with a debtor's ability to realize the value of its assets. 'De facto anti-assignment

6

provisions may be found in a variety of forms including lease provisions that limit the permitted use of the leased premises, lease provisions that require payment of some portion of the proceeds or profit realized upon assignment, and cross-default provisions.'") *Shaw Grp., Inc. v. Bechtel Jacobs Co. (In re IT Group, Inc.)*, 350 B.R. 166, 178-79 (Bankr. D. Del. 2006) (citing *In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 50 (Bankr. M.D.N.C. 2003)).

Here, the profit sharing provision provides, in relevant part, that "[i]n the event Tenant assigns this Lease . . . , Tenant shall deliver to Landlord fifty percent (50%) of any 'net profits.'" (D.I. 11 at A92.) Debtors argue that there is no question that, if enforced, this profit sharing provision would prevent Debtors from realizing the full value of their assets. (*See* D.I. 14 at 8.) The provision clearly "conditions" assignment because it requires Debtors to pay Antone 50% of net profits received if the Debtors assign the Lease. (*See id.*) The court agrees that the profit sharing provision is unenforceable as a matter of law pursuant to the plain language of § 365(f)(1) of the Bankruptcy Code.

In addition to falling within the plain language of the statute, the cases relied on by the Bankruptcy Court provide clear support for its decision as well. (*See* B.D.I. 873, 11/24/15 Hr'g Tr. at 98:19-99:2 (citing cases).) In *Boo.com*, the bankruptcy court rejected a landlord's attempt to enforce a profit sharing provision requiring the debtor to pay the landlord 100% of the profits realized from an assignment. *In re Boo.com N. Am. Inc.*, 2000 WL 1923949, at *3 (Bankr. S.D.N.Y. Dec. 15, 2000). The court there stated: "In the case currently before me, the Profit Sharing clause in the lease hinders the Debtor's effort to realize the full value of its assets and would result in a diminished distribution to all other creditors. Such an outcome would clearly be contrary to bankruptcy policies which try to balance the interests of all parties involved." *Id.* at *3. In *Jamesway*, the bankruptcy court similarly held that a 50% profit sharing provision was unenforceable because it limited the debtor's ability to realize the full value of its leasehold

7

interest. *See Jamesway*, 201 B.R. at 78. The court there stated: "lease provisions conditioning a debtor-in-possession's right to assignment upon the payment of some portion of the 'profit' realized upon such assignment are routinely invalidated under § 365(f)(1) . . . [l]andlords cannot, by artful drafting, thwart the fundamental bankruptcy policy allowing a debtor to realize maximum value from its assigned leases for the benefit of its estate and creditors." *Id.* at 79.

Other courts considering profit sharing provisions have reached the same conclusion. *See A & P*, 2016 WL 6084012, at *5 (finding that 50% profit sharing provision was an unenforceable condition on assignment, regardless of whether the condition was implicit or explicit); *Robb v. Schindler*, 142 B.R. 589, 591-92 (D. Mass. 1992) (invalidating lease provision that conditioned assignment upon lessee's payment of 80% of net proceeds to lessor because it would "adversely affect the trustee's realization of value from the lease"); *In re Howe*, 78 B.R. 226, 231 (Bankr. D.S.D. 1987) (invalidating contract provision that conditioned consent to assignment upon debtor's payment of assumption fee equal to 4% of amount outstanding under contract).

### B. The Facts and Circumstances Leading to this Profit Sharing Provision Do Not Change the Outcome

Antone's main argument on appeal is that the Bankruptcy Court, in determining that the profit sharing provision was an unenforceable anti-assignment provision, was required to examine the unique facts and circumstances of the parties' bargain. (*See* D.I. 9 at 9-11.) Antone argues that its uncontroverted evidence established that the profit sharing provision was a bargained-for element given in exchange for a fixed minimum rent, in lieu of customary annual rent increases, and that Antone had "negotiated for a share of the equity value of the Lease, which has increased since 1993 as a result of Antone's agreement to forbear from collecting market value increases in exchange for the profit sharing provision." (*See id.* at 8; D.I. 15 at 3.) According to Antone, the fact that "the profit sharing provision and the minimum rent provision are economically

8

interdependent" should have been "a critical feature in determining enforceability of a provision challenged under 365(f)," yet the Bankruptcy Court failed to give any consideration to this evidence in reaching its decision. (*See* D.I. 9 at 11-12, 14-15.) While Antone contends that "[t]he existence of a property interest in sale proceeds pursuant to a lease profit sharing provision is an issue which is not addressed in any of the profit sharing provision decisions [cited by] Debtors," Antone also concedes that it is "not aware of any written decision which is directly on point with the facts presented in this case." (*See* D.I. 15 at 5-6.)

