**<u>EXHIBIT A</u>**

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HH Liquidation, LLC, *et al.*,[1] | ) | Case No. 15-11874 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## PLAN OF LIQUIDATION FOR HH LIQUIDATION, LLC
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of the above-captioned debtor or any other party in interest. This Plan (as defined herein) is subject to approval of the United States Bankruptcy Court for the District of Delaware and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the District of Delaware in accordance with section 1125 of title 11 of the United States Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTOR'S SECURITIES) PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE.

Dated: August 24, 2018

| | |
|---|---|
| **STROOCK & STROOCK & LAVAN LLP** | **YOUNG CONAWAY STARGATT &** |
| Frank A. Merola (admitted *pro hac vice*) | **TAYLOR, LLP** |
| Sayan Bhattacharyya (admitted *pro hac vice*) | Matthew B. Lunn (No. 4119) |
| Elizabeth Taveras (admitted *pro hac vice*) | Robert F. Poppiti, Jr. (No. 5052) |
| 180 Maiden Lane | Rodney Square, 1000 North King Street |
| New York, NY 10038 | Wilmington, Delaware 19801 |
| Telephone: (212) 806-5400 | Telephone: (302) 571-6600 |
| Facsimile: (212) 806-6006 | Facsimile: (302) 571-1256 |

ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: HH Liquidation, LLC (f/k/a Haggen Holdings, LLC) (7558), HH Operations, LLC (f/k/a Haggen Operations Holdings, LLC) (6341), HH Opco South, LLC (f/k/a Haggen Opco South, LLC) (7257), HH Opco North, LLC (f/k/a Haggen Opco North, LLC) (5028), HH Acquisition, LLC (f/k/a Haggen Acquisition, LLC) (7687), and HH Legacy, Inc. (f/k/a Haggen, Inc.) (4583). The mailing address for each of the Debtors is 26895 Aliso Creek Road, Suite B-1003, Aliso Viejo, California 92656.

# TABLE OF CONTENTS

**Page**

ARTICLE I.    DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME ........................................................................1

    A.    Rules of Interpretation .........................................................................1
    B.    Computation of Time ...........................................................................1
    C.    Defined Terms .....................................................................................2

ARTICLE II.    PAYMENT OF ADMINISTRATIVE CLAIMS AND
PRIORITY TAX CLAIMS ........................................................................12

    A.    Administrative Claims .........................................................................12
    B.    Professional Fee Claims.......................................................................13
    C.    Payment of Statutory Fees ...................................................................13
    D.    Priority Tax Claims .............................................................................13

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLASSIFIED
CLAIMS AND EQUITY INTERESTS .....................................................14

    A.    Summary of Classification and Treatment of Classified Claims
and Equity Interests.............................................................................14
    B.    Classification and Treatment of Claims and Equity Interests...........15

        1.    Class 1 – Priority Non-Tax Claims.....................................15
        2.    Class 2 – Secured Claims....................................................15
        3.    Class 3 – Albertsons Settlement Claim...............................15
        4.    Class 4 – SLB Unsecured Claims. ......................................16
        5.    Class 5 – General Unsecured Claims. .................................16
        6.    Class 6 – Intercompany Claims. .........................................16
        7.    Class 7 – Class A Equity Interests......................................17
        8.    Class 8 – Other Equity Interests. ........................................17

    C.    Non-Consensual Confirmation ...........................................................17
    D.    Elimination of Vacant Classes ............................................................17

ARTICLE IV.    MEANS FOR IMPLEMENTATION OF THE PLAN....................................18

    A.    Plan Debtor; Corporate Existence.......................................................18
    B.    Plan Administrator ..............................................................................18

        1.    Transfer of Power. ..............................................................18
        2.    Powers of Plan Administrator..............................................19
        3.    Compensation of the Plan Administrator.............................20
        4.    Limitation of Liabilities. .....................................................20
        5.    Winding Down of the Plan Debtor's Affairs. ......................20

    C.    Corporate Action.................................................................................20
    D.    Dissolution ..........................................................................................21
    E.    Reservation of Rights Regarding Causes of Action ...........................21

LA 52166477

|  | F. | Operations of the Debtor Between the Confirmation Date and the Effective Date | 22 |
|  | G. | Term of Injunctions or Stays | 22 |
|  | H. | Cancellation of Existing Agreements and Equity Interests | 22 |
|  | I. | Authorization of Plan-Related Documentation; Further Assurances. | 22 |
|  | J. | Dissolution of Committee | 23 |
|  | K. | Exemption from Certain Fees and Taxes | 23 |
|  | L. | Albertsons Settlement Claim | 23 |
|  | M. | Global Settlement Agreement; Structured Dismissal of the Opco Debtors; Committee Litigation | 23 |
|  | N. | Other Settlement Agreements | 25 |
| ARTICLE V. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 26 |
|  | A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 26 |
|  | B. | Rejection Damages Claims | 26 |
|  | C. | Indemnification Obligations | 26 |
|  | D. | D&O Policies | 27 |
| ARTICLE VI. | | PROVISIONS GOVERNING DISTRIBUTIONS | 27 |
|  | A. | Manner of Payment under the Plan | 27 |
|  | B. | Timing of Distributions | 27 |
|  | C. | Distributions by Plan Administrator | 27 |
|  | D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 28 |
|  | E. | Record Date for Distributions | 28 |
|  | F. | Fractional Dollars; De Minimis Distributions | 29 |
|  | G. | No Distribution in Excess of Allowed Amount of Claim or Equity Interest | 29 |
|  | H. | No Postpetition Interest on Claims | 29 |
|  | I. | Setoffs | 29 |
|  | J. | Compliance with Tax Requirements | 29 |
|  | K. | Release of Liens | 30 |
|  | L. | Subordination | 30 |
|  | 1. | Preservation of Subordination Rights by the Debtor's Estate | 30 |
|  | 2. | Waiver by Holders of all Subordination Rights | 30 |
|  | M. | Professional Fee Claims Escrow | 30 |
|  | N. | Administrative Claims Reserve | 31 |
|  | O. | Disputed Claims Reserve | 31 |
|  | P. | Operating Reserve | 31 |
| ARTICLE VII. | | PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND EQUITY INTERESTS | 32 |

LA 52166477

|  | A. | Prosecution of Objections to Claims and Equity Interests on and after the Effective Date | 32 |
|  | B. | Estimation of Claims | 32 |
|  | C. | No Distributions Pending Allowance | 32 |
|  | D. | Preservation of Rights to Settle | 33 |
|  | E. | Disallowed Claims | 33 |
| ARTICLE VIII. |  | CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN | 33 |
|  | A. | Condition Precedent to Confirmation | 33 |
|  | B. | Conditions Precedent to the Effective Date | 33 |
|  | C. | Waiver of Conditions | 34 |
|  | D. | Satisfaction of Conditions | 34 |
|  | E. | Effect of Nonoccurrence of Conditions | 34 |
| ARTICLE IX. |  | SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS | 35 |
|  | A. | Compromise and Settlement of Claims, Equity Interests and Controversies | 35 |
|  | B. | Non-Discharge of the Debtor; Injunction | 35 |
|  | C. | Preservation of Causes of Action | 36 |
|  | D. | Releases and Related Matters | 37 |
|  | E. | Exculpation | 39 |
| ARTICLE X. |  | RETENTION OF JURISDICTION | 40 |
|  | A. | Retention of Bankruptcy Court Jurisdiction | 40 |
| ARTICLE XI. |  | MODIFICATION AND REVOCATION OF THE PLAN | 42 |
|  | A. | Immediate Binding Effect | 42 |
|  | B. | Modification of the Plan | 42 |
|  | C. | Revocation or Withdrawal of the Plan | 42 |
| ARTICLE XII. |  | MISCELLANEOUS PROVISIONS | 43 |
|  | A. | Governing Law | 43 |
|  | B. | Severability of Plan Provisions | 43 |
|  | C. | Successors and Assigns | 43 |
|  | D. | Reservation of Rights | 44 |
|  | E. | Notice and Service of Documents | 44 |
|  | F. | Conflicts | 45 |
|  | G. | Determination of Tax Liability | 45 |
|  | H. | Post-Effective Date Fees and Expenses | 45 |
|  | I. | Entire Agreement | 45 |
|  | J. | Closing of Debtor's Bankruptcy Case | 45 |
|  | K. | Change of Control Provisions | 46 |
|  | L. | Substantial Consummation | 46 |

LA 52166477

## INTRODUCTION

The Debtor (as defined herein) hereby respectfully proposes this Plan pursuant to section 1121(a) of title 11 of the United States Code. Reference is made to the Disclosure Statement (as defined herein), filed contemporaneously herewith, for a discussion of the Debtor's history, business, assets, and operations, as well as a summary and description of this Plan and certain related matters.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A.    Rules of Interpretation

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed (as defined herein), or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, supplemented or restated; (d) unless otherwise stated, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (e) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "**hereof**", "**herein**", "**hereto**", "**hereunder**" and comparable terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) the words "**include**", "**includes**" and "**including**" shall not be limiting and shall be deemed to be followed by "**without limitation**" whether or not they are, in fact, followed by such words or words of like import; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any capitalized term used in the Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code; (k) in the event of any inconsistency between the terms of the Plan and the terms of the Disclosure Statement, the terms of the Plan shall control; and (l) in the event of any inconsistency between the terms of the Plan and the terms of the Confirmation Order, the terms of the Confirmation Order shall control.

### B.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## C.    Defined Terms

When used in capitalized form in the Plan, the following terms shall have the respective meanings assigned to such terms below:

"**503(b)(9) Claim Filing Deadline**" has the meaning given to such term in the *Final Order, Pursuant to Sections 105(a), 363(b), 503(b), 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Claims (A) Arising Under the Perishable Agricultural Commodities Act and the Packers and Stockyards Act of 1921, (B) of Lien Vendors, and (C) of Critical Vendors and Service Providers, (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto, (III) Establishing Exclusive Procedures for the Assertion, Resolution, Allowance, and Satisfaction of Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, and (IV) Granting Related Relief* [D.I. 387].

"**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) and entitled to priority in payment under Bankruptcy Code sections 365(d)(3), 507(a)(2), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business; (c) any Professional Fee Claims of the Debtors and the Committee; (d) all fees and charges assessed against the Debtor's Estate under Chapter 123 of title 28 of the United States Code, sections 1911-30; (e) obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court, including, without limitation, the SLB Administrative Claims; and (f) Claims arising under section 503(b)(9) of the Bankruptcy Code.

"**Administrative Claims Bar Date**" means the deadline for asserting an Administrative Claim (other than Claims arising under section 503(b)(9) of the Bankruptcy Code, Professional Fee Claims, or Claims for U.S. Trustee Fees), which shall be (i) in the case of Administrative Claims that arose, accrued or otherwise became due and payable during the period from the Petition Date through and including August 31, 2018 (the "**Initial Administrative Claims Period**"), October 3, 2018, as set forth in the order entered by the Bankruptcy Court on August 24, 2018 [D.I. 3804] (the "**Initial Administrative Claims Bar Date Order**"), or (ii) in the case of Administrative Claims that may have arisen, accrued or otherwise become due and payable after the Initial Administrative Claims Period, thirty (30) days after the Effective Date (the "**Supplemental Administrative Claims Period**").