Notwithstanding a lack of case law supporting its position, Antone argues the Bankruptcy Court erred in relying on cases invalidating profits sharing provisions "very much akin, if not identical" to the one at issue because the profit sharing provisions in those cases did not arise from a "bargained for exchange" that were "economically interdependent" with other material lease terms. (*See id.* at 13-14; D.I. 15 at 3.) Conversely, Debtors argue that "*A&P, Boo.com* and *Jamesway*, among others, make clear that, regardless of how they arose, profit sharing provisions contravene the fundamental bankruptcy policy of enabling debtors to maximize the value of their assets for the benefit of stakeholders and are invalidated pursuant to section 365(f)(1)." (D.I. 14 at 11-12.)

In support of its argument that the Bankruptcy Court was required to "examine the particular facts and circumstances" in order to determine "the actual effect of a particular provision," Antone relies primarily on *E-Z Serve*, 289 B.R. at 50-52, and *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1090-92 (3d Cir. 1990)). (*See* D.I. 9 at 10-13.) However, those cases do not support Antone's argument that the Bankruptcy Court was required to analyze the facts and circumstances underlying the profit sharing provision in reaching its conclusion. The court in *E-Z Serve* considered whether to enforce a right of first refusal contained in a lease, as opposed to a profit sharing provision. *See E-Z Serve*, 289 B.R. at 48. The *E-Z Serve* court stated:

9

> A court must examine the particular facts and circumstances of the transaction to determine whether a lease clause restricts or conditions assignment including the extent to which the provision hampers a debtor's ability to assign, whether the provision would prevent the bankruptcy estate from realizing the full value of its assets, and the economic detriment to the non-debtor party.

*Id.* at 50. Antone argues that the Bankruptcy Court was required to follow the above analytical framework in evaluating *any* challenged provision and that the Bankruptcy Court erred in failing to apply it in this case. (*See* D.I. 15 at 7.) As Debtors point out, the distinction between a right of first refusal and profit sharing provision is itself sufficient to distinguish the *E-Z Serve* case from the litany of cases finding profit sharing provisions *per se* unenforceable. (*See* D.I. 14 at 12-13.) As set forth in the detailed analysis undertaken by the *E-Z Serve* court, a right of first refusal will often benefit a debtor's estate by creating a bidding war between potential purchasers of estate assets, and "the Debtors' estate is entitled to the full benefit of the best offer" that can be negotiated. *See E-Z Serve*, 289 B.R. at 52. Profit sharing provisions, on the other hand, as Debtors point out, "function only to extract value that would otherwise accrue to a debtor's estate, for the sole benefit of an individual landlord." (*See* D.I. 14 at 13). Based on its careful analysis, the *E-Z Serve* court concluded that the right of first refusal at issue there did not "thwart the underlying policies of the Bankruptcy Code or hamper the Debtors' ability to reorganize" and did not "fall within the framework of § 365(f)."[3] *Id.* Conversely, as Debtors correctly argue, it is beyond question that the profit sharing provision at issue here conditions assignment, prevents the Debtors from obtaining the full benefit of any assignment, and therefore thwarts the underlying policies of the Bankruptcy Code.

Antone further cites the Third Circuit's decision in *Joshua Slocum* for its arguments that "the bankruptcy court's authority to excise a bargained for element of a contract is questionable

---

[3] The *E-Z Serve* court ultimately denied the motion for authority to assume and assign the lease, basing its decision on, among other things, considerations of maximizing the value of the debtor's estate. *See E-Z Serve*, 289 B.R. at 55.

10

and modification of a nondebtor contracting party's rights is not to be taken lightly." (*See* D.I. 9 at 12.) According to Antone, "an approach which disregards the underlying facts falls short of an acceptable process to determine enforceability and consistency with the policy rationale behind 365(f)(1), and is inconsistent with the Third Circuit's position expressed in *Joshua Slocum*." (*Id.* at 13.) The *Joshua Slocum* case addressed a bankruptcy court's authority to excise a minimum sales provision from a shopping center lease prior to assumption and assignment by the debtor in light of the specific protections afforded shopping-center lessors under § 365(b)(3) of the Bankruptcy Code.[4] *See Joshua Slocum*, 922 F.2d at 1089-90. As Debtors correctly argue, this case does not support Antone's argument that an analysis of the particular facts and circumstances leading to a profit sharing provision is always required. In *Joshua Slocum*, the Third Circuit stated explicitly that § 365(f)(1) was inapplicable to its analysis (*see id.* at 1080), and unlike the profit sharing provision at issue in this case, the minimum sales provision in *Joshua Slocum* did not even reference (let alone expressly prohibit, restrict or condition) assignment of the lease. (*See* D.I. 14 at 14.)