"**Administrative Claims Reserve**" has the meaning given to such term in Section VI.N. of the Plan.

"**Albertsons Settlement**" means that certain Settlement Agreement, by and among (a) the Debtors and certain of their non-debtor affiliates, (b) the Committee, (c) Albertson's LLC and Albertsons Companies, LLC, (d) Cerberus Capital Management, L.P. and its affiliates, and (e) Comvest Group Holdings LLC and certain of its affiliates, as modified by the Albertsons Settlement Order.

-2-

"**Albertsons Settlement Claim**" means a General Unsecured Claim against the Debtor arising under the Albertsons Settlement, which Claim was deemed Allowed in the amount of $8.25 million pursuant to the Albertsons Settlement Order.

"**Albertsons Settlement Order**" means the *Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving Settlement Agreement by and Among the Debtors, the Haggen Non-Debtors, the Official Committee of Unsecured Creditors, Albertson's, Cerberus and Comvest* [D.I. 1449].

"**Allowed...Claim**" means a Claim, or any portion thereof, that is neither a Disputed Claim nor a Disallowed Claim.

"**Applicable Bar Date**" means the Administrative Claims Bar Date, 503(b)(9) Claim Filing Deadline, and/or the Bar Date, as the context requires.

"**Available Cash**" means all Cash maintained by the Debtor on the Effective Date and any proceeds received on or after the Effective Date, including, without limitation, any proceeds from any non-Cash Debtor Assets.

"**Bankruptcy Cases**" means the Debtors' bankruptcy cases under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court and administered under Case No. 15-11874.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Bankruptcy Cases, as may be amended from time to time.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended from time to time, as applicable to the Bankruptcy Cases, promulgated under 28 U.S.C. § 2075 and the Local Rules of the Bankruptcy Court.

"**Bar Date**" has the meaning given to such term in the *Order, Pursuant to Sections 501 and 502 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1, (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 617].

"**Benefit Fund Settlement Agreement**" has the meaning given to such term in Section IV.N. of the Plan.

"**Books and Records**" means any and all of the Debtor's books and records, including computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in the possession of third parties, wherever located.

"**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

-3-

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" mean all of the Debtor's actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Debtor's Bankruptcy Case, through and including the Effective Date.

"**Claim**" means a "claim" against the Debtor, as defined in Bankruptcy Code section 101(5), whether or not asserted.

"**Class**" means a category of Claims or Equity Interests described in Article III of the Plan.

"**Class A Equity Interest**" means any Equity Interest in the form of a "Class A Unit" issued pursuant to the Debtor LLC Agreement.

"**Committee**" means the official committee of unsecured creditors appointed by the United States Trustee in the Bankruptcy Cases pursuant to section 1102 of the Bankruptcy Code.

"**Committee Dissolution Date**" has the meaning given to such term in Section IV.J. of the Plan.

"**Committee Litigation**" means (a) the adversary proceeding styled *Official Committee of Unsecured Creditors of HH Liquidation, LLC, et al. v. Comvest Group Holdings, LLC, et al.*, Adv. Pro. 16-51204, Filed by the Committee on September 7, 2016 [D.I. 2212]; (b) the appeal related thereto, Case No. 18-00204-RGA, filed by the Committee in the United States District Court for the District of Delaware on February 5, 2018; and (c) any subsequent appeal relating to the claims asserted in the foregoing clause (b).

"**Comvest Entities**" means, collectively, Comvest Group Holdings, LP, Comvest Advisors, LLC, Comvest Investment Partners III, LP, Comvest Investment Partners IV, LP, Comvest Investment Partners IV-A, LP, Comvest Haggen Holdings III, LLC, and Comvest Haggen Holdings IV, LLC.

"**Confirmation**" means the entry of the Confirmation Order, subject to all conditions specified in Section VIII.A. of the Plan having been satisfied.

"**Confirmation Date**" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128(a) to consider Confirmation of the Plan in accordance with

-4-

Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**D&O Policies**" means all insurance policies for directors' and officers' liability maintained by the Debtor prior to the Effective Date, including any related "tail" policies, in each case with any amendments, supplements or modifications.

"**Debtor**" means HH Liquidation, LLC (f/k/a Haggen Holdings, LLC), as a debtor and debtor in possession in the Bankruptcy Cases.

"**Debtor Assets**" means any and all assets and property of the Debtor's Estate, including, but not limited to, (a) the Debtor's rights with respect to its insurance policies, including the D&O Policies, and any right to assert claims with respect to such insurance policies; (b) the Debtor's rights with respect to any executory contracts or unexpired leases; (c) the Books and Records; (d) all Cash maintained by the Debtor on the Effective Date; (e) the Causes of Action; and (f) the Propco Equity Interests.

"**Debtor LLC Agreement**" means that certain *Limited Liability Company Operating Agreement of Haggen Holdings, LLC*, dated as of March 11, 2011, among the Debtor and its members (as amended, amended and restated supplemented, or otherwise modified from time to time).

"**Debtors**" means, collectively, the Debtor and the Opco Debtors.

"**Disallowed Claim**" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order (including the Confirmation Order); (b) has been withdrawn, either by the Holder thereof or by agreement of such Holder and the Debtor; (c) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely Filed on or before the Applicable Bar Date or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (d) has not been Scheduled and as to which no Proof of Claim has been timely Filed on or before the Applicable Bar Date or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (e) has been disallowed in accordance with section 502(d) of the Bankruptcy Code; or (f) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim.

"**Disclosure Statement**" means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

"**Disclosure Statement Order**" means the Final Order approving, among other things, the adequacy of the Disclosure Statement pursuant to Bankruptcy Code section 1125.

-5-

"**Disputed Claim**" means (a) if no Proof of Claim has been Filed by the Applicable Bar Date or has otherwise been deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law, a Claim, or any portion thereof, that (i) is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Debtor or the Plan Debtor or, prior to the Confirmation Date, any other party in interest, has Filed an objection by the applicable deadline to object to such Claim, and such objection has not been withdrawn or denied by a Final Order; or (ii) is listed on the Schedules as disputed, contingent or unliquidated; or (b) if a Proof of Claim has been Filed by the Applicable Bar Date or has otherwise been deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law, a Claim, or any portion thereof, (i) for which no corresponding Claim is listed on the Schedules; (ii) for which a corresponding Claim is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iii) for which a corresponding Claim is listed on the Schedules as disputed, contingent or unliquidated; (iv) for which an objection has been Filed by the Debtor or the Plan Debtor or, prior to the Confirmation Date, any other party in interest, by the applicable deadline to object to such Claim, and such objection has not been withdrawn or denied by a Final Order; or (v) which asserts it is contingent or unliquidated.

"**Disputed Claims Reserve**" has the meaning given to such term in Section VI.O. of the Plan.

"**Distribution**" means the distributions to be made in accordance with the Plan of, as the case may be, Cash or any other consideration or residual value distributed to Holders of Allowed Claims and Allowed Equity Interests under the terms and provisions of the Plan.

"**Distribution Record Date**" means the record date for the purpose of determining Holders of Allowed Claims and Allowed Equity Interests entitled to receive Distributions under the Plan on account of Allowed Claims, which date shall be three (3) Business Days following the Confirmation Date or such other date as designated in the Confirmation Order.

"**Effective Date**" means that date selected by the Debtor following the Confirmation Date on which all conditions to consummation of the Plan shall have been satisfied or waived as provided in Section VIII.B. and Section VIII.C. hereof.

"**Entity**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"**Equity Interest**" means, with respect to the Debtor, as of the Petition Date, any capital stock or other ownership interest in the Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in the Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or other ownership interest.

"**Estates**" means the bankruptcy estates of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

"**Exculpated Parties**" mean, collectively, each of the following parties in their respective capacities as such: (a) the Debtors; (b) the Debtors' current and former directors, officers, members and managers, including the Independent Manager; (c) each financial advisor, restructuring advisor, attorney or other professional employed by or serving the Debtors; (d) the Committee; (e) each member of the Committee, but only in their capacity as a member of the Committee, and each such member's respective professionals and representatives; (f) the Committee's Professionals and representatives; (g) the Plan Administrator; and (h) the Plan Administrator's professionals and representatives.

"**File**", "**Filed**" or "**Filing**" means file, filed or filing on the Bankruptcy Court's docket for the Bankruptcy Cases.

"**Final Order**" means an order of the Bankruptcy Court (x) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (y) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (z) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (i) such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order is appealed, (ii) certiorari has been denied as to such order, or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

"**General Unsecured Claim**" means any Claim against the Debtor that is not an Administrative Claim, a Professional Fee Claim, a Secured Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an SLB Unsecured Claim, the Albertsons Settlement Claim or an Intercompany Claim.

"**GIG/Wave SLB Claim**" means the unsecured Claim held by GIG TCG Wave Master Property Owner LLC, which is Allowed in the amount of $4,431,568 pursuant to the *Order Approving Settlement Agreement Between (I) Haggen Holdings, LLC, Haggen Opco South, LLC, and Haggen Opco North, LLC and (II) GIG TCG Wave Master Property Owner LLC* [D.I. 964].

"**Global Settlement Agreement**" has the meaning given to such term in Section IV.M. of the Plan.

"**Holder**" means any Person or Entity holding a Claim or Equity Interest.

"**Impaired**" means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Independent Manager**" means Marc Beilinson, as the independent manager for the Debtor.

"**Intercompany Claim**" means any Claim, cause of action, remedy or Administrative Claim asserted by an Opco Debtor against the Debtor, or vice versa. For the avoidance of doubt, the term "Intercompany Claim" shall not include the Albertsons Settlement Claim.

-7-

"**Internal Revenue Code**" means title 26 of the United States Code, as amended from time to time.

"**Official Bankruptcy Forms**" means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised or supplemented from time to time.

"**Opco Debtors**" means, collectively, HH Operations, LLC (f/k/a Haggen Operations Holdings, LLC), HH Opco South, LLC (f/k/a Haggen Opco South, LLC), HH Opco North, LLC (f/k/a Haggen Opco North, LLC), HH Acquisition, LLC (f/k/a Haggen Acquisition, LLC), and HH Legacy, Inc. (f/k/a Haggen, Inc.).

"**Operating Reserve**" has the meaning given to such term in Section VI.P. of the Plan.

"**Other Equity Interest**" means any Equity Interest other than a Class A Equity Interest, including, without limitation, any Equity Interest in the form of a "Class B Unit" or "Class C Unit", in each case, issued pursuant to the Debtor LLC Agreement.

"**Pension Fund Settlement Agreement**" has the meaning given to such term in Section IV.N. of the Plan.

"**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 8, 2015.

"**Plan**" means this chapter 11 plan, including all exhibits and schedules annexed hereto or otherwise incorporated herein, either in its present form or as it may be altered, amended, modified, revised or supplemented from time to time in accordance with the terms hereof.

"**Plan Administration Agreement**" shall mean the agreement, which shall be reasonably acceptable to the Holders of Class A Equity Interests, governing, among other things, the retention and duties of the Plan Administrator, as described in Section IV.B. of the Plan.