Antone's reliance on the analysis undertaken in cases considering the enforceability of cross-default provisions is misplaced. A cross-default clause "provid[es] for a loss of rights under one agreement if another agreement is breached." *See Shaw*, 350 B.R. at 177 (internal citations omitted). "Cross-default provisions are 'inherently suspect' because they interfere with the debtor's rejection power by saddling the estate (albeit indirectly) with the burdens of unwanted executory contracts." *See id.* at 179 (quoting *In re Kopel*, 232 B.R. 57, 64 (Bankr. E.D.N.Y. 1999)). Antone repeatedly asserts that where a lease provision is determined to be "economically interdependent" with another material lease term, courts have ruled not to invalidate them, and that

---

[4] The Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers in order to protect the rights of lessors and other tenants. *See* 11 U.S.C. § 365(b)(3); S. Rep. Nos. 98-70, 98th Cong. 1st Sess. (1983).

11

these cases stand for the proposition that the court must look to the facts and circumstances of the transaction. (*See* D.I. 9 at 14-16; D.I. 15 at 2, 8 (citing *Shaw*, 350 B.R. at 179-80)) For example, Antone argues that the "*Shaw* court utilized its discretion and analyzed the factual record" in determining whether the cross-default provision qualified as a de facto anti-assignment clause" and that "[w]hile the *Shaw* decision concludes that cross-offset provisions are unenforceable pursuant to section 365(f), it suggests, as do other decisions, that had there been evidence of a bargained for element to support a finding that the provision at issue was economically interdependent with another material provision, the decision may have been different." (*See* D.I. 9 at 15-16; D.I. 15 at 7.) The court agrees with Debtors that the cases cited by Antone analyzed cross-default provisions in one or more "economically interdependent" **contracts**. (*See* D.I. 14 at 11-12.) These cases simply do not support Antone's contention that the Bankruptcy Court was required to consider facts and circumstances underlying a profit sharing provision like the one in this case.[5]

The court is persuaded by the reasoning in *A & P*, a recent case from the Southern District of New York which affirmed the bankruptcy court's decision, "based on long standing precedent," that a 50% profit sharing provision, much like the one at issue here, was a condition on assignment rendered unenforceable as a matter of law by § 365(f)(1). *See A & P*, 2016 WL 6084012, at *6. The *A & P* court expressly rejected the landlord's argument that the profit sharing provision, which had been negotiated by the parties in the course of term extensions, was entitled to enforcement

---

[5] As the *Shaw* court explained, "[t]he 'critical feature' of decisions which do not invalidate cross-default provisions is 'that the agreements linked by a cross-default clause were *economically interdependent*: the consideration for one agreement supported the other." *See Shaw*, 350 B.R. at 179-80 (citing *United Airlines, Inc. v. U.S. Bank Trust Nat'l Ass'n (in re UAL Corp.),* 346 B.R. 456, 470 (Bankr. N.D. Ill. 2006) (emphasis added)). The decisions involve facts clearly distinguishable from a profit sharing provision contained in a lease. For example, the *Kopel* court enforced a cross-default clause in a lease and collateral note where they were "contemporaneously executed as necessary elements of the same transaction, such that there would have been no transaction without each of the other agreements." *See Kopel*, 232 B.R. at 67.

because of the nature of the parties' bargained-for exchange, resolving litigation over the debtor's prior defaults. *See id.* at \*6. The court reasoned that Congress had "already struck 'a careful balance between the rights of the parties' by enacting Section 365(f)." *See id.*, quoting *Howe*, 78 B.R. at 230. According to the *A & P* court, the landlord's interest must yield to the public policy interest of maximizing the value of the estate for the benefit of all creditors, notwithstanding the parties' "carefully negotiated bargain." *Id.* (citation omitted). Accordingly, the bankruptcy court was not required to balance the equities or otherwise analyze the "facts and circumstances" given the unenforceability of the profit sharing provision under § 365(f)(1) as a matter of law. *Id.* The court agrees with the conclusion reached by the *A & P* court that no such analysis was required with respect to a profit sharing provision like the one contained in this Lease, which conditions assignment and is unenforceable as a matter of law.

## VI. CONCLUSION

Courts have routinely found profit sharing provisions to be unenforceable conditions on assignment within the plain meaning of § 365(f)(1). Indeed, throughout these proceedings, Antone has cited no case enforcing a profit sharing provision against a debtor in favor of a landlord. Nor does Antone cite any authority in support of its argument that it had a property interest in sale proceeds from the Lease assignment. The profit sharing provision here clearly "conditions" assignment because it requires the Debtors to pay Antone 50% of net profits received if the Debtors assign the Lease to a third party. If enforced, the profit sharing provision would prevent Debtors from realizing the full value of this asset. The court finds no error in the conclusion reached by the Bankruptcy Court that the profit sharing provision is unenforceable pursuant to § 365(f)(1). For the foregoing reasons, the court will AFFIRM the Sale Order.

August 30, 2017

_____
UNITED STATES DISTRICT JUDGE