"**Plan Administrator**" means the Person or Entity designated pursuant to the Plan Administration Agreement to (a) oversee the wind-down of the Plan Debtor's affairs following the Effective Date and administer the Plan and act in accordance with the terms and authority granted in the Plan and the Plan Administration Agreement and any Bankruptcy Court approved successor, and (b) to take such other actions in accordance with the Structured Dismissal Order.

"**Plan Administrator Expenses**" means all actual and necessary costs and expenses incurred after the Effective Date in connection with winding-down the affairs of the Debtor and Plan Debtor and the administration of the Plan, including, but not limited to, the Plan Debtor's and the Plan Administrator's costs, expenses and legal fees incurred related to performing the duties set forth in Section IV.B. of the Plan and in the Plan Administration Agreement.

"**Plan Debtor**" means the Debtor, on and after the Effective Date.

-8-

"**Plan Supplement**" means any supplement or supplements to the Plan containing certain documents, or drafts thereof, relevant to the implementation of the Plan (as such may be amended from time to time through and including the Confirmation Date), including (i) the Plan Administration Agreement, which shall include the identity of the Plan Administrator to be appointed as of the Effective Date; (ii) the Global Settlement Agreement; (iii) the Pension Fund Settlement Agreement; and (iv) the Benefit Fund Settlement Agreement, which supplement or supplements shall be Filed no later than seven (7) days prior to the deadline for Holders to vote to accept or reject the Plan.

"**Priority Non-Tax Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"**Priority Tax Claim**" means a Claim of a "governmental unit" (as such term is defined in section 101(27) of the Bankruptcy Code) of the kind specified in, and entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional**" means a Person or Entity (a) retained by the Debtors or the Committee pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered in connection with the Bankruptcy Cases prior to the Effective Date pursuant to sections 327, 328, 330 or 331 of the Bankruptcy Code, for whom or for which compensation and reimbursement of expenses has been allowed by the Bankruptcy Court or is sought pursuant to section 503(b) of the Bankruptcy Code or (b) for whom or for which compensation and reimbursement has been allowed by the Bankruptcy Court or is sought pursuant to section 503(b)(4) of the Bankruptcy Code in the Bankruptcy Cases, in either case, other than a Person or Entity retained under the *Order, Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code, Authorizing the Debtors to Retain and Compensate Certain Professionals Utilized in the Ordinary Course of Business, Nunc Pro Tunc to the Petition Date* [D.I. 405].

"**Professional Fee Claim**" means any Claim for Professional Fees.

"**Professional Fee Claims Escrow**" has the meaning given to such term in Section VI.M. of the Plan.

"**Professional Fees**" means the fees for professional services rendered and expenses incurred in connection with such services by Professionals for the Debtors and the Committee in the Bankruptcy Cases on and after the Petition Date and prior to and including the Effective Date.

"**Proof of Claim**" means a proof of Claim Filed against the Debtor in the Bankruptcy Cases. For the avoidance of doubt, a request for payment of an Administrative Claim Filed pursuant to the Initial Administrative Claims Bar Date Order shall be deemed a "Proof of Claim" hereunder.

"**Propco Assets**" means any and all right, title, and interest of Propco in and to assets and property of whatever type or nature, including the Propco Secured Claim.

-9-

"**Propco Entities**" means, collectively, the Debtor's non-debtor affiliates HH Property Holdings, LLC (f/k/a Haggen Property Holdings, LLC), HH Property Holdings II, LLC (f/k/a Haggen Property Holdings II, LLC), HH Property Holdings III, LLC (f/k/a Haggen Property Holdings III, LLC), HH Property South, LLC (f/k/a Haggen Property South, LLC), and HH Property North, LLC (f/k/a Haggen Property North, LLC.

"**Propco Equity Interest**" means, as of the Petition Date, any capital stock or other ownership interest in HH Property Holdings, LLC (f/k/a Haggen Property Holdings, LLC) of the Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in HH Property Holdings, LLC of the Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or other ownership interest.

"**Propco Secured Claim**" means a claim against any of the Opco Debtors arising under the credit facility provided under that certain *Term Loan and Security Agreement*, dated as of August 21, 2015, by and among Haggen, Inc., Haggen Opco South, LLC and Haggen Opco North, as borrowers, Haggen Property North, LLC and Haggen Property South, LLC, as lenders, and Haggen Property North, LLC, as agent.

"**Release Opt-Out**" means the election by the Holder of a Class 4 SLB Unsecured Claim or Holder of a Class 7 Class A Equity Interest, through a timely and properly submitted ballot to vote to accept or reject this Plan, to opt-out of the release provided in Section IX.D.2 of this Plan.

"**Released Parties**" mean, collectively, each of the following parties in their respective capacities as such: (a) the Debtors, their Estates and each of the Debtors' affiliates; (b) each financial advisor, restructuring advisor, attorney or other professional employed by or serving the Debtors, their Estates or any affiliate of the Debtors; (c) each of the current or former officers, directors, members and managers of the Debtors or any of their affiliates, including the Independent Manager; (d) the Committee; (e) each member of the Committee, but only in their capacity as a member of the Committee; (f) each of the Committee's Professionals and representatives; (g) the Comvest Entities; (h) each of the Comvest Entities' financial advisors, attorneys and representatives; (i) each of the Comvest Entities' current and former officers, directors, equity holders, limited partners, and general partners; (j) the Propco Entities; (k) each of the Propco Entities' financial advisors, attorneys and representatives; and (l) each of the Propco Entities' current or former officers and directors.

"**Reserves**" means, collectively, (i) the Administrative Claims Reserve, (ii) the Disputed Claims Reserve, and (iii) Operating Reserve.

"**Residual Cash**" means (i) on the Effective Date, any Available Cash remaining in the Debtor's Estate after the funding of the Reserves and the Professional Fee Claims Escrow, and all Distributions to Holders of Allowed Claims have been made in accordance with the terms of the Plan, which remaining Cash is to be distributed to the Holders of Allowed Class A Equity Interests in Class 7 in accordance with Section III.B.7. of the Plan; or (ii) as of the date of the dissolution of the Plan Debtor, any Available Cash remaining after the payment of all Allowed Claims, Professional Fee Claims and Plan Administrator Expenses, which Residual Cash is to be

-10-

distributed to the Holders of Allowed Class A Equity Interests in Class 7 in accordance with Section III.B.7. of the Plan.

"**Scheduled**" means an entry that appears on the Schedules.

"**Schedules**" mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009.

"**Secured**" means when referring to a Claim: (a) secured by a lien on property in which the Debtor's Estate has an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

"**Secured Claim**" means a Claim against the Debtor to the extent it is Secured.

"**SLB Administrative Claims**" means the Administrative Claims held by Spirit SPE HG 2015-1, LLC, which are Allowed in the aggregate amount of $2,593,841.60 pursuant to the *Order Approving Settlement Agreement Between (I) Haggen Operations Holdings, LLC and Haggen Holdings, LLC, (II) Spirit SPE HG 2015-1 LLC, and (III) Albertson's LLC* [D.I. 1729]; provided, however, that as agreed between the Holder of the SLB Administrative Claims and the Debtor, such SLB Administrative Claims shall be deemed to be Allowed in the aggregate amount of $2,334,457.44 for purposes of this Plan and the Distributions hereunder.

"**SLB Unsecured Claims**" means, collectively, (a) the GIG/Wave SLB Claim and (b) the Spirit SLB Claims.

"**Spirit SLB Claims**" means the unsecured Claims held by Spirit SPE HG 2015-1, LLC, which are Allowed in the aggregate amount of $19,265,943 pursuant to: (a) the *Order Approving Settlement Agreement Between (I) Haggen Operations Holdings, LLC and Haggen Holdings, LLC and (II) Spirit SPE HG 2015-1 LLC* [D.I. 862] and (b) the *Order Approving Settlement Agreement Between (I) Haggen Operations Holdings, LLC and Haggen Holdings, LLC, (II) Spirit SPE HG 2015-1 LLC, and (III) Albertson's LLC* [D.I. 1729].

"**Structured Dismissal Order**" means the Final Order approving, among other things, the dismissal of the Opco Debtors' Bankruptcy Cases.

"**Tax**" or "**Taxes**" means all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise or other similar taxes, estimated import duties, fees, stamp taxes and duties, value added taxes, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax or additional amounts imposed on the Debtor or its Estate by any taxing authority with respect thereto.

-11-

"**UFCW Benefit Fund**" has the meaning given to such term in Section IV.N. of the Plan.

"**UFCW Pension Fund**" has the meaning given to such term in Section IV.N. of the Plan.

"**U.S. Trustee Fees**" means the fees payable pursuant to 28 U.S.C. § 1930.

"**Unimpaired**" means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"**United States Trustee**" means the Office of the United States Trustee for the District of Delaware.

## ARTICLE II.

## PAYMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

### A.    Administrative Claims

On, or as soon as reasonably practicable after (i) the Effective Date, if such Administrative Claim is an Allowed Administrative Claim as of the Effective Date or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim (other than a Professional Fee Claim or a Claim for U.S. Trustee Fees) shall receive, in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, (a) Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim or (b) such other less favorable treatment as may be agreed upon by such Holder and the Debtor or the Plan Debtor, as applicable; provided, however, that the Plan Debtor shall be authorized to pay Allowed Administrative Claims that arise in the ordinary course of the Debtor's business, in full, in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions without further action by the Holders of such Administrative Claims or further approval of the Bankruptcy Court.

**Any Holder of an Administrative Claim that does not File a Proof of Claim for such Administrative Claim and serve the Proof of Claim on counsel to the Debtor or the Plan Debtor, as applicable, by the Administrative Claims Bar Date, shall be forever barred from asserting such Administrative Claim against the Debtor, the Debtor's Estate, the Plan Debtor or their respective property, and such Administrative Claim shall be deemed waived and released as of the Effective Date.** Objections to Administrative Claims must be Filed and served on the requesting party by no later than forty-five (45) days after the Administrative Claims Bar Date; provided that such deadline may be extended by the Bankruptcy Court upon a motion Filed by the Plan Debtor, which shall be served only on the Rule 2002 service list. Unless the Debtor or the Plan Debtor, as applicable, or another party in interest objects to a Proof of Claim for such Administrative Claim within such time period, such Administrative Claim shall be deemed Allowed in the amount asserted. In the event that the Debtor or the Plan Debtor, as applicable, or another party in interest objects to a Proof of Claim

-12-

for such Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

### B.    Professional Fee Claims

**Notwithstanding any other provision of this Plan concerning Administrative Claims, any Professional seeking payment of its Professional Fee Claims (i) shall, no later than thirty (30) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date and (ii) shall receive, as soon as reasonably practicable after such Professional Fee Claim is Allowed, in full settlement, satisfaction and release of, and in exchange for, such Allowed Professional Fee Claim, Cash in an amount equal to the unpaid amount of such Allowed Professional Fee Claim in accordance with the order relating to or allowing any such Professional Fee Claim.** Objections, if any, to such final fee applications must be Filed and served on the requesting party and the Plan Debtor no later than twenty (20) days from the date on which each such final fee application is served and Filed. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

### C.    Payment of Statutory Fees

The Debtor or the Plan Debtor, as applicable, shall pay all outstanding U.S. Trustee Fees of the Debtor on an ongoing basis on the later of: (i) the Effective Date and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Debtor's Bankruptcy Case, such Bankruptcy Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

### D.    Priority Tax Claims

On, or as soon as reasonably practicable after (i) the Effective Date, if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim against the Debtor shall receive (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in any lower amount agreed to by such Holder and the Debtor or the Plan Debtor, as applicable, <u>provided</u> that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date without any further notice to or action, order, or approval of the Bankruptcy Court or (c) as determined by the Debtor or Plan Debtor, as applicable, Cash in the aggregate amount of such Allowed Priority Tax Claim, payable in installment payments over a period not more than five (5) years from the Petition Date with payment of interest at a fixed annual rate to be determined by the Bankruptcy Court, all in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

LA 52166477

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.** **Summary of Classification and Treatment of Classified Claims and Equity Interests**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests that are required to be designated in classes pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims and Priority Tax Claims have not been classified, and their treatment is set forth in Article II hereof. Classification of Claims and Equity Interests in this Plan is for all purposes, including voting, Confirmation and Distribution pursuant to the Plan.

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class only to the extent that any portion of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date. Notwithstanding any Distribution provided for in the Plan, no Distribution on account of any Claim or Equity Interest is required or permitted unless and until such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, as the case may be, which might not occur, if at all, until after the Effective Date.

The following table (a) designates the Classes of Claims against, and Equity Interests in, the Debtor, (b) specifies the Classes of Claims and Equity Interests that are Impaired by the Plan and therefore are deemed to reject the Plan or are entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) specifies the Classes of Claims and Equity Interests that are Unimpaired by the Plan and therefore are deemed to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Albertsons Settlement Claim | Unimpaired | No (deemed to accept) |
| 4 | SLB Unsecured Claims | Impaired | Yes (entitled to vote) |
| 5 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 6 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| 7 | Class A Equity Interests | Impaired | Yes (entitled to vote) |
| 8 | Other Equity Interests | Impaired | No (deemed to reject) |

-14-

**B.      Classification and Treatment of Claims and Equity Interests**

1.       Class 1 – Priority Non-Tax Claims.

(a)      *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on or as soon as reasonably practicable after (x) the Effective Date, if such Priority Non-Tax Claim is an Allowed Priority Non-Tax Claim as of the Effective Date or (y) the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, one of the following treatments, as determined by the Debtor or the Plan Debtor, as the case may be: (i) full payment in Cash of its Allowed Priority Non-Tax Claim or (ii) treatment of its Allowed Priority Non-Tax Claim in a manner that leaves such Claim Unimpaired.

(c)      *Voting*:  Class 1 is Unimpaired by the Plan.  Holders of Priority Non-Tax Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan.

2.       Class 2 – Secured Claims.

(a)      *Classification*:  Class 2 consists of Secured Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, on or as soon as reasonably practicable after (x) the Effective Date, if such Secured Claim is an Allowed Secured Claim as of the Effective Date or (y) the date on which such Secured Claim becomes an Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction of such Claim, as determined by the Debtor or the Plan Debtor, as the case may be:

(i)      the collateral securing such Allowed Secured Claim;

(ii)     Cash in an amount equal to the value of the collateral securing such Allowed Secured Claim; or

(iii)    such other treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be rendered Unimpaired.

(c)      *Voting*:  Class 2 is Unimpaired by the Plan.  Holders of Secured Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan.

3.       Class 3 – Albertsons Settlement Claim.

(a)      *Classification*:  Class 3 consists of the Albertsons Settlement Claim.

-15-

(b)    *Treatment*: On or as soon as reasonably practicable after the Effective Date, the Holders of the Albertsons Settlement Claim shall receive, in full and final satisfaction of such Claim, full payment in Cash of the Albertsons Settlement Claim.

(c)    *Voting*: Class 3 is Unimpaired by the Plan. Holders of the Albertsons Settlement Claim in Class 3 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan.

4.    Class 4 – SLB Unsecured Claims.

(a)    *Classification*: Class 4 consists of SLB Unsecured Claims.

(b)    *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an SLB Unsecured Claim shall receive, in full and final satisfaction of such SLB Unsecured Claim, a Cash payment in an amount equal to 90% of the amount of the SLB Unsecured Claim.

(c)    *Voting*: Class 4 is Impaired by the Plan. Holders of SLB Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.    Class 5 – General Unsecured Claims.

(a)    *Classification*: Class 5 consists of General Unsecured Claims.

(b)    *Treatment*: On or as soon as reasonably practicable after (x) the Effective Date, if such General Unsecured Claim is an Allowed General Unsecured Claim as of the Effective Date or (y) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, a Cash payment in an amount equal to 100% of the amount of the Allowed General Unsecured Claim.

(c)    *Voting*: Class 5 is Unimpaired by the Plan. Holders of General Unsecured Claims in Class 5 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Claims.

(a)    *Classification*: Class 6 consists of Intercompany Claims.

(b)    *Treatment*: As of the Effective Date, the Intercompany Claims shall be set off in accordance with the Subordinated Promissory Note, dated as of February 12, 2015, and such set off shall be in full and final satisfaction of such Intercompany Claims.

(c)    *Voting*: Class 6 is Unimpaired by the Plan. Holders of Intercompany Claims in Class 6 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan.

-16-

7. <u>Class 7 – Class A Equity Interests.</u>

    (a)    *Classification*:  Class 7 consists of Class A Equity Interests.

    (b)    *Treatment*:  The Holders of Class A Equity Interests shall receive, in full and final satisfaction of such Class A Equity Interests, (i) on or as soon as reasonably practicable after the Effective Date, their pro rata share of the Residual Cash as of such date of Distribution and (ii) on or as soon as reasonably practicable after the date of dissolution of the Plan Debtor, their pro rata share of (x) any Residual Cash as of such date and/or (y) the Distribution in kind of any non-Cash Debtor Assets or Propco Assets that the Plan Administrator, in consultation with the Holders of the Class A Equity Interests, reasonably determines cannot be liquidated in a timely and efficient manner to effectuate the transactions contemplated herein.

    (c)    *Voting*:  Class 7 is Impaired by the Plan.  The Holders of Class A Equity Interests in Class 7 are entitled to vote to accept or reject the Plan.

8. <u>Class 8 – Other Equity Interests.</u>

    (a)    *Classification*:  Class 8 consists of Other Equity Interests.

    (b)    *Treatment*:  Each Other Equity Interest shall be canceled as of the Effective Date.  The Holders of Other Equity Interests shall receive no Distribution under the Plan.

    (c)    *Voting*:  Class 8 is Impaired by the Plan.  The Holders of Other Equity Interests in Class 8 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan.

**C.**    **Non-Consensual Confirmation**

In the event that any Impaired Class of Claims or Equity Interests entitled to vote does not accept the Plan by the requisite majorities required by section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to (i) modify the Plan in accordance with Section XI.B. hereof and/or (ii) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code notwithstanding such lack of acceptance.

**D.**    **Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by at least one Allowed Claim or Allowed Equity Interest, as applicable, or at least one Claim or Equity Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Plan Debtor; Corporate Existence

From and after the Effective Date, the Plan Debtor shall continue in existence for purposes consistent with the terms of this Plan, including, among other things, (a) winding down the businesses and affairs of the Debtor and its subsidiaries, including the Propco Entities, as expeditiously and efficaciously as reasonably possible; (b) resolving Claims and Equity Interests; (c) making Distributions on Allowed Claims and Allowed Equity Interests in accordance with the Plan; (d) administering and liquidating the Debtor Assets and any assets held by any subsidiary of the Plan Debtor (including, the Propco Assets); (e) filing appropriate Tax returns for the Debtor and the Plan Debtor, as necessary; (f) dissolving the Plan Debtor in accordance with the Plan; and (g) administering the Plan in an efficacious manner, with no objective to continue or engage in the conduct of a trade or business.  In addition, from and after the Effective Date through and including the closing of the Debtor's Bankruptcy Case, the Plan Debtor shall continue in existence for purposes of, among other things, (a) Filing the final monthly report (for the month in which the Confirmation Date occurs) and any subsequent quarterly reports required under the U.S. Trustee guidelines, and paying all U.S. Trustee Fees from the Effective Date through the closing of the Debtor's Bankruptcy Case; (b) maintaining the D&O Policies; (c) maintaining, transferring, or terminating any other insurance policies of the Debtor, as deemed necessary by the Plan Debtor in accordance with the terms of the Plan; and (d) maintaining the Books and Records.  Notwithstanding any prohibition on assignment under non-bankruptcy law, on the Effective Date, all of the Debtor's rights, title, and interests in the Debtor Assets shall vest and be deemed to vest in the Plan Debtor in accordance with section 1141 or the Bankruptcy Code.  As of the Effective Date, all Debtor Assets vested in the Plan Debtor shall be free and clear of all claims, interests, liens, charges or other encumbrances, except as otherwise specifically provided in the Plan or the Confirmation Order.

### B.    Plan Administrator

1.    <u>Transfer of Power.</u>

(a)    *Members, Managers and Officers.*  On the Effective Date, the authority, power and incumbency of the Persons then acting as members, managers and officers of the Debtor shall be terminated and such members, managers and officers shall be deemed to have resigned.

(b)    *Succession by Plan Administrator.*  On the Effective Date, the Plan Administrator shall be deemed appointed and shall succeed to such powers as would have been applicable to the Debtor's members, managers and officers. All Debtor Assets not distributed to Holders of Allowed Claims and Allowed Equity Interests on the Effective Date, including the Reserves, shall be managed by the Plan Administrator, and shall be held in the name of the Plan Debtor free and clear of all Claims and Equity Interests.  To the extent necessary, the Plan Administrator and the Plan Debtor shall be deemed to be the judicial substitute, in the Debtor's stead, as the party-in-interest in the Debtor's Bankruptcy Case under the Plan or in any judicial

-18-

proceeding or appeal to which the Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

(c)    *Resignation of Plan Administrator*.  The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a successor Plan Administrator.  Upon appointment, the successor Plan Administrator, without the need for any further action by or notice to the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor Plan Administrator, and all responsibilities of the predecessor Plan Administrator relating to the Plan Debtor shall be terminated.

2.    Powers of Plan Administrator.

The duties and powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Debtor Assets and wind down the business and affairs of the Debtor and the Plan Debtor, including: (a) liquidating, receiving, holding, and investing, supervising and protecting the Debtor Assets; (b) taking all steps to execute all instruments and documents necessary to effect the Distributions to be made under the Plan; (c) resolving Claims and Equity Interests, including, without limitation, Filing objections to Claims and Equity Interests and settling, compromising, withdrawing, or litigating to judgment objections to such Claims and Equity Interests; (d) making Distributions as contemplated under the Plan; (e) establishing and maintaining bank accounts in the name of the Plan Debtor; (f) employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (g) paying all reasonable fees, expenses, debts, charges and liabilities for the Debtor or the Plan Debtor; (h) maintaining, transferring, or terminating the Debtor's insurance policies, as deemed necessary by the Plan Debtor, in accordance with the terms of the Plan; (i) administering and paying Taxes for the Debtor or the Plan Debtor, including filing Tax returns; (j) representing the interests of the Plan Debtor or the Debtor's Estate before any taxing authority in all matters, including any action, suit, proceeding or audit; (k) prosecuting, pursuing, administering, settling, litigating, enforcing and defending any claims or Causes of Action on behalf of or against the Debtor or the Plan Debtor; and (l) exercising such other powers as may be vested in it pursuant to an order of the Bankruptcy Court or the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.  The Plan Administrator shall act for the Plan Debtor in a fiduciary capacity, as would be applicable to a member, manager or officer, subject to the provisions of the Plan and the Plan Administration Agreement.

The terms of the Plan Administrator's employment, including the Plan Administrator's duties, powers and compensation, to the extent not set forth in the Plan, the Confirmation Order or the Structured Dismissal Order, shall be set forth in the Plan Administration Agreement, and unless otherwise provided in the Plan or the Plan Administration Agreement, shall be in all cases without the need for further action or approval of the Bankruptcy Court.

The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Plan Administrator is so otherwise ordered, all Plan

-19-

Administrator Expenses related to procuring any such bond or surety shall be paid for with the Debtor Assets or the Reserves, as applicable.

      3.     <u>Compensation of the Plan Administrator.</u>

The Plan Administrator shall be paid at the rate or in an amount to be disclosed in the Plan Administration Agreement, and shall be reimbursed for all reasonable actual and necessary expenses incurred in connection with the performance of its duties, without the need for further action or Bankruptcy Court approval. The Plan Administrator Expenses, including the fees and expenses of its retained professionals, shall be paid out of the Debtor Assets transferred to the Plan Debtor pursuant to Section IV.B.2 of this Plan, including the Operating Reserve. The Plan Administrator shall maintain an appropriate amount in the Reserves to fund administrative expenses and operating expenses during the implementation of the Plan.

      4.     <u>Limitation of Liabilities.</u>

The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is determined by a court of competent jurisdiction, by a final, non-appealable order, that such action or inaction was the result of fraud, gross negligence or willful misconduct.

      5.     <u>Winding Down of the Plan Debtor's Affairs.</u>

Following the Effective Date, the Plan Debtor shall not engage in any business activities or take any actions except those necessary to effectuate the Plan, liquidate and monetize the Debtor Assets and the Propco Assets, and wind down the affairs of the Plan Debtor. On and after the Effective Date, the Plan Administrator may, in the name of the Plan Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Administration Agreement.

**C.    Corporate Action**

Prior to, on and after the Effective Date, the matters under this Plan involving or requiring corporate action of the Debtor or the Plan Debtor, including, but not limited to, actions requiring the vote or other approval of the officers, members, managers or Holders of Equity Interests and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date pursuant to the applicable law of the jurisdiction in which the Debtor is organized without any further action by the Bankruptcy Court or the officers, members or managers of the Plan Debtor. Subject to the protective provisions in this Plan and as set forth in further detail in Section IV.B.1 of this Plan, as of and after the Effective Date, the Plan Administrator shall act for the Plan Debtor and the Estates in a fiduciary capacity as applicable to members, managers and officers. In addition, on the Effective Date, the organizational documents of the Plan Debtor shall be deemed amended, to the extent necessary, to require only one manager and only one member, who shall be the same Person. Such Person shall be the Plan Administrator. The entry of the Confirmation Order shall constitute the approval of the authorization for the Debtor, the

Plan Debtor and the Plan Administrator to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and any documents contemplated to be executed therewith, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order rule or regulation.

### D.    Dissolution

Except as otherwise ordered by the Bankruptcy Court, and without the need for any further order of the Bankruptcy Court or action or formality which might otherwise be required under applicable non-bankruptcy laws, the Plan Administrator (on behalf of the Plan Debtor) is authorized to take, in his or her or its sole and absolute discretion, all actions reasonably necessary to dissolve any or all of the subsidiaries of the Plan Debtor, and neither such subsidiaries nor the Plan Debtor shall be required to pay any Taxes or fees in order to cause such dissolutions.

Following the implementation of the Plan, the administration and Distribution of the Debtor Assets and the winding down of the Plan Debtor, and without the need for any further order of the Bankruptcy Court or action or formality which might otherwise be required under applicable non-bankruptcy laws, the Plan Debtor shall be dissolved, and the Plan Debtor shall not be required to pay any Taxes or fees in order to cause such dissolution. The Plan Administrator shall have no liability for taking any actions reasonably necessary to dissolve the Plan Debtor or any of its subsidiaries in accordance with this Section IV.D.

### E.    Reservation of Rights Regarding Causes of Action

The Debtor and, after the Effective Date, the Plan Administrator (on behalf of the Plan Debtor) reserves the right to pursue any and all Causes of Action not relinquished, released, compromised or settled in this Plan or any Final Order of the Bankruptcy Court. The Debtor hereby reserves the right of the Plan Debtor and the Plan Administrator (on behalf of the Plan Debtor) to pursue, administer, settle, litigate, enforce and liquidate consistent with the terms and conditions of the Plan such Causes of Action. The Plan Debtor and the Plan Administrator (on behalf of the Plan Debtor) shall, pursuant to section 1123 of the Bankruptcy Code and all applicable law, have the requisite standing to prosecute, pursue, administer, settle, litigate, enforce and liquidate any and all Causes of Action.

Except for Causes of Action against a Person or Entity expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, (a) the Debtor expressly reserves all Causes of Action for later adjudication and, therefore, no preclusion doctrine or other rule of law, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a result of the Confirmation Date or Effective Date of the Plan, or the entry of the Confirmation Order, (b) all Causes of Action held by the Debtor's Estate shall survive Confirmation of the Plan and the commencement and prosecution of any Causes of Action shall not be barred or limited by any estoppels (judicial, equitable or otherwise), (c) the rights of the Plan Debtor and the Plan Administrator (on behalf of the Plan

-21-

Debtor) to commence and prosecute Causes of Action shall not be abridged, limited or altered in any manner by reason of Confirmation of the Plan, (d) no defendant party to any Cause of Action shall be permitted or entitled to assert any defense based, in whole or in part, upon Confirmation of the Plan, and Confirmation of the Plan shall not have any *res judicata* or collateral estoppels or preclusive effect upon the commencement and prosecution of Causes of Action, and (e) the Debtor and the Plan Debtor and the Plan Administrator (on behalf of the Plan Debtor) and any successors in interest thereto expressly reserve the right to pursue or adopt any Causes of Action that are alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs and co-defendants in such lawsuits.

### F.    Operations of the Debtor Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to be a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### G.    Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

### H.    Cancellation of Existing Agreements and Equity Interests

On the Effective Date, except to the extent otherwise provided herein, any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtor giving rise to any Claim or Equity Interest shall be canceled and of no further force, whether surrendered for cancellation or otherwise, without any further act or action under any applicable agreement, law, regulation, order or rule, and the Debtor shall have no further obligations thereunder or in any way related thereto, except for any obligations of the Debtor or the Plan Debtor under this Plan.

### I.    Authorization of Plan-Related Documentation; Further Assurances.

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to, or order, of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

In the case of the Debtor, upon Confirmation, and in the case of the Plan Debtor, upon the Effective Date, the Debtor and the Plan Debtor, as applicable, are authorized to execute, deliver,

-22-

file or record any and all contracts, agreements, instruments, releases and other agreements or documents, and take or cause to be taken any and all action, as may be reasonably necessary or appropriate to consummate the transactions and transfers contemplated by this Plan and to otherwise effectuate, implement and further evidence the terms, provisions and intent of this Plan.

**J.      Dissolution of Committee**

As it pertains to the Debtor, the Committee shall continue in existence through and including the later of (a) the Effective Date and (b) the date on which all Distributions to Holders of General Unsecured Claims have been made (the **"Committee Dissolution Date"**) to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court or in this Plan or the Confirmation Order prior to the Committee Dissolution Date. On the Committee Dissolution Date, as it pertains to the Debtor, the Committee shall be deemed dissolved, and its members and its Professionals shall be deemed released of all their duties, responsibilities and obligations in connection with the Debtor's Bankruptcy Case or the Plan and its implementation, and the retention or employment of the Committee's Professionals shall terminate; provided, however, that the Committee shall continue to exist after the Committee Dissolution Date solely to address matters relating to applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code.

**K.      Exemption from Certain Fees and Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar Tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar Tax in the United States, and the appropriate state or local governmental officials or agents shall forego the collection of any such Tax and shall accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Tax.

**L.      Albertsons Settlement Claim**

On the Effective Date, the Albertsons Settlement Claim shall be deemed irrevocably and unconditionally transferred by Albertson's LLC and Albertsons Companies, LLC (including all voting and distribution rights with respect thereto) to the Opco Debtors in accordance with the terms of the Albertsons Settlement and the Albertsons Settlement Order.

**M.      Global Settlement Agreement; Structured Dismissal of the Opco Debtors; Committee Litigation**

In light of the Opco Debtors' administrative insolvency and the status of the Committee Litigation, the Debtors (through the Independent Manager), the Comvest Entities, the Propco Entities, the Debtors' affiliate HH SLB, LLC (f/k/a Haggen SLB, LLC), the Committee and other key stakeholders negotiated in good faith and at arm's-length regarding potential ways for the OpCo Debtors to exit chapter 11 and to provide a distribution to their respective creditors.

-23-

As a result of such negotiations, the parties reached a global settlement (the "**Global Settlement Agreement**") to be implemented on the Effective Date as part of the Plan and the structured dismissal of the Opco Debtors' Bankruptcy Cases, which, among other things, provides for (a) the consensual reduction in amount and allowance of the Propco Secured Claim, (b) sufficient funding to pay all valid and undisputed administrative, priority and secured claims against the Opco Debtors (including certain consensually-reduced claims asserted under section 503(b)(9) of the Bankruptcy Code), (c) sufficient funding to complete the wind down of the Debtors under applicable state law, (d) the dismissal of the Committee Litigation; and (e) consensual, mutual releases.  The Global Settlement Agreement is implemented through (x) with respect to the Opco Debtors, the structured dismissal of the Opco Debtors' Bankruptcy Cases and the payment of all valid and undisputed secured, administrative and priority claims against the Opco Debtors, including the Propco Secured Claim, and (y) with respect to the Debtor, the Confirmation and consummation of this Plan.

     1.    <u>Compromise of the Propco Secured Claim.</u>

The Global Settlement Agreement provides that, on the Effective Date or as soon thereafter as reasonably practicable, the Opco Debtors shall pay the Holder of the Propco Secured Claim an amount equal to the difference between: (a) the aggregate amount of all Cash on hand in the Opco Debtors' Estates as of the Effective Date, *less* (b) the aggregate amount of Cash necessary to satisfy in full all valid and undisputed administrative, priority and secured claims (as such claims may have been modified pursuant to the terms of the Global Settlement Agreement) against the Opco Debtors other than the Propco Secured Claim.  On the Effective Date, the Propco Secured Claim shall irrevocably and unconditionally be transferred by the Propco Entities (including all voting and Distribution rights with respect thereto) to the Debtor.

     2.    <u>Minimum Equity Distribution Amount.</u>

As consideration for the waiver, release and discharge of the Opco Debtors from any amounts due or arising under the Propco Secured Claim, the Propco Credit Agreement (as defined in the Global Settlement Agreement) or any other documents relating thereto, other than the Propco Payment (as defined in the Global Settlement Agreement), unless the Holders of the Class A Equity Interests, in their sole and absolute discretion, agree in writing to a lower amount, the initial Distribution that such Holders will receive under the Plan on or as soon as reasonably practicable after the Effective Date on account of their Class A Equity Interests shall be no less than $21.0 million in the aggregate.

     3.    <u>Compromise of Certain 503(b)(9) Claims.</u>

Each Consenting 503(b)(9) Claimant (as defined in the Global Settlement Agreement) stipulates and agrees that its 503(b)(9) Claim (as defined in the Global Settlement Agreement), and other specified claims, shall be allowed in the reduced amounts set forth in the 503(b)(9) Schedule (as defined in the Global Settlement Agreement).

4.    Structured Dismissal of Opco Debtors' Bankruptcy Cases.

No later than ten (10) days following the execution of the Global Settlement Agreement, the Opco Debtors shall File a motion seeking entry of the Structured Dismissal Order, which shall authorize and permit, among other things, the (x) distributions on the Effective Date, or as soon thereafter as reasonably practicable, on account of (i) all valid and undisputed administrative, priority and secured claims against the Opco Debtors (including the 503(b)(9) Claims of the Consenting 503(b)(9) Claimants) other than the Propco Secured Claim and (ii) the Propco Secured Claim in the amount of the Propco Payment, and (y) wind down and dissolution of the Opco Debtors' Estates. Such order shall provide that the Plan Administrator shall have the power and authority to take any action necessary to implement the terms of this provision.

5.    Standstill; Dismissal of Committee Litigation.

Upon execution of the Global Settlement Agreement by all of the parties thereto, the parties to the Committee Litigation shall inform the United States District Court for the District of Delaware of the parties' entry into the Global Settlement Agreement and jointly request a stay or adjournment of the appeal related thereto to allow the parties to effectuate the terms of the Global Settlement Agreement. During the period from the date on which the Global Settlement Agreement is executed until the earlier of the Effective Date and the termination of the Global Settlement Agreement in accordance with the terms thereof, the parties to the Committee Litigation shall forbear the continuation of the Committee Litigation. No later than five (5) Business Days after the Effective Date, the Committee shall file a stipulation dismissing, with prejudice, the Committee Litigation, which stipulation shall be in form and substance reasonably acceptable to the parties to the Global Settlement Agreement.

**N.    Other Settlement Agreements**

After reaching a consensual resolution with respect to the Administrative Claims asserted by the Southern California United Food & Commercial Workers Union and Food Employees Joint Pension Trust Fund (the "**UFCW Pension Fund**") [D.I. 2580], on August 24, 2018, the Debtors filed a motion [D.I. __] seeking entry of an order approving that certain Settlement Agreement, dated as of August 23, 2018 (the "**Pension Fund Settlement Agreement**"), by and between the Debtors, the UFCW Pension Fund, the Comvest Entities, the Propco Entities, and the other parties thereto. The Pension Fund Settlement Agreement provides, among other things, (a) that the UFCW Pension Fund shall hold: (i) an Allowed Administrative Claim arising from certain unpaid postpetition contribution obligations in the amount of $15,561.15 and (ii) an Allowed Claim arising from withdrawal liability in the aggregate amount of $8,270,000, comprising (x) an Administrative Claim in the amount of $1,240,000 and (y) a Priority Non-Tax Claim in the amount of $7,030,000, in each case, to be paid no later than December 31, 2018; (b) for a litigation standstill with respect to such Claims until January 1, 2019, and the entry by the non-Debtor parties into a tolling agreement with respect to such litigation in favor of the UFCW Pension Fund until January 15, 2019; and (c) for mutual releases and waivers.

Similarly, in order to resolve the Administrative Claims asserted by the United Food & Commercial Workers Unions and Food Employers Benefit Fund (the "**UFCW Benefit Fund**") [D.I. 2579], the Debtors filed a motion [D.I. __] seeking entry of an order approving that certain

-25-

Settlement Agreement, dated as of August 23, 2018 (the "**Benefit Fund Settlement Agreement**"), by and between the Debtors, the UFCW Benefit Fund, the Comvest Entities, the Propco Entities, and the other parties thereto. The Benefit Fund Settlement Agreement provides, among other things, (a) that the UFCW Benefit Fund shall hold: (i) an Allowed Administrative Claim arising from certain unpaid postpetition contribution obligations in the amount of $42,297.67 and (ii) an Allowed Claim arising from a contractual lump sum payment obligation triggered by the Debtors' cessation of its operations in the aggregate amount of $1,280,000, comprising: (x) an Administrative Claim in the amount of $205,000 and (y) a Priority Non-Tax Claim in the amount of $1,075,000, in each case, to be paid no later than December 31, 2018; (b) for a litigation standstill with respect to such Claims until January 1, 2019, and the entry by the non-Debtor parties into a tolling agreement with respect to such litigation in favor of the UFCW Benefit Fund until January 15, 2019; and (c) for mutual releases and waivers.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

Any executory contract or unexpired lease which has not expired by its own terms on or prior to the Effective Date, which has not been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court, or which the Debtor has obtained the authority to reject but has not rejected as of the Effective Date, or which is not the subject of a motion to assume or reject the same pending as of the Effective Date, shall be deemed rejected by the Debtor as of the Confirmation Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(e) and 1123(b)(2) of the Bankruptcy Code.

### B.    Rejection Damages Claims

**Proofs of Claim for any Claim arising out of the rejection of an executory contract or an unexpired lease pursuant to the Plan shall be Filed and served upon the Plan Debtor no later than thirty (30) days after the Effective Date. Any such Claims covered by the preceding sentence not Filed within such time shall be forever barred from assertion against the Debtor, its Estate, the Plan Debtor, and their respective properties and interests.**

### C.    Indemnification Obligations

Any obligation of the Debtor pursuant to its corporate charter and bylaws or similar constituent agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any of the Debtor's members, managers and officers pursuant to the Debtor's certificate of formation, the Debtor LLC Agreement, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtor prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the

-26-

Debtor shall continue solely to the extent there is available insurance that provides coverage for such obligation; provided, however, that notwithstanding anything contained in the Plan to the contrary, the Debtor, the Debtor's Estate, the Plan Debtor, and the Plan Administrator shall have no obligation to satisfy any amounts due and owing under any of the Debtor's insurance policies in connection therewith, including any deductible, self-insured retention or similar amount.

### D.     D&O Policies

Notwithstanding anything contained in the Plan to the contrary, all of the D&O Policies in effect on the Effective Date, and any agreements, documents or instruments relating thereto, shall not terminate. To the extent any or all of the D&O Policies in effect on the Effective Date are considered to be executory contracts, then, notwithstanding anything contained in this Plan to the contrary, this Plan shall constitute a motion to assume such insurance policies; provided, however, that no cure amounts shall be due and owing with respect to any assumption of such insurance policies. The entry of the Confirmation Order shall constitute approval of the foregoing assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, the Debtor's Estate and all parties in interest in the Bankruptcy Cases. Notwithstanding anything to the contrary contained in this Plan, Confirmation of the Plan shall not discharge, impair or otherwise modify any advancement, indemnity or other obligations of the insurers under any of the D&O Policies.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.     Manner of Payment under the Plan

At the option of the Debtor or the Plan Debtor, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. Cash payments made pursuant to this Plan in the form of checks issued by the Debtor or the Plan Debtor shall be null and void if not cashed within sixty (60) days of the date of the issuance thereof and deemed unclaimed property subject to Section VI.D. below.

### B.     Timing of Distributions

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### C.     Distributions by Plan Administrator

The Plan Administrator, or its agent, shall serve as disbursing agent on behalf of the Debtor's Estate (on and after the Effective Date) under the Plan and shall make all Distributions required under the Plan. All Distributions under the Plan shall be made and administered from Available Cash.

The Plan Administrator shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Plan Administrator (including Taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Plan Debtor without further order of the Bankruptcy Court.

### D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

Except as otherwise provided in the Plan, all Distributions to any Holder of an Allowed Claim or Allowed Equity Interest shall be made at the address of such Holder as set forth on the Schedules Filed or on the Books and Records of the Debtor or its agents, as applicable, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules.

In the event that any Distribution to any Holder is returned as undeliverable, the Plan Administrator shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code upon the expiration of the later of three (3) months from the Effective Date and the date such Distribution was returned undeliverable. After such date, all unclaimed property or interest in property shall revert to the Plan Debtor for distribution on account of other Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan, and the Claim or Equity Interest of the Holder originally entitled such unclaimed property or interest in property shall be released and forever barred.

### E.    Record Date for Distributions

As of the close of business on the Distribution Record Date, the transfer register for any Claims and Equity Interests for the purposes of Distributions shall be closed, and there shall be no further changes in the record Holders of any Claims and Equity Interests. The Debtor shall have no duty to recognize the transfer of, or the sale of any interest in, any Claims and Equity Interests occurring after the close of business on the Distribution Record Date and shall be entitled for all purposes relating to this Plan to recognize, distribute to and deal with only those record Holders of Claims and Equity Interests stated on the Books and Records as maintained by the Debtor or its agents, as the case may be, as of the close of business on the Distribution Record Date.

**F.      Fractional Dollars;  *De Minimis*  Distributions**

Notwithstanding any other provision of the Plan to the contrary, (a) the Plan Administrator shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Plan Administrator shall have no duty to make a Distribution on account of any Allowed Claim or Allowed Equity Interest if the amount to be distributed to a Holder is less than $25.00, in which case such Distribution shall revert to the Plan Debtor for Distribution on account of other Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan.

**G.      No Distribution in Excess of Allowed Amount of Claim or Equity Interest**

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim or Allowed Equity Interest shall receive in respect of such Claim or Equity Interest any Distributions, which individually or in the aggregate, exceed of the Allowed amount of such Claim or Equity Interest.

**H.      No Postpetition Interest on Claims**

Unless otherwise specifically provided for in the Plan, the Confirmation Order or other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder shall be entitled to interest accruing on or after the Petition Date on any such Claim.

**I.      Setoffs**

The Debtor or the Plan Debtor may, but shall not be required to, set off against, or recoup from, any Claim or Equity Interest (for purposes of determining the Allowed amount of such Claim on which a distribution shall be made), any claims of any nature whatsoever that the Debtor or the Plan Debtor may have against the Holder of such Claim or Equity Interest, but neither the failure to do so nor the allowance of any Claim or Equity Interest under the Plan shall constitute a waiver or release by the Debtor or the Plan Debtor of any such claim the Debtor or the Plan Debtor may have against the Holder of such Claim or Equity Interest.

**J.      Compliance with Tax Requirements**

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtor and the Plan Debtor are authorized to take any and all actions that may be necessary or appropriate to comply with all Tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Plan Debtor shall be authorized to require each Holder of an Allowed Claim or Allowed Equity Interest to provide it with an executed Form W-9 or similar Tax form as a condition precedent to being sent a Distribution. If a Holder does not provide the Plan Debtor with an executed Form W-9 or similar form within ninety (90) days of written request, said Holder shall be deemed to have forfeited its

-29-

Distribution, and such amount shall revert to the Plan Debtor to be distributed to other Holders of Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan.

**K.      Release of Liens**

Except as otherwise provided by Article III of the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Article VI, all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtor's Estate shall be fully released, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the Plan Debtor.

**L.      Subordination**

1.      Preservation of Subordination Rights by the Debtor's Estate

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtor or the Plan Debtor of any Allowed Claim or Allowed Equity Interest shall remain valid, enforceable and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

2.      Waiver by Holders of all Subordination Rights

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim or Equity Interest shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have, whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, with respect to any and all Distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such Distribution made pursuant to this Plan shall be released and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.

**M.      Professional Fee Claims Escrow**

On or as soon as practicable after the Effective Date, the Plan Administrator shall establish and maintain a reserve (the **"Professional Fee Claims Escrow"**) from Available Cash for the payment of estimated unpaid Professional Fee Claims, which Professional Fee Claims Escrow shall be held in escrow by Young Conaway Stargatt & Taylor, LLP.  The Cash held in the Professional Fee Claims Escrow shall not be considered property of the Debtor's Estate or Debtor Assets.  The Professional Fee Claims Escrow shall include an amount of Cash equal to the amount that the Debtors and the Committee estimate will be incurred for fees and expenses by Professionals retained in the Bankruptcy Cases up to and including the Effective Date.  If, when, and to the extent any such Professional Fee Claims become Allowed Professional Fee Claims, the relevant portion of the Cash held in the Professional Fee Claims Escrow on account of such Professional Fee Claims shall be distributed by the Plan Administrator to the Professional in a manner consistent with the order of the Bankruptcy Court approving the Professional Fee Claim and similarly situated Professional Fee Claims.  Any Cash remaining in

-30-

the Professional Fee Claims Escrow after all Professional Fee Claims have been resolved and paid shall be distributed by the Plan Administrator to the Holders of Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan and the priorities of the Bankruptcy Code.

### N.    Administrative Claims Reserve

On or as soon as practicable after the Effective Date, the Plan Administrator shall establish and maintain a reserve (the "**Administrative Claims Reserve**") from Available Cash consisting of Cash in an aggregate amount the Plan Administrator reasonably deems sufficient to pay all Administrative Claims that are, or may be, asserted prior to or on the Administrative Claims Bar Date.  As soon as practicable after the Administrative Claims Bar Date applicable to the Supplemental Administrative Claims Period, the Plan Administrator shall release and distribute to Holders of Allowed Claims and Allowed Equity Interests, in accordance with the terms of the Plan and the priorities of the Bankruptcy Code, the portion of the Administrative Claims Reserve that is not required to either (i) pay Allowed Administrative Claims or (ii) be set aside as part of the Disputed Claims Reserve provided for under Section VI.O. of the Plan.

### O.    Disputed Claims Reserve

On or as soon as practicable after the Effective Date, the Plan Administrator shall establish and maintain a reserve (the "**Disputed Claims Reserve**") from Available Cash consisting of Cash in an aggregate amount the Plan Administrator reasonably deems sufficient to pay each Holder of a Disputed Claim (including, for the avoidance of doubt, a Disputed Administrative Claim, Disputed Priority Tax Claim, and Disputed Priority Non-Tax Claim), if any, at the time Distributions are made under the Plan the amount of Cash such Holder would have been entitled to receive under the Plan if such Disputed Claim had been an Allowed Claim on the Effective Date.  If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order or by agreement of the Holder of such Claim and the Plan Administrator, the relevant portion of the Cash held in the Disputed Claims Reserve on account of such Claim shall be distributed by the Plan Administrator to the Holder thereof in a manner consistent with Distributions to Holders of similarly situated Allowed Claims.  Any remaining Cash in the Disputed Claims Reserve after all Disputed Claims have been resolved and paid shall be distributed to the Holders of Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan and the priorities of the Bankruptcy Code.

### P.    Operating Reserve

On or as soon as practicable after the Effective Date, the Plan Administrator shall establish and maintain a reserve (the "**Operating Reserve**") from Available Cash consisting of an amount of Cash equal to the estimated amount of Plan Administrator Expenses the Plan Administrator reasonably deems sufficient to carry out his, her or its duties as set forth herein and in the Plan Administration Agreement, which amount shall include, without limitation, an amount of Cash sufficient to satisfy any and all U.S. Trustee Fees subsequent to the Effective Date; provided, however, that the Plan Administrator shall be authorized, in its reasonable discretion (and in consultation with the Holders of the Class A Equity Interests), to modify from time to time the amounts maintained in the Operating Reserve to the extent necessary to carry

-31-

out his or her obligations under this Plan.  Any remaining Cash in the Operating Reserve upon the closing of the Debtor's Bankruptcy Case or, to the extent applicable, any Cash in the Operating Reserve that the Plan Administrator, in its sole discretion, deems to be in excess of the anticipated Plan Administrator Expenses going forward, shall be distributed to the Holders of Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan and the priorities of the Bankruptcy Code.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND EQUITY INTERESTS

### A.    Prosecution of Objections to Claims and Equity Interests on and after the Effective Date

On and after the Effective Date, objections to, and requests for estimation of any Claims and Equity Interests may be interposed and prosecuted only by the Plan Administrator (on behalf of the Plan Debtor).  Other than with respect to Administrative Claims and Professional Fee Claims, such objections and requests for estimation shall be served on the respective claimant and Filed on or before the later of (a) ninety (90) days after the Effective Date and (b) such other date as may be fixed by the Bankruptcy Court upon a motion Filed by the Plan Debtor served only on the Rule 2002 service list.  On the Effective Date, all outstanding objections to, and requests for estimation of Claims or Equity Interests will vest in the Plan Debtor.

### B.    Estimation of Claims

The Plan Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Equity Interest pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor, the Plan Debtor, or any other party previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim or Equity Interest at any time during litigation concerning any objection to any Claim or Equity Interest, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Equity Interest, such estimated amount will constitute either the Allowed amount of such Claim or Equity Interest or a maximum limitation on such Claim or Equity Interest, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim or Equity Interest, the Plan Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim or Equity Interest.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims and Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### C.    No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim or Equity Interest is a Disputed Claim or Disputed Equity Interest, no payment or distribution provided hereunder shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim

-32-
.

or Disputed Equity Interest becomes Allowed. To the extent that all or a portion of a Disputed Claim or Disputed Equity Interest is Disallowed, the Holder of such Claim or Equity Interest shall not receive any Distribution on account of the portion of such Claim or Equity Interest that is Disallowed and any property withheld pending the resolution of such Claim or Equity Interest shall be available to the Plan Administrator (on behalf of the Plan Debtor) to be distributed to Holders of Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan.

### D. Preservation of Rights to Settle

In accordance with section 1123(b) of the Bankruptcy Code, the Plan Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Debtor's Estate may hold against any Person or Entity without the approval of the Bankruptcy Court. The Plan Debtor or its successor(s) may pursue such retained claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Plan Debtor or its successor(s) who hold such rights.

### E. Disallowed Claims

EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF, THE BANKRUPTCY COURT AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

### ARTICLE VIII.

### CONDITIONS PRECEDENT TO CONFIRMATION
### AND EFFECTIVE DATE OF THE PLAN

### A. Condition Precedent to Confirmation

The Plan shall not be confirmed, and the Confirmation Date shall not be deemed to occur, unless and until (i) the Disclosure Statement Order and (ii) the Confirmation Order, in form and substance reasonably acceptable to the Committee and the Holders of Class A Equity Interests, have each (x) been entered on the docket maintained by the Clerk of the Bankruptcy Court and (y) become a Final Order.

### B. Conditions Precedent to the Effective Date

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full or waived by the Debtor in writing:

1.    the Confirmation Order shall be in full force and effect, and shall not be subject to a stay or an injunction which would prohibit the transactions under the Plan;

-33-

2.      the final version of the Plan and any supplemental documents and exhibits contained therein shall have been Filed;

3.      the Plan Administrator shall have executed the Plan Administration Agreement, which agreement shall be in full force and effect;

4.      the Structured Dismissal Order shall be in full force and effect, and shall not be subject to a stay or an injunction which would prohibit the transactions approved thereby;

5.      (a) a Final Order of the Bankruptcy Court approving the Global Settlement Agreement, in form and substance reasonably acceptable to the Committee and the Holders of Class A Equity Interests, shall be in full force and effect, and shall not be subject to a stay or an injunction which would prohibit the transactions contemplated by the Global Settlement Agreement; and (b) any conditions precedent to the effectiveness of such Global Settlement Agreement shall have been satisfied or waived in accordance with the terms thereof;

6.      (a) a Final Order of the Bankruptcy Court approving each of (x) the Pension Fund Settlement Agreement and (y) the Benefit Fund Settlement Agreement; and (b) any conditions precedent to the effectiveness of each of the Pension Fund Settlement Agreement and the Benefit Fund Settlement Agreement shall have been satisfied or waived in accordance with the terms thereof; and

7.      the Reserves and the Professional Fee Claims Escrow shall have been funded.

**C.      Waiver of Conditions**

Any of the conditions to the Effective Date set forth in Section VIII.B. hereof, other than entry of the Confirmation Order, may be waived by the Debtor in writing and upon prior notice to the Committee and to the Holders of Class A Equity Interests, without leave or order of the Bankruptcy Court, and without any formal action.

**D.      Satisfaction of Conditions**

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Debtor determines that one of the conditions precedent set forth in Section VIII.B. of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall File a notice of the failure of the Effective Date with the Bankruptcy Court.

**E.      Effect of Nonoccurrence of Conditions**

If each of the conditions to the occurrence of the Effective Date set forth in Section VIII.B. has not been satisfied or duly waived on or before the first Business Day that is 180 days after the Confirmation Date, or such later date as shall be determined by the Debtor, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is so

-34-

vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against or Equity Interests in the Debtor or release of any claims or interests by the Debtor or the Debtor's Estate.

## ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### A.   Compromise and Settlement of Claims, Equity Interests and Controversies

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan and the agreements included in the Plan Supplement, on the Effective Date, the provisions of the Plan and the Plan Supplement shall constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved pursuant to the Plan or the documents contained in the Plan Supplement relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Claim or Equity Interest, or any Distribution to be made on account of such Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator (on behalf of the Plan Debtor) may compromise and settle Claims against the Debtor and its Estate and Causes of Action against other Entities.

### B.   Non-Discharge of the Debtor; Injunction

In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the Debtor. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtor. As such, no Entity holding a Claim or Equity Interest against the Debtor may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Entity under the Plan. As of the Confirmation Date, all parties are precluded from asserting against any property to be distributed under this Plan any Claims, rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in this Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in the Confirmation Order, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:

> (a)   commencing or continuing in any manner any action or other proceeding of any kind against the Debtor's Estate, the Plan Administrator, the Plan Debtor, their successors and assigns, and any of their assets and properties;

-35-

(b)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor's Estate, the Plan Administrator, the Plan Debtor, their successors and assigns, and any of their assets and properties;

(c)     creating, perfecting or enforcing any encumbrance of any kind against the Debtor's Estate, the Plan Administrator, the Plan Debtor, their successors and assigns, and any of their assets and properties;

(d)     asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's Estate, the Plan Administrator, the Plan Debtor or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim; or

(e)     commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or cause of action released or settled hereunder.

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Debtor's Estate, the Released Parties, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

## C.     Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the Plan Debtor shall retain and may enforce all rights to assert, commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Causes of Action specifically enumerated in any supplemental documents, and their rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Debtor may pursue the Causes of Action, as appropriate, in accordance with the best interests of the Holders. No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Plan Debtor, as applicable, will not pursue any and all available Causes of Action against it. Unless any Causes of Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the documents contained in the Plan Supplement, or a Bankruptcy Court order, the Plan Debtor expressly reserves all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

D.    **Releases and Related Matters**

1.    **Releases by the Debtor.**  For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of and subject to the occurrence of the Effective Date, the Debtor and the Plan Debtor, in its individual capacity and as a debtor in possession, on behalf of itself and the Debtor's Estate, shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, remedies, causes of action and liabilities (other than the rights of the Debtor or Plan Debtor to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder, including in the Plan Supplement) that could have been asserted by or on behalf of the Debtor, its Estate or Plan Debtor, whether directly, indirectly, derivatively or in any representative or any other capacity, against the Released Parties (and each such Released Party shall be deemed forever released, waived and discharged by the Debtor and the Plan Debtor), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, its affiliates and former affiliates, the Plan Debtor, the Debtor's Bankruptcy Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Debtor's Bankruptcy Case, the negotiation, formulation, or preparation of this Plan, the Disclosure Statement, the Global Settlement Agreement, the Pension Fund Settlement Agreement, the Benefit Fund Settlement Agreement, the structured dismissal of the Opco Debtors' Bankruptcy Cases, the Plan Supplement, or related agreements, instruments, or other documents; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) any causes of action expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) any causes of action arising from fraud, gross negligence, or willful misconduct as determined by Final Order of the Bankruptcy Court or final order of any other court of competent jurisdiction; and/or (iii) the rights of the Debtor or Plan Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of and subject to the occurrence of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement, prosecution or continuation by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release.

2.    **Releases by Certain Holders of Claims and Equity Interests.**  Except as otherwise provided in this Plan or the Confirmation Order, as of and subject to the occurrence of the Effective Date, (i) each of the Released Parties; (ii) each holder of an

-37-

Allowed SLB Unsecured Claim and Allowed Class A Equity Interest that voted to accept this Plan but that did not validly exercise the Release Opt-Out; and (iii) each holder of a Claim deemed in this Plan to have accepted this Plan that did not File, prior to the deadline to object to Confirmation of this Plan, an objection to the granting of the releases in this Plan, in consideration for the obligations of the Debtor and the Plan Debtor under this Plan, the Distributions, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities against the Released Parties (and each such Released Party shall be deemed forever released, waived and discharged by such Holder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, its affiliates and former affiliates, the Plan Debtor, the Debtor's Bankruptcy Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Debtor's Bankruptcy Case, the negotiation, formulation, or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Global Settlement Agreement, the Pension Fund Settlement Agreement, the Benefit Fund Settlement Agreement, and the structured dismissal of the Opco Debtors' Bankruptcy Cases; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) any causes of action expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) any causes of action arising from fraud, gross negligence, or willful misconduct as determined by Final Order of the Bankruptcy Court or final order of any other court of competent jurisdiction; and/or (iii) the rights of such Holder to enforce the obligations of any party under the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of and subject to the occurrence of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement, prosecution or continuation by any Person or Entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release.

3.      Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section IX.D., and (ii) the Bankruptcy Court's findings that such releases are (1) in the best interests of the Debtor, its Estate, and all Holders of Claims and Equity Interests, (2) fair, equitable, and reasonable, (3) given and made after due notice and opportunity for hearing, and (4) a bar to any of the parties granting releases in this Plan from asserting any released claim against any of the Released Parties.

-38-

4.      Each Entity deemed to grant a release under this Section IX.D. shall be deemed to have granted such release notwithstanding that such Entity may hereafter discover facts in addition to, or different from, those which such Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Entity expressly waives any and all rights that such Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of Confirmation.  Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

5.      Notwithstanding any provision in this Plan or the Confirmation Order to the contrary, no release, injunction, or exculpation provided for in this Plan or the Confirmation Order in favor of any Released Party shall be granted by, otherwise apply to, or be effective against, the UFCW Benefit Fund unless and until: (i) the Benefit Fund Settlement Agreement is approved by the Bankruptcy Court; and (ii) the settlement payment of $1,322,297.67 in the aggregate set forth in Section IV.N. hereof is paid to the UFCW Benefit Fund in cash, in full, no later than December 31, 2018.  In addition, notwithstanding any provision in this Plan or the Confirmation Order to the contrary, no release, injunction, or exculpation provided for in this Plan or the Confirmation Order in favor of any Released Party shall be granted by, otherwise apply to, or be effective against, the UFCW Pension Fund unless and until: (i) the Pension Fund Settlement Agreement is approved by the Bankruptcy Court; and (ii) the settlement payment of $8,285,561.15 in the aggregate set forth in Section IV.N. hereof is paid to the UFCW Pension Fund in cash, in full, no later than December 31, 2018.

E.      Exculpation

The Exculpated Parties shall neither have, nor incur, any liability to any Entity for any act taken or omitted to be taken in connection with, relating to, or arising out of, (a) the Bankruptcy Cases, and (b) formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan, the Disclosure Statement, the Plan Supplement, the administration of the Plan or the property to be distributed under the Plan or related to the issuance, distribution, and/or sale of any security, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan through and including the Effective Date; provided, however, that the foregoing shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted fraud, willful misconduct or gross negligence.

-39-

# ARTICLE X.

## RETENTION OF JURISDICTION

### A.    Retention of Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under or related to the Debtor's Bankruptcy Case for, among other things, the following purposes:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of Professional Fee Claims or any compensation or reimbursement of Plan Administrator Expenses authorized pursuant to the Plan Administration Agreement;

(c)    Resolve any matters related to: (i) the assumption, assignment, or rejection of any executory contract or unexpired lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an executory contract or unexpired lease, cure obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such executory contract or unexpired lease; (ii) any potential contractual obligation under any executory contract or unexpired lease that is assumed and/or assigned; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    Ensure that Distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

(e)    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)    Adjudicate, decide, or resolve any and all matters related to the Causes of Action;

(g)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Plan Supplement;

(h)    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

-40-

(i)     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Entity's obligations incurred in connection with the Plan;

(j)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation or enforcement of the Plan;

(k)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(l)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions;

(m)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the documents contained in the Plan Supplement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(o)     Adjudicate any and all disputes arising from or relating to Distributions under the Plan or any transactions contemplated therein;

(p)     Consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(r)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the documents contained in the Plan Supplement or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(s)     Hear and determine matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(t)     Hear and determine all disputes involving the existence, nature, or scope of the Debtor's release under the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(u)     Enforce all orders previously entered by the Bankruptcy Court;

-41-

(v)     Hear any other matter not inconsistent with the Bankruptcy Code;

(w)     Enter an order concluding or closing the Debtor's Bankruptcy Case; and

(x)     Enforce the injunction, release, and exculpation provisions set forth in Article IX.

## ARTICLE XI.

## MODIFICATION AND REVOCATION OF THE PLAN

### A.     Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon all Persons and Entities to the fullest extent permitted under section 1141 of the Bankruptcy Code. All Claims and debts shall be fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

### B.     Modification of the Plan

Subject to the limitations contained herein and upon prior notice to the Committee and to the Holders of Class A Equity Interests, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its right to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.     Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date and to File one or more subsequent plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation of this Plan does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption and assignment or rejection of executory

-42-

contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (3) the Global Settlement Agreement and any requested dismissal of the Opco Debtors' Bankruptcy Cases shall be null and void in all respects; and (4) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

**ARTICLE XII.**

**MISCELLANEOUS PROVISIONS**

**A.      Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, this Plan, the rights, duties and obligations arising under this Plan, and any claim or controversy directly or indirectly based upon or arising out of this Plan or the transactions contemplated by this Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed and determined in accordance with, the internal laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

**B.      Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of this Plan (other than any term or provision relating to the Global Settlement Agreement or the dismissal of the Opco Debtors' Bankruptcy Cases) is held by the Bankruptcy Court or other court of competent jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Debtor.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.      Successors and Assigns**

The Plan shall be binding on, and shall inure to the benefit of the Debtor, and its successors and assigns.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

-43-

### D.    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the Filing of this Plan, any nor statement or provision contained herein, nor the taking of any action by the Debtor or any other party with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor or any other party prior to the Effective Date. If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Bankruptcy Cases are and shall be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Bankruptcy Cases shall be bound or deemed prejudiced by any such concession or settlement.

### E.    Notice and Service of Documents

All notices, requests and demands required or permitted to be provided to the Debtor, the Plan Debtor or the Committee under the Plan shall be in writing and shall be deemed to have been duly given or made (a) when actually delivered (i) by certified mail, return receipt requested, (ii) by hand delivery or (iii) by U.S. mail, postage prepaid or, (b) in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Debtor:

> Stroock & Stroock & Lavan LLP
> 180 Maiden Lane
> New York, New York 10038
> Attn:   Frank A. Merola, Esq.
>             Sayan Bhattacharyya, Esq.
>             Elizabeth Taveras, Esq.
> Facsimile: (212) 806-6006

and

> Young Conaway Stargatt & Taylor, LLP
> Rodney Square, 1000 North King Street
> Wilmington, Delaware 19801
> Attn:   Matthew B. Lunn
>             Robert F. Poppiti, Jr.
> Facsimile: (302) 571-1256

If to the Plan Debtor or the Plan Administrator:

> At the address(es) set forth in, and in accordance with the notice provisions provided for under, the Plan Administration Agreement.

If to the Committee:

> Pachulski Stang Ziehl & Jones LLP
> 780 Third Avenue, 34th Floor
> New York, NY 10017
> Attn:   Robert J. Feinstein, Esq.
>           Bradford J. Sandler, Esq.
> Facsimile: (212) 567-7700

### F.        Conflicts

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.   To the extent any provision of the Plan (or any exhibits, schedules, appendices, supplements or amendments thereto) conflicts with or is in any way inconsistent with the terms of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and control.

### G.        Determination of Tax Liability

The Debtor is authorized, but not required, to request an expedited determination under section 505(b) of the Bankruptcy Code of the Tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

### H.        Post-Effective Date Fees and Expenses

From and after the Effective Date, the Plan Administrator, on behalf of the Plan Debtor, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Plan Debtor, and any professionals retained by such Plan Debtor, related to the consummation and to the implementation of this Plan.

### I.        Entire Agreement

This Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated in to this Plan.

### J.        Closing of Debtor's Bankruptcy Case

When the business affairs of the post-Confirmation Debtor's Estate have been otherwise wound-up, the Plan Administrator, on behalf of the Plan Debtor, shall seek authority from the Bankruptcy Court to close the Debtor's Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

LA 52166477

### K.    Change of Control Provisions

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of this Plan shall be waived or otherwise cancelled under this Plan.

### L.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

Dated: August 24, 2018

HH LIQUIDATION, LLC


By:    */s/ Marc Beilinson*
Name: Marc Beilinson
Title: Authorized Signatory

-46-